UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA

[NOT YET SCHEDULED FOR ORAL ARGUMENT]

No. 23-3001 (UNDER SEAL)

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE
CELL PHONE OF REPRESENTATIVE SCOTT PERRY

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 22-sc-2144 (under seal)

---

**APPELLANT'S REPLY TO THE GOVERNMENT'S
OPPOSITION TO EMERGENCY MOTION FOR STAY**

---

| | |
|---|---|
| John P. Rowley III | John S. Irving |
| (D.C. Bar No. 392629) | (D.C. Bar No. 460068) |
| JPRowley Law PLLC | E&W Law, LLC |
| 1701 Pennsylvania Avenue, N.W. | 1455 Pennsylvania Avenue, N.W. |
| Suite 200 | Suite 400 |
| Washington, D.C. 20006 | Washington, D.C. 20004 |
| (202) 525-6674 | (301) 807-5670 |
| john.rowley@jprowleylaw.com | john.irving@earthandwatergroup.com |

Representative Scott G. Perry, by and through counsel, respectfully submits this Reply to the Government's Opposition to his Emergency Motion to Stay the district court's December 28, 2022, Order Pending Appeal. At stake in this case is the legislative immunity of the Speech or Debate Clause, U.S. CONST. art 1 § 6, cl. 1, which insulates Members of Congress from coercion and intimidation by the Executive branch when gathering information to inform the exercise of their official duties. The interests at issue weigh strongly in favor of a stay.

## I.     Rep. Perry Has Demonstrated a Likelihood of Prevailing on Appeal.

### A.     The Court's Ruling is an Appealable Final Order.

The district court's ruling is a final appealable order. Noting that the Speech or Debate Clause "was designed to protect Congressmen 'not only from the consequence of litigation's results but also from the burden of defending themselves," this Court in *Helstoski v. Meanor,* 422 U.S. 500 (1979) likened the Clause's protections to a criminal defendant's protection against double jeopardy and held that there "can be no doubt" a denial of a motion to dismiss on Speech or Debate grounds is "a complete, formal, and … final rejection of a criminal defendant's double jeopardy claims." *Id.* at 506.

The Government argues that Rep. Perry's reliance on *Helstoski* is misplaced, and that this matter is more akin to a district court's denial of a motion for a pretrial hearing to determine whether the Speech or Debate Clause should preclude the

2

Government from introducing evidence at trial in *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995), or an order denying a motion to suppress evidence in *United States v. Renzi*, 769 F.3d 731 (9th Cir. 2014). The fundamental distinction is that all of these cases – *Helstoski*, *Rostenkowski*, and *Renzi* – involved post-indictment criminal trials where, as the Government notes, "[e]ffective appellate review can be had by other means." Gov't Opp. at 11 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 114 (2009)).

Rep. Perry seeks to assert the *non-disclosure* privilege that this Court affirmed in *Rayburn*, as distinct from the Speech or Debate Clause's protections against *use* of the privileged records. The district court's Order therefore is a "complete, formal … final rejection" of Rep. Perry's non-disclosure privilege and therefore appealable, like the denial of a motion to dismiss on Speech or Debate use immunity grounds in *Helstoski* and *Rostenkowski*. To hold otherwise would vitiate this Court's affirmation of a non-disclosure privilege.

Indeed, this Court asserted jurisdiction in *Rayburn* under similar circumstances. *United States v. Rayburn House Office Building Room 2113,* 497 F. 3d 654, 657-58 (D.C. Cir. 2007). As discussed further below, the Government attempts to dismiss that fact by arguing that the appeal in *Rayburn* was limited to the procedural process by which the district court was to determine which records the Government could access. While that is true, nothing in *Rayburn* suggests that this

3

Court is deprived of jurisdiction to review the findings the district court made pursuant to that process.

The Government's argument that the district court's Order "is indistinguishable from a non-appealable order compelling a grand jury witness to disclose material that the court determines is not privileged," Gov't Opp. at 10, 12, similarly fails. None of the cases cited by the Government involves an assertion of the Speech or Debate Clause. Further, the Government itself acknowledges the exception announced in *Perlman v. United States*, 247 U.S. 7 (1918) (discussed in *In re Sealed Case*, 146 F.3d 881, 883 (1998)), in instances where a district court's order is not directed at the privilege holder. Gov't Opp. at 10. If the district court's Order concerning Rep. Perry's non-disclosure privilege was allowed to stand, he would be in the same position as the non-privilege holder in *In re Sealed Case*, without any potential recourse for violation of the privilege.[1]

To suggest, as does the Government, that a Member of Congress might disobey a disclosure order and risk being held in contempt as the basis for pursuing an appeal (Gov't Opp. at 11), is irresponsible and fails to consider the "central role" of the Speech or Debate Clause, *i.e.*, "to prevent intimidation of legislators by the

---

[1] The "privilege holder" here is not only Rep. Perry, but also the United States House of Representatives, which should have at least the same opportunity for appellate review as a third-party litigant.

Executive and accountability before a potentially hostile judiciary," *Gravel v. United States*, 408 U.S. 606, 617 (1972), as well as from "the burden of litigation and diversion from congressional duties." *Helstoski,* at 506; *United States v. Rose*, 28 F.3d 181, 185 (D.C. Cir. 1994).

In an analogous situation,[2] the Supreme Court held that "[t]o require the President to place himself in the posture of disobeying a court merely to trigger the procedural mechanism for review of the ruling would be unseemly." *United States v. Nixon*, 418 U.S. 683, 692 (1974). It is equally "unseemly" and unnecessary here. Moreover, unlike appeals involving Attorney-Client Privilege, this appeal does not risk "swamp[ing] the courts of appeals" and incurring associated institutional costs. *Renzi,* at 112. Cases involving the Government's seizure of legislative materials from a sitting Member of Congress are, at present, exceedingly rare.

Alternatively, appellate jurisdiction lies pursuant to the collateral order doctrine, where a district court's order "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). Those requirements are satisfied

---

[2] "[I]n relation to his or her constituents and in the constitutionally defined functions each Member of the House or Senate occupies a position in the Legislative Branch comparable to that of the President in the Executive Branch." *Davis v Passman*, 442 U.S. 228, 250 (1979) (C. J. Burger, dissenting).

5

here. The district court's Order conclusively determined that the disputed documents are not "legislative activity" protected by the non-disclosure privilege. It resolved the "absolute privilege" issue insofar as the Clause applies to those documents, which is an entirely separate matter from the merits of any future criminal prosecution. The Order is also effectively unreviewable on an appeal from a final judgment because there is no pending case that would be a vehicle for such an appeal, and any such future case would involve other aspects of the privilege – use or testimonial immunity – and not the Clause's non-disclosure privilege.

B.     *Rayburn* **Does Not Restrict this Court's Ability to Review the District Court's Speech or Debate Decision.**

The Government argues that *Rayburn* does not support appellate review of the district court's findings. Gov't Opp at 15. It contends that "[c]ompliance with the procedures approved in *Rayburn* fully protects a member's nondisclosure privilege" and that no further judicial review by this Court is appropriate.[3]

Rep. Perry agrees that *Rayburn* focused on whether the congressman was procedurally entitled to review his records for privilege before they were "scoured"

---

[3] According to the Government, no review by this Court is necessary since, "in the event of an erroneous determination [by the district court], the member retains other protections …. Gov't Opp. at 15. This, of course, is a woefully inadequate response to an issue involving a constitutional privilege whose "protection is absolute." *Eastland v. U.S. Servicemen's Fund,* 421 U.S. 491, 501 (1975).

6

by the Government. *Id.* at 662.[4] However, this Court certainly retained its authority to review the district court's decisions, and nothing in *Rayburn* precludes such a review. *Rayburn,* at 665 ("the district court *may in the first instance* determine pursuant to the Remand Order, to the return of all materials … that are privileged legislative materials under the Speech or Debate Clause.") (emphasis added).

In this case, the district court applied the procedures required by *Rayburn*, but erred by declining to recognize any privilege for congressional fact-finding that is "untethered to a formally sanctioned congressional inquiry." *Exhibit 1,* 12/28/2022 Mem. Op. at 38, ECF No. 25. *Rayburn* does not prohibit this Court from reviewing that decision before the Government is allowed access to Rep. Perry's privileged records.

### C. Rep. Perry Is Likely to Succeed on the Substantive Merits.

The district court is mistaken in its conclusion that the Speech or Debate Clause does not protect Rep. Perry's efforts to investigate information that would inform his duties as a Member of Congress. Relying on this Court's decision in *McSurely v. McClellan*, 553 F.2d 1277 (1976), the district court held that for the privilege to apply to "field investigations" by a Member of Congress the inquiry must have been *congressionally authorized*. *Exhibit 1,* Mem. Op. at 22 (citing

---

[4] Addressing the issue, the Court held that "a search that allows agents of the Executive to review privileged materials without the Member's consent violates the Clause." *Rayburn,* at 663.

7

*McSurely,* at 1286-88) (emphasis added). This misinterprets *McSurely's* holding, which is based on the Supreme Court's requirement that such activities only be "an integral part of the deliberative (or) communicative processes by which Members participate in committee and House proceedings." *Gravel v. United States*, 408 U.S. 606, 625 (1972).

Rep. Perry's Speech or Debate privilege is not dependent on his "participation in House proceedings" or restricted to "congressionally authorized" activities. It arises from his status as a congressional representative. *In re Grand Jury Investigation Into Possible Violations of Title...,* 587 F.2d 589 (3d 1978) ("[The Speech or Debate] privilege, although of great institutional interest to the House as a whole, is also personal to each member.") The primary inquiry when determining the applicability of the privilege to the records seized from Rep. Perry's phone is whether he was engaged in information gathering as "part of, in connection with, or in aide of a legitimate legislative act" that is protected by the Clause. *See McSurley v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976); *Jewish War Veterans v. Gates*, 506 F.Supp. 2d 30, 57 (D.D.C. 2007); *Pentagen Tech. Int'l, Ltd v. Comm. On Appropriations*, 20 F.Supp. 2d 41, 44 (D.D.C. 1998). *See also United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988).

There is no requirement for the information gathering to have been "congressionally authorized" by formal resolution for an investigation conducted by

8

a committee.[5] To the extent that Rep. Perry's actions fallwithin the "sphere of legitimate legislative activity," he "shall not be questioned in any other Place" about those activities since the prohibitions of the Speech or Debate Clause are absolute. *Eastland,* 421 U.S. at 501.The records at issue pertain to Rep. Perry's efforts to gather information about the security of the 2020 election and the validity of the electors required to certify the election, a vote that he was called upon to cast under the United States Constitution and the Electoral Count Act. They also involve communications conducted in furtherance of his efforts to ensure the integrity of future elections and help determine the most appropriate vehicles to do so.[6] Activities of this type inherently have a legislative purpose and are fundamental to the obligations a Member has to his constituents and the Nation.

      Rep. Perry endeavored to conduct fact-finding into national security concerns about whether the 2020 Presidential election had been corrupted. Whatever the merits of those concerns, they certainly appeared credible to many people at the

---

[5] Indeed, if that were not the case, only Members in the majority party of Congress would have Speech or Debate protection for communication conducted during formal majority-authorized fact finding and investigations.

[6] Rep. Perry's fact-finding was not limited to informing his Electoral Count Act vote on January 6, 2021, but also related to ongoing legislative activity involving election security and procedures. For example, his inquiries occurred at the same time as the Democrats in Congress had proposed to enact H.R. 1, the "For the People Act", which addressed voter access, election integrity and security, campaign finance, and ethics for the three branches of government.

9

time. Rep. Perry believed he had an obligation as a Member of Congress to inform his legislative acts, both in his Electoral Count Act vote and with respect to future proposed legislative solutions regarding election integrity. Accordingly, the communications over which he asserted privilege cannot be disclosed to the Government without violating the separation of powers between the Legislative and Executive branches of government and the non-disclosure privilege that this Court has affirmed.

## II. Rep. Perry Will Be Irreparably Harmed Absent a Stay.

Infringement of constitutional rights or immunities "unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This Court has agreed that the loss of a "constitutional privilege of critical importance," such as the protections under the Speech or Debate Clause, "would constitute the type of harm that is sufficient to satisfy the irreparable harm prong of the stay analysis." (internal quotations omitted). *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 81 (D.D.C. 2007). *See also Rayburn* (stay granted pending appeal on Speech or Debate Clause grounds); *In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 522 (3d Cir. 2015) (same).

### III. Granting a Stay is in the Public Interest.

Granting a stay would promote important public interests by providing an opportunity for this Court to consider the important constitutional privilege asserted by Rep. Perry before his private communications are accessed by the Government. A stay also would allow time for Congress, an important stakeholder, to consider requesting leave to submit an *amicus* brief to assist the Court's review and protect its institutional prerogatives.

The Government implied that it is dissatisfied with the delay attributed to the review procedures required by *Rayburn*. Be that as it may, the Speech or Debate Clause provides absolute immunity to Congress and its Members for any claims predicated on legislative activities. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975). The Clause furthers reflects the Founders' belief in legislative independence, *United States v. Brewster*, 408 U.S. 501, 524 (1972), and "protects the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process." *Id.*; *see also Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015). *Eastland*, 421 U.S. at 502, (quoting *United States v. Johnson*, 383 U.S. 169, 178 (1966)).

Although the public has an interest in the expeditious investigation of criminal matters, that interest does not override the constitutional privileges protected by the Speech or Debate Clause. The issues presented in this case are of critical importance

11

to Rep. Perry, as well as to Congress. The judicial decisions made here have the potential to affect the way the Speech or Debate Clause is interpreted for future generations.

January 12, 2023            Respectfully submitted,

**JPRowley Law PLLC**

  /s/ John P. Rowley III    **.**
John P. Rowley III
D.C. Bar No. 392629
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20006
(202) 525-6674
john.rowley@jprowleylaw.com

**E&W LAW, LLC**
  /s/ John S. Irving    .
John S. Irving
D.C. Bar No. 460068
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 12, 2023, I electronically filed the foregoing pleading with the Clerk for the United States Court of Appeals for the District of Columbia Circuit. I also transmitted the pleading via electronic mail to the following Government counsel:

John M. Pellettieri
Timothy A. (Tad) Duree
Joseph Cooney
Teresa McHenry

                                          Respectfully submitted,

                                            /s/ John P. Rowley III
                                          John P. Rowley III

## CERTIFICATE OF COMPLIANCE

1. This Reply complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2447 words.

2. This Reply complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: January 12, 2023                         Respectfully submitted,

                                            */s/ John P. Rowley III*
                                          John P. Rowley III