No. 23-3001

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

IN RE SEALED CASE

_____

On Appeal from the United States District Court
for the District of Columbia
Case No. 1:22-sc-02144-BAH (The Honorable Beryl A. Howell)

_____

## MOTION OF THE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS TO UNSEAL JUDICIAL RECORDS

Katie Townsend
*Counsel of Record*
Grayson Clary
Emily Hockett
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION .....................................................................................1

FACTUAL BACKGROUND .....................................................................3

    I.   The Justice Department's investigation into Congressman Scott
        Perry's role in the events of January 6. .............................................3

    II.  The sealed proceedings in this Court. ...............................................6

ARGUMENT .............................................................................................7

    I.   The common law guarantees the public a presumptive right of access
        to the orders, briefs, and record in this appeal, subject—at most—to
        narrowly tailored redactions............................................................8

        A.  The public has a powerful interest in evaluating the conduct of its
            officials and understanding the separation-of-powers issues at
            stake in the investigation of a sitting Congressman. ...............9

        B.  Any countervailing secrecy interests are undercut by the extensive
            information that is already in the public domain. ...................11

        C.  Grand jury secrecy would justify, at most, narrow redactions. .............13

    II.  The First Amendment guarantees public access to the orders, briefs,
        and record, subject—at most—to narrowly tailored redactions. .................16

CONCLUSION .......................................................................................19

CERTIFICATE OF COMPLIANCE ....................................................20

CERTIFICATE OF SERVICE..............................................................21

# TABLE OF AUTHORITIES

**Cases**

*BP Expl. & Prod., Inc. v. Claimant ID 100246928*,
  920 F.3d 209 (5th Cir. 2019) .................................................................13

*Dep't of Commerce v. New York*,
  139 S. Ct. 2551 (2019) ..........................................................................15

*Doe v. Mattis*,
  889 F.3d 745 (D.C. Cir. 2018) ...............................................................18

*EEOC v. Nat'l Children's Ctr., Inc.*,
  98 F.3d 1406 (D.C. Cir. 1996) .................................................................8

*Ex Parte Drawbaugh*,
  2 App. D.C. 404 (1894) .........................................................................16

*Hartford Courant Co. v. Pellegrino*,
  380 F.3d 83 (2d Cir. 2004) ....................................................................17

*In re Application of Leopold to Unseal Certain Electronic Surveillance
  Applications & Orders*,
  964 F.3d 1121 (D.C. Cir. 2020) ...............................................................7

*In re Associated Press*,
  No. 5:22-mc-00111, slip op. (S.D. Tex. Nov. 28, 2022) .......................15

*In re Grand Jury Subpoena, Judith Miller*,
  438 F.3d 1138 (D.C. Cir. 2006) .............................................................14

*In re Grand Jury Subpoena, Judith Miller*,
  493 F.3d 152 (D.C. Cir. 2007) ..........................................................14, 15

*In re Krynicki*,
  983 F.2d 74 (7th Cir. 1992) ................................................................17, 18

*In re L.A. Times Commc'ns LLC*,
  28 F.4th 292 (D.C. Cir. 2022) ........................................................*passim*

*In re L.A. Times Commc'ns LLC*,
  No. 21-16, 2022 WL 3714289 (D.D.C. Aug. 29, 2022) .....................13, 17

*In re Motions of Dow Jones & Co.*,
  142 F.3d 496 (D.C. Cir. 1998) ..................................................................14, 18

*In re N.Y. Times Co.*,
  585 F. Supp. 2d 83 (D.D.C. 2008) ...................................................................12

*In re Nat'l Broad. Co.*,
  653 F.2d 609 (D.C. Cir. 1981) .........................................................................9

*In re Search of Information Associated with Two Accounts Stored at
  Premises Controlled by Google LLC*,
  No. 22-GJ-28, slip op. (D.D.C. June 27, 2022)...........................................12, 15

*In re Search of Information Associated with Two Accounts Stored at
  Premises Controlled by Google LLC*,
  No. 22-GJ-28, slip op. (D.D.C. Sept. 27, 2022) ...................................................5

*June Med. Servs., LLC v. Phillips*,
  22 F.4th 512 (5th Cir. 2022)...........................................................................11

*MetLife, Inc. v. Fin. Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017) ...........................................................2, 8, 16, 17

*N.Y. Times Co. v. United States*,
  403 U.S. 944 (1971) .....................................................................................19

*Nixon v. Adm'r of Gen. Servs.*,
  433 U.S. 425 (1977) .......................................................................................9

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978) .......................................................................................7

*Press-Enter. Co. v. Superior Court*,
  478 U.S. 1 (1986) .........................................................................................16

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) .......................................................................................9

*SEC v. Dresser Indus., Inc.*,
  628 F.2d 1368 (D.C. Cir. 1980) ......................................................................14

*Senate of P.R. v. U.S. Dep't of Justice*,
  823 F.2d 574 (D.C. Cir. 1987) ........................................................................17

*Trump v. Thompson*,
  20 F.4th 10 (D.C. Cir. 2021) ................................................................9

*United States v. Brice*,
  649 F.3d 793 (D.C. Cir. 2011) ...........................................................18

*United States v. Foster*,
  564 F.3d 852 (7th Cir. 2009)...............................................................13

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980) ..............................................................8

*United States v. Moussaoui*,
  65 F. App'x 881 (4th Cir. 2003)......................................................17, 18

*United States v. Rayburn House Off. Bldg.*,
  497 F.3d 654 (D.C. Cir. 2007) ..........................................................2, 10

*Wash. Post v. Robinson*,
  935 F.2d 282 (D.C. Cir. 1991) ....................................................7, 11, 18

**Other Authorities**

Alan Feuer et al., *Seizure of Congressman's Phone Is Latest Sign of
  Escalating Election Inquiry*, N.Y. Times (Aug. 10, 2022),
  https://perma.cc/YDT9-FFLS..............................................................4

Application to Unseal Court Records,
  *In re PennLive*, No. 1:22-mc-00756 (M.D. Pa. Sept. 29, 2022)
  (ECF No. 1) ...........................................................................................3

Biography, United States Congressman Scott Perry,
  https://perma.cc/M3B4-MWKF ............................................................3

Chris Young, *Less-redacted Search Warrant Records Shed New Light on
  Investigation into Sen. Richard Burr*,
  Reporters Comm. for Freedom of the Press (Sept. 9, 2022),
  https://perma.cc/QT4L-FAE4.............................................................10

David Wenner, *Scott Perry Losing Support Over Jan. 6 Allegations, Poll by
  Democratic Opponent Says*, PennLive (Aug. 16, 2022),
  https://perma.cc/565P-JT6G.................................................................5

Emergency Motion for Return of Seized Property,
    *Perry v. United States*, No. 1:22-mc-00079 (D.D.C. Aug. 18, 2022)
    (ECF No. 1) ....................................................................................3, 4

Fed. R. Crim. P. 6(e) .............................................................................14

Katelyn Polantz, *Justice Department Has Tried to Access GOP Rep. Scott
    Perry's Text Messages*, CNN (Dec. 13, 2022),
    https://perma.cc/4VRC-UVT7 .............................................................6

Krishnadev Calamur & Ryan Lucas, *The Justice Department Watchdog Will
    Review a Trump-Era Probe of Democratic Lawmakers*,
    NPR (June 11, 2021),
    https://perma.cc/L8J8-Q2C8 ..............................................................10

Kyle Cheney & Josh Gerstein, *Secret Hold Restricts DOJ's Bid to Access
    Phone of Trump Ally Rep. Scott Perry*, POLITICO (Jan. 30, 2023),
    https://perma.cc/S7SZ-BRFC......................................................*passim*

Nicholas Wu & Kyle Cheney, *Why Scott Perry Stands Out in the FBI's
    Investigations of Trump Allies*, POLITICO (Aug. 10, 2022),
    https://perma.cc/74TN-72JV ............................................................4, 5

Order,
    *In re Grand Jury Subpoena*, No. 18-3071 (D.C. Cir. Apr. 23, 2019) ...........10, 13

Paul Steinhauser, *Trump Ally Rep. Scott Perry Says the FBI Seized His
    Cellphone One Day After Mar-a-Lago Raid*, Fox News (Aug. 9, 2022),
    https://perma.cc/YQ2E-VUA8 ..............................................................3

Perry Stein, *FBI Takes Rep. Scott Perry's Phone as Part of Fake-Elector
    Investigation*, Wash. Post (Aug. 9, 2022),
    https://perma.cc/9R86-25FV ................................................................4

Sara Murray, *Bipartisan Group of House Leaders Moves to Intervene in
    Dispute Over Accessing Rep. Scott Perry's Phone*, CNN (Jan. 30, 2023),
    https://perma.cc/3RY9-E5MP ................................................2, 11, 14

Spencer S. Hsu et al., *Court Blocks DOJ Review of Scott Perry's Phone in
    Jan. 6 Probe*, Wash. Post (Jan. 31, 2023),
    https://perma.cc/YM83-MLXB ...........................................................12

Tal Axelrod, *Perry Won't Recuse Himself from Possible GOP Investigation of Jan. 6 Probe Investigating Him*, ABC News (Jan. 8, 2023), https://perma.cc/T8S6-VWLL...............................................................14

Tierney Sneed & Katelyn Polantz, *Jeffrey Clark Told DC Bar that DOJ Search of His Home Linked to False Statements, Conspiracy, Obstruction Investigation*, CNN (Sept. 14, 2022), https://perma.cc/HE96-N343................................................................5

# INTRODUCTION

Pursuant to Circuit Rule 47.1(c), the Reporters Committee for Freedom of the Press (the "Reporters Committee") respectfully moves this Court for an order unsealing the orders, briefs, and the record in this appeal, subject—at most—to any narrowly tailored redactions for which the Government can show a compelling justification.  The Reporters Committee further requests that oral argument in this case, currently scheduled for February 23, be open to the press and public.[1]

The Reporters Committee is an unincorporated nonprofit association dedicated to defending the newsgathering rights of journalists, including by vindicating the public's constitutional and common law rights of access to judicial records.  Those rights squarely entitle the public to understand the important separation-of-powers dispute that has so far unfolded entirely under seal—despite no plausible justification for such blanket secrecy—in the Justice Department's bid to access Congressman Scott Perry's phone.  *See* Kyle Cheney & Josh Gerstein, *Secret Hold Restricts DOJ's Bid to Access Phone of Trump Ally Rep. Scott Perry*, POLITICO (Jan. 30, 2023), https://perma.cc/S7SZ-BRFC.

---

[1]     The Reporters Committee understands that the clerk's practice is to docket all new filings in a sealed case—even a motion to unseal filed by members of the press or public—under seal until this Court provides otherwise.  The Reporters Committee would respectfully urge the Court to make this motion, which contains no non-public information, available to the public as soon as possible

The Justice Department's investigation of Congressman Perry for his alleged role in "a bid to disrupt the transfer of power" implicates public interests of the highest order. *Id.* For one, the public has a clear and legitimate interest in understanding "the separation of powers principles" at stake when the Executive searches or seizes the property of a member of a coordinate branch. *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 664 (D.C. Cir. 2007). And as this Court has recognized, there is a "powerful public interest," too, in understanding allegations of official misconduct against one of the public's elected representatives. *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022). No surprise, then, that the Government's investigation has already been the subject of "extensive media reporting" and public discussion. *Id.* But every word of every judicial record in Congressman Perry's effort to prevent the Department from reviewing the contents of his phone remains under seal in this Court, in violation of "a fundamental norm of our judicial system: that judges' decisions and their rationales must be available to the public." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 675 (D.C. Cir. 2017). Because no countervailing interest justifies abrogating that norm here, the Reporters Committee urges the Court to grant its Motion to Unseal.[2]

---

[2] According to public reporting, the U.S. House of Representatives has also moved "to unseal the docket in Perry's case," but because the scope of the access requested is unclear, the Reporters Committee submits this motion for the

## FACTUAL BACKGROUND

### I.     The Justice Department's investigation into Congressman Scott Perry's role in the events of January 6.

Congressman Perry has been a Member of Congress since 2013 and currently represents Pennsylvania's 10th congressional district. *See* Biography, United States Congressman Scott Perry, https://perma.cc/M3B4-MWKF. On August 9, 2022 the Federal Bureau of Investigation ("FBI") executed a warrant to seize Congressman Perry's cell phone while he was on vacation with his family in New Jersey; Congressman Perry promptly shared news of the seizure with the press in a statement given to Fox News. *See* Paul Steinhauser, *Trump Ally Rep. Scott Perry Says the FBI Seized His Cellphone One Day After Mar-a-Lago Raid*, Fox News (Aug. 9, 2022), https://perma.cc/YQ2E-VUA8. According to a motion that Congressman Perry filed on August 18 seeking the return of data cloned from his phone, the warrant was issued by United States Magistrate Judge Susan E. Schwab of the U.S. District Court for the Middle District of Pennsylvania on August 2. *See* Emergency Motion for Return of Seized Property at 1, *Perry v. United States*, No. 1:22-mc-00079 (D.D.C. Aug. 18, 2022) (ECF No. 1) ("Emergency Motion"). An application by a media coalition to unseal that search

---

avoidance of any doubt about the scope of the public's rights. Sara Murray, *Bipartisan Group of House Leaders Moves to Intervene in Dispute Over Accessing Rep. Scott Perry's Phone*, CNN (Jan. 30, 2023), https://perma.cc/3RY9-E5MP.

warrant and related judicial records is pending before that court. *See* Application

to Unseal Court Records, *In re PennLive*, No. 1:22-mc-00756 (M.D. Pa. Sept. 29,

2022) (ECF No. 1).

As multiple news outlets reported at the time, Congressman Perry's phone

was seized "in connection with an escalating federal investigation into efforts by

several close allies of former President Donald J. Trump to overturn the 2020

election." Alan Feuer et al., *Seizure of Congressman's Phone Is Latest Sign of*

*Escalating Election Inquiry*, N.Y. Times (Aug. 10, 2022), https://perma.cc/YDT9-

FFLS; *see also* Perry Stein, *FBI Takes Rep. Scott Perry's Phone as Part of Fake-*

*Elector Investigation*, Wash. Post (Aug. 9, 2022), https://perma.cc/9R86-25FV.

Congressman Perry's motion confirmed that the seizure was related to activities of

the Justice Department's Office of the Inspector General ("DOJ-OIG"), which "is

taking the lead on the election subversion investigation." Nicholas Wu & Kyle

Cheney, *Why Scott Perry Stands Out in the FBI's Investigations of Trump Allies*,

POLITICO (Aug. 10, 2022), https://perma.cc/74TN-72JV; *see also* Emergency

Motion, *supra*, at 2 (noting that the warrant authorized taking the phone "to the

DOJ-OIG forensic laboratory").

Extensive information about Congressman Perry's involvement in the events

under investigation has already been made public as a result of media reporting,

the work of congressional investigators, and public court records. For instance,

"[a]ccording to evidence released by the House committee investigating the Jan. 6 attack on the U.S. Capitol, Perry reportedly played a key role in an effort to install an attorney general who backed Trump's false claims of election fraud, and who would further plans to install Trump-supporting electors in states including Pennsylvania, won by President Joe Biden."  David Wenner, *Scott Perry Losing Support Over Jan. 6 Allegations, Poll by Democratic Opponent Says*, PennLive (Aug. 16, 2022), https://perma.cc/565P-JT6G.  The evidence made public by the committee included witness testimony, White House visitor records, and text exchanges documenting Congressman Perry's role in introducing that Attorney General candidate—then-Acting Assistant Attorney General Jeffrey Clark—to former President Trump.  *See* Wu & Cheney, *supra*.  Mr. Clark's phone has likewise been seized in connection with the inspector general's probe, which "is investigating felony violations of false statements, conspiracy and obstruction," as Mr. Clark has confirmed.  Tierney Sneed & Katelyn Polantz, *Jeffrey Clark Told DC Bar that DOJ Search of His Home Linked to False Statements, Conspiracy, Obstruction Investigation*, CNN (Sept. 14, 2022), https://perma.cc/HE96-N343.[3]

---

[3]      *See also In re Search of Information Associated with Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, slip op. at 5 n.4 (D.D.C. Sept. 27, 2022), https://perma.cc/F9YP-L7RB (confirming that a search warrant was issued by the district court in this Circuit in July 2022 "to search the contents of the electronic devices seized from locations including Clark's residence").

## II.     The sealed proceedings in this Court.

After Congressman Perry's phone was seized, the Justice Department sought "a necessary second level of judicial permission to begin combing through the records" from Chief Judge Howell of the district court for this Circuit.  Cheney & Gerstein, *supra*; *see also* Katelyn Polantz, *Justice Department Has Tried to Access GOP Rep. Scott Perry's Text Messages*, CNN (Dec. 13, 2022), https://perma.cc/4VRC-UVT7.  On January 30, POLITICO reported that this Court "temporarily blocked" a ruling from Judge Howell "that granted prosecutors access to Perry's communications."  Cheney & Gerstein, *supra*.  The proceedings have drawn substantial public interest to the extent they may "result in precedent-setting rulings about the extent to which lawmakers can be shielded from scrutiny in criminal investigations."  *Id.*

This appeal was docketed in this Court as a sealed case on January 4, 2023. *See* Docket, *In re Sealed Case*, No. 23-3001 (D.C. Cir. Jan. 4, 2023).  On January 5, 2023, this Court issued a per curiam decision staying the district court's order "pending further order of the court."  Order, *In re Sealed Case*, No. 23-3001 (D.C. Cir. Jan. 5, 2023).   On January 25, 2023, this Court issued a second per curiam order dissolving the initial administrative stay, granting Congressman Perry's motion to stay the case, and setting a schedule for further briefing and argument. *See* Order, *In re Sealed Case*, No. 23-3001 (D.C. Cir. Jan. 25, 2023).  The docket

reflects a motion filed by an unidentified "movant" on January 27, *see* Motion, *In re Sealed Case*, No. 23-3001 (D.C. Cir. Jan. 27, 2023), which, as noted *supra* note 1, leadership of the U.S. House of Representatives has confirmed was a motion by the House to intervene in the proceedings to protect the institutional equities at stake in the investigation of a sitting Member, *see* Cheney & Gerstein, *supra*. All told, the docket reflects eleven briefs or letters and three orders, all wholly sealed.

## ARGUMENT

"The public's right of access to judicial records is a fundamental element of the rule of law." *In re Application of Leopold to Unseal Certain Electronic Surveillance Applications & Orders*, 964 F.3d 1121, 1123 (D.C. Cir. 2020). The law vindicates that principle in two distinct but overlapping ways: The common law recognizes a "right to inspect and copy public records and documents, including judicial records and documents," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), and "[t]he First Amendment guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed," *Wash. Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991). Here, both the Constitution and the common law make clear that the blanket sealing of every judicial record in this appeal cannot be justified. Because the common law requires all of the relief

requested, the Reporters Committee respectfully submits that the Court's analysis

should begin there.  *See In re Leopold*, 964 F.3d at 1126–27 (taking that approach).

I.     **The common law guarantees the public a presumptive right of**
       **access to the orders, briefs, and record in this appeal, subject—at**
       **most—to narrowly tailored redactions.**

As this Circuit's precedent already settles, the common law guarantees a

strong presumption of public access to the decisions of this Court, as well as "the

parties' appellate briefs" and "joint appendix."  *MetLife*, 865 F.3d at 669.  The

orders themselves are "the quintessential business of the public's institution[]," *id.*

at 668 (alteration in original) (citations omitted), while access to the parties' briefs

and the record is essential to the public's ability to understand "which parts of

those materials persuaded the court and which failed to do so (and why)," *id.*

Where that "strong presumption" attaches, any degree of sealing can be

justified—if at all—only after careful consideration of the six factors enumerated

in *Hubbard*: "(1) the need for public access to the documents at issue; (2) the

extent of previous public access to the documents; (3) the fact that someone has

objected to disclosure, and the identity of that person; (4) the strength of any

property and privacy interests asserted; (5) the possibility of prejudice to those

opposing disclosure; and (6) the purposes for which the documents were

introduced during the judicial proceedings."  *MetLife*, 865 F.3d at 665 (first

quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980); then

8

quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996)).

Here, the balance of those factors plainly favors unsealing the orders, briefs, and

record in this appeal, subject—at most—to narrowly tailored redactions.

> A.   The public has a powerful interest in evaluating the conduct of
>      its officials and understanding the separation-of-powers issues
>      <u>at stake in the investigation of a sitting Congressman.</u>

The first *Hubbard* factor—the affirmative need for access—weighs heavily

in favor of unsealing.  For one, there is a "powerful public interest" in access to

judicial records related to allegations of official misconduct, *In re L.A. Times*

*Commc'ns LLC*, 28 F.4th at 298, in order to "affor[d] members of the public their

own opportunity to see and hear evidence that records the activities of a Member

of Congress . . . as well as agents of the Federal Bureau of Investigation," *In re*

*Nat'l Broad. Co.*, 653 F.2d 609, 614 (D.C. Cir. 1981) (citation omitted).  That

commitment to openness is essential to public confidence that politically sensitive

investigations are "conducted fairly to all concerned," without the risk of "secret

bias or partiality."  *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569

(1980) (plurality opinion).  That this particular investigation involves an alleged

effort to undermine the democratic transition of power only underscores the point:

There can be no question that "'facilitating a full airing of the events leading to'

such political crises constitutes a 'substantial public interest.'"  *Trump v.*

*Thompson*, 20 F.4th 10, 48 (D.C. Cir. 2021) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 453 (1977)).

Just as importantly, searches of the property of Members of Congress are a matter of substantial public controversy because they raise unique separation-of-powers concerns.  *See, e.g.*, Krishnadev Calamur & Ryan Lucas, *The Justice Department Watchdog Will Review a Trump-Era Probe of Democratic Lawmakers*, NPR (June 11, 2021), https://perma.cc/L8J8-Q2C8.  For just that reason, the district court in this Circuit—following this Court's guidance, *see In re L.A. Times Commc'ns LLC*, 28 F.4th at 298—recently unsealed the procedures that the Justice Department adopted for investigations of Members of Congress in response to this Court's decision in *United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C. Cir. 2007); *see* Chris Young, *Less-redacted Search Warrant Records Shed New Light on Investigation into Sen. Richard Burr*, Reporters Comm. for Freedom of the Press (Sept. 9, 2022), https://perma.cc/QT4L-FAE4 (hosting the records as unsealed, including the Justice Department's procedures).

The prospect that this proceeding will result in "precedent-setting rulings about the extent to which lawmakers can be shielded from scrutiny in criminal investigations," Cheney & Gerstein, *supra*, likewise gives rise to a vital public interest in "scrutiniz[ing] the government's assertion of power" and this Court's

decision either to embrace or reject it, Order at 2, *In re Grand Jury Subpoena*, No. 18-3071 (D.C. Cir. Apr. 23, 2019).[4]

> B.     Any countervailing secrecy interests are undercut by the <u>extensive information that is already in the public domain.</u>

The second *Hubbard* factor—the extent of previous public access—plainly forecloses wholesale sealing. There can be no question that much of what is currently sealed is not secret; for instance, the motion of the House of Representatives to intervene is wholly sealed even though an official spokesperson for the speaker has already "acknowledged the House has stepped into the legal fight about Perry's communications." Cheney & Gerstein, *supra*; *see also* Murray, *supra* (noting that Minority Leader Hakeem Jeffries also confirmed the chamber's participation). And it is a truism in this and every other court that "[p]ublicly available information cannot be sealed"—full stop. *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 520–21 (5th Cir. 2022) (collecting cases, including this Court's decision in *Washington Post v. Robinson*, 935 F.2d 282, 291–92 (D.C. Cir. 1991)).

The blanket sealing of this Court's orders and the parties' briefs likewise cannot be justified given the information already in the public domain. As this

---

[4]     *Hubbard*'s sixth factor—the purpose for which the records were introduced—favors access here for much the same reason: the documents in question have been, and will be, essential to this Court's adjudication of a novel constitutional question.

Court recently reiterated in rejecting the Government's bid for total secrecy with

respect to its investigation of Senator Richard Burr, *Hubbard*'s second factor

weighs not only the information the Government deigns to confirm but also any

information surfaced by "media reporting" or the disclosures of parties like Perry.

*In re L.A. Times Commc'ns LLC*, 28 F.4th at 298.  Thanks to those sources, the

public already knows a great deal about the legal issues at stake in this appeal,

even if it cannot yet judge the parties' particular arguments.  *See* Cheney &

Gerstein, *supra*; *see also* Spencer S. Hsu et al., *Court Blocks DOJ Review of Scott

Perry's Phone in Jan. 6 Probe*, Wash. Post (Jan. 31, 2023),

https://perma.cc/YM83-MLXB.  The public already knows a great deal about the

underlying investigation, in part because Perry "himself filed a lawsuit" that

"placed some details regarding the search[] in the public eye."  *In re N.Y. Times

Co.*, 585 F. Supp. 2d 83, 91 (D.D.C. 2008).  And public court records already

confirm that the Government sought Congressman Perry's communications with

Jeffrey Clark and others in connection with an "ongoing grand jury investigation,"

such that any interest in neither confirming nor denying that one exists has

evaporated.  *In re Search of Information Associated with Two Accounts Stored at

Premises Controlled by Google LLC*, No. 22-GJ-28, slip op. at 1–2 (D.D.C. June

27, 2022), https://perma.cc/F9YP-L7RB.  It is difficult to understand what interests

the Government believes justify *any* sealing—let alone blanket sealing—in light of the volume of disclosures to date.

      C.    <u>Grand jury secrecy would justify, at most, narrow redactions.</u>

The third, fourth, and fifth *Hubbard* factors "ask variations o[f] the same question: to what extent harm to legitimate interests, including privacy or law enforcement interests, would result from unsealing." *In re L.A. Times Commc'ns LLC*, No. 21-16, 2022 WL 3714289, at *7 (D.D.C. Aug. 29, 2022) (alteration in original) (citation omitted). Because the parties have not filed public motions to seal their filings,[5] the Reporters Committee is unfairly handicapped in answering their asserted need for secrecy. But to the extent the case for wholesale sealing rests on the "secrecy that governs ongoing grand jury matters," Cheney & Gerstein, *supra*, it should be obvious that any such reliance is wildly overbroad.

As this Court has often observed, because Federal Rule of Criminal Procedure 6(e) justifies sealing "only '*to the extent* and as long as *necessary* to

---

[5]    It is unclear from the docket whether the parties filed any motions to seal at all or instead relied reflexively on any sealing order in force in the district court, despite this Circuit's insistence that parties revisit "whether any portions of the record under seal need to *remain* under seal on appeal." Cir. R. 47.1(b) (emphasis added). That legal question is distinct from the one the district court may have answered in the first instance; it must take stock of changed circumstances and the role that the information under seal in *this* Court will play in *this* appeal. *See id.*; *accord United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009) (Easterbrook, J., in chambers) ("[A]ny claim of secrecy must be reviewed independently in this court."); *BP Expl. & Prod., Inc. v. Claimant ID 100246928*, 920 F.3d 209, 211 (5th Cir. 2019) (same).

prevent the unauthorized disclosure of a matter occurring before a grand jury[,]' . . . we may—and should—release any information" that does not fit that description. Order at 1, *In re Grand Jury Subpoena*, No. 18-3071 (D.C. Cir. Apr. 23, 2019) (emphasis in original) (quoting Fed. R. Crim. P. 6(e)(6)); *see also In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007). For instance, much of the content of the parties' filings and this Court's orders will consist of purely legal reasoning about the meaning of the Speech & Debate Clause that could not plausibly reveal "the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc). Unsealing that matter would vindicate the public's right to "see what informed [this Court's] reasoning" without revealing any of the grand jury's inner workings.[6] *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006).

---

[6]     The point is especially obvious with respect to the House's motion; the House presumably has no access to any non-public investigative facts—let alone any matter occurring before a grand jury—in light of the "longstanding policy that the Justice Department does not share information with Congress related to ongoing criminal investigations." Tal Axelrod, *Perry Won't Recuse Himself from Possible GOP Investigation of Jan. 6 Probe Investigating Him*, ABC News (Jan. 8, 2023), https://perma.cc/T8S6-VWLL. That the House's motion is reportedly "an effort to unseal the docket" in this appeal only makes the point clearer. Murray, *supra*; *see In re Motions of Dow Jones & Co.*, 142 F.3d 496, 501 n.8 (D.C. Cir. 1998) (noting that a motion to unseal records "obviously reveal[s] nothing about [the grand jury's] workings").

To the extent the Government seeks wholesale secrecy to conceal the bare fact that it seized Congressman Perry's phone in connection with a grand jury investigation, it should go without saying that the "cat is out of the bag." *In re Judith Miller*, 493 F.3d at 155 (citation omitted). This Court recently rejected an identical argument in connection with the Government's investigation of Senator Richard Burr, faulting the district court for relying talismanically on the Government's desire to avoid acknowledging the fact of a search in light of "extensive media reporting relating to the Justice Department investigation, including the Senator's own acknowledgment of the investigation." *In re L.A. Times Commc'ns LLC*, 28 F.4th at 298. The point is even starker here, where other public court records already confirm the existence of an investigation. *See In re Search of Information Associated with Two Accounts Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, slip op. at 1–2 (D.D.C. June 27, 2022), https://perma.cc/F9YP-L7RB. This Court need not "exhibit a naiveté from which ordinary citizens are free"; the Government seized Congressman Perry's phone, and the public is entitled to understand the consequential separation-of-powers dispute now unfolding as a result. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (citation omitted).[7]

---

[7]    To the Reporters Committee's knowledge, the only other court to directly address the question has likewise rejected the Government's argument that its interest in neither confirming nor denying that a highly public search took place

## II.    The First Amendment guarantees public access to the orders, briefs, and record, subject—at most—to narrowly tailored redactions.

The First Amendment likewise guarantees access to the orders, briefs, and record in this appeal.  In determining whether the constitutional presumption of access applies, courts look to the complementary considerations of "experience and logic," asking "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question."  *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8–9 (1986).  Both experience and logic make clear that the First Amendment presumption of access attaches to the record of appellate proceedings, and the Government cannot hope to overcome that presumption here.

As to experience, appellate proceedings have long been public in light of the "fundamental norm of our judicial system: that judges' decisions and their rationales must be available to the public."  *MetLife*, 865 F.3d at 675.  As early as 1894, the court that would become this Circuit recognized that the sealing of appellate filings "would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of

---

can justify the wholesale sealing of any related judicial records.  *See* Order & Opinion, *In re Associated Press*, No. 5:22-mc-00111, slip op. at 4 (S.D. Tex. Nov. 28, 2022), https://perma.cc/J7EG-SPX9 (rejecting as "unserious" the suggestion "that the Government cannot say a single word in public about" the FBI's search of property belonging to Congressman Henry Cuellar (citation omitted)).

16

access, and to its records, according to long established usage and practice." *Ex Parte Drawbaugh*, 2 App. D.C. 404, 407–08 (1894).  That the common law unquestionably guarantees a presumption of access to appellate filings, *see MetLife*, 865 F.3d at 675, likewise supports a finding that they are traditionally open for purposes of the First Amendment, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92 (2d Cir. 2004) (noting that courts have "generally invoked the common law right of access to judicial documents in support of finding a history of openness").[8]

Logic reinforces that judgment for the same set of reasons this Court already gave in *MetLife*: transparency in appellate proceedings is essential to "the integrity and legitimacy of an independent Judicial Branch."  865 F.3d at 316.  Because judges claim their authority "by reason," any decision "that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat." *In re Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992).  The same core logic that drives the right of access to trial proceedings, then, "support[s] a similar degree of openness in appellate proceedings." *United States v. Moussaoui*, 65 F. App'x 881,

---

[8]      The narrow exception this Court has recognized for grand jury matters is inapplicable here.  The bare fact that some judicial records in a proceeding may reference matters "coincidentally before [a] grand jury" does not transform the entire case into a grand jury proceeding, as the district court in the Burr matter similarly recognized. *In re L.A. Times Commc'ns LLC*, No. 21-16, 2022 WL 3714289, at *4 (citing *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)).

890 (4th Cir. 2003). If anything, "appellate courts have a comparative advantage over district courts" in mitigating any risk that secrets will inadvertently be disclosed, a consideration that contributes to heightened public expectations for transparency on appeal. *In re Motions of Dow Jones & Co.*, 142 F.3d at 502.

Where the First Amendment presumption of access attaches, the public can be denied access only where the party seeking secrecy demonstrates that "(1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *United States v. Brice*, 649 F.3d 793, 796 (D.C. Cir. 2011) (citation omitted). To the extent the *Hubbard* analysis supports unsealing under the common law for the reasons discussed above, the "heightened protections" of the Constitution prevail *a fortiori*, *Robinson*, 935 F.2d at 288 n.7, and the Government cannot hope to show that the less-restrictive alternative of redaction would not be feasible on these facts.

Even in cases touching upon the nation's most sensitive secrets, this Court has safeguarded the presumption in favor of public access by relying on redaction rather than wholesale sealing to accommodate competing interests. *See, e.g.*, *Doe v. Mattis*, 889 F.3d 745, 769 n.1 (D.C. Cir. 2018) (Henderson, J., dissenting) (redaction to accommodate "sensitive diplomatic interests"); *accord Moussaoui*, 65 F. App'x at 890 (redactions to accommodate classified material). In the same

18

spirit, even in the landmark *Pentagon Papers* case the briefs were available to the press, *see In re Krynicki*, 983 F.2d at 76, and the Supreme Court rejected a motion "to conduct part of the oral arguments involving security matters in camera," *N.Y. Times Co. v. United States*, 403 U.S. 944 (1971).  The suggestion that this case—despite the extensive information already public, and despite the extraordinary public interests at stake—should be the radical exception is not credible.  The First Amendment forecloses the Government's insistence that the public be denied any insight into the consequential legal issues to be decided by this Court in this case.

## CONCLUSION

For the foregoing reasons, the Reporters Committee respectfully urges the Court to unseal the orders and filings in this appeal, subject—at most—to any tailored redactions for which the Government can prove a compelling justification. The Reporters Committee further requests that oral argument in this case, which is currently scheduled for February 23, be open to the press and public.

*/s/ Katie Townsend*
Katie Townsend
*Counsel of Record*
Grayson Clary
Emily Hockett
REPORTERS COMMITTEE FOR
   FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
Telephone: (202) 795-9300
Facsimile: (202) 795-9310

19

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type volume requirements of Fed. R.

App. 27(d)(2)(a) and Circuit Rule 27(a)(2) because it contains 4,654

words, excluding the parts of the motion exempted by Fed. R. App. P.

32(f).

3.     This brief complies with the typeface and type style requirements of

Fed. R. App. P. 27(d)(1)(E) and Circuit Rule 27(a)(2) because it has

been prepared in a proportionally spaced typeface using Microsoft

Word in 14-point Times New Roman.

Date: February 3, 2023                    */s/ Katie Townsend*
                                          Katie Townsend
                                          *Counsel of Record*

20