**ORAL ARGUMENT SCHEDULED FOR FEBRUARY 23, 2023**

No. 23-3001 (UNDER SEAL)

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE
CELL PHONE OF REPRESENTATIVE SCOTT PERRY

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 22-sc-2144 (Under Seal)

---

**UNOPPOSED MOTION OF THE U.S. HOUSE OF REPRESENTATIVES
FOR LEAVE TO FILE AS *AMICUS CURIAE*
IN SUPPORT OF NEITHER PARTY**

Pursuant to Rules 27 and 29 of the Federal Rules of Appellate Procedure, the

U.S. House of Representatives (House)[1] respectfully moves for leave to file the

attached Brief of the U.S. House of Representatives as *Amicus Curiae* in Support

of Neither Party.

---

[1] The United States House of Representatives Bipartisan Legal Advisory
Group (BLAG) voted unanimously to authorize the filing of the attached *amicus*
brief for the House.  The BLAG consists of the Speaker, Majority Leader, Majority
Whip, Minority Leader, and Minority Whip, and "speaks for, and articulates the
institutional position of the House in all litigation matters."  Rule II.8(b), Rules of
the U.S. House of Representatives, 118th Cong. (2023).

On January 27, 2023, Acting House General Counsel, Todd Tatelman, filed a motion for access to sealed materials for the purpose of determining whether to file an *amicus curiae* brief with this Court. On January 30, 2023, the Department of Justice (DOJ) informed House Counsel that it was filing its own motion with the district court to unseal, in redacted form, several documents that had been identified as useful to the House in deciding whether to file an *amicus* brief. DOJ's motion was granted in part and denied in part by the district court on January 31, 2023, *see* ECF No. 36, and the redacted documents were provided to House Counsel on February 1, 2023. At House Counsel's request, that same day, DOJ sought and the district court granted a modification of that order, *see* ECF No. 38, permitting Matthew Berry, the newly appointed House General Counsel, access to the same redacted documents.

On February 8, 2023, the House Counsel informed both DOJ and counsel for Representative Perry that it had been authorized by BLAG to file an *amicus* brief in this appeal. Counsel for all parties informed House Counsel that their clients consent to the filing of an *amicus* brief on Friday, February 10, 2023.

The House respectfully requests leave to submit this brief as *amicus curiae* to address the scope and application of the Speech or Debate Clause of the Constitution. U.S. Const., Art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other

Place.").  The Speech or Debate Clause is "an important protection of the

independence and integrity of the legislature" that "reinforce[es] the separation of

powers so deliberately established by the Founders."  *United States v. Johnson*,

383 U.S. 169, 178 (1966).  The House has a substantial institutional interest in the

Judicial Branch's interpretation and application of the Speech or Debate Clause.

For that reason, the House regularly presents its expert view as *amicus curiae* in

cases, including criminal matters, implicating the Speech or Debate Clause.[2]

Additionally, the House believes that its *amicus* brief will materially aid the

Court in resolving the issues the House understands will be raised in this appeal,[3]

including the proper application of this Court's opinion in *United States v. Rayburn*

*House Bldg. Room No. 2113*, *Wash., D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007),

---

[2] *See, e.g.*, *United States v. Collins*, No. 18-cr-567 (S.D.N.Y. filed April 4, 2019), *United States v. Schock*, Nos. 17-3277 & 17-3393 (7th Cir. filed Nov. 1, 2017 & Nov. 21, 2017); *In re Fattah*, 802 F.3d 516 (3d Cir. 2015); *United States v. Renzi*, 769 F.3d 731 (9th Cir. 2014); *United States v. Verrusio*, 762 F.3d 1 (D.C. Cir. 2014); *United States v. Renzi*, 651 F.3d 1012 (9th Cir. 2011); *United States v. Renzi*, 686 F. Supp. 2d 956 (D. Ariz. 2010); *In re Grand Jury Subpoenas*, 571 F.3d 1200 (D.C. Cir. 2009); *In re Search of the Rayburn House Bldg. Room No.*, 432 F. Supp. 2d 100 (D.D.C. 2006), *rev'd sub nom. United States v. Rayburn House Office Bldg., Room 2113, Wash., D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007); *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1 (D.C. Cir. 2006) (en banc); *Beverly Enters., Inc. v. Trump*, 182 F.3d 183 (3d Cir. 1999); *United States v. McDade*, 28 F.3d 283 (3d Cir. 1994); *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992); *United States v. Biaggi*, 853 F.2d 89 (2d Cir. 1988).

[3] Due to the sealed nature of this proceeding, the House has not had the opportunity to view the filings of either party in this appeal prior to submitting its proposed brief.

and whether a legislative act must be sufficiently "formal" in nature to be protected from compelled disclosure by the Speech or Debate Clause.

The House seeks leave to file its *amicus* brief to urge that any resolution of issues arising under the Speech or Debate Clause reflect and adhere to the well-established principles set forth in the attached brief.

## CONCLUSION

For all the foregoing reasons, this motion should be granted.

Respectfully submitted,

*/s/ Matthew B. Berry*
Matthew B. Berry
  *General Counsel*
Todd B. Tatelman
  *Deputy General Counsel*
Brooks M. Hanner
  *Associate General Counsel*
Sarah E. Clouse
  *Associate General Counsel*

*Office of General Counsel*
*U.S. House of Representatives*
5140 O'Neill House
Office Building
Washington, D.C. 20515
(202) 225-9700
Matthew.Berry@mail.house.gov


*Counsel for the U.S. House of Representatives*

February 10, 2023

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that this

Motion complies with the type-volume limitation of Rule 27(d)(2), as it contains

792 words.

/s/ Matthew B. Berry
Matthew B. Berry

February 10, 2023

## CERTIFICATE OF SERVICE

I certify that on February 10, 2023, I served one copy of the foregoing

Unopposed Motion of the U.S. House of Representatives for Leave to File as

*Amicus Curiae* in Support of Neither Party and attached brief via electronic mail,

on:

> John P. Rowley III
> SECIL Law PLLC
> 1701 Pennsylvania Ave., NW, Suite 200
> Washington, D.C. 20006
> 202-417-8652
> jrowley@secillaw.com
>
> *Counsel for Representative Scott Perry*
>
> John M. Pellettieri
> Appellate Section, Criminal Division
> Department of Justice
> 950 Pennsylvania Avenue, N.W., Room 1260
> Washington, D.C. 20530
> 202-714-3913
> john.pellettieri@usdoj.gov
>
> *Counsel for the United States*

                              */s/ Matthew B. Berry*
                              Matthew B. Berry

**ORAL ARGUMENT SCHEDULED FOR FEBRUARY 23, 2023**

No. 23-3001 (UNDER SEAL)

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF
THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 22-sc-2144 (Under Seal)

---

**BRIEF OF THE U.S. HOUSE OF REPRESENTATIVES AS *AMICUS
CURIAE* IN SUPPORT OF NEITHER PARTY**

Matthew B. Berry
  *General Counsel*
Todd B. Tatelman
  *Deputy General Counsel*
Brooks M. Hanner
  *Associate General Counsel*
Sarah E. Clouse
  *Associate General Counsel*

*Office of General Counsel*
*U.S. House of Representatives*
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Matthew.Berry@mail.house.gov

*Counsel for the U.S. House of*
*Representatives*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF INTEREST .............................................................1

BACKGROUND ..............................................................................2

ARGUMENT ..................................................................................2

    I.    THE SPEECH OR DEBATE CLAUSE IS CENTRAL TO THE SEPARATION OF POWERS................................................3

    II.    *RAYBURN* CORRECTLY INTERPRETED THE CLAUSE AND ITS FRAMEWORK APPLIES HERE .......................................7

        A.    *Rayburn* Is Binding Precedent and Correctly Held That the Speech or Debate Clause Contains a Non-Disclosure Privilege ........................................................7

        B.    *Rayburn's* Framework Applies to Members' Cellphones .......11

    III.    THE SPEECH OR DEBATE CLAUSE APPLIES TO INFORMAL FACT GATHERING WHEN IT IS A "LEGISLATIVE ACT," REGARDLESS OF WHETHER THE ACTIVITY WAS FORMALLY AUTHORIZED ...........................15

        A.    The Speech or Debate Clause Applies to Informal Fact Gathering ....................................................16

        B.    *McSurely* Did Not Create a Formality Requirement ..............22

    IV.    COURT ORDERS INFRINGING UPON A MEMBER'S SPEECH OR DEBATE CLAUSE PRIVILEGES ARE IMMEDIATELY APPEALABLE ....................................26

CONCLUSION ................................................................................28

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES[*]

**Cases**                                                                                    **Page(s)**

*Abney v. United States,*
    431 U.S. 651 (1977)......................................................................................27

*Bastien v. Off. of Sen. Campbell,*
    390 F.3d 1301 (10th Cir. 2004) .......................................................................20

*Benford v. ABC,*
    102 F.R.D. 208 (D. Md. 1984) ...........................................................17, 20, 25

*Bogan v. Scott-Harris,*
    523 U.S. 44 (1998)........................................................................................16

*Brown & Williamson Tobacco Corp. v. Williams,*
    62 F.3d 408 (D.C. Cir. 1995)....................................6, 9, 11, 17, 19, 25

*Doe v. McMillan,*
    412 U.S. 306 (1973).............................................................5, 6, 9, 16

*Dombrowski v. Eastland,*
    387 U.S. 82 (1967)...........................................................................6, 10

*Eastland v. U.S. Servicemen's Fund,*
    421 U.S. 491 (1975).......................................... 5, 6, 7, 8, 9, 11, 17, 18, 19, 21, 23

*Gov't of V.I. v. Lee,*
    775 F.2d 514 (3d Cir. 1985) ...........................................................18, 19, 20, 21

*Gravel v. United States,*
    408 U.S. 606 (1972)........................................... 5, 8, 9, 10, 15, 16, 26

*Helstoski v. Meanor,*
    442 U.S. 500 (1979).................................................................5, 26, 27

---

[*]   Authorities upon which we chiefly rely are marked with asterisks.

*In re Fattah*,
    802 F.3d 516 (3d Cir. 2015) ...............................................................11

*In re Grand Jury Subpoenas*,
    571 F.3d 1200 (D.C. Cir. 2009) ................................................27, 28

*In re IBP Confidential Bus. Documents Litig.*,
    No. M.D.L. 428 (N.D. Iowa Sept. 29, 1981) ........................................8

*Jewish War Veterans of the U.S.A., Inc. v. Gates*,
    506 F. Supp. 2d 30 (D.D.C. 2007)................................. 17, 18, 19, 20, 21, 22, 25

*Maxwell v. Snow*,
    409 F.3d 354 (D.C. Cir. 2005) ...............................................................7

*McGrain v. Daugherty*,
    273 U.S. 135 (1927) ...............................................................19, 20

*Miller v. Transam. Press, Inc.*,
    709 F.2d 524 (9th Cir. 1983) ...............................................19, 20, 21

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
    844 F.2d 856 (D.C. Cir. 1988) ...............................................................17

*McSurely v. McClellan*,
    553 F.2d 1277 (D.C. Cir. 1976) ..............................16, 17, 19, 22, 23

*Metzger v. Am. Fid. Assurance Co.*,
    2007 WL 895141 (W.D. Okla. Mar. 22, 2007) ....................................8

*Riley v. California*,
    573 U.S. 373 (2014) ...............................................................13

*SEC v. Comm. on Ways & Means*,
    161 F. Supp. 3d 199 (S.D.N.Y. 2015) .........................8, 16, 17, 18, 21

*Sierra Club v. Jackson*,
    648 F.3d 848 (D.C. Cir. 2011) ...............................................................7

*Stupak v. Hoffman-LaRoche, Inc.*,
  No. 8:05-cv-00926 (M.D. Fla. Apr. 28, 2006) ...................................................8

*Tenney v. Brandhove*,
  341 U.S. 367 (1951)...................................................................................4

*United States v. Andersen*,
  No. 4:02-cr-00121 (S.D. Tex. May 14, 2002) ...................................................8

*United States v. Biaggi*,
  853 F.2d 89 (2d Cir. 1988) ...................................................................17, 19

*United States v. Brewster*,
  408 U.S. 501 (1972)...............................................................................6, 7

*United States v. Dowdy*,
  479 F.2d 213 (4th Cir. 1973) ...............................................................19, 20

*United States v. Helstoski*,
  442 U.S. 477 (1979)...............................................................................4, 6

*United States v. Jefferson*,
  546 F.3d 300 (4th Cir. 2008) ...............................................................26

*United States v. Johnson*,
  383 U.S. 169 (1966)...................................................................1, 4, 7, 26

*United States v. Moussaoui*,
  No. 01-cr-00455 (E.D. Va. Mar. 2, 2006) ...................................................8

*United States v. Rayburn House Bldg. Room No. 2113, Wash., D.C. 20515*,
  497 F.3d 654 (D.C. Cir. 2007)...................................... 2, 8, 9, 10, 11, 12, 14, 28

*United States v. Renzi*,
  651 F.3d 1012 (9th Cir. 2011) ...............................................................11

*United States v. Rostenkowski*,
  59 F.3d 1291 (D.C. Cir. 1995)...............................................................27

*United Transp. Union v. Springfield Terminal Ry. Co.*,
  132 F.R.D. 4 (D. Me. 1990)...................................................................8

**Constitution**

U.S. Const., Art. I, § 6, cl. 1 ..................................................................1, 9

**Legislative and Other Sources**

Merriam-Webster Online Dictionary,
      https://perma.cc/D6D8-KQHH ......................................................25

H. Res. 965, 116th Cong. (2020) ............................................................14

H. Res. 8, 117th Cong. (2021) ................................................................14

The Federalist No. 48 (James Madison) ............................................... 3-4

U.S. House of Representatives, Comm. on House Admin., 118th Cong.,
      *Members' Congressional Handbook* (2023)
      https://perma.cc/6EHJ-Q7KK..................................................... 12-13

U.S. House of Representatives, Comm. on Ethics, 117th Cong.,
      *House Ethics Manual* (2022), https://perma.cc/48GL-HB3A ...........................13

## STATEMENT OF INTEREST[1]

The United States House of Representatives ("House") respectfully submits this brief as *amicus curiae* to address the scope and application of the Speech or Debate Clause of the Constitution.  U.S. Const. Art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place.").  The Speech or Debate Clause is "an important protection of the independence and integrity of the legislature" that "reinforce[s] the separation of powers so deliberately established by the Founders." *United States v. Johnson*, 383 U.S. 169, 178 (1966).  The House has a substantial institutional interest in the Judiciary's interpretation and application of the Clause and therefore regularly presents its expert view as *amicus curiae* in cases, including criminal matters, implicating the Clause.

The House does not suggest that any Member or employee of Congress is above the law and submits this brief only to urge that any resolution of issues arising under the Clause reflect and adhere to the well-established principles set forth below.  The House expresses no opinion as to whether any of the particular records at issue in this appeal are privileged.

---

[1]  No person other than *amicus* and its counsel assisted in or made a monetary contribution to the preparation or submission of this brief.

## BACKGROUND

The House broadly understands that this appeal arises in the context of a privilege dispute over the application of the Speech or Debate Clause to certain records sought by the Department of Justice (DOJ), which has seized and forensically imaged the personal cellphone of Representative Scott Perry.  *See generally* Mem. Op. 4-10 (Dec. 28, 2022) (ECF No. 25).  Because this litigation is proceeding under seal, the House requested access to the docket and all documents filed by the parties in the district court.  *See* Mot. of the General Counsel for Access (Jan. 27, 2023).  The district court only granted the House limited access to certain pleadings and also granted DOJ's request to redact the documents.  *See* Order (Jan. 31, 2023) (ECF No. 36).  Accordingly, the House assumes this Court's familiarity with the facts and procedural history underlying this case.

## ARGUMENT

The Speech or Debate Clause, which plays a critical role in safeguarding the separation of powers, is properly interpreted broadly and, as this Court has held, provides a privilege of non-disclosure of legislative materials.  The district court correctly held that the framework established by *United States v. Rayburn House Building, Room No. 2113*, *Wash., D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007), governing executive seizure of Congressional materials in a Member's physical office, similarly applied to the seizure of records from a Member's cellphone.  Although this Court need not reach the issue of whether the *Rayburn* framework

applies to the underlying search here, should it elect to address that question, it should affirm the district court's application of binding Circuit precedent.

While the district court was correct to apply *Rayburn*, its opinion drew an artificial and unworkable distinction between formal and informal legislative fact gathering. This distinction is untenable in the modern Congressional environment and unnecessarily limits the protection of the Speech or Debate Clause to legislative acts the Judiciary deems sufficiently "formal" in nature. This cramped interpretation is inconsistent with the broad interpretation of the Clause required by the precedent of both this Court and the Supreme Court. Further, it would undermine the Clause's function of protecting Congress's independence in our system of separated powers.

Finally, a district court order denying a Member any Speech or Debate Clause protections, including the non-disclosure privilege, is immediately appealable.

## I.     THE SPEECH OR DEBATE CLAUSE IS CENTRAL TO THE SEPARATION OF POWERS

The Speech or Debate Clause is a central piece of the Framers' plan to create a federal government based on the separation of powers between three branches of government. Under this principle, "none of [the three branches of the federal government] ought to possess, directly or indirectly, an overruling influence over the others, in the administration of their respective powers." The Federalist No. 48

(James Madison).   That is why the Framers included in the Constitution concrete

mechanisms that would "provide some practical security for each [branch], against

the invasion of the others."  *Id.*  The Speech or Debate Clause is one such

mechanism.

    **1.**  The Speech or Debate Clause is rooted in the historic struggle between

Parliament and the Crown in sixteenth- and seventeenth-century England: "Behind

[the Clause] lies a history of conflict between the Commons and the Tudor and

Stuart monarchs during which successive monarchs utilized the criminal and civil

law to suppress and intimidate critical legislators."  *Johnson*, 383 U.S. at 178; *see*

*also Tenney v. Brandhove*, 341 U.S. 367, 372-75 (1951).  As a result of the English

experience, freedom of action in the legislature "was deemed so essential for

representatives of the people that it was written into the Articles of Confederation

and later into the Constitution," which is reflected in the Speech or Debate Clause.

*Tenney*, 341 U.S. at 372.

    The Framers intended that the Clause would "preserve the constitutional

structure of separate, coequal, and independent branches of government."  *United*

*States v. Helstoski*, 442 U.S. 477, 491 (1979).  "The purpose of the Clause is to

[e]nsure that the legislative function the Constitution allocates to Congress may be

performed independently….  [T]he 'central role' of the Clause is to 'prevent

intimidation of legislators by the Executive and accountability before a possibly

hostile judiciary.'" *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975)

(quoting *Gravel v. United States*, 408 U.S. 606, 617 (1972)).

2.    The Speech or Debate Clause applies absolutely to activities of

Members and Congressional staff "within the 'legislative sphere.'" *Doe v.*

*McMillan*, 412 U.S. 306, 312-13 (1973) (quoting *Gravel*, 408 U.S. at 624-25).

This includes all activities that are

> an integral part of the deliberative and communicative processes by
> which Members participate in committee and House proceedings with
> respect to the consideration and passage or rejection of proposed
> legislation or with respect to other matters which the Constitution
> places within the jurisdiction of either House.

*Gravel*, 408 U.S. at 625.

Because "the guarantees of the Clause are vitally important to our

system of government," the Supreme Court has emphasized that they must

be treated "by the courts with the sensitivity that such important values

require." *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979).  The Supreme

Court has repeatedly, and "[w]ithout exception, … read the Speech or

Debate Clause broadly to effectuate its purposes." *Eastland*, 421 U.S. at

501.

The Supreme Court has stated that, when the Speech or Debate Clause

privilege applies, it is "absolute," without any qualifications based on the type of

"questioning" at issue, whether it be in the form of a suit, or compelled disclosure

of legislative information:

> The question to be resolved is whether the actions of the petitioners fall within the 'sphere of legitimate legislative activity.' If they do, the petitioners 'shall not be questioned in any other Place' about those activities since the prohibitions of the Speech or Debate Clause are absolute.

*Eastland*, 421 U.S. at 501 (footnote and citations omitted). The protection is "absolute … to protect the integrity of the legislative process by insuring the independence of individual legislators.'" *Eastland*, 421 U.S. at 502 (quoting *United States v. Brewster*, 408 U.S. 501, 507 (1972)).

The Clause is not abrogated by allegations that a legislative official acted unlawfully or with an unworthy purpose, *McMillan*, 412 U.S. at 312-13, and applies both in "civil cases [and] criminal prosecutions," *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) (citing *Eastland*, 421 U.S. at 502-03; *Dombrowski v. Eastland*, 387 U.S. 82, 84-85 (1967)). It applies to activities "within the 'legislative sphere' even though the[] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *McMillan*, 412 U.S. at 312-13 (citation omitted) (quoting *Gravel*, 408 U.S. at 624-25).

The Supreme Court has acknowledged the potential costs associated with this broad and unique constitutional protection and the potential difficulty it may present to certain criminal prosecutions. *Helstoski*, 442 U.S. at 488. Nevertheless,

the Supreme Court has repeatedly emphasized that the Clause must be broadly construed and applied because that was "'the conscious choice of the Framers' buttressed and justified by history." *Eastland*, 421 U.S. at 510 (quoting *Brewster*, 408 U.S. at 516). The Framers included the Clause in the Constitution in response to suppression and intimidation—by criminal prosecution—of members of parliament by English monarchs in the 1500s and 1600s. *See Johnson*, 383 U.S. at 178.

## II.    *RAYBURN* CORRECTLY INTERPRETED THE CLAUSE AND ITS FRAMEWORK APPLIES HERE

### A.    *Rayburn* Is Binding Precedent and Correctly Held That the Speech or Debate Clause Contains a Non-Disclosure Privilege

As the district court concluded, this Court's holding in *Rayburn* "is binding on this Court." *See* Mem. Op. 25 (ECF No. 25). *Rayburn* similarly binds this panel. *See, e.g.*, *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("It is fixed law that 'this Court is bound to follow circuit precedent until it is overruled either by an *en banc* court or the Supreme Court.'") (quoting *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005)).

Moreover, this Court's conclusion in *Rayburn* that the Speech or Debate Clause includes a non-disclosure privilege is correct. In fact, this Court by no means "stand[s] alone in its conclusion that the Clause affords congressional Members a non-disclosure privilege." Mem. Op. 24. District courts in at least

seven other circuits have so concluded.[2]

The Supreme Court has made clear that, when the Clause applies, its protections are "absolute." *Eastland*, 421 U.S. at 501, 503, 507, 509-10 & n.16; *Gravel*, 408 U.S. at 623 n.14. This absolute privilege is properly read to include a non-disclosure aspect, which protects those to whom it applies from being compelled to testify as to privileged matters and from being compelled to produce privileged documents. *Gravel*, 408 U.S. at 615-16; *Rayburn*, 497 F.3d at 660.

Like the other privileges afforded by the Clause, the non-disclosure privilege is important to ensuring that the Legislative Branch has broad latitude to legislate independently. If the rule were otherwise, and Members could be required to disclose legislative materials, it would substantially undermine the important separation-of-powers purposes of the Clause. Far from an "expan[sion] … beyond the Supreme Court's articulated limits," Mem. Op. 23, as the district court

---

[2] *See, e.g.*, *United Transp. Union v. Springfield Terminal Ry. Co*., 132 F.R.D. 4, 5-7 (D. Me. 1990); *SEC v. Comm. on Ways and Means*, 161 F. Supp. 3d 199, 238-46 (S.D.N.Y. 2015); Order, *United States v. Moussaoui*, No. 01-cr-00455 (E.D. Va. Mar. 2, 2006) (ECF No. 1642); Order, *United States v. Andersen*, No. 4:02-cr-00121 (S.D. Tex. May 14, 2002) (ECF No. 103); Order, *In re IBP Confidential Bus. Documents Litig.*, No. M.D.L. 428 (N.D. Iowa Sept. 29, 1981); *Stupak v. Hoffman-LaRoche, Inc.*, No. 8:05-cv-00926 (M.D. Fla. Apr. 28, 2006) (ECF No. 30); *Metzger v. Am. Fid. Assurance Co.*, No. 05-cv-1387, 2007 WL 895141, at *2 (W.D. Okla. Mar. 22, 2007) (case involving state legislator where "[t]he Oklahoma Supreme Court ... found that 'Oklahoma's Speech or Debate Clause ... provides at least as much protection as the immunity granted by the comparable provisions of the Federal Constitution.'").

suggested, the privilege of non-disclosure is entirely consistent with Supreme Court precedent, which holds that the Clause absolutely applies to all activities "within the 'legislative sphere,'" *McMillan*, 412 U.S. at 311-13 (quoting *Gravel*, 408 U.S. at 624-25).

In addition, *Rayburn* correctly determined that there is no meaningful distinction between oral testimony and documentary evidence:

> Documentary evidence can … be as revealing as oral communications…. [I]ndications as to what Congress is looking at provide clues as to what Congress is doing, or might be about to do – and this is true whether or not the documents are sought for the purpose of inquiring into (or frustrating) legislative conduct or to advance some other goals.

*Id.* (quoting *Brown & Williamson*, 62 F.3d at 420).

Thus, if oral testimony is absolutely privileged from compulsion, so too must the Clause's non-disclosure privilege protect against the compelled disclosure of legislative documents.  Nothing in the text of the Clause itself distinguishes between the methods by which a party trying to compel disclosure of information may seek to "question" a Member.  Rather, the Clause mandates that Members "shall not be questioned in any other Place."  U.S. Const. Art. I, § 6, cl. 1.[3]

---

[3] The Supreme Court has relied on the Clause's broad, unequivocal language in explaining why its protections are "absolute" in other contexts.  *See, e.g.*, *Eastland*, 421 U.S. at 503 ("The applicability of the Clause to private civil actions is supported by the absoluteness of the terms 'shall not be questioned,' and

Indeed, if a Member cannot be compelled to testify about his or her legislative activities—as the Supreme Court has explicitly held, *see Gravel*, 408 U.S. at 616—it cannot follow that his or her legislative records can be forcibly disclosed without offending the same constitutional principles.  There is no basis in law or logic why a Member should be constitutionally protected from having to answer questions orally about his or her legislative activities, but constitutionally defenseless when compelled to produce—whether by subpoena or search warrant—documents that memorialize, reflect, or analyze those very same legislative activities.  *See Rayburn*, 497 F.3d at 662.

Moreover, compelled disclosure of legislative materials "clearly tends to disrupt the legislative process" and the very possibility of compelled disclosure "may therefore chill the exchange of views with respect to legislative activity." *Rayburn*, 497 F.3d at 661.  The legislative process is inherently a collective activity, with oceans of written legislative work product—including, for example, emails, texts, memoranda, and correspondence concerning legislative and oversight matters—generated and collected every day.  And these types of communications, in many instances, are functionally indistinguishable from in-person oral

───────────────

the sweep of the term 'in any other Place.'  In reading the Clause broadly we have said that legislators acting within the sphere of legitimate legislative activity 'should be protected not only from the consequences of litigation's results but also from the burden of defending themselves.'") (quoting *Dombrowski*, 387 U.S. at 85).

communications.[4]

Likewise, the fact that a request comes as part of a criminal investigation is of no moment. According to *Rayburn*, the Clause is "designed to assure … wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch," and to "[e]nsure that the legislative function the Constitution allocates to Congress may be performed … without regard to the distractions of … the [perils] of criminal prosecution." *Id.* at 659-60 (quoting *Brown & Williamson*, 62 F.3d at 415).

### B. *Rayburn*'s Framework Applies to Members' Cellphones

In the event DOJ invites this Court, as it did below, to find that the *Rayburn* framework does not apply here because DOJ sought to search Representative Perry's personal cellphone instead of his physical office, *see, e.g.*, U.S. Opp. to Stay Mot. 2 (ECF 29), this Court should decline DOJ's attempt to distinguish *Rayburn* because DOJ fails to account for how the business of Congress is conducted in this day and age.

DOJ concedes that *Rayburn* governs searches "where legislative materials

---

[4] For all of these reasons, two other Circuits erred in reading into the Clause a distinction between use and disclosure of legislative materials. *See United States v. Renzi*, 651 F.3d 1012, 1032 (9th Cir. 2011); *In re Fattah*, 802 F.3d 516, 528-29 (3d Cir. 2015). And their decisions also stand in direct contrast to the Supreme Court's repeated mandate that the Clause must be "read … broadly to effectuate its purposes." *See, e.g.*, *Eastland*, 421 U.S. at 501.

were inevitably to be found."  Govt's Br. 8 (ECF 13) (quoting *Rayburn*, 497 F.3d

at 661).  However, DOJ dubiously concludes that "[a]lthough legislative materials

will inevitably be found in a member's congressional office, the same cannot be

said of the member's personal cellphone," *id.*, citing absolutely no legal or factual

support for such a statement.

     The district court correctly rejected this attempted end-run around the core

holding of *Rayburn*, observing that "*Rayburn* is written sufficiently broadly to

contemplate that a Member's text or email communications with his staff or other

legislators on his cellphone regarding an upcoming vote, speech notes on an

upcoming floor speech, or questions prepared for a witness at an upcoming

committee meeting, enjoy the same non-disclosure protection."  Mem. Op. &

Order 7 (Nov. 4, 2022) (ECF No. 18).  This is consistent with the reality of how

Members of Congress and Congressional offices operate.

     In the modern Congress, it is far from unlikely that legislative materials will

be located on the personal electronic devices of a Member of Congress.  The

House's own regulations governing the use of official House funds expressly

permit the "official work of the House of Representatives" to be performed on

"Members' handheld personal devices."  U.S. House of Representatives, Comm.

on House Admin., 118th Cong., *Members' Congressional Handbook*, at 30

12

(2023).[5]  Similarly, the House Committee on Ethics permits a Member to use a "handheld communications device" for official House matters paid for with campaign funds.  *See* U.S. House of Representatives, Comm. on Ethics, 117th Cong., *House Ethics Manual*, at 175 (2022).[6]  The Ethics Committee's guidance further contemplates that such a device can be connected to the House's IT infrastructure.  *Id.*  While it appears in this instance that Representative Perry did not have his official House email account directly linked to his phone, Mem. Op. & Order 7-8 n.2 (ECF 18), this does not support the conclusion that it was unlikely that a search of his phone, or a hypothetical future search of the devices of another Member, would not uncover legislative materials.  Indeed, in this case, the district court held that there were privileged records on Representative Perry's cellphone, *see* Mem. Op. 3-4 (ECF 25), a determination that DOJ has not appealed.  Modern-day cellphones provide many functionalities, aside from placing telephone calls, that Members use daily to aid their legislative efforts.  *Cf. Riley v. California*, 573 U.S. 373, 394 (2014) ("[A] cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record.").

The House's current regulations make it reasonable to assume for purposes

---

[5]  https://perma.cc/6EHJ-Q7KK.

[6]  https://perma.cc/48GL-HB3A.

of any future investigation that a personal phone of a Member of Congress is "a location where legislative materials [are] inevitably to be found." *Rayburn*, 497 F.3d at 661. In fact, the rules and procedures in place during the relevant time period in which DOJ is allegedly interested made it not only possible but permissible for Representative Perry, like all Members of the House, to instruct a designated Member proxy on how to cast his vote on the floor of the House directly from his cellphone, to attend and participate in Committee hearings and business meetings via the video functions on his cellphone,[7] and to perform a host of other core legislative activities such as meeting with staff, connecting with fellow Members, reviewing legislative proposals, and more—all via email, text message, and other forms of digital communication. In short, with the rapid technological development of modern communication devices, there is no longer any real, meaningful distinction between the kind of legislative materials that would be found on a Member's cellphone and those located in a Member's physical office.

Moreover, any distinction based on where communications are found misapprehends the Clause. Under Supreme Court precedent, email

---

[7] *See* H. Res. 965, 116th Cong. (2020) (establishing rules for proxy voting and permitting remote appearance at Committee proceedings), https://perma.cc/8LZA-UGBG; carried forward into the 117th Cong. by H. Res. 8, § 3(s), 117th Cong. (2021) https://perma.cc/39KU-KQVS.

communications and other electronic records that reflect a Member's legislative activities—records that are encompassed by the absolute protection of the Clause against compelled disclosure to the Executive Branch—are protected by the Clause regardless of whether they are stored in a physical office or on a Representative's cellphone, personal computer, or email account. *See, e.g.*, *Gravel*, 408 U.S. at 617.

The Speech or Debate Clause privilege, unlike most common law privileges, is not communications-based. Rather, it is activity-based. The Clause applies absolutely to "legislative" activity and materials. While there are many cases in which courts have read the Clause's activity-based protections expansively, the House is aware of no case in which legislative communications have been carved out from the Clause's broad protections because they were stored in a personal account.

For Speech or Debate Clause purposes, the only question is whether emails and other electronic communications of a Member or Congressional staffer reflect legislative acts. If the answer is yes, then those communications are absolutely protected, regardless of where they are stored.

III. **THE SPEECH OR DEBATE CLAUSE APPLIES TO INFORMAL FACT GATHERING WHEN IT IS A "LEGISLATIVE ACT," REGARDLESS OF WHETHER THE ACTIVITY WAS FORMALLY AUTHORIZED**

When determining whether the Clause applies, the proper inquiry for this Court is whether Representative Perry, if he was conducting any fact-finding

15

efforts, was engaging in a legislative act. If not, then the Clause does not apply. But if so, the Clause applies absolutely—regardless of whether the legislative act was formally authorized or not. There was no basis in law for the district court to read into the Clause any requirements about formality.

**A.    The Speech or Debate Clause Applies to Informal Fact Gathering**

Not every act of a Member of Congress is protected under the Speech or Debate Clause. Rather, the Clause shields only "legislative acts," meaning those acts that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625 (citing *McMillan*, 412 U.S. at 313). In determining whether a particular act is legislative, courts must assess the "nature of the act" to determine "whether, stripped of all considerations of intent and motive, [the challenged] actions [a]re legislative." *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998).

Under this test, the Clause protects Congressional information-gathering activities about the subject of potential legislation. *See, e.g.*, *McSurely v. McClellan*, 553 F.2d 1277, 1286-87 (D.C. Cir. 1976) (en banc); *Ways & Means*, 161 F. Supp. 3d at 236-37. The "controlling principle" for determining whether

informal fact gathering falls within the Clause's ambit is whether "the information is acquired in connection with or in aid of an activity that qualifies as 'legislative' in nature, not what the source of the information is." *Ways & Means*, 161 F. Supp. 3d at 237.[8]  Once the legislative-act test is met, that is "the end of the matter" for the courts.  *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 861 (D.C. Cir. 1988).

Federal courts have consistently held that the Clause protects numerous types of information-gathering activities performed by Members and Committees of Congress.  These include:

- Formal committee processes, such as hearings, legislative markups, investigations, and issuing subpoenas, *see Eastland*, 421 U.S. at 503-05;

- Committee possession of a voluntary production of documents by a private citizen, *see Brown & Williamson*, 62 F.3d at 411-12, 423;

- Informal investigative techniques utilized by committee staff and individual Members, *see, e.g.*, *McSurely*, 553 F.2d at 1286 ("[I]nformation gathering, whether by issuance of subpoenas or field work by a Senator or his staff, is essential to informed deliberation over proposed legislation."); *Ways & Means*, 161 F. Supp. 3d at 242; and

- Legislative fact finding by an individual Congressman during trips to Florida that involved legislative and personal business, *see, e.g.*, *United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988) ("[The] legislative factfinding activity conducted by Biaggi during his Florida trips was protected.").

---

[8]  *See also Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007); *Brown & Williamson*, 62 F.3d at 419; *Benford v. American Broadcasting Companies*, 102 F.R.D. 208, 210 (D. Md. 1984).

As discussed below, the applicable test does not include a formality requirement.  Although actions taken pursuant to a formally authorized Congressional investigation are likely to be considered legislative acts, *see, e.g.*, *Eastland*, 421 U.S. at 505, the simple fact that a Member's individual investigative efforts may not be tied to a "formally" authorized Congressional inquiry does not necessarily mean that it is non-legislative.  *See, e.g.*, *Gov't of the Virgin Islands v. Lee*, 775 F.2d 514, 520-21 (3d Cir. 1985) (holding that Virgin Islands' legislative immunity provision applies to informal fact finding and information gathering).

Nor is the method of information collection determinative.  Instead, the Clause covers "a Member's gathering of information beyond the formal investigative setting ... so long as the information is acquired in connection with or in aid of activity that qualifies as 'legislative' in nature."  *Gates*, 506 F. Supp. 2d at 57.[9]

Indeed, numerous cases have held that the collecting of information in furtherance of legislative responsibilities—whether by "formal" means, such as a Committee subpoena, or "informal" means, such as field work—is a legislative act because "'[a] legislative body cannot legislate wisely or effectively in the absence

---

[9]  *See also Ways & Means*, 161 F. Supp. 3d at 242 ("[L]egislative information gathering, whether formal or informal, is protected under the Speech or Debate Clause").

of information respecting the conditions which the legislation is intended to affect or change.'" *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)); *see also McSurely*, 553 F.2d at 1287; *Brown & Williamson*, 62 F.3d at 411-12, 423.  "[U]nder the law of this and other circuits, informal information gathering in connection with or in aid of a legitimate legislative act is itself protected by the Speech or Debate Clause." *Gates*, 506 F. Supp. 2d at 54.

This Court is not unique in observing that the Clause protects informal information gathering.  *See McSurely*, 553 F.2d at 1286-87.  The Second, Third, Fourth, and Ninth Circuits have taken the same view.  *See, e.g.*, *Biaggi*, 853 F.2d at 103; *Lee*, 775 F.2d at 520-21; *United States v. Dowdy*, 479 F.2d 213, 223-24 (4th Cir. 1973); *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983).  In *Lee*, for example, the Third Circuit interpreted Speech or Debate Clause case law as protecting "informal" fact-finding efforts.  775 F.2d at 521.  In analyzing whether the Virgin Islands' legislative immunity provision protected a legislator's informal fact finding, the Circuit relied on *Eastland*, *McGrain*, and *McSurely*, noting that

> fact-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation.  As such, fact-finding occupies a position of sufficient importance in the legislative process to justify the protection afforded by legislative immunity.  Legislators must feel uninhibited in their pursuit of information, for '[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change....'

19

*Id.* at 521-22 (quoting *McGrain*, 273 U.S. at 175). The court specifically cited *McSurely*'s holding that "[t]he acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties properly." *Id.* at 521.

In short, the Clause protects informal fact gathering by individual Members and staff when it satisfies the legislative-act test. *Id.* at 520-21.[10] The district court was wrong for at least two reasons to rely on *Bastien v. Office of Campbell,* 390 F.3d 1301, 1316 (10th Cir. 2004), to hold that the Clause does not cover informal information gathering by a Member of Congress or by Congressional aides. *See* Mem. Opp. at 21 (ECF No. 25). *First*, its position "cannot be reconciled with earlier D.C. Circuit precedents that are binding on this Court," *Gates*, 506 F. Supp. 2d at 55 (citing, *inter alia*, *McSurely* and *Brown & Williamson*), and it conflicts

---

[10]  *See also Miller*, 709 F.2d at 530 (concluding the Clause prohibits questions about a legislator's sources of information because the legislator's receipt of "information pertinent to potential legislation or investigation" is part of the privileged legislative process); *Dowdy*, 479 F.2d at 223-24 (Member's informal gathering of information from federal agencies in furtherance of legislative functions protected); *Benford*, 102 F.R.D. at 209-10 ("[I]nformation possessed by [unpaid, volunteer committee investigators] and transmitted to, or received by, them in the execution of legislative functions, including legitimate information-gathering, is Constitutionally privileged from discovery in this lawsuit[.]").

with well-reasoned decisions of the Third and Ninth Circuits.  *See Lee,* 775 F.2d at

521; *Miller*, 709 F.2d at 530.

*Second*, *Bastien*'s holding does not align with the underlying rationale of the

legislative-act test.  Members of Congress and their aides frequently conduct

informal fact-gathering activity that serves the vital role of informing Congress so

that it can "legislate wisely."  *Eastland*, 421 U.S. at 504.  If the Court were to hold

that documents gathered through "informal" fact gathering are not protected by the

Clause—even if they were gathered as part of legitimate legislative acts—it would

present a significant risk of interfering with the due functioning of the legislative

process, and it could imperil the very legislative independence the Clause was

intended to protect.  *See Ways & Means*, 161 F. Supp. 3d at 242-43 ("Congress's

ability to collect necessary information concerning 'an area where legislation may

be had,' and sources' willingness to provide such information, would be

compromised were such a regime to be adopted.") (quoting *Eastland*, 421 U.S. at

506).

Any attempted distinction between "formal" or "informal" fact gathering is

"illusory" and unsupported by case law.  *See Gates*, 506 F. Supp. 2d at 56-57 ("In

the end, the Court finds misplaced the focus on the formality or informality of

methods used to acquire information.").  Rather than looking to formality, the

"controlling principle" is that "a Member's gathering of information beyond

the formal investigative setting is protected by the Speech or Debate Clause so long as the information is acquired in connection with or in aid of [a legislative act]." *Id.* at 57. Moreover, Members of Congress do not, as a matter of practice, separate information related to an area of legislative interest as "formally gathered" or "informally gathered," making such a distinction unworkable and impractical. *See id.*

### B.     *McSurely* Did Not Create a Formality Requirement

The district court incorrectly read *McSurely* as requiring that only fact gathering "formally authorized by a Congressional body" qualifies for Speech or Debate Clause protection. *See* Mem. Op. at 37 (ECF No. 25); *see also id.* at 21 ("[A] Member's informal investigative efforts or fact-finding inquiries untethered to a formally sanctioned congressional inquiry remain unprotected[.]"). Specifically, the district court read *McSurely* to say that "an investigative endeavor qualifies for Clause protection only when the 'requirement of congressional authorization of the inquiry by the particular subcommittee involved' is met." *Id.* (quoting *McSurely*, 553 F.2d at 1287). The district court also incorrectly suggested that fact gathering would not be protected when pursued by "an individual Member." *See id.* at 38.

The district court overreads *McSurely* to impose a formal Congressional authorization requirement. In fact, *McSurely* states exactly the opposite,

recognizing that the "acquisition of knowledge through *informal sources* is a necessary concomitant of legislative conduct," 553 F.2d at 1286-87 (citation omitted) (emphasis added).  It is only because *McSurely*, like *Eastland*, arose in the context of a Committee investigation, that the panel was compelled "to determine whether the inquiry 'may fairly be deemed within (the [Senate] Subcommittee's province.'" *Id.* (quoting *Eastland*, 421 U.S. at 506).  *McSurely* simply applied *Eastland* in the face of a similar factual scenario: a committee investigation that was within the committee's jurisdiction.  Indeed, the Supreme Court in *Eastland* stated that that grant of authority to the Subcommittee was "*sufficient* to show that the investigation upon which the Subcommittee had embarked concerned a subject on which legislation could be had." *Eastland*, 421 U.S. at 506 (emphasis added) (quotation omitted). The Supreme Court nowhere stated that such authorization was *necessary* for fact gathering to constitute a legislative act.

*McSurely* did not, as the district court mistakenly concluded, create a new requirement that any Congressional fact finding must be formally authorized by Congress.  The phrase "congressional authorization" refers, at most, to the jurisdiction (or "province") of the committee conducting the investigation, not to formal authorization by Congress.  *See* 553 F.2d at 1287.  Ultimately, the test applied by *McSurely* was the legislative-act test, and the panel determined the test was satisfied by the Subcommittee's informal fact gathering because "the

23

investigative activity here concerned matters on which legislation could be had." *Id.* (citation omitted).

The district court's reading of *McSurely* is also inconsistent with the way Members of Congress function, which frequently includes informal investigative processes, especially as they relate to actions in their own districts.  For example, many Members have large federal installations in their districts—VA Hospitals, military bases, and federal buildings that are crucial to their constituents and communities.  To support those installations, Members often "investigate" informally, by meeting with employees, contractors, and others with interest in the facility to inform and aid in the preparation of any amendments or other legislative changes they may wish to make and to inform votes on legislation, particularly appropriations bills.  Similarly, many Members seek to obtain community funding projects and direct grant funding for their districts via legislation, efforts that benefit from and are aided by informal investigations.  This is particularly true for Members of the House Leadership, who, by virtue of their positions, do not sit on any House Committees.  Thus, any test that relies on some type of formal committee authorization would fail to capture these critical types of legislative acts, which should be protected by the Clause, and would also leave Members of the House Leadership with far less Speech or Debate Clause protection than Members who sit on Committees.  Moreover, such a test fails to recognize that

24

committees are creations of Congress and not constitutionally required, and therefore committee authorization cannot be a necessary (as opposed to sufficient) predicate for Speech and Debate Clause protection. In sum, any kind of formal authorization requirement is untenable for Congress and is inconsistent with controlling precedent, the Constitution, and the practical application of the Clause.

The district court's focus on formality is the very kind of "illusory" distinction that courts have deemed irrelevant. *See Gates*, 506 F. Supp. 2d at 56. As noted in numerous Supreme Court and D.C. Circuit cases, the proper focus is on whether the acts in question are legislative in nature, not whether they were conducted in some "formal" or "informal" manner. *Id.* (citing *Brown & Williamson,* 62 F.3d at 419; *Benford,* 102 F.R.D. at 210). The district court's reading of *McSurely* would conflict with nearly all of the cases cited above.[11]

Additionally, the creation of a "formality" requirement under the Clause would undermine its core purpose of preserving legislative independence. If this Court were to recognize the district court's new standard, Members of Congress

---

[11] The district court's misreading of *McSurely* as requiring a "formally authorized" investigation also seems to apply the wrong meaning of "authorized," which can mean either (i) endowed with appropriate authority or (ii) having received specific approval. *Compare Authorized*, Merriam-Webster Online Dictionary, https://perma.cc/D6D8-KQHH (first defining "authorized" as "endowed with authority") *with Authorized*, Merriam-Webster Online Dictionary, https://perma.cc/D6D8-KQHH (then defining "authorized" as "sanctioned by authority" or "having or done with legal or official approval").

would be forced to seek some sort of "formal congressional authorization" before engaging in protected legislative activity, an outcome that would not only unreasonably burden Congress and restrict the legislative activity of its Members, but would also ignore the many cases applying the Supreme Court's legislative-act test. This extra step is unsupported by the Clause's text and the applicable case law.

Because the Clause must be "read broadly to effectuate its purposes," *Johnson*, 383 U.S. at 180, this Court should decline to recognize any type of formality requirement and should instead follow the well-trodden ground of the legislative-act test.

## IV. COURT ORDERS INFRINGING UPON A MEMBER'S SPEECH OR DEBATE CLAUSE PRIVILEGES ARE IMMEDIATELY APPEALABLE

Given the critical importance of the Speech or Debate Clause to the separation of powers and its absolute nature, courts have held repeatedly that adverse Speech or Debate Clause rulings are immediately appealable. *See, e.g.*, *Meanor*, 442 U.S. at 506-08; *Gravel*, 408 U.S. at 608 n.1; *United States v. Jefferson*, 546 F.3d 300, 308-09 (4th Cir. 2008). Consistent with the Clause's purpose, "if a Member 'is to avoid *exposure* to [being questioned for acts done in either House] and thereby enjoy the full protection of the Clause, his … challenge

26

… must be reviewable before … exposure [to the questioning] occurs.'" *Meanor*,

442 U.S. at 508 (quoting *Abney v. United States*, 431 U.S. 651, 662 (1977)).

Contrary to DOJ's suggestion that only orders denying Speech or Debate

Clause immunity are immediately appealable and "pretrial discovery orders"

implicating the Clause are not, *see* U.S. Opp. to Stay Mot. 8-10 (ECF No. 29), this

Court approved an immediate appeal of a Member's motion to quash subpoenas to

third parties in *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1201-02 (D.C. Cir.

2009). There, DOJ issued subpoenas to attorneys who represented a Congressman

during an investigation by the House Ethics Committee. *Id.* at 1201. The

Congressman intervened and moved to quash the subpoenas on grounds that they

called for testimony and documents protected by the Clause. *Id.* at 1201-02. The

district court denied his motion, reasoning that the Congressman was not acting in

a legislative capacity when he responded to the inquiry. *Id.* Because the district

court denied the motion based on a determination "under the Speech or Debate

Clause," this Court stated it was "immediately appealable under the collateral order

doctrine." *Id.* at 1201-02 (citing *United States v. Rostenkowski*, 59 F.3d 1291,

1297 (D.C. Cir. 1995) ("This court's jurisdiction of the Congressman's appeal rests

on the collateral order doctrine.")).

It follows that the district court's order here is also immediately appealable.

The order in *Grand Jury Subpoenas* did not directly implicate the Clause's

immunity from prosecution; rather, it implicated the Clause's non-disclosure protection, just as the district court's order here did. *Id.* The protections of the Clause extend beyond immunity from criminal prosecution for legislative acts: the Clause also protects the right not to "be questioned" about those acts—and under *Rayburn*, includes the right not to disclose documents about them. *See supra* at 7-10. Accordingly, a district court order denying a Member any Speech or Debate Clause protections (including the non-disclosure privilege under *Rayburn*) is immediately appealable. *See, e.g.*, *Rayburn*, 497 F.3d at 658.

## CONCLUSION

The House respectfully requests that this Court base its decision on the articulation of Speech or Debate Clause principles in this brief, which are drawn from the Supreme Court's and this Court's extensive jurisprudence broadly applying the essential protections of the Clause.

Respectfully submitted,

*/s/ Matthew B. Berry*
Matthew B. Berry
   *General Counsel*
Todd B. Tatelman
   *Deputy General Counsel*
Brooks M. Hanner
   *Associate General Counsel*
Sarah E. Clouse
   *Associate General Counsel*

*Office of General Counsel*
*U.S. House of Representatives*
5140 O'Neill House
Office Building
Washington, D.C. 20515
(202) 225-9700
Matthew.Berry@mail.house.gov

*Counsel for the U.S. House of Representatives*

February 10, 2023

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 6,481 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman type.

*/s/ Matthew B. Berry*
Matthew B. Berry