ORAL ARGUMENT SCHEDULED FEBRUARY 23, 2023

No. 23-3001 (UNDER SEAL)

———————————————————————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
————————————————————

IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE
CELL PHONE OF REPRESENTATIVE SCOTT PERRY
————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 22-sc-2144 (Under Seal)
————————————————————

**REPLY BRIEF OF APPELLANT**
————————————————————

John P. Rowley III                    John S. Irving
(D.C. Bar No. 392629)                 (D.C. Bar No. 460068)
JPRowley Law PLLC                     E&W LAW, LLC
1701 Pennsylvania Avenue, NW          1455 Pennsylvania Avenue, N.W.,
Suite 200                             Suite 400
Washington, D.C. 20006                Washington, D.C. 20004
 (202) 525-6674                       (301) 807-5670
john.rowley@jprowleylaw.com           john.irving@earthandwatergroup.com

Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road N.W.
Washington, D.C.  20010

*Counsel for Appellant Scott G. Perry*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………….....……………….……..……..… i

TABLE OF AUTHORITIES …………………………....…….……..……..…... ii

SUMMARY OF THE ARGUMENT …………………………...….….……….. 1

ARGUMENT …………………………………………….……..……….…... 2

    I.   This Court Has Jurisdiction to Decide the Constitutional Issues
        Regarding Speech or Debate Privileges Presented by this Case …........ 2

    II.  The Government Waived its Argument as to the Scope and
        Applicability of the Nondisclosure Privilege
        Recognized by *Rayburn* …………………………………….…….....… 6

    III.  The Nondisclosure Privilege is not Limited to Confidential
         Communications with Other Members and Staff  ................................ 8

    IV.  The Nondisclosure Privilege Does Not Require Direct
         Tethering to Official Committee Action …………………….……. 12

    V.   Representative Perry's Communications Were
         Legislative in Nature …………………………………………...………. 16

CONCLUSION ………………………………………………………....….. 21

CERTIFICATE OF COMPLIANCE …………………………...…………. 21

CERTIFICATE OF SERVICE …………….…………………………....…... 22

# <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Abney v. United States,*
    431 U.S. 651 (1977) …………………………………………….…..…….. 2

*Ass'n of Am. Physicians & Surgeons v. Schiff,*
    518 F. Supp. 3d 505 (D.D.C. 2021) …………………………………..…… 3

*Barker v. Conroy,*
    921 F.3d 1118, 1127 (D.C. Cir. 2019) …………………………...…….. 18

*Bogan v. Scott-Harris,*
    *523 U.S. 44 (1998)* ……………………………………….....……. 13, 19

*Brown & Williamson Tobacco Corp. v. Williams,*
    62 F.3d 408 (D.C. Cir. 1995). …………………………………...…. 10, 14

*Coffin v. Coffin,*
    4 Mass. 1 (1808) ……………………………………………....…….. 15

*Cohen v. Beneficial Industrial Loan Corp.,*
    337 U.S. 541 (1949) …………………………………….……………. 2

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463(1978) ……………………………………………..……. 2

*Davis v. Passman,*
    442 U.S. 228 (1979) ……………………………………….…….…. 4

*Doe v. McMillan,*
    412 U.S. 306 (1973) ……………………………….……………. 13, 16

*Eastland v. U.S. Servicemen's Fund,*
    421 U.S. 491 (1975) …………………………………….…………. 9

*Tenney v. Brandhove,*
    341 U.S. .367, 377 (1951) …………………………...…………. 19

ii

*Gov't of the Virgin Islands v. Lee,*
  775 F.2d 514 (3d Cir. 1985) ……………………………...…………..…. 14

*Gravel v. United States,*
  408 U.S. 606 (1972) …………………….……………………….………… *passim*

*Helstoski v. Meanor,*
  442 U.S. 500 (1979) ……………………………….…….…………. 2, 3, 10, 18

*Hutchinson v. Proxmire,*
  443 U.S. 111, 114 (1979)) …………………………………………....….. 18

*In re Graham,*
  __ F.Supp. 3d __, 2022 WL 13692834 (Sept 1, 2022) …………….……… 15

*Kilbourn v. Thompson,*
  103 U.S. 168 (1880) …………………………………….……………… 15

*McSurely v. McClellan,*
  553 F.2d 1277 (D.C. Cir. 1976) …..……………………… 8, 12, 13, 14, 18

*Miller v. Transam. Press, Inc.,*
  709 F.2d 524, 530 (9th Cir. 1983) ……………………………………...…..14

*Mohawk Indus., Inc. v. Carpenter*
  558 U.S. 100 (2009) ……………………………………………………... 4

*Rangel v. Boehner,*
  785 F.3d 19 (D.C. Cir. 2015) …………………………….……….. 15

*Republican Nat'l Comm. v. Pelosi,*
  2022 U.S. Dist. LEXIS 78501 29-30 (D.D.C. 2022) ……………...…… 15

*SEC v. Comm. on Ways & Means*
*of the United States House of Representatives*
  161 F. Supp. 3d 199 (S.D.N.Y. 2015 ) …………………………… 15, 19, 20

*United States v. Biaggi,*
  853 F.2d 89 (2d Cir. 1988) ………………………………...……………… 13, 14

*United States v. Brewster,*
    408 U.S. 477 (1979) …………………………………………..…….16, 20

*United States v. Dowdy,*
    479 F.2d 213 (4th Cir. 1983) ………………………………….…… 14, 16

*United States v. Johnson,*
    383 U.S. 169 (1966) …………………………………..…….…..…… 10, 16

*United States v. Nixon,*
    418 U.S. 683 …………………………………………………..…….... 4

*United States v. Rayburn House Office Building,*
*Room 2113, Washington, D.C. 20515,*
    497 F.3d 654 (D.C. Cir. 2007) ………………….…..……..………. *passim*

*United States v. Rose,*
    28 F.3d 181 (D.C. Cir. 1994) ……………………………………..… 3

*United States v. Swindall,*
    971 F.2d 1531 (11th Cir. 1992) …………………………..……….. 16

**Statutes & Other Authorities:**

U.S. Const., Art 1 § 6, cl.1 ……………………………..…….…..… *passim*

## SUMMARY OF ARGUMENT

The Government seized the cell phone of a sitting Member of Congress which he uses to conduct his official responsibilities as an elected representative. It asserts in this case that the nondisclosure privilege this Court recognized in *United States v. Rayburn House Office Building*, 497 F. 3d 654 (2007), does not apply to that 21st Century mode of congressional communication. That argument and the Government's other attempts to limit the *Rayburn* decision are contrary to the decisions of this Court and should be rejected.

The Speech or Debate Clause protects Rep. Perry's informal investigative fact-finding regardless whether it was tethered to a formally authorized congressional inquiry because his communications with Members of Congress, private parties, and members of the Executive branch were made "in connection with or in aid of an activity that qualifies as legislative in nature."

The district court committed reversible error by refusing to recognize that the Speech or Debate Clause protects from compelled disclosure 2055 records on Rep. Perry's cell phone. Accordingly, he requests this Court hold that the records are protected by the Clause and reverse the district court's decision or, alternatively, remand the case to the district court to reevaluate its order in accordance with this Court's ruling.

1

**ARGUMENT**

**I.     This Court Has Jurisdiction to Decide the Constitutional Issues Regarding Speech or Debate Privileges Presented by this Case**

As stated in Rep. Perry's opening Brief, the district court's order is a "final decision" under 28 U.S.C. § 1291, which provides this Court with jurisdiction over this appeal. The district court's findings regarding the non-disclosure aspect of the Speech or Debate privilege ended the litigation between Rep. Perry and the Government on that issue and, at a minimum, the order would have compelled Rep. Perry to provide the Government with access to the communications had it not been stayed by this Court. Alternatively, the district court's order falls within the collateral order exception, as would a pretrial order rejecting a claim of double jeopardy, where it constitutes a "complete, formal . . . final rejection" of a Member's Speech or Debate rights. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47 (1949); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) citing *Abney v. United States*, 431 U.S. 651, 658 (1977); *Helstoski v. Meanor*, 442 U.S. 500, 506 (1979). The U.S. House of Representatives agrees in its *amicus* brief; this Court has jurisdiction over this appeal and Rep. Perry is entitled to seek its review of the important constitutional issues presented.

That conclusion also is consistent with principles of fundamental fairness. The Government argues that the district court's review "is sufficient to protect the non-disclosure privilege recognized by *Rayburn*." Gov't Brief at 28 referencing

2

*United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007). However, the court took an impermissibly narrow view of the Speech or Debate Clause's protections, requiring that Rep. Perry's communications be "tethered" to a formally sanctioned congressional inquiry and limiting the protection to communications with other Members and staff. JA209-210. It necessarily follows that the application of incorrect legal conclusions would not protect Rep. Perry's constitutional privilege, and that he has a right to seek this Court's review.[1]

The Government's suggestion that a Member of Congress should disobey the district court and risk being held in contempt in order to be able to pursue his appeal is irresponsible and fails to consider the "central role" of the Speech or Debate Clause, *i.e.*, "to prevent intimidation of legislators by the Executive and accountability before a potentially hostile judiciary," *Gravel v. United States*, 408 U.S. 606, 617 (1972), as well as from "the burden of litigation and diversion from congressional duties." *Helstoski v. Meanor,* 442 U.S. 500, 506 (1979); *United States v. Rose*, 28 F.3d 181, 185 (D.C. Cir. 1994). In a similar situation,[2] the Supreme

---

[1] This Court reviews a district court's conclusions of law *de novo*. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1032 (D.C. Cir. 2022).

[2] "[I]n relation to his or her constituents and in the constitutionally defined functions each Member of the House or Senate occupies a position in the Legislative Branch comparable to that of the President in the Executive Branch." *Davis v Passman*, 442 U.S. 228, 250 (1979)(C. J. Burger, dissenting).

3

Court held that "[t]o require the President to place himself in the posture of disobeying a court merely to trigger the procedural mechanism for review of the ruling would be unseemly." *United States v. Nixon*, 418 U.S. 683, 692 (1974). It would be equally "unseemly" and unnecessary here. Moreover, unlike appeals involving attorney-client privilege, this appeal does not risk "swamp[ing] the courts of appeals" and incurring associated institutional costs. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 112 (2009). Cases involving the Government's seizure of legislative materials from a sitting Member of Congress are exceedingly rare. Indeed, judicial scrutiny will serve as a disincentive for further executive branch overreach into the functions of its coequal branch.

Rep. Perry is not necessarily suggesting that this Court individually re-review all 2,055 records as to which the district court declined to extend Speech or Debate protection. The district court's December 28, 2022, Memorandum Opinion considered those records by category, providing a number of examples, but did not making specific findings as to whether the Clause applied to each document. Thus, there is a limited record for this court to review, other than these categorical denials and references to examples. Given the volume of the documents, Rep. Perry does not contend that the district court needed to provide a detailed analysis of each

document,[3] but he does dispute the legal rationale for the court's conclusions. He therefore asks that this Court reverse those conclusions, or, alternatively, clarify the law and remand this case to the district court for its proper application.

The district court and the Government have attempted to confine the district court's December 28, 2022, ruling to the nondisclosure aspect of the privilege. The district court asserted in its Memorandum Opinion and Order of January 4, 2023, denying Rep. Perry's Motion for a Stay of its earlier Order, that "Rep. Perry is free, at a minimum, to assert the Clause's privileges in the future if the government uses any of the 2,055 records against him in a criminal prosecution or tries to compel him to testify about his communications contained in these responsive records." JA290. The Government points to that assertion in support of its argument that this Court lacks jurisdiction. Gov't Brief at 31, 35. However, Rep. Perry is unable to find any language in the district court's December 28, 2022, Order or memorandum opinion specifically limiting it to the non-disclosure aspect of the privilege, other

_____

[3] Rep. Perry, on the other hand, did make document-by-document assertions below, contrary to the Government's assertion that he made a "generalized contention that the 2,055 communications from his phone all reflect protected information-gathering." Gov't. Brief at 37. In addition to his *Ex Parte* Supplement to his Motion for Nondisclosure (an almost identical version of which was filed with Rep. Perry's Brief in this Court), Rep. Perry provided the district court with a privilege log that articulated the basis for his assertion of Speech or Debate protection on a record-by-record basis. As noted in his Motion for Leave to File his *Ex Parte* Supplement in this appeal, Rep. Perry will provide that privilege log to this Court upon request if it would be helpful.

than the fact that was the issue before the district court. Either way, it is difficult to see how the district court would reach any different conclusion in the context of use or testimony having now determined that the Speech or Debate Clause does not apply to most of the records at issue.

## II.    The Government Waived its Argument as to the Scope and Applicability of the Nondisclosure Privilege Recognized by *Rayburn*

The district court correctly and repeatedly concluded that *Rayburn* and its protocols applied to the records on Rep. Perry's phone. *See* JA113 ("Given that the government's search of Rep. Perry's cell phone could touch on those protected materials, the Clause's non-disclosure privilege applies under *Rayburn* and Attachment C must be followed to prevent the release of privileged communications to the government"), JA213 ("No matter the critiques, however, *Rayburn* is binding on this Court"). The Government made the tactical decision not appeal those rulings, presumably because such an appeal would have been inconsistent with its position that this Court is without jurisdiction. The Government has waived its appeal of those rulings, and it should not be permitted to bootstrap those issues back into this appeal by inviting this Court to exercise its authority to affirm on any ground. Gov't Brief at 23.[4]

---

[4] Indeed, even the Government's invitation to affirm is contorted. The Government asks this Court to affirm the District Court's disclosure order on the basis that it "was entitled to the documents without regard to the procedures in Attachment C

Even if the Court were inclined to accept the Government's invitation, it should decline to do so because the district court correctly determined that *Rayburn* applies to the records on Rep. Perry's phone and is not limited to the search of a Member's office. The Government itself has acknowledged that "[t]here is no legal principle that would categorically foreclose Speech or Debate protections for materials that reside on a member's personal cell phone." JA075. The district court ultimately agreed that Rep. Perry's phone would inevitably contain legislative materials, stating: "given the fact that modern-day cell phones are ubiquitous and particularly necessary for congresspeople required to travel to and from the U.S. Capitol and their home districts – the presence of such materials in such a mobile "location" is a concrete reality here …." JA113 n.3. The House agrees with this reality in its *amicus*. *Id*. at p. 14 ("In short, with the rapid technological development of modern communication devices, there is no longer any real, meaningful distinction between the kind of legislative materials that would be found on a Member's cellphone and those located in a Member's physical office.")

Of course, at this juncture, the question of whether legislative materials might "inevitably be found" in Rep. Perry's mobile phone data has already been answered. The district court agreed with his characterization of some or all of 164 of the

---

[or the warrant setting forth the *Rayburn* protocols]." *Id.* That was not the basis for the district court's disclosure order, which recognized *Rayburn's* applicability.

7

documents on the phone as protected from disclosure to the Government. JA144. The issue is whether the records are reflective of Rep. Perry's legislative activity, not where they are located, and the fact that they resided on Rep. Perry's mobile phone is of no moment. Indeed, the search of the phone is no different from the search warrant in *Rayburn*. It seeks the same types and categories of information, albeit housed in technology that is now routinely used by Members of Congress to conduct their business.[5] As this Circuit has held the immunity "is defined by the nature of the act involved, not the status of the actor." *McSurely v McClellan*, 553 F. 2d 1277, 1287 n. 36 (D. C. Cir. 1976)(*en banc*). Similarly, it should not be the location of the information which is determinative here, but the nature of the records.

## III.    The Nondisclosure Privilege is not Limited to Confidential Communications with Other Members and Staff

Speech or Debate Clause protections are distinct from other legal protections, and this Court should reject the Government's attempt to limit those protections to communications between Members and with congressional staff. A Member's

---

[5] The Government's argument that the search of Rep. Perry's phone caused little or no disruption because they seized his phone while he was on vacation also misses the mark. While disruption to the operations of a Member's office, as in *Rayburn*, is a factor, the far greater concern is the chilling effect that such a search has on a Member's ability to conduct legislative business without fear of intrusion by the Executive branch or the distraction and cost of months spent litigating the matter in court.

constitutional Speech or Debate protections are absolute where the actions "fall within the sphere of legitimate legislative action." *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 501 (1975). The protection immunizes legislators from being questioned about acts that occur in the regular course of the legislative process and their motivations for those acts. *Id*. at 508.

The attorney-client privilege, there is no third party disclosure waiver concept for the Speech or Debate Clause. Even the Government has acknowledged that protected activity "is expected (and likely) to take place in front of members of the public" and that "the Speech or Debate privilege – which does not protect confidentiality, privacy, or secrecy – differs substantially from confidentiality privileges such as the attorney-client privilege." JA076-77. The common law attorney-client evidentiary privilege cannot be used to narrow the Speech or Debate privilege, which is deeply rooted in the text of the Constitution and critical to the separation of powers.

The Government nonetheless asks this Court to limit *Rayburn's* nondisclosure aspect of the privilege to communications between Members and staff that are maintained in confidence. Gov't Brief at 31. While Rep. Perry agrees that that the non-disclosure privilege applies to maintain confidential communications between Members and staff, as it was in *Rayburn* and *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995), the

application of the privilege to confidential records in those cases is happenstantial. Indeed, the Clause is often invoked to protect very public activity.

Rep. Henry Helstoski's private immigration bills, for example, were privileged despite being introduced into a public session of the House, printed and disseminated throughout the Congress, and available to any interested party. Nonetheless their introduction to the grand jury violated the Clause and ultimately tainted the grand jury process, resulting in dismissal of all counts against him on remand from the Supreme Court (including the false statement and perjury counts having nothing to do with the bribery counts to which the indictment principally related). *Helstoski*, 635 F. 2d at 200. Similarly, in *United States v Johnson*, 383 U.S. 169 (1966), the Court prohibited the use of a floor speech as evidence of a criminal conspiracy even though it was publicly delivered. Limiting the Clause's protections to confidential communications between Members and staff would ignore its purpose of preventing a chill on the exchange of views, ensuring frank communications, and protecting Members from intrusion and intimidation from the executive branch.

The Government's position also ignores that Members of Congress frequently obtain information from others outside of Congress to inform their legislative acts, and need those communications to be confidential just as with internal House communications. Members of Congress and their staff communicate

10

often with Executive branch whistleblowers reporting waste, fraud, and abuse by executive branch departments and agencies. The Government's position that the Clause only applies to internal communications is also undermined by *Helstoski*, where the Supreme Court affirmed the court of appeals ruling suppressing not only the bills themselves but "evidence of discussions and correspondence which describe and refer to legislative acts." *Id*. at 486. The Court rejected the Government's plea to use such extra-legislative evidence to prove motive for Helstoski's bills. Adopting the Government's blanket proposition would clearly interfere with lawmakers' legitimate legislative acts. The same is true here, where Rep. Perry should be able to rely on Speech or Debate protections to prevent the disclosure to the Executive branch of his communications with a variety of individuals who were not members or employees of Congress, but who had information that he needed to inform his legislative activity.

In support of its position that the nondisclosure privilege does not apply beyond the halls of Congress, the Government argues that it can obtain those materials from third parties, and that, "plainly *Rayburn* would not compel the *Rayburn*-compliant protocol …" in that situation. Gov't Brief at 25. To be clear, Rep. Perry does not "acknowledge" or "conced[e]" that point. *Id*. To the contrary, if he were aware of the Government's seizure from third-party sources of his communications that were protected by the Speech or Debate Clause, he would have

11

standing to object to the Executive branch's seizure and review of that information. In any event, any disclosure of information by a third party does not vitiate the Clause's protections as to information in Rep. Perry's possession.[6]

## IV. The Non-disclosure Privilege Does Not Require Direct Tethering to Official Committee Action

The district court found, and the Government argues, that "a Member's informal investigative efforts or fact-finding inquiries untethered to a formally sanctioned congressional inquiry remain unprotected" (*McSurely*, 553 F.2d at 1286-87), and that such efforts are only protected when "performed in a procedurally regular manner." (*Brown & Williamson*, 62 F.3d at 416)(JA209-10, Gov't Brief at 44-45). Rep. Perry agrees that such inquiries formally tied to official committee authorization are protected, but the more relevant question is whether the Member's actions occurred within the "sphere of legitimate legislative" activity. *Doe v. McMillian*, 412 U.S. 306, 312 (1973).

---

[6] The Government cites Rep. Perry's earlier argument that the issuance of a stay by the district court would not substantially injure the Government because it had reportedly taken other investigative avenues to obtain some of the same information. JA235-36. By the time of that December 28, 2022 filing, months had passed since the Government seized the phones of John Eastman and Jeffrey Clark, and those matters, like this one, proceeded under seal. It was not until Rep. Perry's counsel had reviewed the information on his phone that they were even aware of the communications at issue. The fact that they did not seek to intervene in those other sealed matters at that late time was not a concession that Rep. Perry would not have standing to do so.

Speech or Debate privilege extends to actions that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation *or with respect to other matters which the Constitution places within the jurisdiction of either House*." *Gravel,* 408 U.S. at 625 (emphasis provided). But contrary to the district court, this can, and often does, occur outside formally sanctioned congressional inquiries "within the jurisdiction of either House." *Id.* The Clause's immunity turns only on "the question whether, stripped of all considerations of intent and motive, [the Member's] actions were legislative," *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998), not whether they were authorized by a formally sanctioned congressional inquiry.[7]

As articulated by the House of Representatives in its *amicus* brief, the district court and the Government incorrectly read *McSurely* to require formal committee authorization before the Clause protects an individual Member's fact-gathering efforts. However, *McSurely* does not stand for that proposition, and this Court's decision regarding the scope of the privilege turned instead on the same "legislative

---

[7] The *amicus* brief submitted by the House of Representatives includes a non-exhaustive list of the types of congressional information-gathering that have been recognized by the federal courts as protected by Speech or Debate privilege. This includes "field work by a Senator or his staff" (*McSurely*) and "[l]egislative fact finding by an individual Congressman during trips to Florida" (*Biaggi*). Amicus Br. at 17.

13

activity" test that Rep. Perry urges here. Importantly, *McSurely* also recognized that

the privilege "must also extend to field investigations by a Senator or his staff," and

that:

> A congressman cannot subpoena material unless he has enough threshold information to know where, to whom, or for what documents he should direct a subpoena. *The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct* and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties appropriately.

*McSurely* at 1286-87 (emphasis provided).

Similarly, this Court's holding in *Brown & Williamson* that Congress may

conduct formal investigations and issue subpoenas in "a procedurally regular

manner" does not impose a requirement that a Member's informal investigative

activities necessarily must be conducted that way. While such a requirement in the

context of a formal congressional subpoena is easy to discern, it would be difficult

to apply a "procedurally regular" requirement to an informal inquiry, such as the

meetings with contractors, VA hospitals, military bases, and federal buildings that

the House describes in its *amicus* (Amicus Br. at 24). *See United States v. Biaggi*,

853 F.2d 89, 102-103 (2d Cir. 1988); *Gov't of the Virgin Islands v. Lee*, 775 F.2d

514, 520-21 (3d Cir. 1985); *Miller v. Transam. Press, Inc.*, 709 F.2d 524, 530 (9th

Cir. 1983); *United States v. Dowdy*, 479 F.2d 213, 223-24 (4th Cir. 1973); *In re

Graham*, _ F. Supp. 3d _, 2022 WL 13692834 (N.D. Ga.)(Sept 1, 2022); *SEC v.

*Comm. on Ways & Means of the United States House of Representatives*, 161 F. Supp. 3d 199, 242 (S.D.N.Y. 2015).

Requiring procedural regularity and specific committee authorization for an individual Member's actions would be inconsistent with the decisions of the Supreme Court and this Circuit. For example, in *Gravel,* the Supreme Court extended Speech or Debate protection for Senator Gravel's effort to publish the Pentagon Papers after he failed to obtain unanimous consent to enter them into the record on the Senate Floor. The Senator hastily convened a midnight meeting of a committee he chaired and that had no jurisdiction over national security or the Vietnam war. The claim that the hearing was "irregular" and on a "non-germane" subject was rejected by the Court and then abandoned by the Government. *Gravel*, 408 U.S. at 616.

The Clause's protection for individual Members protects legislative action that "was regular, according to the Rules of the House, or irregular and against their rules." *Kilbourn v. Thompson*, 103 U.S. 168, 203 (*quoting Coffin v. Coffin*, 4 Mass. 1, 27 (1808)). *See also Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) ("[a]n act does not lose its legislative character simply because a plaintiff alleges that it violated the House Rules, … or even the Constitution"); *Republican Nat'l Comm. v. Pelosi*, _ F. Supp. 3d _, 2022 U.S. Dist. LEXIS 78501 29-30 (D.D.C. 2022) (vacated on mootness grounds 2022 U.S. App. LEXIS 26068).

15

There also is no danger that extending Speech or Debate Clause protection to Rep. Perry's informal efforts to gather information would turn him into a "super-citizen, immune from criminal responsibility" as claimed by the Government. Gov't Brief at 40 quoting *United States v. Brewster,* 408 U.S. at 516 ; JA199; JA209. It would simply remind the Government that it has no authority to rummage through the mobile phone of a sitting Member of Congress without due respect for separation of powers.[8]

## V.     Rep. Perry's Communications were Legislative in Nature

As noted in his opening Brief and *Ex Parte* Supplement, Rep. Perry's communications with various individuals after the 2020 election were within the "sphere of legitimate legislative" activity, *Doe*, 412 U.S. at 312, and "an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either house." *Johnson,* 383 U.S. at 625.

---

[8] The Government's supposed concern about the creation of a class of "super-citizens" is belied by several cases where it obtained criminal convictions notwithstanding courts upholding Speech or Debate protection in criminal cases. *See, e.g.,* former Louisiana Rep. William Jefferson (*Rayburn*); former Georgia Rep. Pat Swindall (*United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992)); and former Texas Rep. John Dowdy (*United States v. Dowdy*, 479 F.2d 213 (4th Cir. 1973)).

16

As a Member of Congress, Rep. Perry was required under the Electoral Count Act ("ECA") to vote on the certification of the 2020 Presidential election. He understood that, before voting on a subject of such national importance, he had an obligation to evaluate information he received from a variety of sources that appeared to raise legitimate issues about the reliability of the electoral results in various states, including his own. The Republican party was at that time the minority party in Congress and Rep. Perry had few alternatives to understand the numerous claims of election integrity issues beyond turning to executive branch officials, members of the Pennsylvania State legislature, and others who claimed to have information that the majority party seemingly had little interest in examining.

Rep. Perry's efforts were also meant to inform his consideration of legislative activities in the 117th Congress, where he would chair the House Freedom Caucus and be called upon to propose and take positions on legislation involving election security. One example of those proposals, which the Government summarily dismisses and refuses to discuss (Gov't Brief at 51 n.11), and the district court ignored altogether, is H.R. 1 – the "For the People Act" – which had been proposed and defeated in the 116th Congress and which the majority party reintroduced early in the 117th Congress, where it passed the House on a party-line vote. The "For the People Act" essentially sought to nationalize our elections and codify many of the measures that some states put in place during the 2020 election in the name of

17

encouraging voting during the COVID-19 pandemic. The bill's provisions, and other proposed legislation like it, were very much under discussion during the 2020 election and afterwards, and Rep. Perry was not alone in expressing concerns about whether the proposed legislation would further exacerbate concerns about election security.

Rep. Perry's investigative fact gathering about the security of the 2020 Presidential election, and the ECA certification that followed on January 6, 2021, indisputably was legislative in nature. The examples cited in the district court's memorandum opinion of non-legislative activities that are regularly conducted by Members of Congress but are not protected by the Clause (JA208) stand in stark contrast to Rep. Perry's legislative fact-finding, to wit: dissemination of allegedly defamatory newsletters and press release (*Hutchinson v. Proxmire*, 443 U.S. 111, 114 (1979)) "promises by the member to perform an act in the future" (*Helstoski,* 442 U.S. at 489), "legislative prayer" (*Barker v. Conroy,* 921 F.3d 1118, 1127 (D.C. Cir. 2019)), and disseminating private documents to individuals or agencies outside of Congress (*McSurely,* at 553 F.2d at 1287). The comparison underscores how Rep. Perry's fact-finding was qualitatively distinct from claims of privilege that are not connected to legislative activity.

"Whether an act is legislative, and thus confers absolute immunity under the Speech or Debate Clause, turns on the *nature of the act*, rather than on the

18

motive or intent of the official performing it." *Bogan v. Scott-Harris,* 523 U.S at 54-55 (1998)(emphasis provided). The Supreme Court has consistently held that it is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Tenney v. Brandhove*, 341 U.S. .367, 377 (1951); *Gravel,* at 621(legislator's motives are not relevant to exercise of Speech or Debate privilege). Information acquired "in connection with or in aid of an activity that qualifies as 'legislative' in nature" is subject to Speech or Debate protection, regardless the source of the information. *See Ways & Means*, 161 F. Supp. 3d at 236-37.

In his *Ex Parte* Submission, Rep. Perry explained how the investigative fact finding he conducted by means of the email and text messaging on his cell phone involves legislative acts and is not, as the district court mistakenly concluded, only "casually or incidentally related to legislative affairs" (JA206). The court erroneously limited its findings concerning Speech or Debate privilege to those communications Rep. Perry had other Members of Congress and staff (JA215), and excluded the fact-finding activities he had with other people who provided information that informed his Electoral College vote, and his understanding of election integrity issues more generally. These communications are at the core of the responsibilities Rep. Perry had as an elected representative and which he

pursued in connection "with or in aid of activit[ies] that qualif[y] as legislative in nature." *Ways & Means*, 161 F. Supp. 3d at 237.

The district court's focus on the political nature of some of Rep. Perry's communications and its dismissal of others as "random musings" (JA218), ignores that he was attempting to discover whether the 2020 Presidential election had been tainted by integrity issues – a matter that is essentially legislative in nature. The court erroneously discounted any legislative connection between Rep. Perry's information gathering with individuals he believed knowledgeable about cybersecurity issues (JA216). It did the same for the communications he had with Pennsylvania State legislators (JA271) and Trump campaign officials (*id.*) In so doing, it substituted its views[9] about the value of the information for an objective assessment of the reasons for the communications.

The integrity of our elections is a core national security issue and indisputably involves legislative activity. Moreover, whether some of Rep. Perry's communications can also fairly be described as political, is beside the point. Once he established that the email and text messaging involved subjects that are

---

[9] The court stated that it was "in no position to assess the sources of information Rep. Perry chose to use, the significance of that information to him and how he chose to act, or whether the information he obtained a relayed amounted to verifiable facts" (JA218). But it then characterized his discussions with cybersecurity individuals as "scattershot", and those with Trump Campaign staff and Pennsylvania State legislators as demonstrating a "catch-as-catch can" purpose intended to override the results of the 2020 election (JA219).

legislative in nature, any dual motive Rep. Perry may have had for the communications was beyond the purview of the district court's Speech or Debate inquiry.

## **CONCLUSION**

Rep. Perry respectfully requests that this Court hold that the email and text messaging at issue are protected by the Speech or Debate Clause and that it reverse the district court's December 28, 2022, Order compelling him to disclose his communications to the Executive branch. Alternatively, Rep. Perry requests that the Court remand this matter to the district court to re-evaluate its Order in accordance with this Court's ruling in this matter.

Dated: February 21, 2023        Respectfully submitted,

**JPRowley Law PLLC**

  /s/ John P. Rowley III
John P. Rowley III
D.C. Bar No. 392629
1701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. 20006
(202) 525-6674
 john.rowley@jprowleylaw.com

**E&W LAW, LLC**

  /s/ John S. Irving
John S. Irving
D.C. Bar No. 460068
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com

**BRAND WOODWARD LAW, LP**

  /s/ Stan M. Brand
Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
1808 Park Road N.W.
Washington, D.C.  20010
Stanley@BrandWoodwardLaw.com

*Counsel for Appellant Scott G. Perry*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 21, 2023, I electronically filed the foregoing Reply Brief of Appellant with the Clerk for the United States Court of Appeals for the District of Columbia Circuit. I also transmitted the Reply Brief via electronic mail to the following Government counsel:

John M. Pellettieri
Timothy A. (Tad) Duree

                         Respectfully submitted,

                           /s/ John P. Rowley III
                         John P. Rowley III

22

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief of Appellant complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2) because the Reply Brief of Appellant contains 5,737 words. The Reply Brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) and has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: February 21, 2023                    Respectfully submitted,

                                         /s/ John P. Rowley III
                                        John P. Rowley III