# Attachment 2

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

[NOT SCHEDULED FOR ORAL ARGUMENT]

|  |  |  |
|---|---|---|
| | ) | |
| | ) | **Case No. 23-3001** |
| **In re: Sealed Case** | ) | |
| | ) | **FILED UNDER SEAL** |
| | ) | |

## OPPOSITION OF THE UNITED STATES TO
## EMERGENCY MOTION FOR STAY PENDING APPEAL

After the Government seized a forensic copy of Representative Scott Perry's personal cell phone pursuant to a search warrant, the district court reviewed 2,219 records from the phone for privilege under the Speech or Debate Clause and entered an order permitting Rep. Perry to withhold all or part of 164 records but directing Rep. Perry to disclose to the Government 2,055 additional records that the court determined were not privileged. ECF No. 24. The district court had reviewed the 2,219 records pursuant to a protocol modeled on the procedures this Court approved in *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654 (D.C. Cir. 2007) (*Rayburn*), *cert. denied*, 552 U.S. 1295 (2008).

Rep. Perry now seeks a stay pending an appeal of that order, asserting that before he discloses the records to the Government, he is entitled to this Court's additional review of those 2,055 records to determine whether the district court made correct privilege determinations. Rep. Perry's arguments are without

merit, and he does not make the showing required to obtain the extraordinary relief of a stay pending appeal. The motion should be denied.

## BACKGROUND

### I. Legal Background

The Speech or Debate Clause, U.S. Const. art. I, § 6, cl. 1, affords members of Congress "three distinct protections." *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013). The Clause (1) grants members civil and criminal immunity for legislative conduct, (2) creates an evidentiary privilege that bars the use of legislative-act evidence against a member, and (3) creates a testimonial privilege guaranteeing that a member may not be made to answer questions about legislative acts. *Id.*

The Clause protects "only legislative activities," *Hutchinson v. Proxmire*, 443 U.S. 111, 125 (1979), which means acts "generally done in a session of the House by one of its members in relation to the business before it," such as voting and participating in committee hearings, *Gravel v. United States*, 408 U.S. 606, 624 (1972) (citation omitted). The Clause reaches only acts that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to

other matters which the Constitution places within the jurisdiction of either House." *Id.* at 625.

In *Rayburn*, this Court recognized a non-disclosure component of the Clause's testimonial privilege. 497 F.3d at 660. In that case, the Government obtained a warrant that authorized the search of a member's congressional office. *Id.* at 656. The warrant established "special procedures" for use of a "filter team" within the Department of Justice to determine whether any seized materials were privileged under the Speech or Debate Clause and then return any privileged materials to the member. *Id.* at 656-57. When it executed the warrant, the Government reviewed "every paper record" in the member's office, privileged and non-privileged, and seized two boxes of documents. *Id.* at 657, 661. The Government also "copied the hard drives on all of the computers and electronic data stored on other media" in the office. *Id.* at 657. While the member's appeal was pending, before the Government had searched the electronic media, this Court issued a "Remand Order" directing the district court to provide the member with copies of the electronic media so that he could claim privilege for any records in them and the district court could conduct an *in camera* review to determine whether the records were privileged. *Id.* at 658.

This Court concluded that the search procedures in the warrant that permitted the Government to review privileged materials without first affording

the member an opportunity to assert privilege violated the Speech or Debate Clause. *Id.* at 661-63. The Court found that the "search of the Congressman's paper files therefore violated the Clause." *Id.* at 663. But the Court found that the "copying of computer hard drives and other electronic media [was] constitutionally permissible because the Remand Order afford[ed] the Congressman an opportunity to assert the privilege prior to disclosure of privileged materials to the Executive." *Id.*

## II.    Factual and Procedural Background

████████████████████████████████████████████████████

████████████████████████████████████████████████████

ECF No. 25 at 2. In August 2022, a federal magistrate judge in the Middle District of Pennsylvania found probable cause to believe that Representative Scott Perry's personal cell phone would contain evidence of a crime and approved a warrant to seize the phone and obtain a forensic extraction of its contents. *Id.* at 2, 4. Pursuant to the warrant, the Government seized the phone, made a forensic copy, and promptly returned the phone to Rep. Perry. *Id.* at 4. Subsequently, the district court in this case also found probable cause to believe that Rep. Perry's cell phone would contain evidence of a crime and approved a warrant to search the forensic extraction of the phone. *Id.* at 2, 4-5.

Recognizing that Rep. Perry's cell phone might contain records "that are protected by the Speech or Debate Privilege," an attachment to the warrant (Attachment C) set forth a protocol to "ensure that an appropriate opportunity is afforded to Congressman Perry to either waive or assert the Privilege, prior to any review of the content of the Extraction by employees of the Executive Branch." Search Warrant (ECF No. 1), Attachment C, ¶ 1. Consistent with the search procedures this Court ordered and approved in *Rayburn*, the protocol stated that the Government would provide Rep. Perry with a copy of the extraction, Rep. Perry would have an opportunity to assert the Speech or Debate privilege over records in the extraction, and the Government could then "request that the District Court review the records over which Congressman Perry has asserted privilege in order for the Court to make a final determination whether they contain privileged information." *Id.* ¶ 2. Although the Government argued that the non-disclosure privilege identified in *Rayburn* did not apply to a search of Rep. Perry's personal cell phone, it requested that the Court implement the *Rayburn*-compliant protocols to avoid investigation-delaying litigation over the scope and applicability of *Rayburn*. *See* ECF No. 13 at 1-2, 8-9.

The district court concluded that there were "valid distinctions from the circumstances in *Rayburn*, but prudence dictates compliance with Attachment C" because "*Rayburn* is written sufficiently broadly to contemplate" it would

cover the search of Rep. Perry's phone. ECF No. 18 at 7; *see* ECF No. 25 at 7-8. Rep. Perry accordingly received a copy of the forensic extraction from his phone and claimed, pursuant to the protocol, that 2,219 records on the phone were privileged under the Speech or Debate Clause. ECF No. 25 at 2-3, 5, 9-10. In a motion and *ex parte* submission in support of his privilege claims, Rep. Perry categorized the records—emails and text communications, some with attachments—based on the participants in the communications, with categories for "Cybersecurity Individuals," "Members & Staff," "Executive Branch Officials," "Trump Campaign Officials," "Pennsylvania State Legislators," and "Others" (a catchall category). *Id.* at 9-10, 25-26. Rep. Perry broadly argued that the communications were privileged because they reflected his "information gathering" in preparation for his participation in the counting of electoral votes at the joint session of Congress on January 6, 2021. *Id.* at 26.

The district court conducted an *in camera* review of the 2,219 records and issued a 51-page memorandum opinion explaining its privilege determinations. ECF No. 25. The court explained that the "Clause's protections apply only to a Member['s] legislative acts or activities that are 'integral' to a Member's participation in 'the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.'" *Id.* at 17 (quoting *Gravel*, 408 U.S. at 625). The

court recognized that Rep. Perry's activities that were integral to his conduct at the electoral-count proceedings at the joint session of Congress on January 6, 2021, were protected legislative activities. *Id.* at 26. And the court concluded that 161 records were privileged, 3 records were partially privileged and should be provided to the Government in redacted form, and the remaining 2,055 records were not privileged. *Id.* at 2-4, 25-51.

The district court subsequently denied Rep. Perry's motion for a stay pending appeal. ECF No. 31. The court determined that Rep. Perry could not demonstrate a likelihood of success because the court had correctly determined that the 2,055 records were not privileged under the Speech or Debate Clause. *Id.* at 3-7. The court further concluded that Rep. Perry failed to demonstrate that he would be irreparably harmed absent a stay or that the public interest supported a stay. *Id.* at 7-11.

## APPLICABLE LEGAL STANDARD

A stay pending appeal is "extraordinary relief," *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) ("CREW"), and is "not a matter of right," *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation and internal quotation marks omitted). A movant seeking such relief bears the burden of demonstrating that a stay would be appropriate. *Id.* at 433-34. The relevant factors are: "(1) whether the stay

applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. The last two factors "merge when the Government is the opposing party." *Id.* at 435.

The first two factors "are the most critical." *Id.* "It is not enough that the chance of success on the merits [is] better than negligible." *Id.* at 434 (citation and quotation marks omitted). Rather, the likelihood of success on appeal must be "substantial." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). And it is not enough to show the mere "possibility of irreparable injury." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). "Irreparable harm must be 'both certain and great[,]' and 'actual and not theoretical.'" *CREW*, 904 F.3d at 1019 (quoting *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

## ARGUMENT

Rep. Perry fails to establish that the extraordinary relief of a stay pending appeal is warranted. To the contrary, the relevant factors all weigh against a stay. To start, Rep. Perry cannot demonstrate a substantial likelihood that he will prevail on appeal. Rep. Perry asserts (Stay Motion 9-14) that he is likely to succeed on appeal for two reasons, arguing that this Court possesses appellate

jurisdiction and that the Court is likely to conclude that *Rayburn* extends to the search of his personal cell phone. Rep. Perry is wrong on both counts: the district court's order is a non-appealable disclosure order, and the considerations that warranted special search procedures for a member's congressional office in *Rayburn* do not apply to a search of Rep. Perry's personal cell phone. But even if Rep. Perry were correct with respect to each of these arguments, two additional shortcomings in his appeal preclude him from prevailing and therefore foreclose a stay: *Rayburn* does not entitle him to additional review of the district court's privilege determinations, and the district court's privilege determinations were correct and would be upheld even if reviewed on appeal. Rep. Perry does not even address these latter two shortcomings, let alone demonstrate a substantial likelihood that he will prevail despite them.

Rep. Perry also cannot demonstrate that he would suffer irreparable injury absent a stay or that the public interest supports a stay. Even if the district court erred with respect to some of its privilege determinations, Rep. Perry retains other protections—such as immunity for his legislative acts, the ability to preclude use of evidence of his legislative acts to obtain an indictment or conviction, and the right to refuse to testify about his legislative acts—that remain available to vindicate his Speech or Debate rights. Moreover, disclosure of a member's legislative acts does not necessarily harm a member, let alone

irreparably; many if not most of the legislative acts of members of Congress are publicly known. Finally, the public interest in the Government conducting its criminal investigation without disruptive delay weighs against a stay.

## I. Rep. Perry Fails to Demonstrate a Strong Likelihood of Prevailing on Appeal

Rep. Perry cannot prevail on appeal for at least four reasons. At a minimum, these four deficiencies foreclose Rep. Perry from making the strong showing of likely success needed to justify a stay.

### A. This Court Lacks Appellate Jurisdiction

This Court has appellate jurisdiction over "final decisions." 28 U.S.C. § 1291. This finality requirement is particularly important in criminal cases, where interlocutory appeals can impede the speedy and effective administration of the criminal-justice system. *United States v. Ryan*, 402 U.S. 530, 532-33 (1971); *see In re Sealed Case*, 716 F.3d 603, 609 (D.C. Cir. 2013).

The district court's order here is materially indistinguishable from orders directing a party to testify or produce documents to a grand jury, which are interlocutory and non-appealable. *In re Sealed Case*, 146 F.3d 881, 883 (D.C. Cir. 1998); *see In re Grand Jury Subpoenas*, 974 F.3d 842, 843-44 (8th Cir. 2020); *In re Grand Jury*, 705 F.3d 133, 142-43 (3d Cir. 2012). The exception for orders directing disinterested third parties to produce documents or testify, recognized

in *Perlman v. United States*, 247 U.S. 7 (1918), is inapplicable because the district court's order here is directed at the privilege holder, Rep. Perry. *See United States v. Williams Companies, Inc.*, 562 F.3d 387, 392 (D.C. Cir. 2009).

Perry contends (Stay Motion 10-12) that this Court may exercise jurisdiction under the collateral-order doctrine, but the Supreme Court has held that "the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege" because "[e]ffective appellate review can be had by other means." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 114 (2009). As the Court explained, a party aggrieved by a disclosure order can, among other things, challenge use of the material in the event of a trial and appeal, seek mandamus, or "defy a disclosure order and incur court-imposed sanctions." *Id.* at 111; *see id.* at 110-12. Although the Court acknowledged the "importance of the attorney-client privilege" and "full and frank" discussions between attorneys and clients, it explained that neither "the remote prospect of an erroneous disclosure order" nor the "timing of a possible appeal" will result in a "discernible chill." *Id.* at 108-10. The same considerations apply with equal force to disclosure orders adverse to the Speech or Debate Privilege, particularly in a criminal case, where the collateral-order doctrine is applied "with the utmost strictness," *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (citation and quotation marks omitted).

The exercise of jurisdiction in *Rayburn* does not support appellate jurisdiction here. *Rayburn* was decided before *Mohawk*, but regardless, *Rayburn* is inapposite. In *Rayburn*, the member claimed that the procedures used to search his congressional office violated his Speech or Debate rights and therefore all seized material—whether legislative or non-legislative—should be returned to him. 497 F.3d at 655. Here, the search of Rep. Perry's cell phone complied with the procedures approved in *Rayburn*, and he now seeks appellate review of the district court's privilege determinations with respect to over 2,000 records before they are disclosed to the Government. Thus, in contrast to the district court order in *Rayburn* upholding the constitutionality of the search of the member's congressional offices, *see In re Search of The Rayburn House Off. Bldg. Room No. 2113*, 432 F. Supp. 2d 100, 119 (D.D.C. 2006), the order here is indistinguishable from a non-appealable order compelling a grand jury witness to disclose material that the court determines is not privileged.

Rep. Perry's reliance (Stay Motion 9, 12) on *Helstoski v. Meanor*, 442 U.S. 500 (1979), is misplaced. *Helstoski* held that an order rejecting immunity for criminal liability under the Speech or Debate Clause and denying dismissal of an indictment is appealable. *Id.* at 506-08. As discussed, however, in addition to criminal immunity, the Speech or Debate Clause affords members an evidentiary use privilege and a testimonial privilege, *see Howard*, 720 F.3d at 946,

and not all orders addressing Speech or Debate claims are appealable in the same manner as orders denying immunity. In *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995), for example, this Court determined that although the denial of a motion to dismiss an indictment was appealable, *id.* at 309, the denial of a pretrial hearing to determine whether the Government would use privileged material at trial was not, *id.* at 312-13. Similarly, in *United States v. Renzi*, 651 F.3d 1012 (9th Cir. 2011), the court of appeals exercised jurisdiction over the district court's order denying immunity under the Speech or Debate Clause but not an order denying suppression of evidence. *Id.* at 1019. This Court's disclosure order is comparable to the non-appealable pretrial evidentiary rulings in *Rostenkowski* and *Renzi*. *See also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) (distinguishing denial of pre-trial dismissal on double-jeopardy grounds from "pretrial discovery orders," which are generally not appealable).

## B.     Rep. Perry Received the Protections Afforded by *Rayburn*

Even if the district court's order is appealable, Rep. Perry is not entitled to the relief he seeks—*i.e.*, this Court's review of the district court's privilege determinations with respect to 2,055 records. The district court's implementation of the *Rayburn*-compliant procedures in Attachment C, which included a privilege review before any documents would be disclosed to the

Government, protected any non-disclosure rights under the Speech or Debate Clause that Rep. Perry may possess under *Rayburn*.

"The question on appeal" in *Rayburn* was "whether the *procedures* under which the search was conducted were sufficiently protective of the legislative privilege created by the Speech or Debate Clause." 654 F.3d at 655 (emphasis added). This Court drew a distinction "between the lawfulness of searching a congressional office pursuant to a search warrant and the lawfulness of *the manner in which the search is executed* in view of the protections afforded against compelled disclosure of legislative materials by the Speech or Debate Clause." *Id.* at 661 (emphasis added). The court emphasized that the member had argued "only that the warrant *procedures* in this case were flawed because they afforded him no opportunity to assert the privilege before the Executive scoured his records." *Id.* at 662 (emphasis added).

Compliance with the procedures approved in *Rayburn* fully protects a member's non-disclosure privilege. The non-disclosure privilege recognized in *Rayburn* "protect[s] against disruption of the legislative process" by preventing the "chill" resulting from possible disclosure of "exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters." 497 F.3d at 661. Pre-disclosure privilege review by the district court pursuant to the *Rayburn*-approved protocol adequately avoids

"discernible chill" because when "deciding how freely to speak" with staff or other members, a member of Congress is "unlikely to focus on the remote prospect of an erroneous disclosure order." *Mohawk*, 558 U.S. at 110. And in the event of an erroneous determination, the member retains other protections: the ability to claim criminal or civil immunity, the right to prevent use of erroneously disclosed material in civil or criminal proceedings, and the right to avoid testifying about protected legislative acts. Nothing in *Rayburn* indicates that the Speech or Debate non-disclosure privilege also requires this Court's additional review of the 2,055 records on Rep. Perry's phone before their disclosure to the Government.

### C. The District Court's Privilege Determinations Were Correct

Even if this Court's review of the district court's privilege determinations were permitted, Rep. Perry cannot demonstrate a likelihood that he would establish error in those determinations. Although the Government does not yet have access to the 2,055 records that the district found were not privileged and therefore does not know their contents, the district court's discussion of governing law was correct, and its analysis was thorough and detailed.

The district court correctly determined that although activities by Rep. Perry integral to his conduct at the electoral-count proceedings at the joint session of Congress on January 6, 2021, were protected, his emails and texts

were not protected legislative acts merely because they could be characterized as somehow relating to that joint session. The Supreme Court has made clear that "[l]egislative acts are not all-encompassing," *Gravel*, 408 U.S. at 625, and that the Clause does not "include all things in any way related to the legislative process," *United States v. Brewster*, 408 U.S. 501, 516 (1972). "[T]here are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process," and adopting such a "sweeping reading" of the Clause would risk making "Members of Congress super-citizens, immune from criminal responsibility." *Id.* Accordingly, unprotected conduct includes, for example, efforts to "cajole" or "exhort" the Executive Branch, *Gravel*, 408 U.S. at 625; *see Hutchinson*, 443 U.S. at 121 n.10; promising to perform a future legislative act (such as voting for legislation), *Brewster*, 408 U.S. at 526; *see Helstoski*, 442 U.S. at 489; and the private publication of a book describing legislative conduct, *Gravel*, 408 U.S. at 622-24.

Consistent with these principles, as the district court correctly explained, "the Clause does not shield Rep. Perry's random musings with private individuals touting an expertise in cybersecurity, political discussions with attorneys from a presidential campaign, or conversations with state legislators concerning hearings before *them* about possible local election fraud or actions *they* could take to challenge election results in Pennsylvania, because those

communications are just 'casually or incidentally related to legislative affairs but not a part of the legislative process itself.'" ECF No. 25 at 30-31 (quoting *Brewster*, 408 U.S. at 528). Furthermore, Rep. Perry's strategizing about efforts to delay or subvert the electoral-vote count to keep his preferred presidential candidate in office amounted to conduct that was "political in nature rather than legislative" and therefore without "the protection afforded by the Speech or Debate Clause." *Brewster*, 408 U.S. at 512. As the district court found, for example, "a number of these communications relate to coordinating strategy and public relations efforts with Executive Branch officials or Trump Campaign officials." ECF No. 25 at 31. The court correctly determined that "[n]o matter the vigor with which Rep. Perry pursued his wide-ranging interest in bolstering his belief that the results of the 2020 election were somehow incorrect—even in the face of his own reelection—his informal inquiries into the legitimacy of those election results are closer to the activities described as purely personal or political in *Brewster*." *Id.* at 33.

The Court was also correct in rejecting any Speech or Debate privilege for Rep. Perry's communications coordinating with and prodding Executive Branch officials. ECF No. 25 at 48-41. The Supreme Court has repeatedly admonished that the Speech or Debate Clause "does not protect attempts to influence the conduct of executive agencies." *Proxmire*, 443 U.S. at 122 n.10

(1979); *see, e.g.*, *Doe v. McMillan*, 412 U.S. 306, 313 (1973). Although "Members of Congress are constantly in touch with the Executive Branch of the Government" to "cajole" or "exhort" them on policy matters, "such conduct . . . is not protected legislative activity." *Gravel*, 408 U.S. at 625.

Rep. Perry does not even argue that he is likely to establish on appeal that the district court's privilege determinations were erroneous (Stay Motion 9-14) and therefore he necessarily fails to demonstrate a substantial likelihood of success on the merits. To the extent he suggests (Stay Motion 3, 11-12) that the emails and texts reflected protected information-gathering for his legislative activity at the joint session of Congress on January 6, 2021, his arguments fall short. This Court has determined that investigations by members of Congress to obtain information may be protected under the Speech or Debate Clause if "performed in a procedurally regular fashion." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995). Thus, informal fact-gathering may be protected legislative activity under the Speech or Debate Clause if, for example, it is conducted in connection with an "inquiry by [a] particular subcommittee." *McSurely v. McClellan*, 553 F. 2d 1277, 1287 (D.C. Cir. 1976) (en banc) (per curiam). Other circuits have taken a broader view of the types of informal information-gathering that are protected by the Speech or Debate Clause, *see, e.g.*, *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 521 (3d Cir.1985),

but—for the reasons described above—the communications at issue here would be unprotected even under those standards.

### D. *Rayburn* Should Not Apply to Rep. Perry's Personal Cell Phone

Rep. Perry also fails to establish a likelihood of success on the merits because *Rayburn* does not apply to the search of his personal cell phone and therefore the procedures the district court employed were not constitutionally required. The *Rayburn* procedures are necessary when the Government has searched a "location where legislative materials were inevitably to be found," 497 F.3d at 661, and where the search disrupts the member's legislative activities, *see id.* at 665. Here, in contrast, the Government did not enter any congressional space or review any congressional records and instead seized Rep. Perry's personal cell phone for a few hours to make a forensic copy while he was on vacation and far from his office. Although legislative materials will inevitably be found in a member's congressional office, the same cannot necessarily be said of the member's personal cell phone, particularly where, as here, that phone is not connected to the member's congressional email accounts. *Rayburn* is therefore distinguishable, further foreclosing Rep. Perry from establishing a substantial likelihood of success.

## II.    Rep. Perry Fails to Demonstrate Irreparable Injury

Rep. Perry will not suffer irreparable injury if the documents are disclosed pursuant to the district court's order. Even after the documents are disclosed, Rep. Perry will retain the additional protections of the Speech or Debate Clause. He retains criminal immunity for his legislative acts; he can object to the use of evidence of his legislative acts; and he cannot be compelled to testify about his legislative acts. *See Howard*, 720 F.3d at 946. To the extent Rep. Perry contends (Stay Motion 16) that the district court's order goes beyond disclosure, he misunderstands and misconstrues the order. As the district court itself made clear, its order "was limited to the issue of non-disclosure," and Rep. Perry remains "free, at a minimum, to assert the Clause's privileges in the future if the government uses any of the 2,055 records against him in a criminal prosecution or tries to compel him to testify about his communications contained in these responsive records." ECF No. 31 at 8.

Rep. Perry contends (Stay Motion 16) that there would be "no possible remedy" if the documents were disclosed and he were to succeed on appeal. But although this Court may not be able to restore Rep. Perry "to the *status quo ante*," it "does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession." *Church of Scientology of California v. United States*, 506 U.S. 9, 12-13 (1992).

Moreover, disclosure of Rep. Perry's legislative acts alone does not irreparably harm him.[1] The legislative acts of members of Congress are regularly disclosed to the public. The Clause, unlike traditional confidentiality privileges such as the attorney-client privilege, protects public, non-confidential activities, like floor debates, committee hearings, votes, and the drafting of bills and committee reports. *See Gravel*, 408 U.S. at 624; *see also McMillan*, 412 U.S. at 311-313. "The core activity protected by the Clause—speech in either chamber of the Congress—is a public act," therefore, the Clause, "[i]n essence," promotes "the Member's ability to be open in debate—free from interference or restriction— rather than any secrecy right." *Rayburn*, 497 F.3d at 670 (Henderson, J., concurring). Members of Congress do not suffer irreparable injury by regular public disclosure of their legislative acts. Indeed, Rep. Perry's acknowledgement (ECF No. 27-1 at 11) that most, if not all, of the 2,055 emails and texts are in the possession of third-party recipients or senders, and that the Government is entitled to obtain the records from those third parties, "significantly undercut[s]" his claim that he will be irreparable injured by disclosing the records himself before any appeal. ECF No. 31 at 9.

---

[1] No other court of appeals recognizes a non-disclosure privilege under the Speech or Debate Clause, and two courts have expressly rejected a non-disclosure privilege. *See Renzi*, 651 F.3d at 1032 (9th Cir.); *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978).

### III. The Public Interest Weighs Against a Stay

The public interest strongly weighs against a stay. The Government has been unable to review the voluminous records from Rep. Perry's cell phone for almost five months since its seizure pursuant to a lawful warrant in August 2022. A stay would further delay the Government's investigatory progress in a case of significant national importance, "frustrat[ing] the public's interest in the fair and expeditious administration of the criminal laws." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 299 (1991) (citation and quotation marks omitted), and the Government's weighty interest in "avoiding procedural delays" in criminal investigations, *id.* at 302. Just as interlocutory appeals are disfavored "in criminal cases where encouragement of delay is fatal to the vindication of the criminal law," *Khadr v. United States*, 529 F.3d 1112, 1117 (D.C. Cir. 2008) (citations and quotation marks omitted), a stay pending an interlocutory appeal that delays and impedes the Government's investigation is similarly contrary to the public interest.

Rep. Perry contends (Stay Motion 15-16) that a stay is warranted because the Speech or Debate Clause serves important interests, and a stay would avoid chilling him from exercising his legislative responsibilities. But the procedures already followed pursuant to the *Rayburn*-compliant protocol have been highly respectful of Rep. Perry's Speech or Debate privilege, and those procedures

suffice to avoid any chill on the exercise of legitimate legislative activities. Also unavailing is Rep. Perry's contention (Stay Motion 18-19) that the public interest supports a stay because it will permit him time to solicit amicus participation by the House of Representatives. Rep. Perry has had months to "request that the [district court] grant access to the sealed proceedings in this case so that the General Counsel of the House of Representatives may directly represent Congress' institutional prerogatives," Stay Motion 18-19, but he has failed to do so, *see* ECF No. 31 at 11. The public interest does not support a stay that is necessitated by Rep. Perry's undue delay. To the contrary, any delay weighs against a stay. *Cf. Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay).

## CONCLUSION

The Court should deny the motion for a stay.

Respectfully submitted,
JACK SMITH
Special Counsel

By:    /s/ *John M. Pellettieri*
John M. Pellettieri
Assistant Special Counsel
██████████████████
████████████

- 23 -

**ADDENDUM**

**Certificate of Parties and Amici Curiae**

The parties that appeared in the district court and that are now before this Court are the United States and Representative Scott Perry. There are no amici curiae or intervenors.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this response satisfies the type-volume limitation in Fed. R. App. P. 27(d)(2)(A), because it contains 5,191 words. The foregoing also complies with the typeface and type-style requirements of Fed. R. App. P 32(a)(5) and Fed. R. App. P 32(a)(6) because it has been prepared in proportionally spaced, 14-point font serif typeface using Microsoft Word for Microsoft 365.

/s/ *John M. Pellettieri*
John M. Pellettieri
Assistant Special Counsel
███████████████
███████████

# CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for

the United States Court of Appeals for the District of Columbia Circuit via email

on January 9, 2023, before 4 p.m. I certify that service will be accomplished to

following counsel for Representative Scott Perry by email:

John S. Irving
E&W LAW, LLC
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com

John P. Rowley III
JPRowley Law PLLC
1701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. 20006
(202) 525-6674
john.rowley@jprowleylaw.com

/s/ *John M. Pellettieri*
John M. Pellettieri
Assistant Special Counsel
██████████████
██████████