# Attachment 9

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE
CELL PHONE OF REPRESENTATIVE SCOTT PERRY

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 22-sc-2144 (Under Seal)

**BRIEF OF APPELLANT**

John P. Rowley III
(D.C. Bar No. 392629)
JPRowley Law PLLC
1701 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
 (202) 525-6674
john.rowley@jprowleylaw.com

John S. Irving
(D.C. Bar No. 460068)
E&W LAW, LLC
1455 Pennsylvania Avenue, N.W.,
Suite 400
Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com

Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road N.W.
Washington, D.C.  20010

*Counsel for Appellant Scott G. Perry*

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………..………….…….…….…… i

TABLE OF AUTHORITIES …………………………...……..……..…... iii

INTRODUCTION ………………………………………...….……. 1

   I.  The Speech or Debate Clause …………..………………..……… 1

   II. Scott G. Perry, Congressman for
       Pennsylvania's 10th District …….………..…………………………... 3

STATEMENT OF JURISDICTION …………………...……….……. 5

STATEMENT OF THE ISSUES …………………………………...……. 5

STATEMENT OF THE CASE ……………………………...….……… 6

SUMMARY OF THE ARGUMENT ………………………...….…….... 11

ARGUMENT ……………………………………….……….…….. 12

   I.  This Court Has Jurisdiction Over the Constitutional
      Privileges and Immunities Presented in this Case …………...……….… 12

      A. The Order is a "Final Decision" for Purposes of this Appeal ...... 12

      B. The Collateral Order Doctrine Provides an Alternative
         Basis For Appellate Jurisdiction ……………………………….. 14

   II.  The Speech or Debate Clause Protects Informal Legislative
       Fact-Finding by Individual Members of Congress Regardless
       of Official Authorization…………………….…………………..… 16

   III. The Speech or Debate Clause's Non-Disclosure Privilege
        Extends to Communications Between Members of Congress,
        Private Parties, and Members of the Executive Branch........................ 22

i

IV.   The Speech or Debate Clause Protects Rep. Perry's
       Documents from Disclosure to the Government ........................... 25

       A. The District Court's Rationale ........................................ 26

       B. Rep. Perry's Communications were Legislative in Nature ........... 28

       C. Rep. Perry's Communications with "Cybersecurity
          Individuals," Trump Campaign Officials, Pennsylvania
          State Legislators, and Other Individuals ................................ 30

       D. Rep. Perry's Communications with Congressional
          Members and Staff ...................................................... 32

       E. Rep. Perry's Communications with Executive Branch Officials ..... 34

CONCLUSION ...................................................................... 35

CERTIFICATE OF COMPLIANCE ..................................................... 37

CERTIFICATE OF SERVICE ........................................................ 38

# TABLE OF AUTHORITIES

**Cases:**

*Abney v. United States,*
431 U.S. 651 (1977) …………………………………………………… 14, 16

*Ass'n of Am. Physicians & Surgeons v. Schiff,*
518 F. Supp. 3d 505 (D.D.C. 2021) ………………………………...……… 17

*Bogan v. Scott-Harris,*
523 U.S. 44 (1998) …………………………………………………...….. 17, 21

*Brown & Williamson Tobacco Corp. v. Williams,*
62 F.3d 408 (D.C. Cir. 1995). …………………………………...…. 1, 21

*Brown Shoe Co. v. United States,*
370 U.S. 294 (1962) …………………………………………….……..… 12

*Budinich v. Becton Dickinson and Co.,*
486 U.S. 196 (1988) …………………………………………….……… 12

*Catlin v. United States,*
324 U.S. 229 (1945) …………………………………………….……… 12

*Coffin v. Coffin,*
4 Mass. 1 (1808) …………………………………………...………… 18

*Cohen v. Beneficial Industrial Loan Corp.,*
337 U.S. 541 (1949) ……………………………………….…………. 1, 14

*Coopers & Lybrand v. Livesay,*
437 U.S. 463(1978) …………………………………………...……. 1, 14

*Doe v. McMillan,*
412 U.S. 306 (1973) …………………………….…………………. 2, 21

*Dombrowski v. Eastland,*
387 U.S. 82 (1967) …………………………………...…….…………… 16

*Eastland v. U.S. Servicemen's Fund,*
421 U.S. 491 (1975) …………………………………………… 15, 16, 18

*Gov't of the Virgin Islands v. Lee,*
775 F.2d 514 (3d Cir. 1985) ………………………...…………..… 20

*Gravel v. United States,*
408 U.S. 606 (1972) …………………….…………………….………. *passim*

*Helstoski v. Meanor,*
442 U.S. 500 (1979) …………………………...………..……… 15, 16

*In re Graham,*
__ F.Supp. 3d __, 2022 WL 13692834 (Sept 1, 2022) …………..………… 3, 20

*In re Grand Jury Investigation Into Possible Violations of Title 18,*
587 F.2d 589 (3rd Cir. 1978) ……………………...…………..…… 19

*Jewish War Veterans v. Gates,*
506 F.Supp. 2d 30 (D.D.C. 2007) ……………………………………… 2, 18

*Kent v. Ohio House of Representatives Democratic Caucus,*
33 F.4th 359 (6th Cir. 2022) ………………………………………… 18

*Kilbourn v. Thompson,*
103 U.S. 168 (1880) ………………………………………………… 18

*McSurely v. McClellan,*
553 F.2d 1277 (D.C. Cir. 1976)
…………………………………………………...… 2, 18, 19, 22

*Pentagen Tech. Int'l, Ltd v. Comm. On Appropriations,*
20 F.Supp. 2d 41 (D.D.C. 1998) ……………………...………… 2, 18

*Shilling v. Speaker of the U.S. House of Representatives,*
No. 22-cv-00162,  (D.D.C Oct. 3, 2022) …………………...………… 1

*Tavoulareas v. Piro,*
93 F.R.D. 11 (D.D.C. 1981) ………………………………………… 19

iv

*Tenney v. Brandhove,*
  341 U.S. 367 (1951) ………………………………...……….....………. 16

*United States v. Biaggi,*
  853 F.2d 89 (2d Cir. 1988) …………………………….....…………… 2, 18

*United States v. Brewster,*
  408 U.S. 501 (1972) …………………………….....…….….………17, 24, 28

*United States v. Johnson,*
  383 U.S. 169 (1966) …………………………….....….………. 16, 23

*United States v. Rayburn House Office Building,*
*Room 2113, Washington, D.C. 20515,*
  497 F.3d 654 (D.C. Cir. 2007) ………………….....……....…………. 1, 11

*United States, v. Rostenkowski,*
  59 F.3d 1291 (DC Cir. 1995) ……………………….….…………16

## Statutes & Other Authorities:

U.S. Const., Art 1 § 6, cl.1 …………………………………………..… *passim*

U.S. Const. amend XII ………………………………………………. 4

3 U.S.C. § 15 ………………………………………………………. 4

28 U.S.C. § 1291 …………………………………………………….. 5

28 U.S.C. § 1331 ………………………………………………....… 12

Memorandum of Points and Authorities in Support of
Motion to Dismiss at 20-23, *Assoc. of American Physicians*
*& Surgeons et al v. Congressman Adam Schiff,*
No. 20-cv-00106 (D.D.C June 26, 2020) ……………………………..… 2

# INTRODUCTION

## I.    The Speech or Debate Clause.

The Constitution's Speech or Debate Clause provides that "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other place." U.S. CONST. art. 1 § 6, cl.1. The Supreme Court has explained that the Clause "was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v. United States*, 408 U.S. 606, 616 (1972).

In extending that reasoning to include an absolute non-disclosure privilege in addition to a testimonial privilege, this Court has held that "the purpose of the Speech or Debate Clause is to ensure that the legislative function the Constitution allocates to Congress may be performed independently, without regard to the distractions of private civil litigation or the periods of criminal prosecution." *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007) quoting *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995).

The D.C. Circuit recently reiterated these principles in a civil lawsuit that sought emails and other information from the House of Representatives related to the Committee on Oversight and Reform's work on climate change. Memorandum Opinion, *Shilling v. Speaker of the U.S. House of Representatives*, No. 22-cv-00162,

(Oct. 3, 2022). In granting the House's motion to dismiss, the Court explained that the thrust of decisions by the Supreme Court is clear: "legislators and their aides have absolute immunity from compelled disclosure or testimony related to legislative activity." *Id*. at 11. As to what is meant by "legislative activity," the Court explained that "the Clause covers activities that are an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings … [and that] [t]he immunity attaches even though [the] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Id*. at 13 quoting *Gravel*, 408 U.S. at 625, and *Doe v. McMillan*, 412 U.S. 306, 312-313 (1973) (internal quotation marks omitted).

Information gathering by Members of Congress that is part of, in connection with, or in aide of a legitimate legislative act is protected by the Speech or Debate Clause, even where it is an informal effort undertaken by an individual Member of Congress or his or her staff. *See McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976); *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007); *Pentagen Tech. Int'l, Ltd v. Comm. On Appropriations*, 20 F. Supp. 2d 41, 44 (D.D.C. 1998). *See also United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988); Memorandum of Points and Authorities in Support of Motion to Dismiss at 20-23, *Assoc. of American Physicians & Surgeons et al v. Congressman Adam*

*Schiff*, No. 20-cv-00106 (June 26, 2020); *In re Graham,* __ F. Supp. 3d __, 2022 WL 13692834 (Sept 1, 2022).

## II.     Scott G. Perry, Congressman for Pennsylvania's 10ᵗʰ District.

Appellant, Representative Scott G. Perry ("Rep. Perry"), has been a Member of Congress since 2013, initially representing Pennsylvania's Fourth District, and currently its newly redistricted Tenth District. He serves on the House Committee on Transportation & Infrastructure and on the House Committee on Foreign Affairs. He previously served for three terms on the House Committee on Homeland Security, which has jurisdiction over election issues, and he sought the position of Ranking Member of that Committee in January 2021.[1]

Following the contested Presidential election on November 3, 2020, Rep. Perry received allegations from sources, both within and outside the government, that the election had been compromised. In response to those allegations, and prior

---

[1] Rep. Perry is also a member of, and the recently elected Chairman for, the House Freedom Caucus, whose mission is "to give a voice to countless Americans who feel that Washington does not represent them. We support open, accountable and limited government, the Constitution and the Rule of Law, and policies that promote the liberty, safety and prosperity of all Americans." Prior to his election to Congress, Rep. Perry served in the United States military for nearly forty years, rising from the enlisted ranks to Brigadier General and the Assistant Division Commander of the 28ᵗʰ Infantry Division. His duties during those nearly four decades of military service included briefings and communications with members of the intelligence community about threats to the United States at home and abroad. As a Member of Congress, Rep. Perry voted on January 6, 2021, to reject Pennsylvania's electoral votes in the 2020 Presidential election.

to the January 6, 2021, certification of the election pursuant to the Twelfth Amendment to the U. S. Constitution and the Electoral Count Act, 3 U.S.C. § 15 ("ECA"), Rep. Perry undertook an information gathering effort to inform his deliberations concerning the electoral certification, the legal challenges he anticipated by certain states during the joint session of Congress, and other election security matters.

It was in connection with his deliberations, debate and vote on these objections, and his concern about the security of future elections, that he requested and received information on these subjects, which were within the sphere of his legislative responsibilities as a Member of Congress. Rep. Perry's information-gathering efforts were "an integral part of the deliberative and communicative processes by which Members participate in House proceedings" even though they were not part of a formally authorized congressional investigation.

In August 2022, the Government obtained warrants to seize and search Rep. Perry's cell phone. Pursuant to the procedures required by this Court in *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007) (Appx.[2] JA28-30), Rep. Perry asserted that the email and text messaging that resided on his phone are protected by Speech or Debate privilege and cannot be subject to compelled disclosure to the Government without violating the

---

[2] "Appx." refers to the Joint Appendix filed by the parties.

separation of powers between the Legislative and Executive Branches. The district court determined in its December 28, 2022, memorandum opinion and order ("Order") (Appx. JA144 & 189) that 161 of the 2,219 records on Rep. Perry's cell phone are protected by the Speech or Debate Clause, directed that he provide three of the records to the Government in redacted form, and ordered that he disclose the remaining 2,055 records. Rep. Perry appeals from that Order.

## STATEMENT OF JURISDICTION

The Order compels Rep. Perry to disclose to the Executive Branch communications that are presumptively privileged under the Speech or Debate Clause. It is a final decision concerning the privileges and immunities he holds as a Member of Congress. It therefore is appealable as a "final decision" under 28 U.S.C. § 1291. In the alternative, if this Court were to conclude that the Order does not have all of the elements of finality required by § 1291, appellate jurisdiction still appropriately rests on the collateral order doctrine. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–547 (1949).

## STATEMENT OF THE ISSUES

(1)   Whether this Court has jurisdiction under 28 U.S.C. § 1291, the collateral order doctrine, mandamus, or some other theory;

(2) Whether the Speech or Debate Clause of the Constitution protects informal legislative fact-finding by individual Members of Congress in the absence of official authorization;

(3) Whether the Speech or Debate Clause's non-disclosure privilege extends to communications between Members of Congress and either private parties or members of the Executive Branch; and

(4) Whether specific communications on Rep. Perry's cell phone, or categories of those records, are protected under the governing legal standards, including those identified by the district court.

## STATEMENT OF THE CASE

On August 2, 2022, U.S. Magistrate Judge Susan E. Schwab of the United States District Court for the Middle District of Pennsylvania issued a warrant authorizing the seizure of Rep. Perry's cellular telephone. On August 9, 2022, Special Agents from the Federal Bureau of Investigation executed the warrant by seizing the phone and creating a forensic image of it. They then returned the physical phone to Rep. Perry.

On August 18, 2022, Rep. Perry filed an emergency motion for the return of seized property and for injunctive relief in U.S. District Court for the District of Columbia (Case Number 1:22-MC-00079), requesting an opportunity pursuant to *United States v. Rayburn House Office Building, Room 2113, Washington, D.C.*

*20515*, 497 F.3d 654 (D.C. Cir. 2007) to review the email and text messaging records on his phone prior to their disclosure to the Government. On the same date, the Government obtained a second search warrant under seal (D.D.C. Case No. 22-SC-2144) which authorized it to review the cell phone records subject to a process similar to that proposed by Rep. Perry in his motion. Under the warrant, Rep. Perry had 30 days to review the communications on the phone and provide the Government with a log of all records he asserted were subject to Speech or Debate privilege. The Government would then, as needed, request that the district court review those records and make a final determination as to whether the records contained privileged information.[3]

On October 5, 2022, counsel for Rep. Perry moved for additional time to review the extensive information contained in the forensic image of his phone (Appx. JA001). The Government filed an opposition to that motion, and Rep. Perry replied on October 13, 2022. On October 14, 2022, the district court issued a Minute Order directing counsel for Rep. Perry to provide additional details about the number of records on the phone and the progress of the review, which counsel did on October 17, 2022.

---

[3] After the Government advised counsel for Rep. Perry of the second search warrant, counsel moved on August 24, 2022, to have his emergency motion in Case No. 22-MC-00079 held in abeyance. The Court granted that motion and later, on October 27, 2022, granted Rep. Perry's motion to dismiss his motion without prejudice.

The parties appeared before the district court on October 18, 2022, and the court issued a Minute Order on that date setting forth a schedule for Rep. Perry to complete his review and for the Government to advise the court as to which of the records identified as privileged it wished the court to review. Pursuant to that order, on October 18, October 25, October 28, November 4, and November 11, 2022, counsel for Rep. Perry provided the Government with (a) privilege logs for the documents that asserted to be privileged under the Speech or Debate Clause and (b) document productions for those records not subject to a claim of privilege. Also pursuant to the court's order, the Government filed on October 27, 2022, a Brief Regarding the Inapplicability of the Speech or Debate Clause to Materials Seized from Rep. Perry (Appx. JA0065).

The Government requested that the district court review all the documents over which Rep. Perry asserted privilege arguing, essentially, that it was unable to narrow its request because it was unable to review the information. Rep. Perry responded in a filing on October 31, 2022 (Appx. JA082) and provided the court with an *ex parte* explanation of the communications over which he asserted privilege, as well as the facts surrounding those communications, to provide the court with context necessary to make its privilege determinations. On November 2, 2022, the Government filed its Reply (Appx. JA094).

On November 4, 2022, the court issued a Memorandum Opinion and Order (Appx. JA106) that, *inter alia*, set forth the logistics for counsel for Rep. Perry to provide the documents to the court for review and which directed counsel to submit a motion for withholding records they deemed subject to Speech or Debate privilege. On November 15, 2022, the Government filed objections to Rep. Perry's Speech or Debate assertions and requested the district court's review (Appx. JA119).

On November 15, 2022, Rep. Perry submitted an unopposed request to modify the court's order (Appx. JA123), which the court granted in part on November 16, 2022, directing Rep. Perry to provide an Excel spreadsheet listing the documents he asserted are privileged, pdf copies of those documents, and a motion for nondisclosure to the Government. The court further required Rep. Perry to explain the key topics under discussion in the communications and provide the basis for his assertion of privilege for each topic.

Pursuant to the district court's modified order, Rep. Perry filed a Motion for Nondisclosure to the Executive Branch of Information Protected by the Speech or Debate Clause of the United States Constitution on November 28, 2022, and provided the court with 2,219 documents for *in camera* review (Appx. JA132). On December 28, 2022, the court granted that motion, in part, agreeing that 161 of the 2,219 documents were protected from disclosure by the Speech or Debate Clause and controlling precedent in this Circuit (Appx. JA144).

The Order directed Rep. Perry to provide three of the 2,219 records to the Government in redacted form, denied his motion as to 2,055 of the records, and ordered him to disclose those records to the Government by January 5, 2023. On December 28, 2022, the district court issued a memorandum opinion in support of its Order (Appx. JA189), which stated that for the Clause to apply to Rep. Perry's communications, his fact-finding inquiries had to be "[]tethered to a formally sanctioned congressional inquiry" (Appx. JA209-210).

On December 30, 2022, Rep. Perry filed a Notice of Appeal (Appx. JA240) and an Emergency Motion to Stay (Appx. JA242 & 244) in the district court seeking a stay of its Order pending appeal. The Government filed its Opposition on January 3, 2023 (Appx. JA257), and Rep. Perry filed his Reply on January 4, 2023 (Appx. JA273). On January 4, 2023, the district court denied Rep. Perry's Emergency Motion and request for an extension of time until January 6, 2023, at 5:00 PM to allow him the opportunity to file an Emergency Motion to Stay with this Court (Appx. JA283).

On January 5, 2023, Rep. Perry filed an emergency motion that asked this Court to stay the district court's release of the 2,055 records to the Government. On the same date, this Court administratively stayed the district court's December 28, 2022, Order and directed the Government to respond to Rep. Perry's emergency motion for a stay by January 9, 2023, and that any reply by Rep. Perry be filed by

January 12, 2023. On January 25, 2023, this Court dissolved its administrative stay, granted Rep. Perry's motion to stay insofar as the district court's Order denied his motion to withhold records, and issued its briefing schedule.

## SUMMARY OF THE ARGMENT

The Speech or Debate Clause of the United States Constitution, U.S. CONST. art. 1 § 6, cl.1, protects from compelled disclosure to the Government the fact-gathering communications that Rep. Perry conducted, as a Member of Congress, to inform his legislative actions. Contrary to the district court's decision, the privilege applies to those communications irrespective of whether his efforts were "tethered" to a formally sanctioned congressional inquiry. As such, the Clause's non-disclosure privilege that this Court recognized in *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007) extends to the communications Rep. Perry had with other Members of Congress, private parties, and members of the Executive Branch. Accordingly, the district court erred when it ordered him to disclose to the Government the cellphone records that comprise these communications.

# ARGUMENT

## I.     This Court Has Jurisdiction to Review the Constitutional Privileges and Immunities Presented in this Case.[4]

### A.     The Order is a "Final Decision" for Purposes of this Appeal.

The district court's Order is a "final decision" under 28 U.S.C. § 1291, which provides this Court with jurisdiction over this appeal. "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233 (1945). Even if a question remains to be decided after an order ends litigation on the merits, that does not prevent the finality of the order if its resolution will not alter the order or moot or revise decisions embodied in the order. *See e.g. Budinich v. Becton Dickinson and Co.,* 486 U.S. 196 (1988); *Brown Shoe Co. v. United States,* 370 U.S. 294, 308–309 (1962).

The district court's findings regarding Speech or Debate privilege ended the litigation between Rep. Perry and the Government and, had the Order not been stayed by this Court, would have compelled Rep. Perry to provide the Government with access to the communications that informed his vote to certify the results of

---

[4] The district court had original jurisdiction of this case and controversy because the action arose under the Constitution of the United States. 28 U.S.C. § 1331.

the 2020 Presidential election,[5] and gather information to ensure the integrity of our future elections. This included H.R. 1, the "For the People Act" which, had it passed Congress and been signed into law, would have nationalized elections and codified many of the emergency measures that some states had put in place during the Covid-19 pandemic.

Although the court's findings are limited to the issue of *disclosure* of Rep. Perry's communications, rather than their potential *use* against him in any subsequent proceeding (*see e.g.,* Appx. JA290), the ruling is a final decision concerning the constitutional issues considered by the district court. If the Order is allowed to stand, the Government will have access to the content of private email and text messaging by a Member of Congress without any restrictions on how that information may be derivatively used.

Any question that remains about the Government's potential future *use* of Rep. Perry's communications does not affect the finality of the Order with respect to the compelled *disclosure* to the Executive Branch. Further, the district court's determination that certain communications are not protected by the Speech or Debate Clause for purposes of disclosure inherently requires the same conclusion

---

[5] The district court agreed that Rep. Perry's communications with other Members and staff about his decision to cast a vote in favor or against procedures on the House floor, including those involving how and when a Member should speak, are privileged (Appx. JA229).

as to the Government's potential *use* of those materials. The district court has decided the scope of the Speech or Debate privilege and granted access to the Government for communications it deemed non-privileged. The Order disposed of Rep. Perry's claims of privilege under the Clause and is a "final decision" which provides this Court with jurisdiction under 28 U.S.C. § 1291.

### B. The Collateral Order Doctrine Provides an Alternate Basis for Appellate Jurisdiction.

This Court also has jurisdiction under the "collateral order doctrine." Although the right to appeal is primarily a creature of statute, the Supreme Court has interpreted § 1291[6] to permit departures from the rule of finality in cases falling within the collateral order exception delineated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47 (1949). To qualify for the exception, such orders must "conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) citing *Abney v. United States,* 431 U.S. 651, 658 (1977) (pretrial order rejecting a claim of double jeopardy constitutes a "final decision" satisfying the jurisdictional prerequisites of § 1291).

---

[6] "The courts of appeal … shall have jurisdiction of appeals from all final decisions of the district courts of the United States …"

The Order thereby "conclusively" determined the parameters of Rep. Perry's claims of Speech or Debate privilege and, had it not been stayed by this Court, would have allowed the Government to obtain records of 2,055 cell phone communications that are presumptively privileged. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975) (When "Members are acting within the legitimate legislative sphere[,] the Speech or Debate Clause is an absolute bar to interference" and is applied "broadly to effectuate its purposes.").

The constitutional issues involved in this case are "completely separate" from the merits of whatever the Government may be investigating about the 2020 Presidential election and the district court's decision would have voided the privilege and rendered the disclosure of the communications "effectively unreviewable". Moreover, providing the Government with compelled access to the records would have violated the Speech or Debate privilege without any recourse by Rep. Perry for restoring the immunities bestowed on him as a Member of Congress.

The Supreme Court has long recognized both the constitutional significance of the privilege and the importance of protecting it by means of appellate review. For example, in *Helstoski v. Meanor*, 442 U.S. 500 (1979), the Court held that a Member of Congress could take an interlocutory appeal in a criminal case to assert the immunity conferred upon him by the Speech or Debate Clause. In so doing, the Court stated that "[c]rucial to the holding was our view that the Speech or Debate

Clause protected Congressmen 'not only from the consequences of litigation's results but also from the burden of defending themselves.'" *Id.* at 508, quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967). *See also, United States, v. Rostenkowski,* 59 F.3d 1291, 1297 (DC Cir. 1995) ("because the order in question self-evidently satisfies the first two requirements of *Cohen,* it is subject to immediate appeal under the collateral order doctrine.")

The district court's Order denying Rep. Perry's Speech or Debate protection, like a pretrial order rejecting a claim of double jeopardy, constitutes a "complete, formal . . . final rejection" of a Member's speech or debate rights just as a claim of double jeopardy does. *Abney,* 431 U.S. at 659; *Helstoski*, 442 U.S. at 506. This Court has jurisdiction over this appeal and Rep. Perry is entitled to have it review the important constitutional issues presented.

## II. The Speech or Debate Clause Protects Informal Legislative Fact-Finding by Individual Members of Congress Regardless of Official Authorization.

The Supreme Court has interpreted the Speech or Debate Clause "broadly to effectuate its purposes[.]" *United States v. Johnson,* 383 U.S. 169, 180 (1966). Once it is determined that a Member of Congress is acting within the "legitimate legislative sphere," the Speech or Debate Clause is an absolute bar to interference. *See Eastland,* 421 U.S. at 503; *Tenney v. Brandhove,* 341 U.S. 367, 376 (1951). In evaluating the reach of the privilege, the primary inquiry is whether the Member's

actions were "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel v. United State*s, 408 U.S. 606, 625 (1972). Courts will not look into a Member's motivation for legislative acts. *United States v. Brewster,* 408 U.S. 501, 525 (1972). Whether an act is legislative, and thus confers absolute immunity, turns on the *nature of the act*, rather than on the motive or intent of the official performing it. *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998) (Emphasis added).

The Speech or Debate Clause immunizes a legislator from being "questioned" about "acts that occur in the regular course of the legislative process and [] the motivation for those acts." *Eastland,* 421 U.S. at 508. These protected "legislative acts" include formal and informal fact-finding, and efforts to help inform consideration of an upcoming vote. *See id.; see also, e.g., Ass'n of Am. Physicians & Surgeons v. Schiff,* 518 F. Supp. 3d 505, 517-19 (D.D.C. 2021) (collecting cases), aff'd, 23 F.4th 1028 (D.C. Cir. 2022).

The text of the Clause makes no mention at all of any formality requirement. It refers neither to resolutions, nor to subcommittees, nor to subpoenas—but instead states simply that "Senators and Representatives … shall not be questioned in any other place" "for any Speech or Debate in either House." U.S. CONST. art. I, § 6, cl. 1. It refers to individuals, that is, "Senators and Representatives," which means that an individual Member's investigation is immunized so long as his investigation

qualifies as "Speech or Debate"—which, under binding precedent, it does. *See Eastland*, 421 U.S. at 504.

This is also how legislative immunity has been historically understood: "not so much the privilege of the House, as an organized body, [but] of each individual Member composing it," and extending to "every thing said or done by him, as a representative, in the exercise of the functions of that office." *Coffin v. Coffin,* 4 Mass. 1, 27 (1808); *see Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880) (calling *Coffin* "the most authoritative case in this country on the construction of the provision"); *see also Kent v. Ohio House of Representatives Democratic Caucus,* 33 F.4th 359, 363–65 (6th Cir. 2022) (collecting other cases of the immunity's original meaning).

Contrary to the district court's ruling, there is no judicially established requirement that a Member's activities be "congressionally authorized" by formal resolution as part of an investigation conducted by a committee.[7] *See McSurely,* 553 F.2d at 1286; *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007); *Pentagen Tech. Int'l, Ltd v. Comm. On Appropriations*, 20 F. Supp. 2d 41, 44 (D.D.C. 1998). *See also United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir.

---

[7] If this were not the case, only Members in the majority party would be eligible for Speech or Debate protections over communication conducted during formal majority-authorized fact finding and investigations.

1988), and *Tavoulareas v. Piro,* 93 F.R.D. 11, 18 (D.D.C. 1981) (information gathering by a Member of Congress for use in the legislative process is within the protected legislative sphere). The court is mistaken that for the privilege to apply to "field investigations" by a Member of Congress, the inquiry must have been *congressionally authorized* (Appx. JA210) (citing *McSurely* at 1286-88) (Emphasis added). This misstates *McSurely's* rationale, which is based on the Supreme Court's requirement that such activities only be "an integral part of the deliberative (or) communicative processes by which Members participate in committee and House proceedings." *Gravel v. United Stat*es, 408 U.S. 606, 625 (1972).

A Member of Congress' "participation in House proceedings" is not restricted to "congressionally authorized" activities. The privilege arises from a Representative's *status* as a Member of Congress. It is not, as the district court believed, "tethered" to formally sanctioned congressional inquiry (Appx. JA209). "[The Speech or Debate] privilege, although of great institutional interest to the House as a whole, is also personal to each Member." *In re Grand Jury Investigation Into Possible Violations of Title 18,* 587 F.2d 589 (3rd Cir. 1978). Accordingly, the obligations a Representative has to conduct the responsibilities of his or her office impart to the Member the privileges and immunities guaranteed by the Speech or Debate Clause.

Rep. Perry's information-gathering activities are similar to those undertaken by Senator Lindsey Graham in *In re Graham*, __ F. Supp. 3d __, 2022 WL 13692834 (Sept 1, 2022). There, the Senator challenged the issuance of a subpoena by a special grand jury in the State of Georgia on the grounds that his telephone conversations discussing allegations of voter fraud were privileged under the Speech or Debate Clause. Senator Graham asserted that his conversations comprised investigatory fact-finding related to the decision he was called upon to make for the certification of the results of the 2020 presidential election. The court considered the Senator's claim and concluded that, under certain circumstances, such informal fact-finding by individual Members of Congress may constitute legitimate legislative activity within the protections of the Speech or Debate. *Id.*[8] Applying that standard, the Georgia district court quashed the subpoena to the extent that the Senator's conversations involved legislative fact-finding.

The district court in this case determined that even if Rep. Perry's information gathering constituted legitimate legislative activity, he is not entitled to protection under the Clause because his efforts were not undertaken as "authorized

---

[8] The court concluded that "[t]hus, while actions pursuant to a formally authorized congressional investigation would presumably always fall within the sphere of legitimate legislative activity, the fact that a Member's individual investigative efforts may not be tied to an official congressional inquiry does not necessarily mean that such an investigation is per se non-legislative." (citing *Gov't of the Virgin Islands v. Lee,* 775 F.2d 514, 520-21 (3d Cir. 1985, which held that legislative immunity should apply to fact-finding and information gathering).

congressional inquiry" (Appx. JA210). While some precedent suggests that an individual Member's activities must be performed "in a procedurally regular fashion", *see Brown & Williamson Tobacco Corp.,* 62 F. 3d at 416, that does not mean that individual fact-finding can never qualify for the privilege. The key requirement for the Clause to apply is that the Member's efforts must be within the "sphere of legitimate legislative" activity. *Doe v. McMillian,* 412 U.S. 306, 312 (1973). The Clause's immunity turns only on "the question whether, stripped of all considerations of intent and motive, [the Member's] actions were legislative", *Bogan v. Scott-Harris,* 523 U.S. 44, 54-55 (1998), not whether they were authorized by a formally sanctioned congressional inquiry.

Requiring Congressman Perry to seek official authorization for his fact-finding activities as a condition to recognizing Speech of Debate immunity, particularly given the antipathy of the then-House majority to support or condone examination of issues in the 2020 Presidential election,[9] would have eviscerated the Clause and permitted the majority to impermissibly divest him of its protections. An individual Congressman's responsibilities to his office, and his constituents,

---

[9] The majority's antipathy and effort to chill Congressman Perry's performance of information gathering is perhaps best illustrated by the January 6th House Select Committee's issuance of a subpoena to Rep. Perry and other Republican Members regarding those activities.

regarding legislative fact-finding does not depend on receiving permission from the party that happens to be in the majority at any given time.

### III. The Speech or Debate Clause's Non-Disclosure Privilege Extends to Communications Between Members of Congress, Private Parties, and Members of the Executive Branch.

The protections of the Speech or Debate Clause extend to communications between Members of Congress, private parties, and members of the Executive Branch where those communications fall within the "sphere of legitimate legislative activity" – *i.e.*, where they are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel,* 408 U.S. at 624-625. In affirming the Clause's protection of investigative activity, the Supreme Court explained as follows:

> … information gathering … is essential to informed deliberation over proposed legislation . . . . A congressman cannot subpoena material unless he has enough threshold information to know where, to whom, or for what documents he should direct a subpoena. The acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties properly.

*McSurely*, 553 U.S. at 1286-87. Thus, a *per se* exclusion of the Clause's protections to a Member's communications from any source of information would severely, and unconstitutionally, limit the ability of Members of Congress to gather information they need to perform their legislative functions.

The district court, however, categorically rejected Rep. Perry's communications with Executive Branch officials. The court explained that "cajol[ing] and exhort[ing]" executive branch officials, while generally done by Members of Congress, "is not protected legislative activity" (Appx. JA238) quoting *Gravel*, 408 U.S. at 625. It went on to hold that, "If Rep. Perry was purely gathering information, he would not have been "attempt[ing] to influence the conduct of executive" branch officials and encouraging them to engage in efforts to challenge the legitimacy of the 2020 election." *Id.*

While Rep. Perry acknowledges that "[l]egislative acts are not all-encompassing," *Gravel,* 408 at 625, his interactions with executive branch officials are distinguishable from the type of "cajoling and exhorting" referred to in *Gravel*, which cites *United States v. Johnson*, 383 U.S. 169, 172 (1965), for the proposition that:

> No argument is made, nor do we think it could be successfully contended, that the Speech or Debate Clause reaches conduct, such as was involved in the attempt to influence the Department of Justice *that is in no wise related to the due functioning of the legislative process*.

*Gravel* at 625 (emphasis added).

*Johnson* involved a criminal conspiracy prosecution where two Members of Congress accepted bribes in return for "exert[ing] influence on the Department of Justice to obtain the dismissal of pending indictments of the loan company and its officers on mail fraud charges" by "approach[ing] the Attorney General and the

Assistant Attorney General in charge of the Criminal Division and urg[ing] them 'to review' the indictment." *Johnson,* 383 U.S. at 171-72. That conduct was "in no wise related to the due functioning of the legislative process." *Id.*; *see also United States v. Brewster*, 408 U.S. 501, 526 (1972) ("taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act. It is not, by any conceivable interpretation, an act performed as a part of or even incidental to the role of a legislator.")

*Gravel* did not involve communications between a Member of Congress and the Executive Branch. Rather, it discussed *Johnson* as an example of how "the Clause has not been extended beyond the legislative sphere," and why performing official acts "[does] not necessarily make all such acts legislative in nature." *Id.* at 625. In holding that the Clause did protect either the Member of Congress or his aide, with respect to the Member's disclosure of the classified Pentagon Papers in a committee hearing (but not with respect to their later private publication), the Supreme Court recognized that the Clause *does* protect a Member's actions that are "an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either house." *Id.*

The extent to which the Clause protects Rep. Perry's communications with private parties and state legislators in Pennsylvania similarly turns on the purpose of those communications and whether they were "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings." *Gravel* at 625. By categorically rejecting those communications, the district court adopted an impermissibly narrow view of the Clause's purpose and protection.

### IV. The Speech or Debate Clause Protects Rep. Perry's Documents from Compelled Disclosure to the Government.

Rep. Perry asserted Speech or Debate Clause protection over 2,219 documents, which he  provided to the district court for in *camera* review. On December 28, 2022, the district court issued an Order and Memorandum Opinion (Appx. JA144 & 189) which concluded that 2,055 of the 2,219 records are not protected by the Clause, that 161 of the 2,219 records are protected, and that three of the 2,219 records should be disclosed to the Government with redactions (Appx. JA191-92). Quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972), the district court held that:

> Only 164 responsive records containing communications exclusively with Members of Congress and legislative staff reflect an "integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the

jurisdiction of either House," . . . and thereby qualify for the Clause's
protection, in whole or in part.

(Appx. JA199).

A. **The District Court's Rationale.**

The district court described three general categories of activities that it
concluded are not privileged: (1) conduct that is only tangentially related, but not
"necessary or integral," to official legislative action; (2) general political activities;
and (3) "a Member's informal investigative efforts or fact-finding inquiries
untethered to a formally sanctioned congressional inquiry" (Appx. JA206-209).

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████It also rejected Rep. Perry's privilege
claims regarding his communications with "Cybersecurity Individuals" (Rep.
Perry's description of various individuals with whom he communicated about
security issues in the 2020 election), Executive Branch Officials, Trump Campaign
Officials, and members of the Pennsylvania State Legislature (Appx. JA216-239).
The court characterized the majority of these communications as "extra-legislative

██ ████████████████████████████

communications that are only tangential to matters coming before the Congress . . ." (Appx. JA199).

The court did not provide an analysis of each record. Instead, it evaluated the categories of communications identified by Rep. Perry and cited specific documents as examples. As discussed above, Rep. Perry respectfully disagrees with the district court's conclusion that the Speech or Debate Clause only protects communications that "arise in connection with [a] sanctioned, formal congressional investigation conducted by any committee or other House arm" (Appx. JA215), and that the Clause does not protect a Member's "informal" investigative efforts absent a direct "tethering" to a formally sanctioned congressional inquiry.

The district court's conclusions with respect to the individual messaging records and categories of records flow from that overly narrow view of the Clause's protections. It is necessary to understand the context of Rep. Perry's communications to determine whether they were legislative in nature, and the mere fact that they involved individuals outside the Legislative Branch does not disqualify them from the Clause's protection. To the extent that some of Rep. Perry's communications are arguably political in nature, they are nonetheless protected where they also involved the performance of his legislative duties. *U.S. v. Brewster,* 408 U.S. at 509. Where a communication has more than one purpose, it is protected

so long as one of those purposes is legislative, and the motivations behind a Member's legitimately legislative act are irrelevant.

### B.    <u>Rep. Perry's Communications Were Legislative in Nature.</u>

While Rep. Perry is able to articulate here, to some extent, his basis for asserting Speech or Debate Clause protection, the nature of this matter requires further discussion in an *Ex Parte* Supplement that he is separately submitting this Court, as he did with the district court.[11] The communications pertain to Rep. Perry's efforts as a Member of Congress to gather information about the security of the 2020 election. Viewed in the context of the events at the time of the communications, Rep. Perry's actions were done in the performance of the official duties he had as an elected official in relation to the business Congress had before it at that time. *See U.S. v. Brewster,* 408 U.S. at 512.

Rep. Perry's conducted his fact finding during a time of uncertainty about the validity of a Presidential election and under circumstances that neither the nation nor its leaders had seen before. The Presidential election had been hotly contested and occurred during a world-wide pandemic that caused several states to make unprecedented changes in the way citizens voted. Allegations of fraud and

---

[11] Rep. Perry's *Ex Parte* Supplement to Motion for Nondisclosure to Executive Branch includes copies of his email and text messaging communications and a privilege log that asserts Speech or Debate privilege on a record-by-record basis.

other improprieties widely circulated among segments of the population and the media.

It was during this period that Rep. Perry and other Members of Congress were called upon by the Electoral Count Act to certify the results of the election. Adding to the concerns that some had about the security of the nation's elections, the opposing party in the House of Representatives proposed in H.R. 1[12] to nationally codify the measures that several states had put in place, and which had caused suspicion in some quarters that the election had been compromised. Under these circumstances, Rep. Perry believed he had an obligation as a Member of Congress to gather what information he could to inform his electoral college vote and the substantial changes in election procedures proposed in H.R.1.

Rep. Perry conducted information gathering about these issues of national concern from other Members of Congress, private parties and from members of the Executive Branch. His efforts in this regard were integral to the position he held and for the purpose of considering official legislative action. They were not conducted in his personal capacity or merely incidentally related to legislative

---

[12] H.R. 1, the "For the People Act", proposed legislative change for voter access, election integrity and security, campaign finance, and ethics for the three branches of government.

affairs, but took place within the "legitimate legislative sphere" recognized by the courts as among a Member of Congress most important responsibilities.

Rep. Perry had an obligations under the United States Constitution and the Electoral Count Act to vote on whether to confirm the electors and certify the 2020 election, and it was well within his authority to inquire into whether those electors were legitimate, or whether there were enough unlawful votes to question the outcome of the election. He addressed those issues as they were occurring, and they cannot properly be evaluated without due consideration of the environment that existed in the latter part of 2020.

### C. Rep. Perry's Communications with "Cybersecurity Individuals," Trump Campaign Officials, Pennsylvania State Legislators, and Other Individuals.

The district court combined its analysis of Rep. Perry's communications with "Cybersecurity Individuals," Trump Campaign officials, Pennsylvania State Legislators, and a catch-all category of "Other" individuals, holding:

> What is plain is that the Clause does not shield Rep. Perry's random musings with private individuals touting an expertise in cybersecurity or political discussions with attorneys from a presidential campaign, or with state legislators concerning hearings before *them* about possible local election fraud or actions *they* could take to challenge election results in Pennsylvania, because those communications are just "casually or incidentally related to legislative affairs but not part of the legislative process itself," *Brewster*, 408 U.S. at 528, including the [Electoral Count Act] process.

(Appx. JA218-219).

The district court described the purpose of those communications as "to override the results of the 2020 election and only tangentially related to the ECA process," and relating the "coordinating strategy and public relations efforts with Executive Branch officials to Trump Campaign officials, ███████████ ███████, regarding voting irregularities (Appx. JA219). The court described other communications as "efforts to encourage action by others to address what he perceived to be election fraud without being directly related to what he would do as a Member as part of a legislative process" (Appx. JA220).

The court's approach failed to consider the context of the individual communications involved, which was Rep. Perry's effort to determine whether there had been fraud in the 2020 election and, if it had occurred, whether there was any recourse to address it. Rep. Perry's communications were not "random musings," they were efforts to obtain information that he needed to evaluate whether to object to electors from his home state and others in the course of discharging his duties under the ECA, as well as to inform himself about pending and potential future legislation related to election security.

The district court reviewed Rep. Perry's communications separately making it difficult to tie any individual message to his consideration of potential legislative action. The court is correct, for example that many of the communications involve Rep. Perry's efforts "to obtain or relay" information (Appx. JA215), but that is to be

expected in informal text and email communications. Each of those communications should be viewed, more accurately, in the context of Rep. Perry's efforts to seek information that was closely tied to his official responsibilities. To the extent that his communications sought to encourage action by others, his purpose was not to "cajole" them into taking action disconnected from his legislative purpose; it was to obtain information that would help inform him about the security of the 2020 election and his future legislative efforts. Indeed, Rep. Perry had little choice but to seek information from outside the legislature where he was a Member of the minority party; the majority party had shown little interest in investigating allegations about the integrity of the 2020 election.

### D. Rep. Perry's Communications with Congressional Members and Staff.

The district court analyzed Rep. Perry's communications with other Members of Congress and his own staff in the following five categories and concluded that the Speech or Debate Clause protects only the first two, and one type of electronic newsletter in the third:

1. Communications with Members and staff about legislation and votes;

2. Communications with Members and staff concerning committee assignments and House Freedom Caucus Board elections;

3. Electronic newsletters from House Republican leadership;

4. Communications with staff concerning Rep. Perry's own press coverage or media strategy; and

5. Communications with Members concerning suspected election fraud in, and legal challenges to, the results of the 2020 presidential election.

(Appx. JA228).

Discussing the last three categories in reverse order, the district court concluded that *none* of Rep. Perry's internal House communications with other Members and staff about the 2020 election was not entitled to protection because they were "purely political rather than legislative in character" (Appx. JA233). The court cited examples that included ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

The district court dismissed these communications as "textbook political conversations" undeserving of protection under the Speech or Debate Clause (Appx. JA234), but they are precisely the kind of discussions Members of Congress should feel free to have without fear that the Executive Branch, especially when it is controlled by the opposing party, will be entitled to seize the communications. As with Rep. Perry's other communications, those in this category go directly to

Republican Members of Congress seeking to obtain and share information in the aftermath of a contested election that was intended to inform their votes under the ECA and future legislative actions.

Rep. Perry submits that the same is true of his communications with his own staff in formulating how he wishes to communicate with the public, as well as with internal House Republican leadership. As with many of his other communications, the district court required an overly formal and direct connection between these communications and specific legislative acts.

### E. Rep. Perry's Communications with Executive Branch Officials.

The district court rejected Rep. Perry's argument that his communications with Executive Branch officials were sufficiently related to his efforts to gather facts about the legitimacy and security of the 2020 election to warrant protection under the Clause. Quoting *Gravel,* the court stated "cajol[ing] and exhort[ing]" executive branch officials, while generally done by Members of Congress, "is not protected legislative activity." 408 U.S. at 625 (Appx. JA237-238). It further stated that, "If Rep. Perry was purely gathering information, he would not have been "attempt[ing] to influence the conduct of executive" branch officials and encouraging them to engage in efforts to challenge the legitimacy of the 2020 election" (Appx. JA238).

Rep. Perry's communications with Executive Branch officials were not intended to "cajole or exhort" those officials to take actions for their own sake, let

alone in return for bribes, as in *Johnson* and *Brewster,* which no one has ever suggested. Rather, his communications were intended to obtain information from those individuals to inform his ECA vote and his positions on legislation related to election integrity. Thus, those communications were protected as "an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either house." *Johnson,* 383 U.S. at 625.

**<u>CONCLUSION</u>**

Rep. Perry respectfully requests that this Court hold that the email and text messaging at issue are protected by the Speech or Debate Clause and reverse the district court's December 28, 2022, Order compelling him to disclose his communications to the Executive Branch. Alternatively, Rep. Perry requests that the Court remand this case to the district court to re-evaluate its Order in accordance with this Court's ruling.

Dated: February 6, 2023          Respectfully submitted,

**JPRowley Law PLLC**

  /s/ John P. Rowley III
John P. Rowley III
(D.C. Bar No. 392629)
1701 Pennsylvania Avenue, N.W., Suite 200
Washington, D.C. 20006
(202) 525-6674
john.rowley@jprowleylaw.com


**E&W LAW, LLC**

  /s/ John S. Irving
John S. Irving
(D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com


**BRAND WOODWARD LAW, LP**

  /s/ Stan M. Brand
Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
1808 Park Road N.W.
Washington, D.C.  20010
Stanley@BrandWoodwardLaw.com

*Counsel for Appellant Scott G. Perry*

## CERTIFICATE OF COMPLIANCE

This Brief of Appellant complies with the type-volume requirements of Federal Rule of Appellate Procedure 27(d)(2) because the Brief of Appellant contains 8,094 words. The Brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) and has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

Dated: February 6, 2023                    Respectfully submitted,

   /s/ John P. Rowley III
John P. Rowley III

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 6, 2023, I hand-delivered paper copies of this submission and the parties' Joint Appendix to the United States Court of Appeals for the District of Columbia Circuit and provided electronic copies via electronic mail to the Court's Clerk and to the following Government counsel:

John M. Pellettieri
Timothy A. (Tad) Duree

Respectfully submitted,

   /s/ John P. Rowley III    
John P. Rowley III