# Attachment 10

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE
CELL PHONE OF REPRESENTATIVE SCOTT PERRY

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Case No. 22-sc-2144 (Under Seal)

———————————————

**JOINT APPENDIX**

———————————————

John P. Rowley III
(D.C. Bar No. 392629)
JPRowley Law PLLC
1701 Pennsylvania Avenue, NW
Suite 200
Washington, D.C. 20006
 (202) 525-6674
john.rowley@jprowleylaw.com

John S. Irving
(D.C. Bar No. 460068)
E&W LAW, LLC
1455 Pennsylvania Avenue, N.W.,
Suite 400
Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com

Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road N.W.
Washington, D.C.  20010

*Counsel for Appellant Scott G. Perry*

# INDEX TO JOINT APPENDIX

**Document**                                                                      **Page**

Motion for Extension of Time to Comply with
the Conditions of the Search Warrant Issued
on August 18, 2022 (ECF No. 7) ……………………..…………..…. JA001

Government's Opposition to Rep. Perry's Motion
for Extension of Time to Comply with the Conditions
of the Search Warrant Issued on August 18, 2022 (ECF No. 8) ……..… JA018

Rep. Perry's Reply to the Government's Opposition
to His Motion for Extension of Time to Comply
with the Conditions of the Search Warrant
Issued on August 18, 2022 (ECF No. 9) ………………………..……..… JA051

Rep. Perry's Responses to the Court's Minute
Order Dated October 14, 2022 (EFC No. 10) ………………………….. JA057

Government's Brief Regarding the Inapplicability
of the Speech or Debate Clause to Materials Seized
from Rep. Perry (ECF No. 13) ………………………………..…..…..…… JA065

Rep. Perry's Response to the Government's Brief
Regarding the Applicability of the
Speech or Debate Clause (ECF No. 15) ………………………..…….. JA082

Government's Reply Brief Regarding the Inapplicability
of the Speech or Debate Clause to Materials
Seized from Rep. Perry. (ECF No. 17) …..……………………………. JA094

Memorandum Opinion and Order
Dated November 4, 2022 (ECF No. 18) ………………………..…….....  JA106

Government's Objections to Rep. Perry's
Speech or Debate Privilege Assertions and
Request for Court Review (ECF No. 19)………………………..…..…… JA119

Rep. Perry's Response to the Government's Objections
and Request for Modification of the Court's
November 2, 2022, Order (ECF No. 20) ……………………………… JA123

Rep. Perry's Motion for Non-disclosure to the Executive
Branch of Information Protected by the Speech or
Debate Clause of the United States Constitution (ECF No. 21)……..….. JA132

Order granting in part and denying in part Rep. Perry's
Motion for Non-Disclosure (ECF No. 24) ……………………….…….. JA144

Memorandum Opinion (ECF No. 25) …………………………….…… JA189

Notice of Appeal (ECF No. 26) ……………………………....……… JA240

Rep. Perry's Emergency Motion to Stay
[the District Court's] December 28, 2022
Order Pending Appeal (ECF No. 27) ……………………………….….. JA242

Rep. Perry's Memorandum in Support
of his Motion to Stay (ECF No. 27-1) ……………………………..... JA244

United States' Opposition to Motion
for Stay Pending Appeal (ECF No. 29) ……………………….…..… JA257

Rep. Perry's Reply to the Government's Opposition
to His Emergency Motion to Stay [the District Court's]
December 28, 2022, Order Pending Appeal (ECF No. 30) …….....…….. JA273

Order denying Motion to Stay (ECF No. 31) …………………….…..…… JA283

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| In the Matter of the Search of | : | |
| The Forensic Copy of Representative | : | Case No. 22-SC-2144 |
| Scott G. Perry's Mobile Telephone | : | |
| | : | |

**MOTION FOR EXTENSION OF TIME TO COMPLY WITH**
**THE CONDITIONS OF THE SEARCH WARRANT ISSUED ON AUGUST 18, 2022**

Representative Scott G. Perry, a sitting Member of the United States House of
Representatives, in both his official and personal capacities and through undersigned counsel,
respectfully requests until November 7, 2022, to comply with the conditions of the search warrant
issued in this matter on August 18, 2022, to prohibit the government from reviewing any of the
information contained in Representative Perry's mobile telephone until questions of Speech or
Debate Clause and other relevant privileges can be resolved, and for a hearing on those issues. In
support of this Motion, Representative Perry states as follows:

## I. PROCEDURAL BACKGROUND

On August 2, 2022, United States Magistrate Judge Susan E. Schwab of the United States
District Court for the Middle District of Pennsylvania issued a warrant authorizing the seizure of
Rep. Perry's cellular telephone based on an application by a federal law enforcement officer or an
attorney for the government requesting the search and seizure of property located in the Middle
District of Pennsylvania. *Attachment B-1* to the warrant states in relevant part that:



1

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████

On August 9, 2022, Special Agents from the Federal Bureau of Investigation executed the warrant while Rep. Perry was on vacation with his family in New Jersey. They seized his phone, created a forensic image of it, and returned the physical phone to Rep. Perry the same day, again while he was in the company of his family.

In subsequent discussions with prosecutors from the United States Department of Justice, the undersigned counsel explained that the data from Rep. Perry's phone includes information that is protected by the Speech and Debate Clause of the United States Constitution, the Attorney-Client privilege, marital privilege, and which is otherwise personal and confidential. Counsel for Rep. Perry requested that the government not seek a second search warrant that would allow it to access the data from his phone and offered to review the information and cooperatively provide the government with whatever information it was seeking, so long as it did not infringe on the Speech and Debate Clause, the Attorney-Client Privilege, and other applicable privileges and protections.

The Justice Department attorneys declined that offer and stated that they would consider an alternative process whereby the government and Rep. Perry's counsel would attempt to reach agreement about whether specific records are within the protections of the Speech and Debate Clause. The Justice Department attorneys recognized that it was unlikely that the contemplated process ultimately would be satisfactory to either party and were less than optimistic that a workable solution could be reached by agreement. They stated that, in that event, the government would pursue a second search warrant that would allow the government to review the data obtained from Rep. Perry's phone.

The Justice Department attorneys told counsel for Rep. Perry that the government would require, as a condition of any agreed upon review process, that he waive the disclosure protection of the Speech and Debate Clause. The Justice Department prosecutors stated that they intend to seek a second search warrant to review the cellular phone data absent such an agreement.

Rep. Perry declined to waive that protection and filed an emergency motion for return of seized property and request for injunctive relief on August 18, 2022, in Case No 1:22-mc-00079 (BAH), proposing a process whereby the government would only be permitted to review information from the phone after the Court made determinations about whether that information was protected by the Speech or Debate Clause and other applicable privileges, consistent with the D.C. Circuit's decision in *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007).[1]

After the government obtained a search warrant on August 18, 2022 (the "Second Search Warrant"), in sealed Case No. 22-DC-2144, to examine the information extracted from Rep. Perry's phone,[2] counsel for Rep. Perry requested on August 24, 2022, that the Court hold it's earlier motion in abeyance.  The Court granted that request and reassigned Case No. 1:22-mc-00079 to Chief Judge Beryl Howell.

Attachment C of the Second Search Warrant directs, in relevant part, as follows:

d. Congressman Perry will have thirty (30) days to review the Extraction and provide attorneys for the U.S. Attorney's Office for the District of Columbia and the Criminal Division of the U.S. Department of Justice with a log of the records contained in the Extraction over which the Privilege is being asserted. That log shall identify the record by date, recipient, sender, and subject matter if such information

---

[1] Counsel for Rep. Perry provided the government with a copy of its motion on August 17, 2022. It was not filed until the following day because there was no public case into which the motion could be filed through ECF. Counsel emailed the motion to the Clerk's Office at 3:35 p.m. on August 18, 2022.

[2] The government advised counsel at 5:33 p.m. on August 28, 2022, that it had obtained an *ex parte* search warrant for the extracted image of the phone data, and it provided counsel with a redacted copy of the warrant at 9:16 p.m. that evening.

is available. As needed, the Government shall then request that the District Court review the records over which Congressman Perry has asserted privilege in order for the Court to make a final determination whether they contain privileged information.

e. If Congressman Perry fails to complete the privilege review within 30 days, the Government will seek relief from the District Court, including requesting a determination that Congressman Perry waived the privilege through non-compliance, providing the contents of the Extraction to the Court for its review, or such other relief that may be appropriate.

f. Neither attorneys for the U.S. Attorney's Office for the District of Columbia and the Criminal Division of the U.S. Department of Justice nor the agents executing the Warrant—nor any other employee of the Executive Branch—shall review the contents of the Extraction until: (1) Congressman Perry consents to such a review, as set forth in Paragraph (b); (2) Congressman Perry identifies non-privileged material in the Extraction that can be reviewed, as set forth in Paragraph (d); or (3) pursuant to further order of the Court.

Counsel for Rep. Perry received a copy of the forensic image from the government at approximately 11:15 a.m. on August 23, 2022.  At approximately 2:00 p.m. that afternoon, counsel sent the image to their forensic eDiscovery vendor via UPS overnight shipping.  By Sunday, August 28, 2022, that vendor had processed the extracted image and advised counsel that it contained over 205,000 text messages and over 21,000 email messages, and data in the following extensive list of categories from the phone:





Rep. Perry's Counsel then instructed the vendor to load data from the following categories for the period 07/12/2000 through 01/16/2021 (the time frame referenced in the Second Search Warrant):[3]



That resulted in a set of 14,489 documents requiring review for Speech or Debate privilege. Much of that information had been processed and loaded for review by September 1, 2022, and the remaining information was ready for review on September 20, 2022.[4] On September 7, 2020, the government agreed to set September 6, 2022, as the starting date for the 30-day review period referenced in the Second Search Warrant, to end on October 6, 2022. Counsel noted at that time that they anticipated the need for additional time to complete the review given the volume of the information on the image.

---

[3] Counsel requested that the government limit its review pursuant to the Second Search Warrant to these categories of data. The government declined and only agreed to exclude the following categories of information from its review ██████████████████████████████████████████
████████████████

[4] Counsel initially instructed the eDiscovery vendor to load information from the most relevant time frame of October 1, 2020, through January 31, 2021, and later asked that data from July 12, 2020, through September 30, 2020, be loaded after the government declined to limit the time frame of its review to a period shorter than that specified in the Second Search Warrant.

Counsel for Rep. Perry has made extensive efforts, both to review the information within the 30-day period referenced in the Second Search Warrant, and to negotiate with the government in good faith to identify information that is protected by Speech or Debate, as well as other categories of information. Given the limited time, counsel started by identifying information that likely would be protected by Speech and Debate by filtering email domains (e.g., @mail.house.gov) and potentially relevant to the government's investigation using email and telephone numbers of individuals reportedly connect to the government's investigation.[5] Counsel reviewed 2,918 documents in that effort, making judgment calls as to various privileges and collecting relevant email addresses and phone numbers. With the October 6, 2022, deadline approaching, counsel used that information to identify documents in the following categories:



Counsel conferred with the government in an attempt to prioritize those categories for review and in an effort to reach agreement on which categories either party might be willing to concede are or

---

[5] Undersigned counsel also represent several individuals related to the House of Representatives Select Committee to Investigate the Attack in the United States Capitol and the government's grand jury investigation and are familiar with the issues and individuals involved in those investigations.

6

are not covered by Speech or Debate. The government insisted on a log of all documents for which counsel for Rep. Perry asserted Speech or Debate privilege, as stated in the Second Search Warrant. Counsel for Mr. Perry requested additional time to complete that task, but the government would agree to only a five (5) day extension to Tuesday, October 11, 2022.

Lacking the time and preferred alternative of conducting a document-by document review of prioritized categories of information, counsel provided the government with a log of 12,318 documents on October 5, 2022, that included the results of their review of nearly 3,000 documents, as well as the documents that fell within the categories of information that counsel believed would be subject to the Speech or Debate privilege.

## II. THE SPEECH OR DEBATE CLAUSE

The Constitution's Speech or Debate Clause states that "for any Speech or Debate in either House, [Members of Congress] shall not be questioned in any other place." U.S. CONST. art. 1 § 6, cl.1. The Supreme Court has explained that the Clause "was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v. United States*, 408 U.S. 606, 616 (1972). In extending that reasoning to include an absolute non-disclosure privilege in addition to a testimonial privilege, the U.S. Court of Appeals for the District of Columbia Circuit has held that "the purpose of the Speech and Debate Clause is to ensure that the legislative function the Constitution allocates to Congress may be performed independently, without regard to the distractions of private civil litigation or the periods of criminal prosecution." *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007) quoting *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995)(internal quotations omitted).

Just two days ago, this Court reiterated these principles in the context of a private plaintiff's civil lawsuit seeking emails and other information from the House of Representatives related to the Committee on Oversight and Reform's work related to climate change. *See* Memorandum Opinion, *Shilling v. Speaker of the U.S. House of Representatives*, No. 22-cv-00162) (Oct. 3, 2022) (ECF No. 19). In granting the House's motion to dismiss the case, the Court explained that the thrust of cases from the Supreme Court and the D.C. Circuit "is clear: legislators and their aides have absolute immunity from compelled disclosure or testimony related to legislative activity." *Id*. at p. 11. As to what is meant by "legislative activity," the Court explained that "the Clause covers activities that are an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings … [and that] [t]he immunity attaches even though [the] conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Id*. at p. 13 quoting *Gravel*, 408 U.S. at 625, and *Doe v. McMillan*, 412 U.S. 306, 312-313 (1973) (internal quotation marks omitted).

Because communications and information are so important to legislative activity, information gathering that is "part of, in connection with, or in aide of a legitimate legislative act" is protected by the Speech or Debate Clause, even where it is an informal effort undertaken by an individual Member of Congress or their staff. *See McSurley v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976); *Jewish War Veterans v. Gates*, 506 F.Supp. 2d 30, 57 (D.D.C. 2007); *Pentagen Tech. Int'l, Ltd v. Comm. On Appropriations*, 20 F.Supp. 2d 41, 44 (D.D.C. 1998). *See also United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988); Memorandum of Points and Authorities in Support of Motion to Dismiss at pp. 20-23, Assoc. of American Physicians & Surgeons et al v. Congressman Adam Schiff, No. 20-cv-00106 (June 26, 2020)(ECF No. 19-1).

## III. ARGUMENT

### A. Documents Relevant to the Government's Investigation Will Implicate the Speech or Debate Clause and Require Additional Time to Review

While Rep. Perry's counsel has not been privy to the government's affidavit in support of its search warrant or an unredacted copy of the warrant itself, the general scope of the government's investigation has been widely reported and is not difficult to discern. *See, e.g.* Alan Feuer et. al, "Seizure of Congressman's Phone Is Latest Sign of Escalating Election Inquiry," *The New York Times* (August 10, 2022).[6] To the extent that the government is investigating the actions of Representative Perry or others related to concerns about the integrity of the 2020 election, potential voting fraud and manipulation of voting machines in that election, consideration of alternate electors in light of various election challenges in several states, including Pennsylvania, and the federal government's response to those issues, most, if not all, or Rep. Perry's relevant actions are likely to fall within the protections of the Speech or Debate Clause.

Rep. Perry has been a Member of Congress since 2013, initially representing Pennsylvania's Fourth District, and then its newly redistricted Tenth District. He serves on the House Committee on Transportation & Infrastructure and on the House Committee on Foreign Affairs. He previously served for three (3) terms on the House Committee on Homeland Security, which has jurisdiction over election issues, and he sought the position of Ranking Member of that Committee at the beginning of the current legislative term. Rep. Perry is also a Member of, and the recently-elected Chairman for, the House Freedom Caucus, whose mission is "to give a voice to countless Americans who feel that Washington does not represent them. We support open, accountable and limited government, the Constitution and the Rule of Law, and policies that promote the liberty, safety and prosperity of all Americans." Prior to his service as a Member of

---

[6] Available at: https://www.nytimes.com/2022/08/10/us/politics/scott-perry-phone-fbi.html.

Congress, Rep. Perry served in the United States military for nearly forty years, rising from the enlisted ranks to the rank of Brigadier General and the Assistant Division Commander of the 28th Infantry Division. His duties during those nearly four decades of military service included briefings and communications with members of the intelligence community about threats to the United States at home and abroad. As a Member of Congress, Rep. Perry voted on January 6, 2021, to reject Pennsylvania's electoral votes in the 2020 election.

Not surprisingly, counsel's initial review of the data provided by the government identified thousands of communications between Rep. Perry and other Members of Congress, Members of the House Freedom Caucus, his own staff and staff of other members, Executive Branch officials, Pennsylvania State Legislators, Trump Campaign attorneys and officials, and his own professional contacts related to concerns about the security of the 2020 election, investigating those claims, the validity of Pennsylvania's electors, and measures that would be necessary to ensure secure voting in future elections. All of those communications warrant attention in order to determine the applicability of the Speech or Debate Clause, and that review will require an appropriate amount of time.

It is also worth noting that the 30-day review period referenced in the Second Search Warrant was set (and presumably proposed by the government) without any knowledge about the volume of the communications that would need to be reviewed because the government had not yet (and still has not) reviewed the information in question.

**B. Representative Perry Should Not be Subjected to the Burden of Defending Himself in the First Place**

The Speech or Debate Clause is an absolute jurisdictional bar against claims predicated on legislative acts, and it protects legislators "from the burden of defending themselves." *Porteous v. Baron*, 729 F.Supp. 2d 1158, 163 (D.C.C. 2010) (*quoting Dombowski v. Eastland*, 387 U.S. 82,

85 (1967). Allowing Rep. Perry to be questioned "about legislative acts . . . would interfere by having a chilling effect on Congressional freedom of speech." *Miller v. Transamerical Press, Inc.*, 709 F.2d 524, 528 (9th Cir. 1983).

The Justice Department's seizure of the personal phone of a sitting Member of Congress is, indeed, drastic, especially if, as it seems, it was predicated on the notion that anyone discussing concerns about the security of the 2020 election and the validity of state electors Attempted and Conspired to Obstruct an Official Proceeding of Congress in violation of 18 U.S.C. § 1512(c)(2) and (k); Conspired to Defraud the United States in violation of 18 U.S.C. § 371; and Make False Statements in Violation of 18 U.S.C. § 1001.[7] Representative Perry's investigation and collection of information about those matters is squarely within his responsibilities as a Member of Congress who would ultimately be called upon to vote on those very electors. Regardless of what the facts may ultimately show about the election, it is certainly chilling to valid legislative activities and debate that the Justice Department would seize a House Member's phone and raise even the possibility that he could be criminally prosecuted for his actions. This has also been precisely the kind of burdensome end expensive distraction that the Speech or Debate Clause was intended to prevent.

**C.  At a Minimum, Representative Perry Should Have a Seat at the Table**

From a discussion with government counsel on October 4, 2022, it appears that the Justice Department envisions an extremely limited role for Mr. Perry's counsel in this matter, which appears consistent with the language of the Second Search Warrant (*supra* at p. 3). When asked about the mechanics for presenting the phone data to the Court, government counsel explained that counsel for Rep. Perry would first provide a log of the communications it believes are subject to

---

[7] *See* Second Search Warrant at Attachment ¶ 2(b).

Speech & Debate, and that government counsel would then present that list to the Court, perhaps after removing certain communications that it either agreed were subject to Speech or Debate or otherwise decided not to take issue with. It would then be up to the Court to make determinations about the applicability of Speech or Debate – all without any input from the government about the content of those communications (because the government has not yet seen them), and without any input from defense counsel, who have seen the documents and would be prepared to explain why certain communications would or would not fall within the Clause's protections. It would be particularly unfair to Rep. Perry, and unhelpful to the Court, if that procedure was based on a privilege log containing over 12,000 documents, many of which Rep. Perry's counsel has not had adequate time to individually review.

This, of course, is all a problem of the Justice Department's own making. By seizing a phone of a sitting Member of Congress, the Executive Branch took the risk that the phone would contain voluminous information that would be protected by the Speech or Debate Clause and that would require a considerable amount of time to review.

**D.   Representative Perry Would Like to be Heard on Issues Beyond the Speech or Debate Clause**

The Second Search Warrant only provides a process for preventing the Justice Department from reviewing information that is protected by the Speech or Debate Clause ███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████t.

A filter team is an inadequate solution here, especially where counsel for Rep. Perry can and has identified privileged communications between Mr. Perry and his wife. It should also be the government's burden to demonstrate that probable cause exists to search the phone's contents with

12

JA012

respect to private communications with close family and friends that are completely unrelated to the government's investigation, let alone Rep. Perry's photos and the other 33 categories of intrusive data on the phone that the government has declined to exclude from its review. Rep. Perry requests the opportunity to address the Court with respect to that information, as well.

## IV.  CONCLUSION

For the reasons set forth above, Rep. Perry respectfully requests that this Court extend until November 7, 2022, the time by which he must provide the government with a log of documents that are subject to the Speech or Debate Clause, and that the Court continue its order prohibiting the government from accessing or reviewing any of the information extracted from Rep. Perry's phone until after the Court's ruling on those documents.  Rep. Perry also requests that the Court schedule a hearing in order to discuss the information obtained from his phone, including the application of Speech or Debate, marital, or other applicable privileges, and the protection of private information unrelated to the government's investigation.

Dated: October 5, 2022

Respectfully Submitted,

E&W Law, LLC

_____/s/ John S. Irving_____
John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com

JPROWLEY LAW PLLC

*/s/ John P. Rowley III__*
John P. Rowley III
DC Bar No. 392629
1701 Pennsylvania Avenue, NW
Suite 200

13

Washington DC 20006
john.rowley@jprowleylaw.com
Telephone: 202 525 6674

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of October 2022, a true and correct copy of the foregoing was emailed at the direction of the Office of the Clerk to dcd_ecmf_cr@dcd.uscourts.gov and to counsel for the government.

_____ /s/ John S. Irving_____
John S. Irving (D.C. Bar No. 460068)

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | **:** | |
| **In the Matter of the Search of** | **:** | |
| **The Forensic Copy of Representative** | **:** | **Case No. 22-SC-2144** |
| **Scott G. Perry's Mobile Telephone** | **:** | |
| | **:** | |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion for Extension of Time to Comply With the Conditions of the Search Warrant Issued on August 18, 2022, it is

**ORDERED** that counsel for Representative Scott Perry shall have until November 7, 2022, to review the information collected from Representative Perry's mobile telephone ("the Extraction") and to provide counsel for the government with a revised log of documents that counsel for Representative Perry believes are privileged under the Speech or Debate Clause of the United States Constitution.

It is **FURTHER ORDERED** that the government's review of the information collected from the Extraction shall be limited to the following categories without demonstrating probable cause to believe that additional categories on information would contain evidence of a crime and without further leave of this Court:



1

It is **FURTHER ORDERED** that the parties shall appear before this Court on a date to be set after counsel for Representative Perry provides the government with the aforementioned log, and the government provides the Court with the documents that it seeks to review.

It is **FURTHER ORDERED** that neither the attorneys for the U.S. Attorney's Office for the District of Columbia and the Criminal Division of the U.S. Department of Justice nor the agents executing the Warrant—nor any other employee of the Executive Branch—shall review the contents of the Extraction without further order of the Court.

**SO ORDERED** on this ___ day of October 2022.

_____
The Honorable Beryl A. Howell
Chief Judge
United States District Court
For the District of Columbia

2

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 5th day of October 2022, a true and correct copy of the foregoing was emailed at the direction of the Office of the Clerk to dcd_ecmf_cr@dcd.uscourts.gov and to counsel for the government.

_____/s/ John S. Irving_____
John S. Irving (D.C. Bar No. 460068)

JA017

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY** | **No. 22-SC-2144**<br><br>**UNDER SEAL** |

**GOVERNMENT'S OPPOSITION TO REP. PERRY'S MOTION FOR EXTENSION OF TIME TO COMPLY WITH THE CONDITIONS OF THE SEARCH WARRANT ISSUED ON AUGUST 18, 2022**

On August 18, 2022, this Court approved a search warrant for U.S. Representative Scott Perry's personal cell phone based on probable cause that it contains evidence of federal crimes. Nearly two months later, the Government has been unable to access and review the material. That is because the Government's search is conditioned on special procedures affording Rep. Perry 30 days to review the contents of the phone to identity materials potentially covered by the Speech or Debate Clause and to withhold those materials from disclosure. Instead of preparing the Speech or Debate privilege log required by the special procedures, Rep. Perry has tried to exploit the procedures to force unwarranted concessions from the Government. Specifically, he has used his time, including a 14-day extension, to attempt to withhold not just material potentially covered by the Speech or Debate Clause, but material he independently deems irrelevant or subject to the attorney-client or marital privileges. To the extent that Rep. Perry has logged Speech or Debate assertions at all, his assertions are overbroad and too vague to ascertain the basis for his claim.

Rep. Perry's deadline has passed. His request for an extension to November 7, as well as his apparent request for additional special treatment regarding other claimed privileges, should be denied. Consistent with the warrant's special procedures, the Government will soon move separately for judicial intervention regarding Rep. Perry's frivolous privilege assertions.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 2022, pursuant to a warrant obtained in the Middle District of Pennsylvania, federal agents seized Rep. Perry's personal cell phone from his person while he was traveling in New Jersey.  Agents created a forensic extraction of the cell phone and returned it to Rep. Perry the same day.  On August 18, this Court issued a warrant authorizing the Government to search the contents of the forensic extraction based on probable cause that it contains evidence of federal crimes.  The search is subject to special procedures set forth in Attachment C to the warrant, *see* Ex. 1, which allow Rep. Perry to access and review the extraction before the Government does so for the specific, limited purpose of withholding from disclosure any material covered by the Speech or Debate Clause.[1]  *Id.*  The Government provided Rep. Perry, through his counsel, a

---

[1] Attachment C's special procedures pertain solely to the Speech or Debate privilege articulated in Article I, Section 6, Clause 1 of the Constitution, which prohibits members of Congress from "being questioned in any other Place" "for any Speech or Debate in either House."  The procedures allow Rep. Perry to withhold from disclosure materials covered by the Speech or Debate Clause.  The Government proposed the special procedures because Rep. Perry's personal cell phone may contain materials covered by the Clause, and in *United States v. Rayburn House Ofc. Bldg.*, the D.C. Circuit held that the Government may not compel, directly from a member of Congress, disclosure of Speech or Debate covered materials through a search warrant executed on the member's House office.  497 F.3d 654, 656 (D.C. Cir. 2007) ("We hold that the compelled disclosure of privileged material to the Executive during the execution of the search warrant for Rayburn House Office Building Room 2113 violated the Speech or Debate Clause and that the congressman is entitled to the return of documents that the court determines to be privileged under the Clause.").  To be clear—*Rayburn* has never been extended to apply to a court-approved warrant authorizing the search of a member's personal cell phone, lawfully seized from his person in a place outside either House of Congress.  And other Circuits addressing the scope of the Speech or Debate Clause have held that covered materials are not privileged from disclosure.  *See, e.g.*, *In re Search of Elec. Commc'ns in the Acct. of chakafattah@gmail.com*, 802 F.3d 516, 531 (3d Cir. 2015) ("The Speech or Debate Clause does not prohibit the disclosure of privileged documents.  Rather, it forbids the evidentiary use of such documents."); *United States v. Renzi*, 651 F.3d 1012, 1032 (9th Cir. 2011) (explaining that there does not exist "some grandiose, yet apparently shy, privilege of non-disclosure that the Supreme Court has not thought fit to recognize").  Nonetheless, in an abundance of caution, the Government requested, and the Court adopted, the special procedures set forth in Attachment C to the warrant.

copy of Attachment C the same day the warrant was approved by this Court and provided a copy

of the forensic extraction five days later, on August 23. Rep. Perry had 30 days from that point

"to review the Extraction and provide [the Government] with a log of the records contained in the

Extraction over which the [Speech or Debate] Privilege is being asserted." Ex. 1, at 2 ¶ 2.d.

Attachment C requires that the privilege log "identify the record by date, recipient, sender, and

subject matter if such information is available," such that the Government can, "[a]s needed, . . .

request that the District Court review the records over which Congressman Perry has asserted

privilege in order for the Court to make a final determination whether they contain privileged

information." *Id.*

In the time since, Rep. Perry has largely avoided compliance with Attachment C—thus

preventing the Government from beginning its search of his personal cell phone in furtherance of

a federal criminal investigation—despite the Government's efforts to accommodate him by

agreeing to extend the deadline by 14 days, from September 22 to October 6, and narrowing the

material subject to review. *See* Ex. 2, at 5. After that concession, Rep. Perry's counsel requested

on September 22, September 30, and October 4 that the Government permit him to withhold from

disclosure materials they deemed irrelevant to the Government's federal criminal investigation and

materials over which they claim the attorney-client and marital privileges apply. *See id.* at 2-4.

For example, on September 30, rather than address Speech or Debate issues or begin to roll out a

privilege log, Rep. Perry's counsel provided a list of categories of material that they have deemed

relevant and offered to produce materials from those limited categories, much the way a grand jury

subpoena is handled. *Id.* at 3-4. But this matter involves a search warrant, not a grand jury

subpoena. The Government therefore rejected Rep. Perry's request to withhold material beyond

that covered by the Speech or Debate Clause. *See id.* at 1-4; Ex. 3. Attachment C's special

procedures are concerned solely with Speech or Debate material; the warrant authorizes the Government—not the subject of the search—to scope the material for relevance; and a court-approved process is in place for filtering from the Government's investigative team material potentially subject to the attorney-client privilege. *See* Ex. 3.

On October 4, two days before the extended deadline for providing a Speech or Debate privilege log, Rep. Perry sought from the Government an additional extension to November 7. Because Rep. Perry had demonstrated no progress on his obligations under Attachment C, and instead insisted on withholding other material to which the Government is entitled under the search warrant, the Government refused his request. *See* Ex 3. Instead, the Government afforded Rep. Perry five additional days, to October 11, to finalize the Speech or Debate privilege log before seeking judicial intervention under Paragraph 2.d of Attachment C. *See id.*; Ex. 1, at 2.

On October 5, Rep. Perry filed this motion for an extension. Concurrently, he provided the Government with an Excel spreadsheet purporting to be "the log we discussed yesterday of the documents that we currently believe are protected by the Speech or Debate Clause." Ex. 2, at 1 (quoted language); Ex. 4 (spreadsheet). The log does not cover all the material contained on Rep. Perry's personal cell phone, and his counsel informed the Government that "we do not believe that we can complete this task in a professional manner by next Tuesday," October 11. Ex. 2, at 1.

## ARGUMENT

### I. Rep. Perry's Request for an Extension to November 7 Should Be Denied.

"It is firmly established that the granting or refusal of a continuance is a matter within the discretion of the judge who hears the application." *United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978). Rep. Perry's request for an extension should be refused. Rather than work on the Speech or Debate privilege log, Rep. Perry appears to have used most of the 30 days afforded

to him under Attachment C, along with two extensions totaling 19 days, trying to cajole the Government to allow him to scope the search warrant materials for responsiveness himself and otherwise restrict the Government's access to the contents of his personal cell phone. There is no reason to conclude that providing additional time would change anything.

Rep. Perry's purported privilege log is haphazard, incomplete, and largely uninformative. Instead of asserting substantive claims, the log identifies more than 12,000 documents—only approximately 3,000 of which Rep. Perry purports to have reviewed—that Rep. Perry contends fall within categories over which the Speech or Debate Clause would apply. *See* Mot. for Extension at 7 ("Lacking the time and preferred alternative of conducting a document-by-document review of prioritized categories of information, counsel provided the government with a log of 12,318 documents on October 5, 2022, that included the results of their review of nearly 3000 documents as well as the documents that fell within the categories of information that counsel believed would be subject to the Speech or Debate privilege."). Substance aside, the paltry number of documents Rep. Perry's counsel has thus far reviewed exposes dilatory behavior. According to their own admission, Rep. Perry's camp has reviewed an average of approximately only 70 documents per day since being provided the forensic extraction on August 23. At that pace, it would take Rep. Perry's team more than 170 days to review the more than 12,000 documents identified on his privilege log—which does not account for all the material on his cell phone. That lack of diligence is alone sufficient reason to deny Rep. Perry an extension.

In addition, most of the entries in the log provide insufficient information to determine the basis for Rep. Perry's Speech or Debate assertions. For thousands of communications— apparently text messages—the log simply lists the date, sender, and recipient(s). There is no mention of the subject matter of any of these communications. A determination about the

applicability of the Speech or Debate Clause cannot be made without knowing some information about the content of the communications—the identity of the persons involved in the communications and their timing are, standing by themselves, insufficient. *See Gravel v. United States*, 408 U.S. 606, 625 (1972) (explaining that the key to determining whether the Speech or Debate Clause applies is whether the acts in question constitute "legislative activity"); *see also United States v. Brewster*, 408 U.S. 501, 512 (1972) ("A legislative act has consistently been defined as an act generally done in Congress in relation to the business before it."). Moreover, at other points, Rep. Perry's privilege log fails entirely to comply with Attachment C. Many entries contain just a control number and a time stamp without any indication of who sent or received the communication, or whether there is in fact any communication at issue. Lacking meaningful detail about the substance of these communications, the Government cannot—and this Court ultimately should not—accept Rep. Perry's unadorned assertion that the Speech or Debate Clause applies. Indeed, for communications in which Rep. Perry has failed to supply the information required under Attachment C, the Government intends to seek a judicial determination that Rep. Perry has waived the Speech or Debate privilege through non-compliance. *See* Ex. 1, at 2 ¶ 2.e ("If Congressman Perry fails to complete the privilege review within 30 days, the Government will seek relief from the District Court, including requesting a determination that Congressman Perry waived the privilege through non-compliance, providing the contents of the Extraction to the court for its review, or such other relief that may be appropriate.").

For those communications, totaling approximately 2,000 emails to and from what appear to be Rep. Perry's campaign email account, for which Rep. Perry's log does provide more information—the emails' subject headers—it is evident that his Speech or Debate assertions are substantially overbroad. The Speech or Debate Clause covers acts and communications within

the "legislative sphere."   *Gravel*, 408 U.S. at 624-25; *see also Brewster*, 408 U.S. at 512, *supra*.
But many of the communications identified in Rep. Perry's log pertain to litigation, personal
matters, constituents, and electoral politics, which fall squarely outside the Clause's scope.
Others involve officials at the Department of Justice, for which the Speech or Debate Clause is
unlikely to apply, *see, e.g.*, *United States v. Johnson*, 383 U.S. 169, 172 (1966) ("No argument is
made, nor do we think that it could be successfully contended, that the Speech or Debate Clause
reaches conduct, such as was involved in the attempt to influence the Department of Justice [to
dismiss pending indictments], that is in no wise related to the due functioning of the legislative
process."), or members of his staff for which there is no indication of a legislative act.   For
example, Rep. Perry's privilege log contains:

- ███████████████████████████████████████
  ███████████████████████████████████████
  ██████████████████████

  ████████████████████████████████████
  ██████████████████████

  ████████████████████████████████████████
  ███████████████████████████████████

  █████████████████████████████████████████
  ██████████████████████████████████████
  █████████████████████████████

  ███████████████████████████████████████
  █████████████████████████

  ████████████████████████████████████████
  █████████████████████████

  █████████████████████████████████████

  ████████████████████████████████████████
  █████████████████████████████████

The imprecise, blanket nature of Speech or Debate assertions such as these further demonstrates Rep. Perry's lack of diligence and indicates his intent to use Attachment C's special procedures as subterfuge to withhold information to which the Government is otherwise entitled. Accordingly, the Government anticipates that it will seek to compel production of many of these documents. *See* Ex. 1, at 2 ¶ 2.d ("As needed, the Government shall [ ] request that the District Court review records over which Congressman Perry has asserted privilege in order for the court to make a final determination whether they contain privileged information.")

Rep. Perry has had ample time and opportunity to furnish an adequate Speech or Debate privilege log or to otherwise demonstrate, through good faith efforts, that more time really is required.   He has failed to do so.   His request for an extension should be denied.

## II.    Rep. Perry's Apparent Request for Additional Special Treatment Should be Rejected.

Alongside his request for additional time, Rep. Perry asks that he be permitted to "address the Court" regarding issues of marital and attorney-client privilege, "personal communications," and "intrusive information."   Mot. for Extension at 12-13.   Without seeking any specific remedy, Rep. Perry editorializes that "it is certainly chilling to valid legislative activities and debate that the Justice Department would seize a House Member's phone and raise even the possibility that he could be criminally prosecuted for his actions."   Mot. for Extension at 11.   He additionally derides the Government's execution of a search warrant as a "burdensome and expensive distraction," *id.*, and asserts that he "should not be subjected to the burden of defending himself in the first place."   *Id.* at 10.

These arguments insinuate that Rep. Perry is entitled to special treatment due to his status as a member of Congress.   He is not.   *Cf. Gravel*, 408 U.S. at 615 ("[L]egislators ought not to stand above the law they create but ought generally to be bound by it as are ordinary persons."). The Government applied for seizure and search warrants for Rep. Perry's personal cell phone

because it developed information establishing probable cause to believe that it contains evidence of federal crimes. A federal magistrate judge in the Middle District of Pennsylvania and this Court agreed and approved those applications. Neither Rule 41 nor the Fourth Amendment provide any mechanism by which an individual whose property is the subject of a search warrant may himself choose the materials he will permit the Government to review. *Cf., e.g.*, *Matter of the Search of Twenty-Six (26) Digital Devices and Mobile Device Extractions That Are Currently in the Possession f Law Enforcement in Washington D.C.*, Case No. 21-sw-233, 2022 WL 998896, *14 (Mar. 14, 2022) ("Due to the nature of the location to be searched and information particularly targeted by a warrant, the execution of a warrant may, at times, necessarily entail the search (and seizure) of non-responsive information—and that has not been held to be unreasonable, absent a flagrant disregard for the limitations of the warrant. . . . Ensuring that a search is reasonably executed within the strict bounds of the warrant's terms is generally a judicial task on review of a suppression motion, rather than an *ex ante* consideration injecting judicial management on law enforcement's execution and subsequent handling of any information or items seized and retained as a result of the search.") (internal quotation marks and citations omitted). The only special procedures to which Rep. Perry is theoretically entitled are those set forth in Attachment C—and he is not necessarily even entitled to those, which were recommended by the Government in an abundance of caution and adopted by this Court. *See supra* note 1. The fact that Rep. Perry is a member of Congress does not entitle him to participate in legal proceedings in a manner disallowed to everyone else. His apparent request for special treatment should be rejected.

## CONCLUSION

Instead of diligently preparing a Speech or Debate privilege log in response to the search warrant executed on his personal cell phone, Rep. Perry has spent the 49 days provided to him trying to block disclosure of material he apparently does not want the Government to see and delaying a federal criminal investigation.  His request for an extension of time, along with his apparent request for special treatment, should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:    /s/ Timothy A. Duree
       Timothy A. Duree (Texas Bar No. 24065179)
       Special Assistant United States Attorney

       Thomas P. Windom (D.C. Bar. No. 502131)
       J.P. Cooney (D.C. Bar. No. 494026)
       John Crabb Jr. (N.Y. Bar No. 2367670)
       Assistant United States Attorneys

       601 D Street, N.W.
       Washington, D.C. 20530
       timothy.duree2@usdoj.gov

# ATTACHMENT C

*Special Search Procedures*

1.  I have been informed by the Prosecutors overseeing the investigation in this matter that they have decided to adopt special procedures in light of the possibility the forensic extraction of the Device (hereinafter, "Extraction") contains materials created that are protected by the Speech or Debate Privilege, U.S. Const. art I, § 6, cl. 1 (the "Privilege").

2.  The special search procedures will be employed with respect to the Extraction to ensure that an appropriate opportunity is afforded to Congressman Perry to either waive or assert the Privilege, prior to any review of the content of the Extraction by employees of the Executive Branch.[1]  These special search procedures are as follows:

> a.  Attorneys for the U.S. Attorney's Office for the District of Columbia and/or the Criminal Division of the U.S. Department of Justice will contact counsel for Congressman Perry.

> b.  Before conducting any review of the contents of the Extraction, attorneys for the U.S. Attorney's Office for the District of Columbia and/or the Criminal Division of the U.S. Department of Justice will request that Congressman Perry waive the Speech or Debate Privilege and consent to the search of the Extraction pursuant to the instant Warrant.  If Congressman Perry agrees to waive the Speech or Debate Privilege, the agents will be authorized to search the Extraction for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1512(c)(2) and (k) (attempted obstruction of an official proceeding and conspiracy to obstruct an

---

[1]  The D.C. Circuit has held that even incidental review of Speech or Debate privileged material by agents during the execution of a search of a Member's office violates the Privilege unless the member is provided an opportunity to review and assert the Privilege.  *United States v. Rayburn House Office Building, Room 2113*, 497 F.3d 654, 662 (D.C. Cir. 2007).

- 1 -

official proceeding), § 1001 (false statements) and § 371 (conspiracy to defraud the United States), consistent with the other procedures set forth in this affidavit.

      c.      If Congressman Perry declines to waive the Speech or Debate Privilege with respect to the search of the Extraction pursuant to the instant Warrant, the agents executing the Warrant will make a complete copy of the Extraction and deliver the Extraction to Congressman Perry, through counsel, to give him the opportunity to assert the Speech or Debate privilege over information in the Extraction.  In doing so, neither the agents nor any attorneys for the Government will review the Extraction.

      d.      Congressman Perry will have thirty (30) days to review the Extraction and provide attorneys for the U.S. Attorney's Office for the District of Columbia and the Criminal Division of the U.S. Department of Justice with a log of the records contained in the Extraction over which the Privilege is being asserted.  That log shall identify the record by date, recipient, sender, and subject matter if such information is available.  As needed, the Government shall then request that the District Court review the records over which Congressman Perry has asserted privilege in order for the Court to make a final determination whether they contain privileged information.

      e.      If Congressman Perry fails to complete the privilege review within 30 days, the Government will seek relief from the District Court, including requesting a determination that Congressman Perry waived the privilege through non-compliance, providing the contents of the Extraction to the Court for its review, or such other relief that may be appropriate.

      f.      Neither attorneys for the U.S. Attorney's Office for the District of Columbia and the Criminal Division of the U.S. Department of Justice nor the agents executing the Warrant—nor any other employee of the Executive Branch—shall review the contents of the

- 2 -

Extraction until: (1) Congressman Perry consents to such a review, as set forth in Paragraph (b); (2) Congressman Perry identifies non-privileged material in the Extraction that can be reviewed, as set forth in Paragraph (d); or (3) pursuant to further order of the Court.

| | |
|---|---|
| **From:** | John Irving |
| **To:** | Duree, Timothy (CRM); John Rowley |
| **Cc:** | McHenry, Teresa (CRM) |
| **Subject:** | RE: [EXTERNAL] RE: Scott Perry---search warrant docs |
| **Date:** | Wednesday, October 5, 2022 12:56:24 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | Privilege Log Produced on 10_05_2022.xlsx |

Hello, Tad.

Thank you for considering our request. Unfortunately, we do not believe that we can complete this task in a professional manner by next Tuesday. We will proceed with filing a motion to extend time to comply. Given the unusual circumstances here, I spoke with the Clerk's Office about the mechanics of filing into a sealed search warrant case where we are not counsel of record. I also explained that the alternative was to file into the public TRO miscellaneous case, and that I did not think anyone would appreciate that. I will email the motion, proposed order, and notices of appearance to the Clerk's office, and they will forward it to Judge Boasberg, who is filling in for Chief Judge Howell today. I will copy you and Teresa on that communication.

I am attaching the log we discussed yesterday of the documents that we currently believe are protected by the Speech or Debate Clause. For the record, Representative Perry does not waive that protection or any other applicable privilege or protection.

- John

**John S. Irving | E & W Law**
1455 Pennsylvania Ave. NW, Suite 400, Washington, DC 20004
M: 301-807-5670

www.earthandwatergroup.com



---

**From:** Duree, Timothy (CRM)
**Sent:** Tuesday, October 4, 2022 9:30 PM
**To:** John Irving; John Rowley
**Cc:** McHenry, Teresa (CRM)
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

Gentlemen,

We agree to extend the deadline for production of the Speech or Debate privilege log to Tuesday, October 11. Please see the attached letter.

Tad

**From:** John Irving                              >
**Sent:** Tuesday, October 4, 2022 9:06 AM
**To:** Duree, Timothy (CRM) <                                          >
**Cc:** McHenry, Teresa (CRM) <                                      >
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

Ok – thank you.

**John S. Irving | E & W Law**
1455 Pennsylvania Ave. NW, Suite 400, Washington, DC 20004
M: 301-807-5670
John.irving@earthandwatergroup.com
www.earthandwatergroup.com



---

**From:** Duree, Timothy (CRM)
**Sent:** Tuesday, October 4, 2022 9:05 AM
**To:** John Irving; John Rowley
**C**
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

Just sent an invite.

---

**From:** John Irving                                    ████████████████
**Sent:** Tuesday, October 4, 2022 8:42 AM
**To:** Duree, Timothy (CRM █████████████████>; John Rowl████████
**Cc:** McHenry, Teresa (CRM) ████████████████>
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

Hello, Todd.

Let's talk at 3 pm today.  Please send a call in number if you would.

- John

**John S. Irving | E & W Law**
1455 Pennsylvania Ave. NW, Suite 400, Washington, DC 20004
M: 301-807-5670
████████████████████
www.earthandwatergroup.com



---

**From:** Duree, Timothy (CRM)
**Sent:** Monday, October 3, 2022 9:53 PM
**To:** John Irving; John Rowley
**Cc:** ████████
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

John,

We do want a comprehensive Speech or Debate privilege log.  That is what paragraph 2.d. of the protocol requires.

We previously agreed to extend the deadline for your Speech or Debate privilege log to October 6.  The protocol sets a 30-day deadline for completion of the log.  You received the materials on August 23, so the October 6 date to which we agreed is two weeks more than what is provided in the protocol.  We want to keep this date.

If you'd like to have a call, we're free at 3:00 tomorrow afternoon.  Let me know if that works for you.

Tad

---

**From:** John Irving <████████████████
**Sent:** Monday, October 3, 2022 11:59 AM
**To:** Duree, Timothy (CRM ████████████████; John Rowley████████
**Cc:** McHenry, Teresa (CRM) ████████████████>
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

Hello, Tad.

We've spent significant time reviewing the data on the image of Rep. Perry's cell phone and trying to develop a workable plan, as indicated in my email to you last week. Given the volume of the material here, we still hope to reach some agreement as to categories of information that you might agree are presumptively covered by Speech & Debate (e.g., communications between Rep. Perry and other Members of Congress and his own staff), or are presumptively not covered by Speech & Debate (such as communications with family and friends). We would still like to have a call today in order to talk this through.  If you require a document-by-document review for Speech & Debate privilege, we are going to need additional time in order to complete that review, and we would seek your consent on a motion requesting that additional time.  We would still like to have a call today in order to talk all of this through.

As you know, we have concerns about subjecting additional categories of information to a review by a taint team, and we acknowledge that we will need to take that up with the Court.  It would still be helpful, though, to focus on information covered by Speech & Debate for now.

- John

**John S. Irving | E & W Law**
1455 Pennsylvania Ave. NW, Suite 400, Washington, DC 20004

M: 301-807-5670

<span style="background:black">████████████</span>

www.earthandwatergroup.com



**From:** Duree, Timothy (CRM)
**Sent:** Sunday, October 2, 2022 5:19 PM
**To:** John Irving; John Rowley
**Cc:** ████████████
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

John,

As previously indicated, the only thing we are requesting is a Speech or Debate privilege log, as contemplated in paragraph 2.d. of Attachment C.

Other than potential Speech or Debate material, we believe that review of materials obtained via the warrant should be handled in the same way that it is normally done—i.e., that the government will do its own review for responsiveness and ████████████████████████ ████████████ We aren't inclined to permit your team to do that work for us.  Thus, while we're conscious of the effort you put into categorizing the communications, we don't need logs of everything you've reviewed.  We just need a Speech or Debate privilege log.

We do think it productive to see if we can try and limit the scope of our disagreement on Speech or Debate issues.  Please let us know when you will be able to send us the Speech or Debate privilege log, and then we can set up a call to discuss.

Tad

**From:** John Irving ████████████>
**Sent:** Friday, September 30, 2022 6:25 PM
**To:** Duree, Timothy (CRM ████████████>; John Rowle ████████
**Cc:** McHenry, Teresa (CRM ████████████
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

Hello, Tad.

Per our communications, we are providing you with information about the data on Rep. Perry's phone in order to facilitate our discussions.  We are providing this information in good faith and are not waiving any applicable privileges and protections.  We would like to have a call with you on Monday to talk this through further.

We loaded data from the following categories for the period 07/12/2020 – 01/16/2021:

- <span style="background:black">████████████</span>
- <span style="background:black">██████</span>
- <span style="background:black">████</span>
- <span style="background:black">██████</span>
- <span style="background:black">██████</span>
- <span style="background:black">████</span>

That totals 14,489 documents (recall that we had used a date range earlier of 10/01/2020 – 01/31/2021, so disregard those earlier numbers).

We reviewed a significant number of documents:

- 708 emails from the 07/12/2020 – 01/16/2021 time frame that we thought were likely to be subject to Speech & Debate using a domain filter to identify those emails (e.g., @mail.house.gov)
- 970 emails from the 07/12/2020 – 01/16/2021 time frame that we thought would be relevant to your investigation using a domain filter to identify those emails (e.g., @donaldtrump.com)
- Because time was running short, we shifted to the 10/01/2020 – 01/16/2021 time period.
  - We reviewed 75 Documents, 1 Recording, and 165 voicemails
  - We reviewed 1,712 text messages

The data contained a wide variety of information, as one might expect with an iPhone.  Some we believe are clearly subject to Speech & Debate, such as communications with other Members of Congress and with Rep. Perry's own staff.  Some fall into more of a gray area, where that was less clear.  There are purely personal communications with Rep. Perry's wife, family, close friends, and professional associates.  There are communications related to the 2020 election, including communications with the White House, Trump campaign, attorneys representing the Trump campaig ████████████ ████████████

Again with time growing short and in order to get a better picture of the data, we conducted searches across the entire 07/12/2020 – 01/16/2021 date range for the following categories using phone numbers and email addresses that we obtained in our review of the nearly 3,400 emails and texts.  These are not exhaustive lists because we only had the emails and phone numbers that we had seen, but it is helpful, and we hope that we might come to some agreement

as to what the government has a right to access, what it does not (or at least what it doesn't care to), and narrow the information where we disagree.



The attached log provides details about the "Blue" and "Green" categories of communications. Our vendor is working on logs for the additional categories, and we will provide those on Monday. The numbers for those other categories might change a bit because our vendor is checking our searches, but these numbers should be close. Please let us know when you might be available for a call on Monday.

- John

**John S. Irving | E & W Law**
1455 Pennsylvania Ave. NW, Suite 400, Washington, DC 20004
M: 301-807-5670

www.earthandwatergroup.com

**From:** ████████████████
**Sent:** Thursday, September 22, 2022 11:32 AM
**T** ████████████████
████████████████
**Subject:** RE: [EXTERNAL] RE: Scott Perry---search warrant docs

Gentlemen,

Thanks for taking the time to speak with us yesterday. As discussed, we welcome a comprehensive Speech or Debate privilege log. If you can provide this to us by September 30, we'd be very grateful. We will do our best to respond quickly in the hope of narrowing the volume of disputed documents we might need to present to the Court.

Although we understand your reasons for raising the possibility of other types of review that you might perform, such as attorney-client or relevance, we believe it best to follow the standard practice used for search warrants. Thus, we do not want a log addressing other types of privilege (like attorney-client, for instance) at this point. We likewise do not want you to identify documents that you believe are unresponsive to the search warrant. Once we are able to access the materials not protected by the Speech or Debate privilege, we will conduct our own responsiveness ████████████████ ████████████████ If you believe there is information on Congressman Perry's phone that is protected by attorney-client privilege, you will be able to present that issue to the filter team in the future.

Tad

**From:** John Rowle ████████████████>
**Sent:** Tuesday, September 20, 2022 3:19 PM
**To:** Duree, Timothy (CRM ████████████████>; 'John Irving ████████████████>
**Cc:** McHenry, Teresa (CRM ████████████████ Windom, Thomas (USADC ████████████████
**Subject:** [EXTERNAL] RE: Scott Perry---search warrant docs

Tad / Teresa –

John Irving and I would like to have a call to discuss where things stand with our review, as well as the process going forward.

Please let us know when you're available and we can either call you or we'll send a dial-in number.

Thanks,
John

**From:** Duree, Timothy (CRM) <▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Sent:** Wednesday, September 7, 2022 10:19 PM
**To:** John Irvin ▮▮▮▮▮▮▮▮▮▮▮▮▮▮John Rowle ▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Cc:** McHenry, Teresa (CRM) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮Windom, Thomas (USADC ▮▮▮▮▮▮▮▮▮▮▮▮
**Subject:** RE: Scott Perry---search warrant docs

John,

Thanks for the update.  We have no objection to setting September 6 as the start of the 30-day period, which creates a privilege review deadline of October 6.

As to limiting the date range: our warrant seeks information from the dates of July 12, 2020, to January 16, 2021.  You can limit your review (and production to us) to that time period.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Please review and produce materials in all the other categories.  There is a possibility we may later ask you to review and produce materials in the excluded data categories, but for now, it's fine to leave them out.

We are very hopeful that your review can be completed by the October 6 deadline.  That said, if the deadline proves to be unfeasible, we might be able to agree to rolling productions.

Could we plan to have a status call next Friday, September 16?  I think it might be worthwhile to hear about progress and to address any issues before it gets too close to October 6.

Tad

**From:** John Irvin ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Sent:** Wednesday, September 7, 2022 9:16 AM
**To:** Duree, Timothy (CRM ▮▮▮▮▮▮▮▮▮▮▮▮▮▮John Row▮▮▮▮▮▮▮▮▮▮▮▮▮>
**Cc:** McHenry, Teresa (CRM) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮Windom, Thomas (USADC ▮▮▮▮▮▮▮▮▮▮▮▮>
**Subject:** [EXTERNAL] Re: Scott Perry---search warrant docs

Hello, all.

We wanted to get back to you on the data from Rep. Perry's phone and to see if we can come to some agreement with respect to narrowing the set of data that we will need to review, which is obviously tied to whether the government agrees to narrow the information that it will seek to review pursuant to the second warrant.

The volume of data on the raw image is considerable.  To start, there are a number of categories that the data falls into, many of which are likely useless to your investigation.  The categories are:





The raw data for the categories that we believe would be the most relevant to your investigation is as follows:

Voicemail – 1,843 records from 08/01/2018 through 08/09/2022
Text – 7,008 records from 1979(?) through 08/09/2022 (I suspect the 1979 dates are a default date where complete information is not available)
Instant Messages – 1,409 records from 09/08/2020 through 08/09/2022
Chats – 4,947 records from 06/17/2016 through 08/09/2022
Emails – 21,787 records from 12/15/2014 through 08/09/2022
Exchange - 13,364 records
Documents – 2,088 records
Recordings – 8 records from 07/25/2014 through 10/06/2020

That totals 52,454 documents, many of which significantly pre and post-date the events at issue.  There is no reasonable way that we would be able to review that volume of information in 30 days.

In an effort to prioritize the information that we believe is most relevant to your investigation and to narrow the volume of information that we will need to look through, we asked our vendor to apply a date filter of 10/01/2020 through 01/31/2021, and to limit the categories of data to those listed in the table below.  That has now been accomplished. Our vendor loaded 10,724 documents to Relativity for our review.  The table below provides the categories and respective volume:



We ask that you agree to limit the scope of the documents that you are interested in and that we will need to review to those above.  We will do our best to get through them in 30 days, but we anticipate needing additional time.  We are willing to work with you on adding date parameters and data categories to the extent you need additional information.

We also ask that we start the 30-day clock with respect to the Court's order yesterday, 09/06/2022.

- John

**From:** Duree, Timothy (CRM ████████████████████████
**Sent:** Thursday, August 18, 2022 9:16:07 PM
**To:** John Row███████████████████████>; John Irvin ███████████████████████>
**Cc:** McHenry, Teresa (CRM ██████████████████Windom, Thomas (USADC ████████████
**Subject:** Scott Perry---search warrant docs

Mr. Rowley and Mr. Irving,

Thanks for speaking with us earlier this evening.  I've attached a copy of the search warrant and the relevant attachments.  Attachment C details the Speech or Debate protocol we discussed on the phone.  Please give me a call if you have any questions.

Tad

Timothy A. (Tad) Duree

U.S. Department of Justice
202-316-6792



U.S. Department of Justice

Matthew M. Graves
United States Attorney

District of Columbia

*Patrick Henry Building*
*601 D Street N.W.*
*Washington, DC 20530*

October 4, 2022

John Irving
E & W Law
1455 Pennsylvania Avenue NW, Suite 400
Washington, DC 20004

John Rowley
JPRowley Law PLLC
1701 Pennsylvania Avenue NW, Suite 200
Washington, DC 20006

      Re:    Speech or Debate privilege log for Congressman Scott Perry

Dear Messrs. Irving and Rowley:

     We will agree to extend the deadline for the completion of your Speech or Debate privilege log to Tuesday, October 11.

     We cannot agree to a longer extension than this, as you have already had more time than the protocol requires.  You first received the extraction of Congressman Perry's phone on August 23.  The Speech or Debate protocol, memorialized as Attachment C, stipulates that you have 30 days to complete a Speech or Debate privilege log.  By the terms of the protocol, this deadline would have expired on September 22.  On your request, we agreed to extend the deadline to October 6.

     We understand that you have spent time categorizing the information in the extraction by subject matter.  As previously stated in our emails, though, we have not asked you to do this.  We have been clear that we seek only a Speech or Debate privilege log, as contemplated in paragraph 2.d. of Attachment C.

     We have also declined your requests that we allow you and your client to review the information in the extraction for relevance, for attorney-client material, and for marital privilege.  As stated in our emails, other than the material you believe to be protected under the Speech or Debate Clause, we intend to review the extracted material per the normal process—i.e., the government will conduct its own review for responsiveness and ████████████████████████████

We hope this extension is helpful to you, and we hope to receive the Speech or Debate privilege log by October 11, 2022.

Sincerely,

Matthew M. Graves
United States Attorney


By:  */s/Timothy A. Duree*
Timothy A. Duree
Special Assistant U.S. Attorney
601 D Street NW
Washington, DC 20530

| Control Number | ControlRegAttach | Date/Time_Family | Email To | Email From | Email CC | Email BCC | Email Subject | Date/Time_Email Sent | Message_ParticipantIds | Message_ParticipantNames | Message_ConversationDateOldest | Message_ConversationDateMax | Voicemail From |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*Note to the Court: This privilege log attachment to the Government's Opposition to Rep. Perry's Motion for Extension of Time to Comply with the Conditions of the Search Warrant Issued on August 18, 2022, is 217 pages in length. The first ten pages of the exhibit are included here, but the remaining 207 pages have been excluded from this Appendix due to their volume. The full exhibit is available at ECF No. 8-4.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                          |     |                          |
| ---------------------------------------- | :-- | ------------------------ |
|                                          | :   |                          |
| **In the Matter of the Search of**       | :   |                          |
| **The Forensic Copy of Representative**  | :   | **Case No.  22-SC-2144** |
| **Scott G. Perry's Mobile Telephone**    | :   |                          |
|                                          | :   |                          |

**REPRESENTATIVE SCOTT G. PERRY'S REPLY TO THE GOVERNMENT'S**
**OPPOSITION TO HIS MOTION FOR EXTENSION OF TIME TO COMPLY WITH**
**THE CONDITIONS OF THE SEARCH WARRANT ISSUED ON AUGUST 18, 2022**

Representative Scott G. Perry, a sitting Member of the United States House of Representatives, in both his official and personal capacities and through undersigned counsel, respectfully submits the following Reply to the Government's Opposition to his Motion for an Extension of Time to Comply with the Conditions of the Court's Search Warrant Issued on August 18, 2022.

This is a problem of the Government's own making. It was the Government that decided to seize the phone of a sitting Member of the United States House of Representatives, which foreseeably raised Speech or Debate issues that would require resolution by this Court. Given the volume of the data found to reside on Rep. Perry's cell phone, and counsel's need to understand the facts and context of the communications represented by the data, more than 30 days is reasonably required to review the data and create an accurate log of communications that are privileged and not subject to review by the Government. To be clear, Rep. Perry, whom the Government has advised is not a target of the grand jury's investigation, does not waive the protections of the United States Constitution's Speech or Debate Clause (or any other applicable privilege or protection for that matter), and respectfully submits that he cannot be compelled to

waive that protection through an arbitrary deadline set *ex parte* upon application by the Government without any understanding of the volume of information at issue.

Contrary to the Government's overwrought and invented allegations that Rep. Perry and his undersigned counsel have "tried to exploit" the warrant's procedures, made "frivolous privilege assertions," tried "to cajole the Government," and engaged in "dilatory behavior," we have kept in regular contact with Government counsel to keep them apprised about the status of our review efforts, while attempting to work through the complexities of the Speech or Debate and other challenges presented. With respect to timing, the parties mutually agreed to start the warrant's 30-day clock on September 6, 2022 (ending October 6, 2022) because it took time for the Government to send the extracted image to defense counsel, and for counsel's eDiscovery vendor to receive and process the information. After the data was processed, counsel worked with the vendor to identify the categories of information (out of 46 categories) to review, to filter the selected data by the date range in the warrant (July 12, 2020 – January 16, 2021), and the vendor then had to load the resulting information to a review platform so that counsel could access it.

Counsel has likewise acted in good faith and with all reasonable diligence with respect to their review of the information. As the Government itself notes, "a determination about the applicability of the Speech or Debate Clause cannot be made without knowing some information about the content of the communication." Opp. at pp. 4-5. As with any effort involving an investigation and document review, it has taken time to understand who the participants are in email and text communications and what they are talking about. This is particularly so in the context of the Speech or Debate Clause, which, as the Government also notes, requires a determination about whether the communication pertains to "legislative activity". Opp. at p. 6 citing *Gravel v. United States*, 408 U.S. 606, 625 (1972).

The Government mischaracterizes counsel's efforts with respect to categorizing the information as an effort to "withhold from disclosure materials [we] deemed irrelevant." Opp. at p. 3. Counsel reviewed nearly 3,000 documents. With the 30-day deadline approaching and unable to review the remaining documents one-by-one, counsel used the email and text message information compiled in its initial review (which was also time-consuming with over 150 entries) to search for additional information by category in order to prioritize the review of information that would be most relevant to the Government's investigation and start producing accurate logs to the government. It seemed senseless, for example, to wholesale review a large amount of information where texts about family Thanksgiving dinner were mixed with emails about the 2020 election. When defense counsel sought the Government's agreement for additional time to complete that task, they refused (with the exception of a five-day extension over a holiday weekend). Having no other recourse, counsel then sought this Court's intervention and, out of concern that the Government might argue that Rep. Perry had failed to provide a log and therefore waived Speech or Debate protection by failing to comply with the warrant's terms, provided a log to the Government that contained the results of its individual review of nearly 3,000 reviewed documents and the categories that counsel believed contained information protected by the Speech or Debate Clause. The log is overly broad and includes information that is not protected by the Speech or Debate Clause, and that is why we sought additional time to properly complete this task.

The Government also complains that the log contains insufficient information to determine the applicability of the Speech or Debate Clause, and that "[l]acking meaningful detail about the substance of these communications, the Government cannot – and this Court ultimately should not – accept Rep. Perry's unadorned assertion that the Speech or Debate Clause applies." Opp. at 6. To start, the Government is largely talking about text messages that, by their nature and unlike

emails, do not have a "subject line" that can be automatically populated using metadata from those communications. Requiring Rep. Perry to provide summaries of each text communication covered by the Speech or Debate Clause will take far more time than the 30-day extension sought by Rep. Perry. More importantly, the Government appears to misunderstand the significant Separation of Powers considerations that make the propriety of its demand for a log debatable at best, since that alone would disclose privileged information to the Executive branch, and also because it would be inappropriate for the Executive branch to make determinations about the applicability of the Speech or Debate Clause. *See United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654, 660 (D.C. Cir. 2007). The Government cites no authority for its position that it is entitled to such a log. That is why the warrant requires the Court to make those determinations.[1] In the interest of cooperation, and in recognition of the practical difficulty of making these determinations without at least some information, Rep. Perry has agreed to provide such a log.

The Government argues that Rep. Perry seeks "special treatment due to his status as a member of Congress." Opp. at 8. Rep. Perry does not consider himself to be "special," but the fact remains that the Speech or Debate Clause protects the Members of Congress from intrusion by the Executive branch into "legislative activity". This includes information gathering that is "part of, in connection with, or in aide of a legitimate legislative act," even where that is an informal effort undertaken by an individual Member of Congress or their staff. *See McSurley v. McClellan*, 553

---

[1] The Government claims that the special procedures set forth in Attachment C "were recommended by the Government in an abundance of caution . . ." Opp. at 9. That is not entirely so. The Government first insisted that Rep. Perry waive Speech or Debate Protections and informed counsel that it would otherwise seek a warrant from this Court authorizing it to review the information on Rep. Perry's phone. It was only after defense counsel emailed the Government a copy of the motion for a temporary restraining order requesting the kind of review procedure that the D.C. Circuit required in Rayburn House Office Building that the Government sought the warrant with those safeguards (but imposing a 30-day time limit).

F.2d 1277, 1286 (D.C. Cir. 1976) and the additional authorities, including a brief filed by the House Counsel's Office (D.D.C. Case No. 20-cv-00106 (June 26, 2020)(ECF No. 19-1)), referenced in Rep. Perry's motion at p. 8. It is also true – again for the benefit of Congress as an institution, and not for Rep. Perry personally – that the Speech or Debate Clause protects legislators "from the burden of defending themselves" with respect to investigations into legislative acts because that would have a chilling effect on congressional freedom of speech. *See Porteous v. Baron*, 729 F.Supp. 2d 1158, 163 (D.C.C. 2010); *Miller v. Transamerical Press, Inc*., 709 F.2d 524, 528 (9th Cir. 1983).

Rep. Perry also seeks no "special treatment" by requiring the Government to respect privileges and protections, such as the marital privilege, or by asking the Court to ensure that the Government has established probable cause to examine the wide range of information contained in his personal phone. While he has not been privy to the affidavit in support of the search warrant – nor should he be – it is difficult to imagine that probable cause exists to believe that evidence of a crime is present ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████. Accordingly, Rep. Perry requests that the Court require the Government to make such a showing, as it should for any citizen, before it is permitted to rummage through otherwise privileged and personal information on his phone. To that end, undersigned counsel has sought to be constructive and helpful in identifying communications between Rep. Perry and his wife, family, and friends that have no relevance whatsoever to the Government's investigation.

For the reasons set forth above, Rep. Perry respectfully requests that this Court extend the compliance deadline under the warrant until November 7, 2022.

Dated: October 13, 2022              Respectfully Submitted,

E&W Law, LLC


   /s/ John S. Irving
John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com


JPROWLEY LAW PLLC


   */s/ John P. Rowley III*
John P. Rowley III
DC Bar No. 392629
1701 Pennsylvania Avenue, NW
Suite 200
Washington DC 20006
john.rowley@jprowleylaw.com
Telephone: 202 525 6674


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October 2022, a true and correct copy of the foregoing was emailed to chambers and to counsel for the government.

     /s/ John S. Irving
John S. Irving (D.C. Bar No. 460068)

JA056

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| In the Matter of the Search of | : | |
| The Forensic Copy of Representative | : | Case No.  22-SC-2144 |
| Scott G. Perry's Mobile Telephone | : | |
| | : | |

### REPRESENTATIVE SCOTT G. PERRY'S RESPONSES
### TO THE COURT'S MINUTE ORDER DATED OCTOBER 14, 2022

Representative Scott G. Perry respectfully submits the following Responses to the Court's

Minute Order dated October 14, 2022.

The raw data extracted from Representative Perry's mobile phone contains over a million

records (1,017,783 to be precise) in the following 45 categories:[1]



1



In an effort to focus on the most relevant information and provide the Speech or Debate log pursuant to the search warrant, undersigned counsel loaded data from the following categories (listed above in bold text) for the time period referenced in the warrant of July 12, 2020, through January 16, 2021.



That data was loaded to a Relativity review platform.

2

Counsel requested that the Government limit its search to those categories. The Government agreed to exclude only the following categories (listed above in underline).



With the 30-day deadline approaching and unable to review the remaining documents one-by-one, counsel used the email and text message information compiled in its initial review of nearly 3,000 documents to search for additional information by category so as to prioritize the review of information that would be most relevant to the Government's investigation and start producing accurate logs to the Government. That resulted in the following categories of information:



The Speech or Debate log that counsel provided to the Government on October 5, 2022, includes 12,317 entries. Those entries incorporate the nearly 3,000 documents that counsel had actually

JA059

reviewed, as well as documents from several of the categories above that are likely to contain information protected by the Speech or Debate Clause.

There is a total of 14,489 documents loaded to Relativity for review. To date, 4,829 documents have been reviewed. Of those, 1,041 documents have been tagged as being protected by the Speech or Debate Clause, and 3,788 have been tagged as not being protected by the Speech or Debate Clause.

**1. The total number of records that have been reviewed and:**

**(a) Withheld as subject to the Speech or Debate privilege.**

Answer: Of the 4,829 documents that have been reviewed, 1,041 documents have been determined to be subject to the Speech or Debate privilege. The privilege log provided to the Government on October 5, 2022, contains additional documents from categories believed to contain information protected by the Speech or Debate privilege that have not yet been individually reviewed.

**(b) Determined not to be subject to the Speech or Debate privilege.**

Answer: Of the 4,829 documents that have been reviewed, 3,788 documents have been determined <u>not</u> to be subject to the Speech or Debate privilege.

**(c) Withheld on the basis of a privilege other than the Speech or Debate privilege.**

Answer: No documents have been withheld on the basis of a privilege other than the Speech or Debate privilege. There are documents listed on the privilege log that might also be subject to marital privilege, but that is not the basis for their inclusion in the log. Counsel has searched for, but has not identified, any documents that are protected by the attorney-client privilege or attorney work product protection within the date range of the warrant (July 12, 2000, through January 16, 2001).

**(d) As to records in 1(c), identify the specific privilege and the number of records withheld for each such claimed privilege other than the Speech or Debate privilege.**

<u>Answer</u>: No documents have been withheld on privilege grounds other than Speech or Debate privilege.

**2. The total number of records that have not been reviewed to date and have been withheld:**

**(a) As potentially subject to the Speech or Debate privilege.**

<u>Answer</u>: There remain 9,660 documents that have not yet been individually reviewed. Of those, there are 7,832 documents that are potentially subject to the Speech or Debate privilege. That is the number that resulted from searching all documents that have not yet been tagged as "Reviewed" that fall into any of the color-coded categories except:



**(b) As potentially subject to a privilege other than the Speech or Debate privilege.**

<u>Answer</u>: 78 documents that have been reviewed have been determined to be protected by marital privilege. There are 562 documents that have not yet been reviewed that are potentially subject to marital privileg ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ so it is possible that a small number of additional documents will also fall into that category. There have been no attorney-client privileged or attorney work product documents identified within the date-filtered review set, and it is unlikely that any will be identified in the unreviewed documents.

**(c) As to records in 2(b), identify the specific privilege and the number of records withheld for each such claimed privilege other than Speech or Debate privilege.**

Answer: Please see the answer to Item 2(b).

**3. Clarify the apparent discrepancies in total numbers of documents, as set out in PERRY's Motion, which states, variously: (a) "a set of 14,489 documents requiring review for Speech or Debate privilege;" (b) the color-coded chart with 17 categories of communications, totaling 21,496 documents; and (c) the "log of 12,318 documents" provided to the Government on October 5, 2022 "as the documents that fell within the categories of information that counsel believed would be subject to the Speech or Debate privilege."**

Answer: The 14,489 number is the total number of documents that have been loaded to review for certain phone data categories (chats, documents, emails, Exchange, instant messages, recordings, and voicemails) using a date filter of July 12, 2000, through January 16, 2021. The color-coded chart with 17 categories of communications totaling 21,496 documents contains a larger number of documents because many of the documents fall into more than one category and would be counted more than once in the total. The 12,318 documents in the log provided to the Government included the nearly 3,000 documents that had been individually reviewed at that time, as well as the documents in the color-coded categories that counsel believes are likely to include documents that would be subject to the Speech or Debate privilege.

**4. Identify the evidentiary privilege that PERRY believes would prevent the Government from reviewing "otherwise personal and confidential" records, and "private communications with close family and friends," that otherwise fall within the scope of the Search Warrant.**

6

JA062

Answer: With the exception of documents subject to the Speech or Debate Clause, Rep. Perry believes that the Government should not be prevented from reviewing information that falls within the scope of the search warrant, so long as it has established a particularized need for that information and probable cause to believe that it is present in the data. Rep. Perry requests the Court's assistance to ensure that the Government's proposed review is properly supported. Rep. Perry also requests that the Court prohobit the Government from reviewing information that is subject t ███████████████e. Unlike normal search warrant circumstances, those communications can and have been identified.

Dated: October 17, 2022                          Respectfully Submitted,

                                                 E&W Law, LLC

                                                 ____/s/ John S. Irving____
                                                 John S. Irving (D.C. Bar No. 460068)
                                                 1455 Pennsylvania Avenue, N.W., Suite 400
                                                 Washington, D.C. 20004
                                                 Telephone: (301) 807-5670
                                                 Email: john.irving@earthandwatergroup.com

                                                 JPROWLEY LAW PLLC

                                                 ___/s/ John P. Rowley III___
                                                 John P. Rowley III
                                                 DC Bar No. 392629
                                                 1701 Pennsylvania Avenue, NW
                                                 Suite 200
                                                 Washington DC 20006
                                                 john.rowley@jprowleylaw.com
                                                 Telephone: 202 525 6674

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 17th day of October 2022, a true and correct copy of the

foregoing was emailed to chambers and to counsel for the government.

_____/s/ John S. Irving_____
John S. Irving (D.C. Bar No. 460068)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY | Case No. 22-SC-2144 <br><br> **Filed Under Seal** |

**GOVERNMENT'S BRIEF REGARDING THE INAPPLICABILITY OF THE SPEECH OR DEBATE CLAUSE TO MATERIALS SEIZED FROM REP. PERRY**

The procedures in Attachment C to the warrant to search the personal cell phone of Representative Scott Perry (Rep. Perry) are not required by the Constitution or compelled by D.C. Circuit precedent, and this Court should so rule. Nonetheless, the Government—out of an abundance of caution and to avoid litigation that would unduly delay the Government's investigation—requests that the Court also implement the procedures in Attachment C and review the 1,041 records listed in the log provided by Rep. Perry to determine whether they are in fact privileged under the Speech or Debate Clause as Rep. Perry claims. Based on available information, the Government does not believe that any of the records identified in the log are subject to the protections of the Speech or Debate Clause. Because the Government does not have access to the specific records listed in Rep. Perry's log and does not know their full contents, the Government cannot provide a detailed analysis of relevant law as applied to each specific record identified in the log. Yet the Government provides below an overview of relevant legal principles that are likely to apply as the Court conducts its review. And in a separate *ex parte* supplement, the Government provides additional facts developed in the course of an ongoing criminal investigation that may help inform its analysis.

I.       **Background**

On August 18, 2022, this Court approved a warrant to search Rep. Perry's personal cell phone, which had previously been seized from Rep. Perry on August 9, 2022, while he was on vacation in New Jersey, pursuant to a warrant. The search warrant approved by this Court contained an attachment (Attachment C) that established procedures intended to permit Rep. Perry to claim the protections of the Speech or Debate Clause of the Constitution for privileged materials contained on his cell phone. Attachment C specifically provided that if Rep. Perry declined to waive the protections of the Speech or Debate Clause, the Government would provide him with a copy of the contents of his cell phone and Rep. Perry would then have 30 days to provide a log to the Government identifying the materials on his phone that he claimed were protected by the Speech or Debate Clause. Ex. 1, at 2, § 2.d. Attachment C provided that the Government could then ask the Court to review all or some of the materials listed in the log to determine whether they were in fact entitled to protection under the Speech or Debate Clause. *Id.* The Government included Attachment C as a part of its warrant application out of an abundance of caution to avoid claims that the search of Rep. Perry's cell phone ran afoul of the D.C. Circuit's decision in *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654 (D.C. Cir. 2007) (*Rayburn*).

As the deadline approached for Rep. Perry's submission of a log pursuant to Attachment C, Rep. Perry informed the Court that he had been able to review only a portion of the materials on his phone and needed more time to complete the review and provide a log. After a hearing, the Court directed Rep. Perry, as relevant here, to provide a log listing the records that he has reviewed so far and that he claims are subject to the protections of the Speech or Debate Clause. Minute Order, Oct. 18, 2022. The Court directed the Government, after receiving the log, to file a submission with the Court identifying "which, if any, of the records identified on" the log the

Government believes are not subject to the protections of the Speech or Debate Clause. *Id.* The Court further directed the Government to address whether:

(a) the Speech or Debate Clause privilege applies to communications found on the personal cell phone of a Member of Congress;

(b) the presence of non-legislative third parties to communications otherwise subject to the Speech or Debate Clause privilege vitiates that privilege;

(c) the crime-fraud exception is invoked here and, if so, applies to the Speech or Debate Clause privilege.

*Id.* Rep. Perry provided a log listing 1,041 records that he claims are privileged under the Speech or Debate Clause. The Government submits this brief to address the Court's questions and request that it conduct an *ex parte* review of the withheld records to determine whether they should be afforded protection under the Speech or Debate Clause.

## II. Discussion

The procedures in Attachment C are not constitutionally required, nor are they compelled by the D.C. Circuit's decision in *Rayburn*. The Court should so rule and hold that the Government is entitled to access the records on Rep. Perry's phone without regard to those procedures. Nonetheless, to avoid satellite litigation over the Speech or Debate Clause that would delay the Government's receipt of material from Rep. Perry's phone and unduly hinder the Government's investigation, the Government requests that the Court also adhere to the procedures in Attachment C to alternatively hold that none of the individual records are protected by the Clause.

In short, the Court should rule that (1) *Rayburn* does not apply, so the procedures in Attachment C are not required, and therefore the Government should be entitled to obtain and review the records on the phone without applying those procedures; and (2) the records identified by Rep. Perry are not protected under the Speech or Debate Clause and so the Government is entitled to access the records pursuant to the procedures in Attachment C as well. To aid the Court's

review of the records pursuant to Attachment C, the Government provides an overview of relevant legal principles, including answers to the questions specifically posed by the Court. Because the Government does not have access to the contents of Rep. Perry's phone, the Government admittedly does not possess all the relevant information that would be helpful to evaluate Rep. Perry's privilege claims. As a result, given the limited information available, the Government can only address Rep. Perry's privilege claims at a relatively high level of generality.

### A.      Overview of the Speech or Debate Clause

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. Art. I, § 6, Cl. 1. Where it applies, the Clause affords members of Congress three protections, all limited to legislative acts. First, it grants civil and criminal immunity for legislative acts. *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973); *United States v. Johnson*, 383 U.S. 169, 184-85 (1966). Second, it guarantees that Members "may not be made to answer" questions about their legislative acts. *Gravel v. United States*, 408 U.S. 606, 616 (1972). And third, it bars the use of legislative-act evidence against a member. *United States v. Helstoski*, 442 U.S. 477, 487 (1979).

In identifying the legislative acts entitled to these protections, the Supreme Court has emphasized that the Speech or Debate Clause strikes a careful balance. It is "broad enough to insure the historic independence of the Legislative Branch, essential to our separation of powers, but narrow enough to guard against the excesses of those who would corrupt the process by corrupting its Members." *United States v. Brewster*, 408 U.S. 501, 525 (1972). Thus, while the Clause safeguards the legitimate prerogatives of Congress, it does not extend beyond the legislative sphere, and it does not "make Members of Congress super-citizens, immune from criminal responsibility." *Id.* at 516.

Consistent with its text, "[t]he heart of the Clause is speech or debate in either House." *Gravel*, 408 U.S. at 625. The Supreme Court has extended the Clause's protection beyond its literal terms to include acts "generally done in a session of the House by one of its members in relation to the business before it," such as voting, issuing committee reports, and participating in committee hearings. *Id.* at 624 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)). "The gloss going beyond a strictly literal reading of the Clause has not, however, departed from the objective of protecting only legislative activities." *Hutchinson v. Proxmire*, 443 U.S. 111, 125 (1979). The Clause thus reaches only acts that are "an integral part of the deliberative and communicative processes by which members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625; *see Forrester v. White*, 484 U.S. 219, 224 (1988) (explaining that courts have "been careful not to extend the scope of [the Clause] further than its purposes require").

Accordingly, the acts the Supreme Court has found to be protected by the Speech or Debate Clause include such legislative acts as introducing proposed legislation, *see United States v. Helstoski*, 442 U.S. 477 (1979); introducing, voting for, and signing a budget ordinance, *see Bogan v. Scott-Harris*, 523 U.S. 44 (1998); subpoenaing records for a committee hearing, *see Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975); inserting material in the Congressional Record, *see Doe v. McMillan*, 412 U.S. 306 (1973); introducing evidence during committee hearings, *see Gravel v. United States*, 408 U.S. 606 (1972); delivering a speech on the floor of the House, *see United States v. Johnson*, 383 U.S. 169 (1966); interrogating witnesses during committee hearings, *see Tenney v. Brandhove*, 341 U.S. 367 (1951); and voting on resolutions, *see Kilbourn v. Thompson*, 13 Otto 168, 103 U.S. 168 (1881). In contrast, efforts to "cajole" or

"exhort" the Executive Branch are not protected by the Speech or Debate Clause, *Gravel*, 408 U.S. at 625, nor are acts that "are political in nature rather than legislative," *Brewster*, 408 U.S. at 513, even if those political acts are "integral to a Member's legislative goals," *Jewish War Veterans of the U.S., Inc. v. Gates*, 506 F. Supp. 2d 30, 53–54 (D.D.C. 2007) (internal quotation omitted).

In short, the Speech or Debate Clause protects only legislative acts, but "not all conduct relating to the legislative process is protected under by the Speech or Debate Clause." *Williams v. Johnson*, 597 F. Supp. 2d 107, 114 (D.D.C. 2009). If such a "sweeping reading" were permitted, it would effectively immunize members of Congress from criminal liability because "there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process." *Brewster*, 408 U.S. at 516.

## B.     The Procedures in Attachment C Are Not Constitutionally Required

The Third and Ninth Circuits have correctly held that the Speech or Debate "privilege when applied to records or third-party testimony is one of nonevidentiary use, not of non-disclosure." *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978); *see In re Grand Jury Proceedings*, 563 F.2d 577, 584 (3d Cir. 1977) ("[T]he privilege is one of nonevidentiary use rather than nondisclosure."); *United States v. Renzi*, 651 F.3d 1012, 1032 (9th Cir. 2011) (rejecting the contention "that there exists some grandiose, yet apparently shy, privilege of non-disclosure that the Supreme Court has not thought fit to recognize"). Those Courts recognize that the Government may obtain records—pursuant to a warrant or otherwise—and review those records regardless of whether the records contain material protected by the Speech or Debate Clause, although the Government cannot use protected material to obtain a conviction. The Speech or Debate Clause "does not prohibit disclosure of . . . privileged documents to the Government" but instead "merely prohibits the evidentiary submission and use of those documents." *In re Search of Elec. Commc'ns*

*in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 529 (3d Cir. 2015) (warrant to search member's Gmail account).

The D.C. Circuit, in contrast, has held that the Speech or Debate Clause includes a "non-disclosure privilege." *Rayburn*, 497 F.3d at 662. In *Rayburn*, the Government executed a warrant to search the congressional office of Rep. William J. Jefferson. Agents reviewed paper documents in the office and seized two boxes of responsive documents. *Id.* at 657. Agents also copied computer hard drives in the office, without reviewing their contents, so that they could later be searched off-site. *Id.* The court of appeals concluded that the search of the documents in the congressional office violated the Constitution because "[i]n order to determine whether the documents were responsive to the search warrant, FBI agents had to review all of the papers in the Congressman's office, of which some surely related to legislative acts." *Id.* at 661. The court stated that the government may search a congressional office only if it first provides the member with an "opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Id.* at 662. The court found no constitutional violation with respect to the copying of the computer hard drives, however, because no Executive agent had seen the contents of any of the files on those drives, explaining that its remand order—which established a process to turn over the records to the Congressman, allowed him to claim that specific records were protected, and required the district court to review *in camera* any specified records to determine whether they were protected—"afford[ed] the Congressman an opportunity to assert the privilege prior to disclosure of privileged materials [on the hard drives] to the Executive." *Id.* at 663.

Although the Government disagrees with *Rayburn*,[1] it remains binding precedent in this Circuit. But *Rayburn's* holding and reasoning do not compel the conclusion that the decision applies to the search of Rep. Perry's phone. *Rayburn* applies to the search of any "location where legislative materials were inevitably to be found." 497 F.3d at 661; *see id.* (emphasizing that the search "must have resulted in the disclosure of legislative materials"); *id.* at 662 ("The compelled disclosure of legislative materials to FBI agents executing the search warrant was not unintentional but deliberate—a means to uncover responsive non-privileged materials."); *see Renzi*, 651 F.3d at 1033 (explaining that *Rayburn* "concerned a novel problem: the first execution of a search warrant on the congressional office of a sitting Member of Congress"). Here, in contrast, the government did not enter any congressional space or review any congressional records and only seized Rep. Perry's personal cell phone. Although legislative materials will inevitably be found in a member's congressional office, the same cannot be said of the member's personal cell phone. *Rayburn* is therefore distinguishable and does not apply here.

---

[1] As the Government explained in a petition for writ of certiorari challenging *Rayburn*, which was declined, *see* 552 U.S. 1295 (2008) (No. 07-816), the Government disagrees with the D.C. Circuit's conclusion that the Speech or Debate Clause confers any privilege of confidentiality. The Clause's text, limited to speech or debate in either House, describes activities that are generally public in nature. The Clause, unlike traditional confidentiality privileges such as the attorney-client privilege, protects public, non-confidential activities, like floor debates, committee hearings, votes, and the drafting of bills and committee reports. *See Gravel*, 408 U.S. at 624; *see also Doe*, 412 U.S. at 311-313. These are matters that the Executive Branch is free to review without violating the Clause. Rather, the Clause only prohibits the use of such matters against a member in a criminal or civil case. Moreover, unlike confidentiality-based privileges, the Speech or Debate Clause's protection of legislative materials or actions applies regardless of whether a member has attempted to maintain their confidentiality. As Judge Henderson, writing separately in *Rayburn*, explained: "[W]hat the Clause promotes is the Member's ability to be open in debate—free from interference or restriction—rather than any secrecy right." 497 F.3d at 670 (Henderson, J., concurring in the judgment).

Moreover, "*Rayburn* rests on the notion that 'distraction' of members and their staffs from their legislative tasks is a principal concern of the Clause, and that distraction alone can therefore serve as a touchstone for application of the Clause's testimonial privilege." *Renzi*, 651 F.3d at 1034. The court of appeals in *Rayburn* determined that the search it deemed unconstitutional—the search of the Congressman's congressional office to locate responsive documents, resulting in the seizure of two boxes of documents—had significant potential to impede the Congressman's work, noting that "[t]his particular search needlessly disrupted the functioning of the Congressman's office." *Id.* at 665. No such potential for disruption occurred here. Agents never entered Rep. Perry's office, and his papers were not touched, let alone seized. Rather, agents seized his personal phone while he was on vacation in New Jersey, far from his Capitol office, then made an electronic copy and returned the phone to Rep. Perry soon thereafter with its contents unchanged and intact. Rep. Perry's personal phone was out of his possession for only a few hours while he was on vacation. Moreover, the personal phone was not connected to Rep. Perry's congressional email accounts and instead was connected to a political accoun ███████████████ ) and a personal accoun ███████████████ ). As far as the Government is aware, the limited seizure of Rep. Perry's phone caused no impairment to his legislative work, let alone an "impairment of legislative deliberations" of the type and magnitude that troubled the court of appeals in *Rayburn*. *Id.* at 663. *Rayburn* is therefore distinguishable on this basis as well.

### C.  Guidelines For Applying the Speech or Debate Clause in This Matter

Because *Rayburn* does not prohibit the Executive Branch from obtaining, through a warrant, materials stored on a member's personal cell phone seized far away from his congressional office, or prohibit the Executive Branch from reviewing the materials on the device (even those covered by the Speech or Debate Clause), this Court may strike Attachment C and

order production of all the materials on Rep. Perry's personal cell phone without any further review. Nonetheless, out of an abundance of caution, the Government asks that the Court adhere to Attachment C and review the 1,041 documents identified in Rep. Perry's privilege log to make an individualized secondary determination that the Speech or Debate Clause does not apply to any of these communications. The Government provides some guideposts to facilitate the Court's review, along with a separate *ex parte* supplement containing information developed in the course of an ongoing criminal investigation, which may further inform the Court's analysis.

a. *Rep. Perry bears the burden of establishing that a communication is protected by the Speech or Debate privilege*

Rep. Perry bears the burden of proving that the Speech or Debate privilege applies to the documents for which he seeks protection. *See United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995) (concluding that a Congressman seeking dismissal of an indictment on Speech or Debate grounds bears the "burden" of "show[ing] that the Government has relied upon privileged material"). A member asserting a privilege under the Speech or Debate Clause is asserting a "privilege personal to him," and information indicating whether material is privileged will often be "in his possession alone." *In re Grand Jury Investigation*, 587 F.2d at 597. Thus, "the burden of going forward and of persuasion by a preponderance of the evidence falls on him." *Id.*; *see United States v. Menendez*, 831 F.3d 155, 165 (3d Cir. 2016) ("A Member seeking to invoke the Clause's protections bears the burden of establishing the applicability of legislative immunity by a preponderance of the evidence."); *In re Graham*, No. 1:22-CV-03027-LMM, 2022 WL 3351801, at *2 (N.D. Ga. Aug. 15, 2022) (collecting cases "suggest[ing] that the burden rests with Senator Graham").

      b.     *The Speech or Debate Clause could potentially apply to communications found on the personal cell phone of a member of Congress*

There is no legal principle that would categorically foreclose Speech or Debate protections for materials on a member's personal cell phone. In the abstract, communications on a personal cell phone may reflect legislative acts protected by the Clause. As a practical matter, however, materials on a member's personal cell phone are less likely to constitute privileged legislative acts. To warrant Speech or Debate protection, a member's conduct must generally comport with a certain level of "procedural[] regular[ity]." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995). Communications contained on a personal cell phone—and especially those in personal or political email accounts housed on a personal cell phone— necessarily lack the formality and procedural regularity that generally characterize legislative acts subject to the protections of the Speech or Debate Clause. Therefore, it is highly unlikely, but not theoretically impossible, that a communication on a personal cell phone could merit Speech or Debate protection.

      c.     *There is no crime-fraud exception that applies in the context of the Speech or Debate Clause*

The Speech or Debate privilege applies to those legislative acts discussed above— introducing proposed legislation, for example, or delivering a speech on the floor of the House— even if such legislative acts are evidence of criminal conduct or part of a criminal scheme; "an unworthy purpose does not eliminate Speech or Debate Protection." *Menendez*, 831 F.3d at 166. The Clause "permits legislative action, as well as free and unfettered legislative debate, without exposing the legislator to criminal liability," *In re Grand Jury Proceedings*, 563 F.2d at 584, and it "has enabled reckless men to slander and even destroy others with impunity, but that was the conscious choice of the Framers," *Brewster*, 408 U.S. at 516. To be sure, the Speech or Debate

Clause does not "make Members of Congress super-citizens, immune from criminal responsibility." *Id.* The Clause does not "purport to confer a general exemption upon Members of Congress from liability or process in criminal cases." *Gravel*, 408 U.S. at 626. But the Government must prove a member's criminal conduct without using as evidence legislative acts that fall within the Clause's protections.

Nonetheless, the criminal nature of a member's conduct may shed light on whether particular conduct qualifies as a legislative act. Criminal conduct is unlikely to be "an integral part of the deliberative and communicative processes by which members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. Thus, for example, "[t]aking a bribe is, obviously, no part of the legislative process or function" and is therefore not a privileged legislative action. *Brewster*, 408 U.S. at 526. Such "illegitimate activities" are "inherently non-legislative." *United States v. James*, 888 F.3d 42, 46 (3d Cir. 2018) (internal citation omitted).

     d.     *The presence of a non-legislative third party does not vitiate the privilege*

As explained, the Speech or Debate Clause's core protection exists for public acts, such as votes and floor statements, and it applies without regard to whether a member has attempted to preserve confidentiality. Indeed, it applies even to material the member has shared with the world. The Clause "is not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has only a limited toleration for secrecy." *In re Grand Jury Investigation*, 587 F.2d at 597. Much of the core conduct protected by the Speech or Debate Clause is expected (and likely) to take place in front of members of the public—either through public spectators or the media. For instance, C-SPAN broadcasts much of what transpires on the floor of the House or

the Senate, yet the statements of a member on the floor during a legislative session nonetheless remain protected under the Speech or Debate Clause. In this respect (and others), the Speech or Debate privilege—which does not protect confidentiality, privacy, or secrecy—differs substantially from confidentiality privileges such as the attorney-client privilege.

Although the mere presence of a non-legislative third party does not vitiate the privilege in the same manner as the presence of a third party will foreclose a claim of attorney-client privilege, the involvement of a non-legislative individual in a private communication may lessen the likelihood that the communication is a legitimate legislative act subject to protections under the Speech or Debate Clause. To determine whether the Speech or Debate privilege applies, "the critical question is whether the action at issue was undertaken within the 'legislative sphere.'" *All. for Glob. Just. v. D.C.*, 437 F. Supp. 2d 32, 36 (D.D.C. 2006) (quoting *MINPECO, S.A. v. Conticommodity Servs., Inc.,* 844 F.2d 856, 859 (D.C.Cir.1988)). Private communications with non-legislative third parties are, as a practical matter, less likely to qualify as legislative acts.

> e.  *Communications about efforts to invalidate the results of the 2020 presidential election are political and not legislative acts entitled to Speech or Debate protection*

As mentioned above, communications and other acts that are "political in nature rather than legislative" do not "have the protection afforded by the Speech or Debate Clause." *Brewster*, 408 U.S. at 512. Such communications are "in no way essential to the deliberations of" the House of Representatives, nor does disclosure to the Government risk "impermissibly exposing its deliberations to executive influence." *Gravel*, 408 U.S. at 625. They are "not part and parcel of the legislative process" and are not entitled to Speech or Debate protection. *Id.* at 626.

As reflected in the political email account connected to Rep. Perry's personal phone

███████████████████████), most if not all the records on Rep. Perry's personal phone related to

invaliding the results of the 2020 presidential election will be communications that are political in nature rather than legislative. Rep. Perry's regular communications with individuals affiliated with the Trump political campaign—as reflected in his privilege log—confirm the political nature of those communications. The effort to cast doubt on the 2020 presidential election results and to invalidate the certification of electoral votes in several states was a political effort. It did not involve legislative acts "generally done in a session of the House by one of its members in relation to the business before it," *Gravel*, 408 U.S. at 624, or acts that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House," *id.* at 625.

      f.    *Discussions about objecting to the certification of electoral votes on January 6 do not qualify as the type of legislative factfinding entitled to Speech or Debate protection*

Investigations by members of Congress to obtain information may be protected under the Speech or Debate Clause if "performed in a procedurally regular fashion." *Brown & Williamson Tobacco Corp.*, 62 F.3d at 416, such as by "congressional authorization of the inquiry by [a] particular subcommittee," *McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976). In *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 504 (1975), for example, the Supreme Court determined that investigative acts conducted through "compulsory process" (a subpoena issued by a Senate Subcommittee) were protected by the Speech or Debate Clause. In contrast, the Clause does not protect "activities that are casually or incidentally related to legislative affairs but not part of the legislative process itself." *Brewster*, 408 U.S. at 528.

The efforts to overturn the results of the 2020 election cannot be characterized as legislative factfinding protected by the Speech or Debate Clause. Among other things, Rep. Perry was not acting pursuant to authorization from a subcommittee, nor was he acting in any procedurally regular fashion. Treating the irregular efforts to overturn the results of the 2020 presidential election as legislative factfinding protected by the Speech or Debate Clause would result in an improper "sweeping reading" of the Clause of the type rejected by the Supreme Court. *Brewster*, 408 U.S. at 516.

g.   *Communications with members of the Executive Branch are not entitled to Speech or Debate protection*

The Supreme Court has repeatedly admonished that the Speech or Debate Clause "does not protect attempts to influence the conduct of executive agencies." *Hutchinson*, 443 U.S. at 122 n. 10; *see, e.g.*, *Doe*, 412 U.S. at 313; *Gravel*, 408 U.S. at 625. Further, as mentioned above, although "Members of Congress are constantly in touch with the Executive Branch of the Government" to "cajole" or "exhort" them on policy matters, "such conduct . . . is not protected legislative activity." *Gravel*, 408 U.S. at 625.

Some of the records listed in Rep. Perry's privilege log reflect communications with members of the Executive Branch, including officials within the White House and the Department of Justice. For instanc ███████████████████████████████████████████████ ef ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████. Not only

were these efforts political in nature, rather than legislative, they also entailed communications with an Executive Branch official of the sort that are not protected by the Speech or Debate Clause.

        h.     *Communications with other legislators or legislative staff are not necessarily protected by the Speech or Debate Clause*

A member's communications with other legislators or his legislative staff might be privileged if they are communications that have a legitimate legislative purpose, but not if the communications do not relate to legislative matters; the mere fact that a member communicates with a legislative staffer or fellow legislator does not, in and of itself, afford the communication Speech or Debate protection. Thus, although some of the materials identified in Rep. Perry's privilege log are communications with other members of Congress or with congressional staffers, without additional information, the Government cannot determine whether those communications qualify as protected legislative acts—it depends on the content and predominant purpose of the communication itself ███████████████████████████████████████

███████████████████████████████████████████████████████████████e

███████████████████████████████████████████████████████████████e

█████████████████████████████████████████The Government notes that Rep. Perry possesses the burden of establishing that the records on his personal phone are protected by the Speech or Debate Clause, and to the extent there remains a question as to whether a record is privileged, Rep. Perry has failed to carry his burden and the Government should be permitted to access and review the records pursuant to the procedures of Attachment C.

## **CONCLUSION**

The procedures in Attachment C are not constitutionally required or compelled by the D.C. Circuit's decision in *Rayburn*. Therefore the Court may strike Attachment C, permitting the Government to review all the materials on Rep. Perry's personal cell phone without any further

review by the Court. Out of an abundance of caution, however, the Government requests that the Court also adhere to the procedures in Attachment C and determine that none of the 1,041 records listed in Rep. Perry's privilege log are protected by the Speech or Debate Clause. The Government has endeavored to provide an overview of the applicable legal principles that may arise as the Court conducts its review, along with an *ex parte* supplement with additional information developed during an ongoing criminal investigation. Furthermore, the Government is available to provide additional assistance—including additional factual context—if doing so would be helpful to the Court as it reviews specific records.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     /s/ Timothy A. Duree
        Timothy A. Duree (Tex. Bar. No. 24065179)
        Teresa McHenry (D.C. Bar No. 407831)
        John M. Pellettieri (N.Y. Bar No. 4145371)
        Thomas Windom (D.C. Bar No. 502131)
        Special Assistant United States Attorneys

        J.P. Cooney (D.C. Bar. No. 494026)
        John D. Crabb Jr. (N.Y. Bar No. 2367670)
        601 D Street, N.W.
        Washington, D.C. 20530
        timothy.duree@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| In the Matter of the Search of | : | Case No.  22-SC-2144 |
| The Forensic Copy of Representative | : | |
| Scott G. Perry's Mobile Telephone | : | <u>Filed Under Seal</u> |
| | : | |

**REPRESENTATIVE SCOTT G. PERRY'S RESPONSE**
**TO THE GOVERNMENT'S BRIEF REGARDING**
<u>**THE APPLICABILITY OF THE SPEECH OR DEBATE CLAUSE**</u>

Representative Scott G. Perry, a sitting Member of the United States House of Representatives, in both his official and personal capacities and through undersigned counsel, respectfully submits the following response to the Government's Brief Regarding the Inapplicability of the Speech or Debate Clause to Materials Seized from Rep. Perry. Counsel for Rep. Perry has thus far identified to the government 1,120 documents that they believe are protected from disclosure by the Speech or Debate Clause – 1,041 documents in its initial production pursuant to the Court's October 18, 2022, Minute Order, and 79 documents in its second rolling production on October 28, 2020. Counsel for Rep. Perry are continuing to review documents that fall within the date range of the warrant issued by the Court on August 18, 2022, and have approximately 7,273 documents remaining.

Rep. Perry respectfully seeks the Court's review pursuant to the process specified in Attachment C of the warrant. In partial opposition to the Government's Brief and in an effort to assist the Court in that review, Rep. Perry addresses here the arguments in the Government's Brief and is providing the Court *ex parte* with information intended to provide context for Rep. Perry's communications, *i.e.*, a timeline, lists and identities of the individuals with whom Rep. Perry communicated, and examples of those communications that counsel has seen so far in their review.

1

In a good faith effort to provide as much transparency as possible and facilitate these proceedings, those communications fall into the following categories: (1) communications with cybersecurity individuals, (2) communications with other Members of Congress and staff, (3) communications with executive branch officials, (4) communications with Trump Campaign officials, and (5) communications with Pennsylvania State legislators.

The primary inquiry when attempting to determine the applicability of the Speech or Debate Clause to Rep. Perry's communications is whether he was engaged in information gathering that is "part of, in connection with, or in aide of a legitimate legislative act" that is protected by the Clause, even where it is an informal effort undertaken by an individual Member of Congress or their staff. *See McSurley v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976); *Jewish War Veterans v. Gates*, 506 F.Supp. 2d 30, 57 (D.D.C. 2007); *Pentagen Tech. Int'l, Ltd v. Comm. On Appropriations*, 20 F.Supp. 2d 41, 44 (D.D.C. 1998). *See also United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988); Memorandum of Points and Authorities in Support of Motion to Dismiss at 20-23, *Assoc. of American Physicians & Surgeons et al v. Congressman Adam Schiff*, No. 20-cv-00106 (June 26, 2020)(ECF No. 19-1). Legislative information gathering is distinct from investigative acts that a member pursues on behalf of an investigative committee, where the committee's investigative authority is exercised by the member.

Rep. Perry's actions here are not unlike those taken by Senator Lindsey Graham, whose challenge to a subpoena from a special grand jury in the State of Georgia is now before the United States Supreme Court. *See In re Subpoena to Non-Party Lindsey O. Graham*, No. 1:22-cv-03027 (N.D.Ga.); *Fulton Cnty. Special Purpose Grand Jury v. Graham*, No. 22-12696, 2022 WL 3581876 (11th Cir. Aug. 22, 2022); Emergency Application for Stay and Injunction Pending Appeal in *Graham v. Fulton Cnty. Special Purpose Grand Jury*, United States Supreme Court No.

22A337 (October 21, 2022). In that case, the United States District Court for the Northern District of Georgia granted in part and denied in part Senator Graham's motion to quash. It agreed with Senator Graham that the Speech or Debate Clause protects him from being questioned about portions of a phone call with the Georgia Secretary of States about allegations of voter fraud, but the court allowed questioning about other portions of that call, as well as about communications with the Trump Campaign, public statements in the 2020 election, and "cajol[ing]" of election officials. Order at ECF 44. The Eleventh Circuit agreed and determined that the District Court's "partial quashal enabled a process through which [any] dispute can be resolved."

On October 24, 2022, the United States Supreme Court granted Senator Graham's Emergency Application for a Stay and Injunction Pending Appeal. At issue in that appeal is the extent to which the Speech or Debate Clause protects legislative fact-finding and permits an inquiry into the motives or purpose behind a member's activity. The issue parallels this Court's questions in the present case about whether the Clause protects acts that have one of more purposes, not all of which are purely legislative. Citing the D.C. Circuit's very recent decision in *Comm. On Ways & Means v. U.S. Dep't of Treasury*, 45 F.4th 324, 331-33 (D.C. Cir. 2022), Senator Graham argues that the Speech or Debate Clause prohibits questioning him about the *motive* for his legislative activities, even if those activities allegedly are a "mere pretext for an unconstitutional ulterior motive." *Id.*. He argues that his subjective motivations for his objectively legislative acts – be they to assist former President Trump or for political purpose – are legally irrelevant because the Clause's protection turns on "the nature of the act," "stripped of all considerations of intent and motive." Graham Emergency App. at pp. 4, 18, citing *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). *See also Tenney v. Brandhove*, 341 U.S. 367, 373–74 (1951); Minute Order, *United States v. Bannon*, No. 21-cr-00670 (D.D.C. July 11, 2022) (quashing

subpoena to Speaker Pelosi); *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 992–93 (D.C. Cir. 2021) (quashing subpoena issued to Rep. Adam Schiff); *RNC v. Pelosi*, __ F. Supp. 3d __, 2022 WL 1294509, at *7–10 (D.D.C. May 1, 2022), vacated on other grounds by No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) (*per curiam*) (unpublished order) (declining review of the House Select Committee's motivations in conducting January 6th investigation).

The communications to be reviewed in this matter pertain to Rep. Perry's efforts as a Member of Congress to gather information about the security of the 2020 election and the validity of the electors required to certify the election, a vote that Rep. Perry was called upon to cast under the United States Constitution and the Electoral Count Act. Rep. Perry's inquiry was also consistent with his efforts to ensure the security of our elections in the future and to help determine the most appropriate vehicles to do so.

Rep. Perry has been a Member of Congress since 2013, initially representing Pennsylvania's Fourth District, and then its newly redistricted Tenth District. He serves on the House Committee on Transportation & Infrastructure and on the House Committee on Foreign Affairs. He previously served for three (3) terms on the House Committee on Homeland Security, which has jurisdiction over election issues, and he sought the position of Ranking Member of that Committee at the beginning of the current legislative term in January 2021. Rep. Perry is also a member of, and the recently-elected Chairman for, the House Freedom Caucus, whose mission is "to give a voice to countless Americans who feel that Washington does not represent them. We support open, accountable and limited government, the Constitution and the Rule of Law, and policies that promote the liberty, safety and prosperity of all Americans." Prior to his election to Congress, Rep. Perry served in the United States military for nearly forty years, rising from the enlisted ranks to the rank of Brigadier General and the Assistant Division Commander of the 28th

Infantry Division. His duties during those nearly four decades of military service included briefings and communications with members of the intelligence community about threats to the United States at home and abroad. As a Member of Congress, Rep. Perry voted on January 6, 2021, to reject Pennsylvania's electoral votes in the 2020 election.

## A. The Procedures Specified in Warrant Attachment C Are Necessary and Consistent With the Binding Precedent in This Circuit

The Government argues that the procedures set forth in Attachment C to the warrant are unnecessary and asks the Court to so find. In the alternative, it requests that the Court apply those procedures, which the Government itself requested in its warrant application. The Government apparently is encouraging this Court to adopt the position taken by the Third and Ninth Circuit Courts of Appeals, over what it begrudgingly acknowledges is binding precedent affirming a non-disclosure privilege in this Circuit. *See United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C. Cir. 2007). The process set forth in Attachment C of the warrant is consistent with that set forth in *Rayburn*, which required an Article III Court to determine *in camera* the applicability of Speech or Debate protections in order to prevent the disclosure of legislative materials to the executive branch. It is no accident that the Government requested that process in its warrant application, or that the Government now requests that the Court comply with those procedures, albeit in the alternative.

The Government attempts to distinguish *Rayburn*, arguing that Rep. Perry's personal mobile phone is not the type of "location where legislative materials were inevitably to be found," 497 F.3d at 661, and that its seizure of the phone does not present the same kind of disruption to the legislative process as the seizure of records from a congressional office in *Rayburn*. Neither argument is compelling. The Government itself acknowledges that "[t]here is no legal principle that would categorically foreclose Speech or Debate protections for materials in a member's

5

personal cell phone." Gov.'t Brief at 11. That stands to reason given the nature of modern communications, where members of Congress frequently communicate via text message and email, as do most people. There also is no requirement that they engage in such communications on official government equipment, which again stands to reason because constituents, supporters, and professional contacts would all have the member's non-official phone number and email addresses prior to the member taking office, and continued use of those non-official accounts would be the best way for a member to continue conducting business.

Indeed, the Rules of the House of Representatives specifically contemplate members' use of non-official equipment. The Committee on House Administration publishes a Member's Congressional Handbook[1] that provides guidance on various administrative topics and specifically authorizes the use of non-official equipment and accounts. It states, for example, that "[a]ll official work of the House of Representatives is to be performed and maintained on House equipment, *except for Members' handheld personal devices*." *Id*. at 25 (emphasis added). It also authorizes reimbursement for expenses associated with "[t]elecommunications devices or services." *Id*. at 40. The House Ethics Committee provides similar guidance and authorizes the use of campaign funds to pay for mobile devices that are used for both official business and campaign-related matters:

> **Expenses of a Cell Phone or BlackBerry That Is Used for Official House Business.** It is permissible for a Member to acquire a "handheld communications device" (e.g., a cell phone, a BlackBerry, or a combination cell phone/BlackBerry device, and associated communications services) with campaign funds, and to use the device on an unlimited basis on both campaign matters and official House matters. Members should contact the Committee on House Administration for information on connecting any handheld communications device to the House infrastructure.

"Proper Use of Campaign Funds and Resources," House Committee on Ethics.[2]

---

[1] Available at https://cha.house.gov/sites/evo-subsites/cha.house.gov/files/evo-media-document/2022_117th_members_congressional_handbook_10_19_v296.pdf.
[2] Available at https://ethics.house.gov/campaign/proper-use-campaign-funds-and-resources#campaign_cell

The Government's argument that the seizure of data from Rep. Perry's mobile phone does not present a meaningful disruption because it returned the phone to Rep. Perry also fails. The D.C. Circuit's concern in *Rayburn* about disrupting the legislative process was not tied simply to the physical separation of a member from his records. The disruption that the Speech or Debate Clause is designed to prevent is one where Members of Congress are intimidated from speaking their mind out of fear of investigation and prosecution by the executive branch. The Clause "was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." *Gravel v. United States*, 408 U.S. 606, 616 (1972). The Clause is an absolute jurisdictional bar against claims predicated on legislative acts, and it protects legislators "from the burden of defending themselves." *Porteous v. Baron*, 729 F.Supp. 2d 1158, 163 (D.C.C. 2010) (*quoting Dombowski v. Eastland*, 387 U.S. 82, 85 (1967). *See also Rayburn*, 497 F.3d at 660 ("the purpose of the Speech and Debate Clause is to ensure that the legislative function the Constitution allocates to Congress may be performed independently, without regard to the distractions of private civil litigation or the periods of criminal prosecution."); *Miller v. Transamerical Press, Inc*., 709 F.2d 524, 528 (9th Cir. 1983) (chilling effect on Congressional freedom of speech). That is precisely the kind of disruption presented here, not to mention the distraction and expense that this matter has created for Rep. Perry.

It makes little sense for the Government to suggest that the Court invalidate the procedures put in place at the Government's request. Given the Government's alternative request that the Court follow the procedures in Attachment C, there is no need for the Court to even reach the question of whether the procedures are required by Rayburn in the first place.

---

_phone_blackberry

**B.      The Government Bears the Burden to Demonstrate that the Materials it Seeks to Review are Not Protected by the Speech or Debate Clause**

The Speech or Debate Clause is an absolute jurisdictional bar against claims predicated on legislative acts, and it is the Government's burden to demonstrate that its protections do not apply. As Senator Graham recently noted in his application to the Supreme Court, the law does not require him to submit to questioning in order to prove that he was engaged in activity that was protected from questioning. Graham Emergency App. at 22. As the party seeking to pierce a constitutional immunity, the Government bears the burden to show that the activity is not protected. *Id.* at 23, citing *Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015), 785 F.3d at 22; *AAPS v. Schiff*, 518 F. Supp. 3d 505, 517–19 (D.D.C. 2021), aff'd 23 F.4th 1028 (D.C. Cir. 2022); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (party invoking jurisdiction has burden of proving facts establishing it).

**C.      The Government Concedes that the Speech or Debate Clause Protections are not Limited to Official Devices, and That There is No Crime-Fraud Exception to or Confidentiality Requirement of the Clause**

The Government concedes that "there is no legal principle that would categorically foreclose Speech or Debate protections for materials on a member's personal cell phone;" that "[t]here is no crime-fraud exception" to the Speech or Debate Clause; and that the Clause applies "without regard to whether a member has attempted to preserve confidentiality." Gov't Brief at 11-13.  Rep. Perry agrees. He disagrees, however, with the Government's effort to make those factors relevant by engaging in the same type of motive second-guessing discussed in *Graham* and *Rangel*.

The Government claims, for example, that the fact that a communication is contained on a personal cell phone makes it "less likely to constitute privileged legislative acts" because a personal phone does not comport with the "formality and procedural regularity that generally

characterize legislative acts". Gov't Brief at 11. As explained above, there is nothing procedurally irregular about a Member of Congress conducting official business on a non-official mobile phone. Indeed, that is specifically contemplated by House rules. The Government also concedes, as it must, that the Speech or Debate Clause extends to investigative activity, which by its nature is often not a formal endeavor. While some legislative acts certainly do involve "formality and procedural regularity," requiring those characteristics in the context of fact-gathering activity would create a rule-swallowing exception.

With respect to a crime-fraud exception, the Government argues that "the nature of a member's criminal conduct may shed light on whether particular conduct qualifies as a legislative act." Gov't Brief at 12. To start, there has been no suggestion here that Rep. Perry engaged in any criminal activity whatsoever, and the Government has represented to undersigned counsel that Rep. Perry is not a target of its investigation. While Rep. Perry has no quarrel with the Government's position that the Clause does not protect non-legislative acts such as taking a bribe, *id*. (quoting *Brewster*, 408 U.S. 501, 526 (1972)), where an act falls within the legislative sphere, to include the kind of fact-gathering function at issue here, the motives and purposes behind those acts are irrelevant.

The Government similarly argues that "the involvement of a non-legislative individual in a private communication may lessen the likelihood that the communication is a legitimate legislative act subject to the protections under the Speech or Debate Clause," and that "[p]rivate communications with non-legislative third parties are, as a practical matter, less likely to qualify as legislative acts." Gov't Brief at 13. There is no logical or legal basis for that position, especially where the Government notes that protected activity "is expected (and likely) to take place in front of members of the public." *Id*. at 12. Rep. Perry agrees that "the critical question is whether the

9

action[s] at issue was undertaken within the 'legislative sphere,'" *id.* at 13 (citations omitted), which here involves legislative fact-gathering. Whether the communications at issue involved "non-legislative third parties" is irrelevant.

**D.     Whether the Speech or Debate Clause Protects Communications About the Validity of the 2020 Election and the Legitimacy of Presidential Electors Turns on the Nature of the Communications, Regardless of the Participants in those Communications**

The Government argues that communications related to the results of the 2020 presidential election and the certification of electoral votes are not entitled to protection under the Speech or Debate Clause because they are political in nature and designed to influence the conduct of executive branch personnel. This Court should not adopt either argument as a blanket rule where those communications fall within Rep. Perry's legitimate and protected fact-gathering activities as a Member of Congress. As discussed above and in *Graham*, the motivations behind a legitimately legislative act are irrelevant. While Rep. Perry agrees that the Speech or Debate Clause does not protect purely political acts, such as fundraising, the Clause does protect activities that fall within the legislative sphere, and a legislator's motivations are irrelevant.

Here, the United States Constitution and the Electoral Count Act obligated Rep. Perry to vote on whether to confirm the electors and certify the 2020 election, and it was well within his authority to inquire into whether those electors were legitimate, or whether there were enough unlawful votes to question the outcome of the election. Rep. Perry considered those issues in real time as they were occurring, and they cannot legitimately be evaluated in hindsight. It was also well within Rep. Perry's responsibilities to inquire into whether there were ways to ensure the integrity of our elections going forward. Indeed, shortly after the 2020 election, the House of Representatives considered and passed on a party-line vote H.R. 1, which essentially sought to nationalize our elections and codify many of the measures that some states put in place during the

10

2020 election in the name of encouraging and facilitating voting during the COVID-19 pandemic. That bill had initially been introduced in the 116th Congress, blocked by a Senate filibuster, and reintroduced in the 117th Congress. As such, its provisions were very much a live issue during the 2020 election, and many Republicans, including Rep. Perry, expressed concerns about whether those measures were detrimental to voting security. The fact that a communication pertained to the security of the 2020 election, or the validity of electors makes it more likely, not less, that they legitimately fell within Rep. Perry's fact-gathering efforts and are protected as legitimate investigative activities.

Similarly, the fact that Rep. Perry was communicating with executive branch officials, other Members of the United States Congress, or even state legislators in Pennsylvania is not determinative of the applicability of the Speech or Debate Clause. Rep. Perry understands and agrees that where those communications were for the purpose of asking another branch of government to do something that is within its authority, rather than the legislative authority of the U.S. House of Representatives, such acts are less likely to receive Speech or Debate protections. But the Clause does protect communications made for the purpose of obtaining information that might further Rep. Perry's legislative responsibilities and purpose.

## CONCLUSION

Rep. Perry requests that the Court apply the foregoing principles in its review of the information over which he has asserted Speech or Debate protection pursuant to the process set forth in Attachment C of the warrant. With respect to the mechanics of that review, Rep. Perry suggests that he provide the Court with access to the documents on Relativity, which would enable the Court to "tag" documents as either protected or not protected by the Speech or Debate Clause. Rep. Perry respectfully requests a reasonable period of time, perhaps 48 hours, to review the

Court's determinations and decide whether to seek reconsideration or an appeal prior to providing the government with the documents that the Court has determined are not protected by the Clause.


Dated: October 31, 2022                    Respectfully Submitted,

                                           E&W Law, LLC

                                           /s/ John S. Irving_____
                                           John S. Irving (D.C. Bar No. 460068)
                                           1455 Pennsylvania Avenue, N.W., Suite 400
                                           Washington, D.C. 20004
                                           Telephone: (301) 807-5670
                                           Email: john.irving@earthandwatergroup.com


                                           JPROWLEY LAW PLLC

                                           /s/ John P. Rowley III__
                                           John P. Rowley III
                                           DC Bar No. 392629
                                           1701 Pennsylvania Avenue, NW
                                           Suite 200
                                           Washington DC 20006
                                           john.rowley@jprowleylaw.com
                                           Telephone: 202-525-6674


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of October 2022, a true and correct copy of the foregoing was emailed to chambers and to counsel for the government.


                                           /s/ John S. Irving_____
                                           John S. Irving (D.C. Bar No. 460068)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY** | **Case No. 22-SC-2144**<br><br>**Filed Under Seal** |

**GOVERNMENT'S REPLY BRIEF REGARDING THE INAPPLICABILITY OF THE**
**SPEECH OR DEBATE CLAUSE TO MATERIALS SEIZED FROM REP. PERRY**

United States Representative Scott Perry (Rep. Perry) contends that *Rayburn* applies to his personal cell phone merely because it is possible that the phone may contain Speech or Debate material.  Not so: the search of a personal cell phone seized from a member of Congress in New Jersey, regardless of whether it contains Speech or Debate material, is not analogous to a search of a member's office on Capitol Hill; *Rayburn*'s fact-specific holding should be applied accordingly.  The Court should nonetheless follow the protocols approved in *Rayburn*.  In that regard, Rep. Perry claims that the communications identified on his privilege log are protected by the Speech or Debate Clause because they pertain to the January 6, 2021, Joint Session of Congress, contending that the inquiry ends there.  Again, he is wrong: the Speech or Debate Clause does not require that the Court take Rep. Perry's word for it when he claims its protections. Rather, the Court can consider the broader context of the communications, including Rep. Perry's purpose in making them, to determine whether they are legislative acts protected under the Clause. Based on the limited information available to the Government, it does not appear that any of the communications identified on Rep. Perry's log can be categorized as legislative acts protected under the Speech or Debate Clause.   In fact, the larger context of those communications suggests that the vast majority of them are not legislative acts.   For the reasons explained in the

Government's opening brief and elaborated below, the records withheld by Rep. Perry should be released to the Government.[1]

## I.     *Rayburn* Does Not Apply to the Warrant to Search Rep. Perry's Personal Cell Phone

The non-disclosure privilege recognized in *United States v. Rayburn House Off. Bldg.,* 497 F.3d 654, 660 (D.C. Cir. 2007), does not apply to records on the personal cell phone seized from Rep. Perry pursuant to a warrant.   *Rayburn* held that the Speech or Debate Clause creates a privilege against non-disclosure for written legislative materials when the Government searches the congressional office of a member of Congress.   *Rayburn* does not apply to the very different circumstances present here, *i.e.*, the search of a personal cell phone seized from a member of Congress far from his congressional office.

By its own terms, *Rayburn* applies narrowly to a search of a location, such as a member's congressional office, "where legislative materials [are] inevitably to be found."   497 F.3d at 661. According to the Court of Appeals, "seriatim initial reviews by agents of the Executive *of a sitting Member's congressional office* are inconsistent with the privilege under the Clause."   *Id.* at 663 (emphasis added).   Indeed, in dismissing the Government's "concern about the burdens placed upon the district court and attendant delay during judicial review of seized materials" before disclosure, the Court of Appeals noted that "[t]he historical record utterly devoid of Executive searches of congressional offices suggests the imposition of such a burden will be, at most, infrequent."   *Id.* at 662-63.   Particularly because the Speech or Debate Clause was intended to

---

[1]  The state of Rep. Perry's privilege assertions as to many of the documents seized from his personal cell phone remains uncertain.   In his response, Rep. Perry states that 7,273 documents are still to be reviewed for Speech or Debate privilege.   Br. 1.   On October 18, the Court ordered Rep. Perry to review the remaining documents—then numbering 9,660—at a pace of 800 per day. Minute Order, Oct. 18, 2022.   Nine business days after the Court's order, less than 2,400 additional documents were reviewed, resulting in an average review pace of approximately 265 documents per day.

foster free and open debate among members of Congress, the non-disclosure privilege recognized in *Rayburn* should be confined to Executive Branch intrusions into congressional offices and should not extend to communications between a member and Executive Branch officials or others on a personal device.

Rep. Perry suggests (Br. 5-6) that *Rayburn* governs here because—as the Government acknowledges—it is possible his personal cell phone contains records that are protected under the Speech or Debate Clause.   He emphasizes that the Rules of the House of Representatives permit members to perform official work on their personal cell phones, and members may connect their personal cell phones "to the House infrastructure."  Br. 6 (internal quotation marks omitted).   But *Rayburn* does not apply to any location where legislative materials may possibly be found; rather, *Rayburn* applies to searches of a "location where legislative materials were *inevitably* to be found," and thus searches that "*must* have resulted in the disclosure of legislative materials." 497 F.3d at 661 (emphases added).   As a result, as the Court of Appeals observed, such searches will be "at most, infrequent."  *Id.* at 663.   A search of Rep. Perry's personal cell phone is not materially analogous to the search of Rep. Jefferson's congressional offices that occurred in *Rayburn*.

The presence of legislative materials on Rep. Perry's personal cell phone—even if possible, or even if likely—was not inevitable in the same way that a congressional office will necessarily contain legislative materials.   Indeed, even if the House rules permit a member to use a personal cell phone to conduct official business and to connect the phone to the House infrastructure, the information available to the Government does not indicate that Rep. Perry used his personal cell phone in that manner.   Rep. Perry does not contend that he connected his personal cell phone to the House infrastructure.   The phone was not linked to Rep. Perry's official email account and instead was linked to a political account ███████████████ and a personal account

████████████████). In circumstances such as these, if a judge finds probable cause to believe that a member's personal cell phone contains evidence of a crime and issues a warrant authorizing a search of the device, the novel non-disclosure rule of *Rayburn* does not preclude government agents from executing the warrant.

## II.    Even if *Rayburn* Applies, the Court Should Release to the Government the Materials Withheld by Rep. Perry

Although *Rayburn* does not apply to a member of Congress' personal cell phone—and the Court should hold as much—for the reasons discussed in the Government's opening pleading, the Court should implement the procedures set forth in Attachment C to the warrant and release to the Government the materials withheld by Rep. Perry under an assertion of the Speech or Debate Clause privilege.

### A.    *Rep. Perry Has the Burden to Demonstrate that Records on His Personal Cell Phone Should Be Withheld Because They Are Protected Under the Speech or Debate Clause*

Rep. Perry contends (Br. 8) that the Government has the burden of demonstrating that records on his personal phone—records that, according to Rep. Perry, the Government is not entitled to see—are not subject to privilege under the Speech or Debate Clause.   He is wrong.

As a general matter, "[i]t is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability." *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006). And courts have specifically concluded that defendants claiming a privilege under the Speech or Debate Clause have the burden of demonstrating that the privilege applies.   *See, e.g.*, *United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995); *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978).   Placing the burden on the proponent of the privilege is appropriate

because, among other things, the information indicating whether material is privileged will often be "in his possession alone." *In re Grand Jury Investigation*, 587 F.2d at 597.

Requiring the proponent to establish the applicability of the privilege is particularly necessary if a *Rayburn* protocol is implemented.   Under those procedures, the Government lacks access to the records until the district court rejects a member's claim of privilege for those records. It would be nonsensical and unworkable to force the Government to demonstrate that records it cannot access are not privileged.

Rep. Perry erroneously relies (Br. 8) on the principle that a party invoking a court's jurisdiction bears the burden of establishing the court's subject-matter jurisdiction.   *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).   Deciding whether the records on Rep. Perry's cell phone are protected by the Speech or Debate Clause does not determine this Court's subject-matter jurisdiction.   "Only Congress may determine a lower federal court's subject-matter jurisdiction," *Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017) (internal quotation marks omitted).   The relevant statutes and rules establish that this Court plainly possessed subject-matter jurisdiction to issue the search warrant and continues to possess jurisdiction to oversee its execution.   *See, e.g.*, *United States v. Apple MacPro Computer*, 851 F.3d 238, 245 (3d Cir. 2017).   To the extent decisions suggest that Speech or Debate immunity is jurisdictional, the use of the term "jurisdiction" in those decisions was imprecise and did not refer to subject-matter jurisdiction.   *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 510 (2006) (explaining that the term jurisdiction "is a word of many, too many meanings" and that "[t]his Court, no less than other courts, has sometimes been profligate in its use of the term") (internal quotation marks omitted).

Because Rep. Perry bears the burden of supporting his privilege claims, to the extent there is any question whether particular records are privileged, the Court should find that Rep. Perry has failed to carry his burden and permit the Government to access and review those records. Despite their disclosure, Rep. Perry would retain his ability to claim a privilege against use of those records. *See, e.g.*, *Rostenkowski*, 59 F.3d at 1302-04 (member of Congress charged with crimes and moved to dismiss the indictment on the ground that it relied on evidence privileged under the Speech or Debate Clause).

> B.      *Rep. Perry's Communications Are Not Investigative Activity Protected Under the Speech or Debate Clause*

Rep. Perry asserts that the communications identified in his privilege log relate to his "efforts as a Member of Congress to gather information about the security of the 2020 election and the validity of the electors required to certify the election." Br. 4. But even accepting Rep. Perry's characterization of his communications as investigative—a characterization that, as discussed below, does not withstand scrutiny—those communications are still not properly characterized as legislative acts under governing precedent.

In the D.C. Circuit, informal investigative actions by a member of Congress may constitute legitimate legislative activity, but only if those acts are undertaken in connection with an authorized congressional inquiry. *See McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995).[2] "The acquisition of knowledge through informal sources is a necessary concomitant of legislative

---

[2] The Government acknowledges that decisions in other circuits arguably evaluate this issue differently. *See Fulton Cnty. Special Purpose Grand Jury v. Graham*, No. 22-12696, 2022 WL 13682659, at *1 (11th Cir. Oct. 20, 2022) (stating that the Supreme Court "has never considered whether an informal investigation by an individual legislator acting without committee authorization is ever protected legislative activity under the Speech or Debate Clause, and the lower courts have disagreed").

conduct and thus should be within the ambit of the privilege." *McSurely*, 553 F.2d at 1287. But for such information to fall within the scope of the Speech or Debate Clause, there is a "requirement of congressional authorization of the inquiry." *Id.* Thus, the informal investigative activity must be performed "in a procedurally regular fashion." *Brown & Williamson Tobacco Corp.*, 62 F.3d at 416.

United States v. Brewster, 408 U.S. 501 (1972), supports the D.C. Circuit's demarcation between informal investigative activity that is legislative and therefore protected under the Speech or Debate Clause and that which is not. As *Brewster* observed, there are "few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process." *Id.* at 516. Almost any communication by a legislator that touches upon a matter before Congress could be characterized as information-gathering; extending Speech or Debate protections to such a broad swath of activity would not be "sound or wise" and instead would effectively "make Members of Congress super-citizens, immune from criminal responsibility." *Id.*

Rep. Perry does not—and cannot—contend that his communications regarding the 2020 election were part of any authorized committee inquiry. As the D.C. Circuit has explained, if a member's communication "may fairly be deemed within the [] province" of his or her subcommittee work, the "requirement of congressional authorization of the inquiry" is likely met and the member's fact-finding may be legislative and protected by the Speech or Debate Clause. *McSurely*, 553 F.2d at 1287 (internal quotation marks omitted). But Rep. Perry was not even a member of a congressional subcommittee that had responsibility to analyze election issues, let alone a committee conducting fact-finding related to the 2020 election. Rather, between November 2020 and January 2021, Rep. Perry sat on two subcommittees: the House Committee on Transportation and Infrastructure and the House Committee on Foreign Affairs. Neither of

these committees had jurisdiction over any issues related to election integrity. Rep. Perry notes that "[h]e previously served for three (3) terms on the House Committee on Homeland Security, which has jurisdiction over election issues." Br. 4. But Rep. Perry has not served on the House Committee on Homeland Security since 2018, and his prior service is irrelevant. Thus, even if Rep. Perry's communications could arguably be characterized as informal fact-gathering inquiries, there is no basis to conclude that the inquiries related to the work of a committee of which Rep. Perry was a member. And because Rep. Perry's post-election inquires could not have related to his committee work, it is exceedingly unlikely that these communications were legislative acts protected by the Speech or Debate Clause.

C.  *The Larger Context of Rep. Perry's Communications Confirms That They Are Not Legislative Acts Protected Under the Speech or Debate Clause*

Although the Government does not have access to the records listed in Rep. Perry's privilege log, the limited information available to the Government indicates that the contents of those communications do not establish that they qualify as legislative acts, as they were not part of legislative fact-finding efforts protected under the Speech or Debate Clause. Furthermore, the larger context of Rep. Perry's communications confirms that they are not legislative acts but were instead part of a political effort to benefit a candidate, including attempts to cajole and influence members of the Executive Branch—conduct that does not qualify as legislative acts protected under the Speech or Debate Clause.

Rep. Perry contends (Br. 3-4) that the Court may not consider his motive or purpose to determine whether the communications on his privilege log qualify as legislative acts subject to the protections of the Speech or Debate Clause. That is wrong—a court may evaluate the larger context of a member's conduct, including the member's motive and purpose, to determine whether that conduct qualifies as a legislative act. The "content, purpose, and motive" of an act may reveal

its "legislative or non-legislative character." *United States v. Menendez*, 831 F.3d 155, 166 (3d Cir. 2016). What a court may not do is strip a legislative act of the Speech or Debate Clause's protections based on a member's underlying motive or purpose: "[O]nce it is determined that Members are acting within the legitimate legislative sphere the Speech or Debate Clause is an absolute bar to interference." *Eastland v. U. S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (internal quotation marks omitted). If the Speech or Debate privilege applies, it protects even communications with an "unworthy purpose." *Menendez*, 831 F.3d at 166 (quoting *United States v. Johnson*, 383 U.S. 169, 180 (1966)). "Such is the nature of absolute immunity, which is—in a word—absolute." *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015). But this absolute immunity—and the attendant prohibition on consideration of motive—only applies "[o]nce the legislative act test is met." *MINPECO, S.A. v. Conticommodity Servs. Inc.,* 844 F.2d 856, 862 (D.C. Cir. 1988) (internal quotation marks omitted). Thus, by evaluating motive and purpose to determine the legislative or non-legislative character of an act, a court does not improperly consider whether a member acted with an unworthy or improper motive in taking legislative action. Rather, the court uses motive and purpose to properly assess an antecedent question—whether the action was legislative at all, *i.e.*, whether the actions formed "an integral part of the deliberative and communicative processes" by which legislation is considered. *Gravel v. United States*, 408 U.S. 606, 625 (1972).

In suggesting that inquiry into his motive or purpose is categorically impermissible, Rep. Perry refers (Br. 2-3) to proceedings involving Senator Lindsey Graham in Georgia. In that case, the Georgia district court concluded that the Speech or Debate Clause protected some but not all communications between Senator Graham and election officials in Georgia and, therefore, quashed only in part a subpoena requiring Senator Graham to testify before a Georgia grand jury. The

Eleventh Circuit affirmed, and Senator Graham filed an emergency stay application in the Supreme Court, which was pending when Rep. Perry filed his brief.  *See Graham*, 2022 WL 13682659. Rep. Perry suggests that Senator Graham's stay application raises issues that support his assertion of privilege in this matter, but the Supreme Court has since denied the application.  *Graham v. Fulton Cnty. Special Purpose Grand Jury*, No. 22A337, 2022 WL 16558760 (Sup. Ct. Nov. 1, 2022).   Rep. Perry's reliance on those proceedings is now firmly misplaced.

In short, although courts are prohibited from inquiring into a member's "motivations for engaging in [] protected acts," courts are not prohibited from analyzing motive to determine whether an act was taken with a "legislative purpose."  *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 60 (D.D.C. 2007) (internal quotation marks omitted).  This Court may therefore consider the larger context surrounding the records contained on Rep. Perry's phone—including the purpose and motivation for those communications—to determine whether the communications qualify as legislative acts to which Speech or Debate protection attaches.   Although Rep. Perry suggests that his putatively privileged communications are entitled to Speech or Debate protection because they were communications made to gather information to determine whether he would object to the certification of electoral votes on January 6, 2021, available information, including reporting, suggests otherwise.   Indeed, reporting indicates that Rep. Perry's communications were unprotected political communications, not legislative acts to which the Speech or Debate Clause might apply.

Specifically, Rep. Perry's earlier, contemporaneous statements are inconsistent with his current position that his communications were aimed at legislative fact-finding.   For example, on or around January 25, 2021, Rep. Perry stated that he communicated with former President Donald Trump, former Assistant Attorney General Jeffrey Clark, and others regarding "the many concerns

about the integrity of our elections, and that those allegations should at least be investigated to ease the minds of the voters that they had, indeed, participated in a free and fair election."  Sam Dunklau, *Rep. Scott Perry confirms election fraud talks with Trump, DOJ lawyer amid president's effort to overturn Georgia results*, WITF.ORG, Jan. 25, 2021, available at https://www.witf.org/2021/01/ 25/rep-scott-perry-confirms-election-fraud-talks-with-trump-doj-lawyer-amid-presidents-effort-to-overturn-georgia-results/ (last accessed Nov. 2, 2022).  Rep. Perry also stated that he "obliged" when former President Trump asked if Rep. Perry "would make an introduction" to Clark.  *Id.*  Additionally, publicly available information shows that in late December 2020, Perry sent several allegations of Pennsylvania voter fraud to Department of Justice official Richard Donoghue.  United States Senate Committee on the Judiciary, *Subverting Justice: How the Former President and His Allies Pressured DOJ to Overturn the 2020 Election*, Testimony of Richard Donoghue, Donoghue Ex. 7, available at https://www.judiciary.senate.gov/ imo/media/doc/Donoghue%20Ex%207%20-%20Redacted.pdf (last accessed Nov. 2, 2022).  The context and Rep. Perry's own words makes clear that these efforts were not aimed at factfinding and instead were undertaken to "cajole" and "influence" members of the Executive Branch.  Rep. Perry's conduct was, therefore, precisely of the sort that is not legislative and not entitled to Speech or Debate protection.  *Gravel*, 408 U.S. at 625.

## CONCLUSION

As stated in the Government's opening brief, the Court is not required to conduct a review pursuant to *Rayburn* and may decline to do so—and the Court should hold as much.  Nonetheless, in an abundance of caution, the Government asks that the Court also implement the procedures set forth in Attachment C to the search warrant and conduct an analysis to determine whether the communications identified in Rep. Perry's privilege log qualify as legislative acts entitled to

protection under the Speech or Debate Clause. In such a review process, Rep. Perry bears the burden of demonstrating that the communications withheld qualify as legislative acts, and the Court should consider the content, motive, purpose, and broader context of communications and acts in determining whether he has satisfied that burden. Based on the limited information available to it, the Government believes that very few, if any, of the communications withheld by Rep. Perry qualify as legislative acts. Thus, it is doubtful that any of the records on his privilege log are entitled to Speech or Debate protection. The records should, therefore, be released to the Government.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:   /s/ Timothy A. Duree
      Timothy A. Duree (Tex. Bar. No. 24065179)
      Teresa McHenry (D.C. Bar No. 407831)
      John M. Pellettieri (N.Y. Bar No. 4145371)
      Thomas P. Windom (D.C. Bar No. 502131)
      J.P. Cooney (D.C. Bar. No. 494026)
      John D. Crabb Jr. (N.Y. Bar No. 2367670)

      601 D Street, N.W.
      Washington, D.C. 20530
      timothy.duree@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY | Case No. 22-sc-2144<br><br>Chief Judge Beryl A. Howell<br><br>**UNDER SEAL** |

**MEMORANDUM OPINION AND ORDER**

Congressman Scott Perry ("Rep. Perry") has represented the Commonwealth of Pennsylvania's Tenth Congressional District since January 2013.  *See* Rep. Perry's Resp. to the Gov't's Brief Regarding the Applicability of the Speech or Debate Clause ("Perry Resp.") at 4, ECF No. 15.  As part of a grand jury investigating potential federal criminal law violations stemming from efforts to overturn the 2020 presidential election, the government found evidence of Rep. Perry communicating with individuals engaged in those efforts over critical time periods at issue in the investigation using his personal cell phone.  The government then obtained search warrants supported by probable cause for the contents of Rep. Perry's personal cell phone.  Now, the parties dispute whether the Speech or Debate Clause of the U.S. Constitution ("Clause"), U.S. Const. Art. I, § 6, Cl. 1., protects against the disclosure of potentially privileged records and communications on Rep. Perry's cell phone to the government, and if it does, which party bears the burden of proving the Clause's applicability.  For the reasons set out below, under binding precedent in this Circuit, the Clause's protections require judicial review of Rep. Perry's claims of privilege prior to the disclosure of those records and communications to the government, and Rep. Perry bears the burden of proving the Clause applies.

1

## I.      BACKGROUND

A search and seizure warrant to seize Rep. Perry's personal cell phone was issued by a magistrate judge in the Middle District of Pennsylvania and executed on August 9, 2022, when the Federal Bureau of Investigation ("FBI") forensically extracted an image of the phone's contents. *See* Aff. of FBI Special Agent In Support of Appl. For Search Warrant (dated Aug. 18, 2022) ("D.D.C. Warrant Aff."), ¶ 7, ECF No. 1; *see also* Ex. A, Aff. Supp. Search Warrant ("M.D. Pa Aff.") at pg. 76, ECF No. 1-1. This seizure warrant did not permit a search of the contents, rather just a forensic copying of stored information. *See* M.D. Pa Aff. ¶ 141.

After promptly returning the cell phone to Rep. Perry, the government sought a separate search warrant in this Court to review the contents of the forensic extraction, in accordance with a court-authorized search protocol issued as Attachment C to the warrant. *See* D.D.C. Warrant Aff., Att. C. As provided in this search protocol, Rep. Perry was given thirty days to first assert his privilege under the Clause with respect to any records or communications on his cell phone. *See* *id.* at § 2.b–d. Attachment C provided that the government could then ask for judicial review of "the records over which Congressman Perry has asserted privilege for the Court to make a final determination whether they contain privileged information." *Id.* at § 2.d. This Court approved the government's search warrant on August 18, 2022, finding probable cause that a crime was committed. *See* Signed D.D.C. Search Warrant at 1, ECF No. 4. Through his counsel, the government provided Rep. Perry with a copy of the Attachment C search protocol, on August 18, 2022, followed shortly thereafter, on August 23, 2022, with a forensic extraction of the contents of his phone. Gov't's Opp'n to Rep. Perry's Mot. for Ext. of Time ("Gov't's Opp'n") at 2–3, ECF No. 8.

As the end of the review period approached—after the government had extended the initial

thirty-day period by an additional fourteen days, Gov't's Opp'n at 1—Rep. Perry petitioned this Court,

on October 6, 2022, for additional time to review the phone's contents and assert his privilege. *See*

Rep. Perry's Mot. for Ext. of Time ("Perry Mot."), ECF No. 7. Rep. Perry explained that responsive

records on his phone implicate the Clause's protections because they involve communications with

his staff, members of Congress, and others, and he required additional time to review those records

and create the requisite privilege log. *Id.* at 5, 9–10. He helpfully categorized the volume of

records from his cell phone as follows:



*Id.* at 6.

Following the completion of briefing on Rep. Perry's motion for an extension and a

hearing, held on October 18, 2022, the Court issued a scheduling order requiring Rep. Perry to

provide a privilege log of the records already reviewed by 6:00 PM that day, "identifying each

record by date, recipients, sender, and subject matter, as required under Attachment C to the

[Signed D.D.C. Search Warrant], for the 1,041 records he has reviewed and the 33 records in the

'Notes' category of extracted information from his personal cell phone . . . that he believes are

3

subject to the Speech or Debate Clause privilege." Minute Order (October 18, 2022) ("Perry Privilege Log Order"). He was further instructed to provide to the government any records over which he did not claim privilege. *Id.* The government was instructed to submit briefing regarding (1) what records, if any, identified on Rep. Perry's October 18, 2022, privilege log it believes are not subject to the Clause's privilege; and (2) "whether (a) the Speech or Debate Clause privilege applies to communications found on the personal cell phone of a Member of Congress; (b) the presence of non-legislative third parties to communications otherwise subject to the Speech or Debate Clause privilege vitiates that privilege; (c) the crime-fraud exception is invoked here and, if so, applies to the Speech or Debate Clause privilege." *Id.* Rep. Perry was provided an opportunity to respond to the government's submission, and he was directed to "conduct review, at a rate of 800 records per business day, of the remaining 9,660 records to determine whether he asserts the Speech or Debate Clause privilege as to any record" and provide regular privilege logs to the government on every Friday beginning on October 28, 2022. *Id.*

While continuing review is underway, Rep. Perry has, so far, identified 1,120 documents that he is withholding from the government as subject to the Speech or Debate Clause privilege, notwithstanding that these documents are concededly responsive to the warrant. *See* Perry Resp. at 1. Rep. Perry has categorized those communications into the following categories: "(1) communications with cybersecurity individuals, (2) communications with other Members of Congress and staff, (3) communications with executive branch officials, (4) communications with Trump Campaign officials, and (5) communications with Pennsylvania State legislators." *Id.* at 2.

## II.   DISCUSSION

At this stage, the parties have identified two key disputes, resolution of which is necessary to facilitate the process of fully executing the D.D.C. warrant while providing fulsome protection

for Rep. Perry's Speech or Debate privilege.  First, the parties dispute whether the government can review the communications and records on Rep. Perry's phone prior to the Court evaluating each of his claims of privilege under the Clause.  Second, the parties contest which one of them bears the burden of establishing whether the Clause's privilege applies.

First up is the dispute regarding the scope of the Clause's non-disclosure protections. Consistent with the Attachment C search protocol, Rep. Perry has recommended "principles" to apply in judicial "review of the information over which he has asserted Speech or Debate protection[,]" as well as made suggestions as "to the mechanics of that review."  *Id*. at 11.  The government, by contrast, argues that the Attachment C search protocol should be jettisoned, thereby allowing the government unfettered authority to conduct the search for responsive information on Rep. Perry's phone.  *See* Gov't's Br. Regarding the Inapplicability of the Speech or Debate Cl. To Materials Seized from Rep. Perry ("Gov't's Br.") at 1, ECF No. 13.  Alternatively, the government joins with Rep. Perry in requesting that judicial review of the withheld records be performed, in accordance with the Attachment C protocol, "out of an abundance of caution and to avoid litigation that would unduly delay the Government's investigation."  *Id*. at 1.

Rep. Perry is right about Attachment C, insofar as he argues that the location of the targeted responsive communications and records on his personal cell phone does not mean they fall outside the protection of the Clause.  The Speech or Debate Clause provides that, "in all Cases, except Treason, Felony and Breach of the Peace . . . for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place."  U.S. Const. Art. I, § 6, Cl. 1. The D.C. Circuit has held that the Clause creates a non-disclosure privilege for documents and records—obtained either through a search warrant or a subpoena—that fall within the ambit of protected legislative activity.  *United States v. Rayburn House Office Building, Room 2113,*

*Washington, D.C. 20515* ("*Rayburn*"), 497 F.3d 654, 656 (D.C. Cir. 2007).[1] Similar to this case, *Rayburn* involved a search warrant executed for non-legislative materials of a Member of a Congress, though it was executed in the Congressman's office. *Id.* at 655. The D.C. Circuit further held that the Executive could not review a legislator's documents and records to determine or verify which ones were privileged or not. *Id.* Thus, the legislator's rights under the Clause were violated because the search of the legislator's office "must have resulted in the disclosure of legislative materials to agents of the Executive." *Id.* at 661. The Court was critical of "[t]he special procedures outlined in the warrant affidavit" for failing to "avoid[] the violation of the Speech or Debate Clause because they denied the Congressman any opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Id.* at 662; *see also id.* (explaining that "incidental review . . . does not deny that compelled review by the Executive occurred, nor that it occurred in a location where legislative materials were inevitably to be found, nor that some impairment of legislative deliberations occurred").

Although recognizing that *Rayburn* is binding in this Circuit, the government urges this Court to find that Attachment C's search protocol guidelines are not constitutionally required, for two reasons. First, it says that legislative materials were inevitably to be found in *Rayburn* because the search and seizure in that case occurred in the congressional office of a sitting Member of Congress, while the search of Rep. Perry's phone, by contrast, does not pose that same risk. Gov't Br. at 8. Second, it claims that *Rayburn* rests its reasoning on the fact that a search and

---

[1]     Notably, the Third and Ninth Circuits disagree with *Rayburn*'s approach, holding that the Speech or Debate "privilege when applied to records or third-party testimony is one of nonevidentiary use, not of non-disclosure." *See In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978); *United States v. Renzi*, 651 F.3d 1012, 1032 (9th Cir. 2011) (rejecting the contention "that there exists some grandiose, yet apparently shy, privilege of non-disclosure that the Supreme Court has not thought fit to recognize").

seizure of files from a Congressman's office is highly likely to cause disruption, but the government's seizure of Rep. Perry's phone for a few hours, coupled with a forensic search of his phone, did not similarly impair the Congressman's ability to complete his legislative work. *Id.* at 9.

These are valid distinctions from the circumstances in *Rayburn*, but prudence dictates compliance with Attachment C. Certainly, the government's seizure and forensic imaging of Rep. Perry's phone was much less disruptive than the search at issue in a congressman's official office in *Rayburn*, but potentially some of a Member's communications on his personal cell phone— particularly with aides or other legislators—will be part of or integral to legislative acts or the motivations behind legislative acts. Even if the *Rayburn* search "must have resulted in the disclosure of legislative materials" because the government seized physical documents in the Congressman's office, 497 F.3d at 661, *Rayburn* is written sufficiently broadly to contemplate that a Member's text or email communications with his staff or other legislators on his cell phone regarding an upcoming vote, speech notes on an upcoming floor speech, or questions prepared for a witness at an upcoming committee meeting, enjoy the same nondisclosure protection. *Cf. Riley v. California*, 573 U.S. 373, 393 (2014) ("Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. . . . [T]hese devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers."). [2] As the D.C. Circuit articulated the rationale for

---

[2] Indeed, Rep. Perry notes that a Member is permitted to connect her personal cell phone to the House infrastructure, Perry Resp. at 6, but the government points out that Rep. Perry has not done so. Reply at 3–4. Despite the target cell phone's lack of formal connection to the House infrastructure, *Rayburn*'s non-disclosure requirement still dictates that the Attachment C protocol be followed, considering the significant number of communications that Rep. Perry has with other Members, their staff, and his own staff. *See* Perry Mot. at 7. The special protection that *Rayburn*'s non-disclosure provision affords to Members—putting them in an automatically privileged position and

non-disclosure of information subject to the Clause's privilege, the ability for the Executive to review these documents and records "may legitimately involve frank or embarrassing statements; the possibility of compelled disclosure may therefore chill the exchange of views with respect to legislative activity. This chill runs counter to the Clause's purpose of protecting against disruption of the legislative process." *Rayburn*, 497 F.3d at 661.

Given that the government's search of Rep. Perry's cell phone could touch on those protected materials, the Clause's non-disclosure privilege applies under *Rayburn* and Attachment C must be followed to prevent the release of privileged communications to the government. *Id.* at 663 (citation omitted) ("[A] search that allows agents of the [government] to review privileged materials without the Member's consent violates the Clause . . . , but [the government's] copying of computer hard drives and other electronic media is constitutionally permissible because . . . the Congressman [then has] an opportunity to assert the privilege prior to disclosure of privileged materials to the Executive[.]").[3]

Finally, the parties disagree on which one of them bears the burden of establishing the applicability of the Clause's privilege to any given communication or record. The government says that burden lies with Rep. Perry as the holder of the privilege, Gov't Br. at 10, while Rep. Perry believes that the government should carry the burden. Perry Resp. at 8.

---

allowing them, like Rep. Perry has done here, unilaterally to delay criminal investigations—is indeed a troubling outcome of the D.C. Circuit's decision, but the decision is nonetheless binding on this Court.

[3] In reply, the government claims that *Rayburn* rests its decision on the fact that legislative materials would "inevitably to be found." Gov't Reply in Support of Gov't Br. ("Reply") at 2–3, ECF No. 17 (quoting *Rayburn*, 497 F.3d at 661). Even if the presence of legislative materials is less likely on a Member's personal cell phone—a dubious suggestion given the fact that modern-day cell phones are ubiquitous and particularly necessary for congresspeople required to travel to and from the U.S. Capitol and their home districts—the presence of such materials in such a mobile "location" is a concrete reality here, and thus the act of disclosure to the government would run counter to *Rayburn*'s command that records covered by the Clause's protections should not be revealed to the Executive in the first place.

Rep. Perry bears the burden of showing that the legislative privilege obtains over all records and communications. *See United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995) (concluding that a Congressman seeking dismissal of an indictment on Speech or Debate grounds bears the "burden" of "show[ing] that the Government has relied upon privileged material"); *see also In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006) ("It is well established that the proponent of a privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability."). Given that Rep. Perry is asserting a use privilege personal to him, and since only he has possession of the records and communications he claims are privileged, the burden of persuasion—by a preponderance of the evidence—falls on him. *See In re Grand Jury Investigation*, 587 F.2d at 597. Nowhere in *Rangel v. Boehner,* which is relied upon by Rep. Perry, *see* Perry Resp. at 8, does the D.C. Circuit address which party, the government or the privilege holder, bears the burden of proof as to the applicability of the privilege. *See* 785 F.3d 19 (D.C. Cir. 2015). *Rangel* instead stands for the principle that a party invoking a court's jurisdiction bears the burden of establishing the court's subject-matter jurisdiction, an entirely different inquiry. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).[4] Considering that the government cannot even access to the communications and records over which Rep. Perry claims privilege until a judicial determination that the privilege does not apply, the government plainly cannot bear the burden of establishing that result. *See* Reply at 5.

Finally, the pace of compliance with the Perry Privilege Log Order is concerning. The government notes that Rep. Perry has, "[n]ine business days after the Court's order, [reviewed]

---

[4]     Based on Rep. Perry's briefing, the Court assumes that Rep. Perry does not challenge this Court's subject matter jurisdiction. *See* Perry Resp. at 8 (arguing that, under *Rangel* and other cases, the government, "[a]s the party seeking to pierce a constitutional immunity, . . . bears the burden to show the activity is not protected").

less than 2,400 additional documents[,] . . . resulting in an average review pace of approximately 265 documents per day." *Id.* at 2, n.1.  Considering the government's interests in obtaining Rep. Perry's non-privileged communications and records and records in an expedient manner, while balancing Rep. Perry's interests in preserving his privilege under the Clause, this Court ordered Rep. Perry to review documents at a pace of 800 documents per day, *see* Perry Privilege Log Order, as his counsel had confirmed at the October 18, 2022, hearing he was able to accomplish, *see* October 18, 2022 Hearing Tr. at 60:24 ("We will get 800 a day done, sure.").  If Rep. Perry has indeed significantly deviated from the pace required under the Perry Privilege Log Order, and he continues to slow-walk producing privilege logs to the government—particularly considering that the government had previously granted him a fourteen-day extension, and even more time to complete his privilege review was provided in the Perry Privilege Log Order—he risks forfeiting his right to assert his privilege.  *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1146–47 (9th Cir. 2005) (explaining that under Federal Rules of Civil Procedure 26(b)(5) and 34, failure to properly and timely provide privilege logs risks a party waiving the ability to assert her privilege); *Porter v. City & Cty. of San Francisco*, No. 16-cv-03771, 2018 WL 4215602, at *6 (N.D. Cal. Sept. 5, 2018) ("Although waiver is a harsh sanction, courts have not hesitated to find waiver where a party repeatedly engages in inexcusable or unjustifiable conduct."); *Mauna Kea Resort, LLC v. Affiliated FM Ins. Co.*, No. CV 07-00605, 2009 WL 10677201, at *4 (D. Haw. June 24, 2009) ("While a failure to meet this deadline will not automatically result in a waiver of privilege, repeated failures to abide by Court orders and/or fulfill discovery obligations may result in a finding of waiver of privilege in the future."); *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG, 2016 WL 2908415, at *3 (N.D. Cal. May 13, 2016) (finding waiver where a party repeatedly and unjustifiably failed to comply with the court's order

10

to provide an adequate privilege log).  Rep. Perry is now on notice to speed up his review, in compliance with the Perry Privilege Log Order, or face the consequence of forfeiting protection.

In sum, although *Rayburn* requires the Court to follow Attachment C's procedures, Rep. Perry bears the burden of showing, by a preponderance of the evidence, that the Clause's protections apply to every record or communication over which he claims privilege.  After Rep. Perry has been given the opportunity to supplement his claims of privilege under the Clause, he will submit, on a rolling basis, all the records and communications over which he claims privilege for *in camera* review to determine whether the Clause's protections apply.[5]

## III.   ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the government, by **November 14, 2022**, advise the Court which documents and records in Rep. Perry's privilege logs, which were due by October 18, 28 and November 4, 2022, *see* Perry Privilege Log Order ¶¶ A(1) and C, that they dispute as privileged under the Clause; it is further

**ORDERED** that Rep. Perry, by **November 16, 2022**, furnish the Court with all disputed records and communications by:

1.  assigning each such record and any communication in the same chain, together with any attachments, an exhibit number;

2.  providing the Court with:

    a.  a thumb drive with electronic versions of the exhibits, with each exhibit saved as a separate file and organized into folders reflecting the categories into which

---

[5]     While helpful, the government and Rep. Perry's briefing on the scope and potential applicability of the Clause to Rep. Perry's cell phone records and communications is, at this stage, too hypothetical.  Only after the Court has had the opportunity to evaluate Rep. Perry's claims of privilege with respect to each record or communication can a conclusion be reached as to whether that record or communication is protected.

Rep. Perry has already sorted the documents, namely: "(1) communications with cybersecurity individuals, (2) communications with other Members of Congress and staff, (3) communications with executive branch officials, (4) communications with Trump Campaign officials, and (5) communications with Pennsylvania State legislators," *see* Perry Resp. at 2;

b. one set of binders with hard copies of each exhibit, also sorted by Rep. Perry's categories, and

c. an Excel spreadsheet detailing the following for each exhibit submitted for review:

    i. exhibit number

    ii. Bates number(s), if any

    iii. document type (i.e., text, email, Notes app file)

    iv. date

    v. recipient(s)

    vi. sender

    vii. proposed category, and

    viii. any additional information concerning the communication, if necessary; and

3. submitting a motion for withholding as subject to the Speech or Debate Clause privilege that explains Rep. Perry's claims of privilege as to each exhibit; it is further

**ORDERED** that, by **November 18, 2022,** the parties (1) propose a schedule for rolling productions of exhibits for *in camera* review of disputed privilege logs; and (2) provide a report on the status of Rep. Perry's compliance with the Perry Privilege Log Order.

**SO ORDERED**.

Date: November 4, 2022

BERYL A. HOWELL
Chief Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY** | **Case No. 22-SC-2144** <br><br> **Filed Under Seal** |

**GOVERNMENT'S OBJECTION TO REP. PERRY'S SPEECH OR DEBATE**
**PRIVILEGE ASSERTIONS AND REQUEST FOR COURT REVIEW**

The Government hereby provides notice that it objects to all 2,627 Speech or Debate privilege assertions made by United States Representative Scott Perry (Rep. Perry). Pursuant to paragraph 2.d. of the procedures memorialized in Attachment C to the search warrant, the Government requests that the Court review all the records over which Rep. Perry claims privilege to determine whether Speech or Debate protection attaches to any of them.

Rep. Perry's 2,627 privilege claims are contained in four privilege logs which Rep. Perry has provided to the Government over the last several weeks. All four logs are attached to this filing. The dates of the logs, and the number of privilege assertions contained in each one, are as follows:

- October 21, 2022; 1,041 privilege assertions;

- October 28, 2022; 79 privilege assertions;

- November 4, 2022; 191 privilege assertions; and

- November 11, 2022; 1,316 privilege assertions.[1]

As the Court is aware, the Government does not have access to the contents of the communications identified in the logs. Without this information, the Government cannot conclusively determine whether any of the documents in question are actually privileged. But the

---

[1] The Government understands that Rep. Perry has completed his review of the materials contained in the cell phone extraction and that the privilege claims in the four logs constitute the entirety of his Speech or Debate privilege assertions.

Government has no obligation to do so. As has been emphasized in the Government's previous briefing, the burden of establishing the applicability of Speech or Debate protection rests with Rep. Perry, "the proponent of [the] privilege." *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006). Indeed, courts have previously held that a party claiming privilege pursuant to the Speech or Debate Clause bears the burden of demonstrating that the privilege attaches. *See, e.g.*, *United States v. Rostenkowski*, 59 F.3d 1291, 1300 (D.C. Cir. 1995); *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978). Placing the burden on Rep. Perry is especially appropriate here because the information needed to establish the privilege is "in his possession alone." 587 F.2d at 597.

Based on the limited data available to the Government, it appears that the vast majority of the documents—and potentially all of them—are not entitled to Speech or Debate protection. As the Government emphasized in its prior briefing, "not all conduct relating to the legislative process is protected under [] the Speech or Debate Clause." *Williams v. Johnson*, 597 F. Supp. 2d 107, 114 (D.D.C. 2009).[2] Rather, Speech or Debate protection only applies to communications that constitute "an integral part of the deliberative and communicative processes by which members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 616 (1972). If Speech or Debate protection extends to congressional investigative activity at all, it must be limited only to actions "performed in a procedurally regular fashion." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995).

---

[2] A more comprehensive overview of the applicability of the Speech or Debate privilege is set forth in the Government's previous filings dated October 27, 2022, and November 2, 2022. Many of the issues discussed briefly in the current submission are explored in more detail in those filings.

Based on the minimal information available to the Government, the communications identified in Rep. Perry's privilege log do not appear to involve "legitimate legislative activity" to which Speech or Debate protection might attach. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 506 (1975). Many are communications with individuals who are not affiliated with the United States Congres ███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████ ███████████████████████████

████████████████████████████████████████████████

███████████████████████████████████ exchanges are among those Rep. Perry has categorized as "communications with individuals involved in 'cyber efforts,'" *see* ECF No. 18, at 3. Any Speech or Debate assertion over such communications is unwarranted.

For some of the communications in the privilege log, a subject line is included, which provides a degree of insight into the nature of the communications. Most of these seem to be about the effort to overturn the 2020 election, which is a topic Rep. Perry could not have investigated in a formal, procedurally regular manner. Such informal information gathering lacks the "requirement of congressional authorization." *McSurely v. McClellan*, 553 F.2d 1277, 1287 (D.C. Cir. 1976). Accordingly, these communications are not entitled to protection under the Speech or Debate Clause.

The logs include numerous communications with members of Congress and congressional staffers, but lacking the content of these communications—and, in most instances, having no indication of the general subject of the exchange—the Government cannot determine if some of these might be entitled to Speech or Debate protection.[3] Faced with this lack of clarity,

---

[3] The Government acknowledges that some of these congressional communications could

"specific factual findings about the communications' legislative character are necessary to decide whether the Speech or Debate Clause applies." *In re Grand Jury Investigation*, 608 F. App'x 99, 101 (3d Cir. 2015). The Government does not have access to these specific facts, so it asks for the Court's involvement.

In sum, the Government objects to all of Rep. Perry's 2,627 Speech or Debate privilege assertions. The Government asks the Court to review all of these documents to determine if the Speech or Debate privilege applies to any of them.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     */s/ Timothy A. Duree*
          Timothy A. Duree (Tex. Bar. No. 24065179)
          Jonathan Haray (D.C. Bar No. 480140)
          Teresa McHenry (D.C. Bar No. 407831)
          John M. Pellettieri (N.Y. Bar No. 4145371)
          Thomas Windom (D.C. Bar No. 502131)
          J.P. Cooney (D.C. Bar. No. 494026)
          John D. Crabb Jr. (N.Y. Bar No. 2367670)
          601 D Street, N.W.
          Washington, D.C. 20530
          timothy.duree@usdoj.gov

---

conceptually warrant Speech or Debate protection. For instance, Rep. Perry's October 28, 2022, privilege log contains 89 emails from the address ████████████████████. Some bear subject lines like ████████████████████████." Similarly, the October 28 privilege log also identifies 51 emails with the addres ██████████████████████Certain of the emails have subject lines such a ██████████████████████████████ ███████" These emails appear to relate to congressional matters, but based on the limited information available, the Government cannot determine whether these emails are unprotected communications or whether they involve "core legislative acts" that would fall within the scope of the Speech or Debate privilege. *Fields v. Off. of Eddie Bernice Johnson*, 459 F.3d 1, 9 (D.C. Cir. 2006). Thus, the Government asks that the Court review these documents, along with all others in Rep. Perry's privilege logs.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
|  | : | **Case No. 22-SC-2144** |
| **In the Matter of the Search of** | : | |
| **The Forensic Copy of Representative** | : | **FILED UNDER SEAL** |
| **Scott G. Perry's Mobile Telephone** | : | |
|  | : | |

**REPRESENTATIVE SCOTT G. PERRY'S RESPONSE**
**TO THE GOVERNMENT'S OBJECTIONS AND REQUEST**
**FOR MODIFICATION OF THE COURT'S NOVEMBER 4, 2022, ORDER**

Pursuant to the Court's November 4, 2022, Order (ECF No. 18), the Government filed on November 14, 2022, its objections to Rep. Perry's assertions of Speech or Debate privilege. In its submission, the Government requests that the Court review all of the 2,627 documents as to which Rep. Perry has asserted privilege, in large part due to the fact that the Government is unable to review the substance of those communications in order to determine whether the privilege applies. Rep. Perry provides the Court with this response in an effort to facilitate that process and seeks reasonable modifications to the Court's November 4, 2022, Order.

**Background**

Following a hearing on October 18, 2022, the Court issued a Minute Order directing, in relevant part that: (A) counsel for Rep. Perry to provide certain documents to the Government that day,[1] (B) the parties to submit briefing on the applicability of the Speech or Debate Clause

---

[1] The Court ordered counsel for Rep. Perry to provide a log for the 1,041 records that they had reviewed and as to which they asserted Speech or Debate privilege, as well as any such documents within the 33 records in the "Notes" data category. The Court also ordered Rep. Perry to provide the Government with the 3,788 records as to which they did not assert Speech or Debate privilege, as well as the 1,076 records that Counsel had categorized as Junk. Counsel provided the Government with logs for all of those documents on October 18, 2022. Counsel reviewed the additional documents in the "Notes" category and informed the Government on October 18, 2022, that Rep. Perry is not asserting Speech or Debate privilege as to any of those documents that fall within the date range in the warrant. Following a discussion with the Government's eDiscovery contractor to confirm the format and parameters they required for document

1

privilege to documents identified as such by Rep. Perry,[2] and (C) counsel for Rep Perry to conduct a review of the remaining documents at a rate of 800 records per business day beginning October 24, 2022.

Counsel for Rep. Perry has fully complied with the schedule ordered by the Court for further review and production of information:[3]

- On October 26, 2022, counsel provided the Government with the results of its review of 3,214 documents.[4] Counsel asserted Speech or Debate privilege and provided the Government with a log for 79 of those documents. Counsel produced 3,315 documents to the Government as to which Rep. Perry does not assert Speech or Debate privilege.

- On November 4, 2022, counsel provided the Government with the results of its review of 4,000 documents.[5] Counsel asserted Speech or Debate privilege and provided the Government with a log for 191 of those documents. Counsel produced 3,809 documents to the Government as to which Rep. Perry does not assert Speech or Debate privilege.

---

production, counsel produced to the Government on October 26, 2022, the 3,788 records as to which they did not assert Speech or Debate privilege, as well as the 1,076 records that Counsel had categorized as Junk.

[2] On October 19, 2022, the Court granted a joint motion to extend the briefing schedule by approximately one week.

[3] In its Reply Brief Regarding the Inapplicability of the Speech or Debate Clause to Materials Seized from Rep. Perry filed on November 2, 2022, the Government mistakenly complains that defense counsel's document review pace was 265 documents per day instead of the 800 documents per day ordered by the Court. As detailed above, that is simply incorrect. The reason for that miscalculation is unimportant, and Rep. Perry makes no suggestion that the Government's representation was made in bad faith. It is important, however, that the Court and the Government know that Rep. Perry and his counsel have been and are operating in good faith.

[4] Four days from Monday, October 24, 2022, through Thursday, October 27, 2022, at a rate of 800 documents per day is 3,200 documents. After preparation, the documents and log information was then transmitted to the Government on Friday, October 26, 2022, as per the Court's October 18, 2022, Order.

[5] Five days from Friday, October 26, 2022, through Thursday, November 3, 2022, at a rate of 800 documents per day is 4,000 documents. After preparation, the documents and log information was then transmitted to the Government on Friday, November 4, 2022, per the Court's October 18, 2022, Order.

- On November 11, 2022, counsel provided the Government with the results of its review of the remaining 3,097 documents.[6] Counsel asserted Speech or Debate privilege and provided the Government with a log for 1,314 of those documents. Counsel produced 1,783 documents to the Government as to which Rep. Perry does not assert Speech or Debate privilege.

On November 4, 2022, the Court issued its Memorandum Opinion and Order in response to the parties' briefing on the applicability of the Speech or Debate Clause to the documents in question. The Court ordered as follows:

> **ORDERED** that the government, by **November 14, 2022**, advise the Court which documents and records in Rep. Perry's privilege logs, which were due by October 18, 28 and November 4, 2022, see Perry Privilege Log Order ¶¶ A(1) and C, that they dispute as privileged under the Clause; it is further

> **ORDERED** that Rep. Perry, by **November 16, 2022**, furnish the Court with all disputed records and communications by:

> 1. assigning each such record and any communication in the same chain, together with any attachments, an exhibit number;

> 2. providing the Court with:
> a. a thumb drive with electronic versions of the exhibits, with each exhibit saved as a separate file and organized into folders reflecting the categories into which Rep. Perry has already sorted the documents, namely: "(1) communications with cybersecurity individuals, (2) communications with other Members of Congress and staff, (3) communications with executive branch officials, (4) communications with Trump Campaign officials, and (5) communications with Pennsylvania State legislators," see Perry Resp. at 2;
> b. one set of binders with hard copies of each exhibit, also sorted by Rep. Perry's categories, and
> c. an Excel spreadsheet detailing the following for each exhibit submitted for review:
> i. exhibit number

---

[6] Five days from Friday, November 4, 2022, through Thursday, November 10, 2022, at a rate of 800 documents per day is 4,000 documents. After preparation, the documents and log information was then transmitted to the Government on Friday, November 11, 2022, per the Court's October 18, 2022, Order.

3

ii. Bates number(s), if any
iii. document type (i.e., text, email, Notes app file)
iv. date
v. recipient(s)
vi. sender
vii. proposed category, and
viii. any additional information concerning the communication, if necessary; and

3. submitting a motion for withholding as subject to the Speech or Debate Clause privilege that explains Rep. Perry's claims of privilege as to each exhibit; it is further

**ORDERED** that, by November 18, 2022, the parties (1) propose a schedule for rolling productions of exhibits for *in camera* review of disputed privilege logs; and (2) provide a report on the status of Rep. Perry's compliance with the Perry Privilege Log Order.

### Request for Modification of the Court's Order

The Government has objected to all 2,627 documents as to which Rep. Perry has asserted Speech or Debate privilege. While that is somewhat understandable in light of the circumstances, the number of the Government's objections makes it impossible to comply with the Court's Order in just two days. Moreover, the logistics required by the Order would have unintended consequences that would risk confusing the record with respect to the electronic information at issue. Counsel for Rep. Perry therefore requests several modifications to the Court's November 11, 2022, Order.

The electronic information in question primarily consists of text and email data from a forensic image of Rep. Perry's phone that has been processed by an eDiscovery vendor engaged by counsel for Rep. Perry in order to be reviewable on a Relativity platform. The process includes stringing text messages between participants by date, so that the reviewer could see all messages between those participants on a given day, as opposed to reviewing them individually without any context. That is the format in which those records have been produced to the Government for the

4

documents where Rep. Perry is not asserting privilege, and it is the format used in the logs provided to the Government for the documents where Rep. Perry is asserting privilege.

Creating new strings to comply with Item (1) of the Court's Order to arrange communications in the same chain would make it difficult to tie portions of those chains back to the documents on the logs and the documents that have been produced to the Government. For example, such a chain that would include communications from several dates is likely to contain communications as to which Rep. Perry is asserting privilege (and are therefore on the logs provided to the Government), as well as communications as to which he is not (and have already been produced). The same is true for email communications.

There are also several instances where PowerPoint presentations were communicated via text message. Those have resulted in large attachment volumes of well over fifty attachments where those presentations are extrapolated into their individual images and text. This would add another layer of complication when stringing communications together in an effort to create the kinds of exhibits called for in the Court's Order.

There is also a need to go back through the documents listed in privilege logs to the Government prior to the Court's November 4, 2022, Order to confirm that the five categories of information listed in Item 2(a) of that Order are accurately tagged. The Court correctly notes that counsel for Rep. Perry identified the listed categories in their prior review, but not all of the previously reviewed documents were tagged as such. Counsel have already started that review and have reconsidered their privilege assertions as to several documents, having now had the opportunity to better understand their context and the application of Speech or Debate Clause.[7]

---

[7] This is particularly the case for the earlier documents that were included in logs to the Government. For example, those logs included several communications between Rep. Perry and his own Chief of Staff. While a credible argument exists to extend privilege to those communications *per se*, counsel have changed their position as to communications that are not directly tied to legislative action or fact-

5

Counsel will provide those documents to the Government in a supplemental production by Friday, November 18, 2022. Counsel is also adding notes in a note field for each document that provide context for the communications and explain why privilege is being asserted.

It would be considerably expensive and time consuming to provide the Court with hard copy binders of each exhibit per Item 2(b) of the Court's November 4, 2022, Order. It would also be time consuming to submit a motion that explains Rep. Perry's claims of privilege as to each exhibit per Item 3 of the Court's Order, although it would be a manageable task to group communications into certain topics and articulate the basis for Rep. Perry's privilege assertion with respect to those topics.

It is also helpful that all of the documents in question have unique Control Numbers in Relativity that are listed in the privilege logs provided to the Government. Counsel for Rep. Perry proposed using those numbers as exhibit numbers in order to maintain consistency between Rep. Perry's privilege assertions and the Court's ultimate determinations with respect to those assertions. Doing so would greatly facilitate the transmittal to the Government of any documents that the Court might require.

Counsel for Rep. Perry respectfully requests that the Court reconsider reviewing the documents in question using the Relativity platform hosted by the eDiscovery vendors engaged by counsel for Rep. Perry. It would be a simple task to provide the Court with access and its own set of review tags that could be walled-off from Rep. Perry's counsel unless and until the Court wished to share that information. That would also allow for email "threading" that would allow the Court to review related communications but in a way that would maintain consistency with the logs

---

gathering efforts. As of this filing, counsel have reconsidered their designation of 128 documents, thereby reducing the burden on the Court.

provided to the Government. It would also permit the Court to sort documents by category, chronologically, and by any other parameters that the Court would like.

Alternatively, counsel for Rep. Perry make the following suggestion that would facilitate timely review by the Court and production of documents to the Government:

1. Counsel ensures that all documents for which Rep. Perry asserts Speech or Debate privilege are categorized per Item 2(a) of the Court's Order and contain notes providing context for those communications. By Friday, November 18, 2022, counsel provides the Government with (a) any documents for which they no longer assert privilege, and (b) a revised privilege log for those that they continue to assert are privileged.

2. By Monday, November 28, 2022, counsel provides the Court with (a) a spreadsheet for all of those documents that they continue to assert are privileged that contain the data fields listed in Item 2(c) of the Court's Order that would mirror the privilege logs provided to the government and also add the five categories discussed in Item 2(a) of the Court's Order, as well as notes providing context for those communications; (b) PDF copies of all of those documents sorted by category and then chronologically with Relativity Control Numbers stamped on the documents; and (c) a motion that would explain the key topics that the communications relate to and providing the basis for Rep. Perry's privilege assertion, which, combined with the notes on the documents themselves, would provide the Court with the information necessary to inform its judgments.

Counsel for Rep. Perry understands that this is not a negotiation and will make all efforts to comply with any order of the Court, including paper copies if necessary. The recommendations made herein are intended to provide the Court with the information it needs to determine the extent to which the Speech or Debate privilege applies, and to do so as expeditiously as possible. Counsel

respectfully submits that the nature of electronic communications, the need to make determinations about well over 2,000 documents, and the Government's inability to narrow its objections merit reconsideration of the logistics contained in the Court's November 4, 2022, Order.

Counsel for Rep. Perry has provided a copy of this filing to counsel for the Government. Counsel for the Government does not object to the procedure suggested by Rep. Perry or to the modifications of the Court's November 4, 2022, order that Rep. Perry suggests. The parties further agree that there is no need to submit a joint filing on November 18, 2022, proposing a schedule for rolling productions to the Court and reporting on the status of Rep. Perry's compliance with the Court's October 18, 2022, order, in light of the fact that Rep. Perry's document review has been completed.

Dated: November 15, 2022

Respectfully Submitted,

E&W Law, LLC


____/s/ John S. Irving____
John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com


JPROWLEY LAW PLLC


____/s/ John P. Rowley III____
John P. Rowley III
DC Bar No. 392629
1701 Pennsylvania Avenue, NW
Suite 200
Washington DC 20006
john.rowley@jprowleylaw.com
Telephone: 202 525 6674

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 15th day of November 2022, a true and correct copy of

the foregoing was emailed to chambers and to counsel for the government.

_____/s/ John S. Irving_____
John S. Irving (D.C. Bar No. 460068)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | |
| **In the Matter of the Search of** | : | **Case No.  22-SC-2144** |
| **The Forensic Copy of Representative** | : | |
| **Scott G. Perry's Mobile Telephone** | : | **Filed Under Seal** |
| | : | |

**REPRESENTATIVE SCOTT G. PERRY'S MOTION FOR NONDISCLOSURE
TO THE EXECUTIVE BRANCH OF INFORMATION PROTECTED BY
THE SPEECH OR DEBATE CLAUSE OF THE UNITED STATES CONSTITUTION**

Representative Scott G. Perry, a sitting Member of the United States House of Representatives, in both his official and personal capacities and through undersigned counsel, respectfully requests, pursuant to the Speech or Debate Clause of the United States Constitution, that the Court protect from disclosure to the executive branch certain records contained in data from Rep. Perry's mobile telephone, which the United States Department of Justice seized pursuant to a search warrant. Rep. Perry submits the following basis for his request, which supplements his Response to the Government's Brief Regarding the Applicability of the Speech or Debate Clause and ex parte supplement thereto filed with the Court on October 31, 2022, and is intended to comply with the Court's Minute Order of November 16, 2022.

**A. Procedural Background**

On August 2, 2022, United States Magistrate Judge Susan E. Schwab of the United States District Court for the Middle District of Pennsylvania issued a warrant authorizing the seizure of Rep. Perry's cellular telephone.  On August 9, 2022, Special Agents from the Federal Bureau of Investigation executed the warrant, seized Rep. Perry's phone, created a forensic image of it, and returned the physical phone to Rep. Perry.

1

On August 18, 2022, Rep. Perry filed an emergency motion for the return of seized property and for injunctive relief in U.S. District Court for the District of Columbia Case Number 1:22-MC-00079, requesting an opportunity to review the information obtained from Rep. Perry's mobile phone prior to disclosure to the Government pursuant to *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007). On the same date, the Government obtained a second search warrant under seal (D.D.C. Case No. 22-SC-2144) authorizing the review of information on the seized phone subject to a process similar to that proposed by Rep. Perry, whereby Rep. Perry would have 30 days to review the information on the phone, Rep. Perry would provide the Government with a log of all records he asserted were subject to the Speech or Debate Clause, and the Government would then, as needed, request that the Court review those records and make a final determination as to whether they contain privileged information. After the Government advised counsel for Rep. Perry of the second search warrant, counsel moved on August 24, 2022, to have his emergency motion in Case No. 22-MC-00079 held in abeyance. The Court granted that motion and later, on October 27, 2022, granted Rep. Perry's motion to dismiss his pleading in that case without prejudice on October 26, 2022.

On October 5, 2022, counsel for Rep. Perry moved for additional time to review the extensive information contained in the forensic image from Rep. Perry's mobile phone (ECF 7). The Government filed an opposition to that motion, and Rep. Perry replied on October 13, 2022.[1] On October 14, 2022, the Court issued a Minute Order directing counsel for Rep. Perry to provide additional specifics about the volume or records from the mobile phone and the progress of their review, which Rep. Perry did on October 17, 2022.

---

[1] Counsel for Rep. Perry does not have access to the docket in this sealed matter on the Court's Pacer system, and so does not have dates for some events in this case.

The parties appeared before the Court on October 18, 2022, and the Court issued a Minute Order on that date setting forth a schedule for counsel for Rep. Perry to complete their review and for the Government to advise the Court as to which of the records identified by counsel for Rep. Perry as privileged the Government wished the Court to review. Pursuant to that Order, on October 18, October 25, October 28, November 4, and November 11, 2022, counsel for Rep. Perry provided the Government with (a) privilege logs for the documents that they assert are privileged under the Speech or Debate Clause and (b) document productions for those records they do not believe are privileged. Also pursuant to the Court's Order, the Government filed on October 27, 2022, a Brief Regarding the Inapplicability of the Speech or Debate Clause to Materials Seized from Rep. Perry. The Government requested that the Court review all of the documents over which Rep. Perry asserted privilege, arguing essentially that it was unable to narrow its request because it was unable to review the information in order to make that determination. Rep. Perry responded in a filing on October 31, 2022, and provided the Court with an *ex parte* explanation of the parties involved in the communications and facts surrounding the communications in order to provide the Court with context necessary to make its determinations. On November 4, 2022, the Court issued a Memorandum Opinion and Order (ECF 18) that, inter alia, set forth the logistics for counsel for Rep. Perry to provide the documents to the Court for review and directed counsel for Rep. Perry to submit a motion for withholding as subject to the Speech or Debate Clause privilege.[2] On

---

[2] The Court's November 4, 2022, Order also directed counsel for Rep. Perry to assign each communication to five categories that Rep. Perry had identified in his pleading filed on October 31, 2022. The Court's modification of that Order on November 16, 2022, directed counsel for Rep. Perry to provide the government with that information, as well. While counsel for Rep. Perry had identified those five categories, they had not assigned all of the documents reviewed into those categories. Counsel for Rep. Perry re-reviewed the documents that it had already included in privilege logs to the government in its ongoing productions and ensured that each was assigned to a category and that each had notes explaining the context of the communications. Through that process and retroactively applying the Court's discussion of the Speech or Debate Clause in its November 4, 2022, Order, counsel for Rep. Perry was able to reconsider its position on approximately 407 documents. On November 18, 2022, counsel for Rep. Perry

November 15, 2022, Rep. Perry submitted an unopposed request to modify the Court's Order (ECF 20), which the Court granted in part on November 16, 2022, directing counsel for Rep. Perry to provide an Excel spreadsheet listing the documents they assert are privileged, pdf copies of those documents, and a motion for nondisclosure to the government, explaining the key topics that the communications and records relate to and providing the basis for Rep. Perry's assertion for privilege under the Clause with respect to each topic. This filing is submitted pursuant to the Court's modified Order.

### B. Materials For the Court's Consideration

Counsel for Rep. Perry have produced 12,944 documents to the government that they do not believe are subject to Speech or Debate privilege. Counsel provided the Government, and is now providing the Court, with a log of 2,219 documents as to which they assert that the Speech or Debate privilege applies. Counsel for Rep. Perry provided the Government with the category designations for each document, but is only providing the Court with their comments in the "Attorney Notes" field that are intended to describe and provide context for each individual communication in order to assist the Court with its review.

Pursuant to the Court's November 4, 2022, Order, as modified on November 16, 2022, counsel for Rep. Perry is providing the Court with the 2,219 documents separated by category and in chronological order within those categories.[3] A number of communications fell into more than one category. For example, a communication might include both "cybersecurity" related individuals and other Members of Congress, executive branch officials, or Pennsylvania State

---

provided the Government with a revised privilege log and the documents as to which they no longer asserted privilege.

[3] There are 948 pdf files being produced to the Court. Those files combine attachments with the main document, which is why the number of pdf files is lower than the number of documents being produced (2.219).

Legislators. In an effort to accurately categorize communications and to keep strings of communications together, counsel for Rep. Perry is providing the Court with sets of PDF documents in the following categories and combinations of categories:[4]



Rep. Perry will provide the Court with an *ex parte* explanation of the key topics that the communications and records relate to and provide the basis for Rep. Perry's assertion of privilege under the Clause with respect to each topic. That, combined with the comments in the

---

[4] This, hopefully, simplifies this process, rather than complicating it further, by keeping related communications together. An alternative of producing the same document under more than one category was untenable because it might lead the Court to make inconsistent determinations about such a document.

accompanying spreadsheet under "Attorney Notes," should  assist the Court in making its determinations. Rep. Perry is also providing the Court *ex parte* with an updated timeline and spreadsheet explaining relevance of 201 individuals featured in the communications.

### C. Applicability of the Speech or Debate Clause

Rep. Perry articulated the basis for his assertion of the Speech or Debate Clause privilege in his Response to the Government's Brief Regarding the Applicability of the Speech or Debate Clause and ex parte supplement thereto, filed on October 31, 2022. With the exception of updating developments in the United States Supreme Court in a similar matter involving Senator Lindsey Graham, those arguments have not changed and are repeated here in the interest of a complete record without necessitating further filings by the Government.

The primary inquiry when attempting to determine the applicability of the Speech or Debate Clause to Rep. Perry's communications is whether he was engaged in information gathering that is "part of, in connection with, or in aide of a legitimate legislative act" that is protected by the Clause, even where it is an informal effort undertaken by an individual Member of Congress or their staff. *See McSurley v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976); *Jewish War Veterans v. Gates*, 506 F.Supp. 2d 30, 57 (D.D.C. 2007); *Pentagen Tech. Int'l, Ltd v. Comm. On Appropriations*, 20 F.Supp. 2d 41, 44 (D.D.C. 1998). *See also United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988); Memorandum of Points and Authorities in Support of Motion to Dismiss at 20-23, *Assoc. of American Physicians & Surgeons et al v. Congressman Adam Schiff*, No. 20-cv-00106 (June 26, 2020)(ECF No. 19-1). Legislative information gathering is distinct from investigative acts that a member pursues on behalf of an investigative committee, where the committee's investigative authority is exercised by the member.

Rep. Perry's actions here are not unlike those taken by Senator Lindsey Graham, whose challenge to a subpoena from a special grand jury in the State of Georgia is now before the United States Supreme Court. *See In re Subpoena to Non-Party Lindsey O. Graham*, No. 1:22-cv-03027 (N.D.Ga.); *Fulton Cnty. Special Purpose Grand Jury v. Graham*, No. 22-12696, 2022 WL 3581876 (11th Cir. Aug. 22, 2022); Emergency Application for Stay and Injunction Pending Appeal in *Graham v. Fulton Cnty. Special Purpose Grand Jury*, United States Supreme Court No. 22A337 (October 21, 2022). In that case, the United States District Court for the Northern District of Georgia granted in part and denied in part Senator Graham's motion to quash. It agreed with Senator Graham that the Speech or Debate Clause protects him from being questioned about portions of a phone call with the Georgia Secretary of States about allegations of voter fraud, but the court allowed questioning about other portions of that call, as well as about communications with the Trump Campaign, public statements in the 2020 election, and "cajol[ing]" of election officials. Order at ECF 44. The Eleventh Circuit agreed and determined that the District Court's "partial quashal enabled a process through which [any] dispute can be resolved."

On October 24, 2022, the United States Supreme Court granted Senator Graham's Emergency Application for a Stay and Injunction Pending Appeal. At issue in that appeal is the extent to which the Speech or Debate Clause protects legislative fact-finding and permits an inquiry into the motives or purpose behind a member's activity. The issue parallels this Court's questions in the present case about whether the Clause protects acts that have one of more purposes, not all of which are purely legislative. Citing the D.C. Circuit's very recent decision in *Comm. On Ways & Means v. U.S. Dep't of Treasury*, 45 F.4th 324, 331-33 (D.C. Cir. 2022), Senator Graham argues that the Speech or Debate Clause prohibits questioning him about the *motive* for his legislative activities, even if those activities allegedly are a "mere pretext for an

7

unconstitutional ulterior motive." *Id.*. He argues that his subjective motivations for his objectively legislative acts – be they to assist former President Trump or for political purpose – are legally irrelevant because the Clause's protection turns on "the nature of the act," "stripped of all considerations of intent and motive." Graham Emergency App. at pp. 4, 18, citing *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). *See also Tenney v. Brandhove*, 341 U.S. 367, 373–74 (1951); Minute Order, *United States v. Bannon*, No. 21-cr-00670 (D.D.C. July 11, 2022) (quashing subpoena to Speaker Pelosi); *Jud. Watch, Inc. v. Schiff*, 998 F.3d 989, 992–93 (D.C. Cir. 2021) (quashing subpoena issued to Rep. Adam Schiff); *RNC v. Pelosi*, __ F. Supp. 3d __, 2022 WL 1294509, at *7–10 (D.D.C. May 1, 2022), vacated on other grounds by No. 22-5123, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022) (*per curiam*) (unpublished order) (declining review of the House Select Committee's motivations in conducting January 6th investigation).

On November 1, 2022, the Supreme Court vacated its October 24, 2022, stay of the District Court's Order, stating as follows:

> Application (22A337) for stay and an injunction pending appeal presented to Justice Thomas and by him referred to the Court is denied. The order heretofore entered by Justice Thomas is vacated. The lower courts assumed that the informal investigative fact-finding that Senator Graham assertedly engaged in constitutes legislative activity protected by the Speech or Debate Clause, U. S. Const. Art. I, §6, cl. 1, and they held that Senator Graham may not be questioned about such activities. The lower courts also made clear that Senator Graham may return to the District Court should disputes arise regarding the application of the Speech or Debate Clause immunity to specific questions. Accordingly, a stay or injunction is not necessary to safeguard the Senator's Speech or Debate Clause immunity.

The communications to be reviewed in this matter pertain to Rep. Perry's efforts as a Member of Congress to gather information about the security of the 2020 election and the validity of the electors required to certify the election, a vote that Rep. Perry was called upon to cast under the United States Constitution and the Electoral Count Act. Rep. Perry's inquiry was also

consistent with his efforts to ensure the security of our elections in the future and to help determine the most appropriate vehicles to do so.

Rep. Perry has been a Member of Congress since 2013, initially representing Pennsylvania's Fourth District, and then its newly redistricted Tenth District. He serves on the House Committee on Transportation & Infrastructure and on the House Committee on Foreign Affairs. He previously served for three (3) terms on the House Committee on Homeland Security, which has jurisdiction over election issues, and he sought the position of Ranking Member of that Committee at the beginning of the current legislative term in January 2021. Rep. Perry is also a member of, and the recently-elected Chairman for, the House Freedom Caucus, whose mission is "to give a voice to countless Americans who feel that Washington does not represent them. We support open, accountable and limited government, the Constitution and the Rule of Law, and policies that promote the liberty, safety and prosperity of all Americans." Prior to his election to Congress, Rep. Perry served in the United States military for nearly forty years, rising from the enlisted ranks to the rank of Brigadier General and the Assistant Division Commander of the 28th Infantry Division. His duties during those nearly four decades of military service included briefings and communications with members of the intelligence community about threats to the United States at home and abroad. As a Member of Congress, Rep. Perry voted on January 6, 2021, to reject Pennsylvania's electoral votes in the 2020 election.

The Government argues that communications related to the results of the 2020 presidential election and the certification of electoral votes are not entitled to protection under the Speech or Debate Clause because they are political in nature and designed to influence the conduct of executive branch personnel. This Court should not adopt either argument as a blanket rule where those communications fall within Rep. Perry's legitimate and protected fact-gathering activities as

a Member of Congress. As discussed above and in *Graham*, the motivations behind a legitimately legislative act are irrelevant. While Rep. Perry agrees that the Speech or Debate Clause does not protect purely political acts, such as fundraising, the Clause does protect activities that fall within the legislative sphere, and a legislator's motivations are irrelevant.

Here, the United States Constitution and the Electoral Count Act obligated Rep. Perry to vote on whether to confirm the electors and certify the 2020 election, and it was well within his authority to inquire into whether those electors were legitimate, or whether there were enough unlawful votes to question the outcome of the election. Rep. Perry considered those issues in real time as they were occurring, and they cannot legitimately be evaluated in hindsight. It was also well within Rep. Perry's responsibilities to inquire into whether there were ways to ensure the integrity of our elections going forward. Indeed, shortly after the 2020 election, the House of Representatives considered and passed on a party-line vote H.R. 1, which essentially sought to nationalize our elections and codify many of the measures that some states put in place during the 2020 election in the name of encouraging and facilitating voting during the COVID-19 pandemic. That bill had initially been introduced in the 116th Congress, blocked by a Senate filibuster, and reintroduced in the 117th Congress. As such, its provisions were very much a live issue during the 2020 election, and many Republicans, including Rep. Perry, expressed concerns about whether those measures were detrimental to voting security. The fact that a communication pertained to the security of the 2020 election, or the validity of electors makes it more likely, not less, that they legitimately fell within Rep. Perry's fact-gathering efforts and are protected as legitimate investigative activities.

Similarly, the fact that Rep. Perry was communicating with executive branch officials, other Members of the United States Congress, or even state legislators in Pennsylvania is not

determinative of the applicability of the Speech or Debate Clause. Rep. Perry understands and agrees that where those communications were for the purpose of asking another branch of government to do something that is within its authority, rather than the legislative authority of the U.S. House of Representatives, such acts are less likely to receive Speech or Debate protections. But the Clause does protect communications made for the purpose of obtaining information that might further Rep. Perry's legislative responsibilities and purpose.

## CONCLUSION

For the foregoing reasons, Rep. Perry requests that the Court apply the foregoing principles in its review of the information over which he has asserted Speech or Debate protection.

Dated: November 28, 2022    Respectfully Submitted,

E&W Law, LLC

/s/ John S. Irving_____
John S. Irving (D.C. Bar No. 460068)
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
Email: john.irving@earthandwatergroup.com

JPROWLEY LAW PLLC

/s/ John P. Rowley III__
John P. Rowley III
DC Bar No. 392629
1701 Pennsylvania Avenue, NW
Suite 200
Washington DC 20006
john.rowley@jprowleylaw.com
Telephone: 202-525-6674

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of November, 2022, a true and correct copy of the foregoing was emailed to chambers and to counsel for the government.

/s/ John S. Irving
John S. Irving (D.C. Bar No. 460068)

12

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY | Case No. 22-sc-2144 |
| | Chief Judge Beryl A. Howell |
| | **UNDER SEAL** |

**ORDER**

Upon consideration of Representative Perry's motion for non-disclosure to the government; the government's objections to Representative Perry's assertions of privilege; Representative Perry's *ex parte* supplement; the attached exhibits; and the underlying record, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby:

**ORDERED** that Representative Perry's Motion for Non-Disclosure, ECF No. 21, is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that Representative Perry may withhold the 161 responsive records listed by Bates-stamp number in **Attachment A** to this Order and not disclose these records to the government because they are protected under the Speech or Debate Clause of the U.S. Constitution, *see* U.S. CONST. art. I, § 6, cl. 1; it is further

**ORDERED** that Representative Perry may withhold in part and must disclose in part the responsive records with Bates-stamp numbers RELM0000001915; RELM0000003823; RELM0000003896, in the redacted form attached in **Attachment B** to this Order; it is further

**ORDERED** that Representative Perry must promptly disclose, by January 5, 2023, to the government all remaining responsive records previously withheld and submitted for *in camera* review, listed by Bates-stamp number in **Attachment C** to this Order; and it is further

1

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED**.

Date: December 28, 2022



BERYL A. HOWELL
Chief Judge

**ATTACHMENT A:**

**RESPONSIVE RECORDS THAT MAY NOT BE DISCLOSED
TO THE GOVERNMENT**

| Bates Number | | | |
|---|---|---|---|
| REL0000000104 | RELM0000000775 | RELM0000002227 | RELM0000004187 |
| REL0000000145 | RELM0000000798 | RELM0000002262 | RELM0000004208 |
| REL0000000438 | RELM0000000820 | RELM0000002343 | RELM0000004335 |
| REL0000000477 | RELM0000000824 | RELM0000002361 | RELM0000004375 |
| REL0000000859 | RELM0000000877 | RELM0000002441 | RELM0000004381 |
| REL0000000995 | RELM0000000920 | RELM0000002448 | RELM0000004409 |
| REL0000001158 | RELM0000000922 | RELM0000002487 | RELM0000004447 |
| REL0000001320 | RELM0000000941 | RELM0000002566 | RELM0000004447.0001 |
| REL0000001503 | RELM0000000955 | RELM0000002659 | RELM0000004447.0002 |
| REL0000001521 | RELM0000001025 | RELM0000002806 | RELM0000004461 |
| REL0000001623 | RELM0000001139 | RELM0000002855 | RELM0000004595 |
| REL0000001703 | RELM0000001206 | RELM0000002861 | RELM0000004596 |
| REL0000001981 | RELM0000001271 | RELM0000002886 | RELM0000004871 |
| REL0000002170 | RELM0000001331 | RELM0000002893 | RELM0000004926 |
| REL0000002255 | RELM0000001331.0001 | RELM0000002896 | RELM0000004936 |

| | | | |
|---|---|---|---|
| REL0000002700 | RELM0000001350 | RELM0000002928 | RELM0000004948 |
| REL0000002833 | RELM0000001407 | RELM0000002941 | RELM0000005007 |
| REL0000002838 | RELM0000001408 | RELM0000002971 | RELM0000005040 |
| REL0000002870 | RELM0000001419 | RELM0000003010 | RELM0000005137 |
| REL0000002911 | RELM0000001448 | RELM0000003187 | RELM0000005139 |
| REL0000004520 | RELM0000001466 | RELM0000003212 | RELM0000005166 |
| REL0000004664 | RELM0000001565 | RELM0000003217 | RELM0000005242 |
| REL0000004759 | RELM0000001590 | RELM0000003224 | RELM0000005242.0001 |
| REL0000004790 | RELM0000001614 | RELM0000003281 | RELM0000005242.0002 |
| REL0000004799 | RELM0000001648 | RELM0000003311 | RELM0000005242.0003 |
| RELM0000000018 | RELM0000001689 | RELM0000003371 | RELM0000005242.0004 |
| RELM0000000100 | RELM0000001694 | RELM0000003422 | RELM0000005242.0005 |
| RELM0000000100.0001 | RELM0000001702 | RELM0000003501 | RELM0000005242.0006 |
| RELM0000000100.0002 | RELM0000001785 | RELM0000003576 | RELM0000005242.0007 |
| RELM0000000123 | RELM0000001804 | RELM0000003648 | RELM0000005242.0008 |
| RELM0000000299 | RELM0000001847 | RELM0000003707 | RELM0000005255 |
| RELM0000000346 | RELM0000001860 | RELM0000003870 | RELM0000005456 |
| RELM0000000378 | RELM0000001933 | RELM0000003896.0001 | RELM0000005560 |
| RELM0000000426 | RELM0000001962 | RELM0000003896.0002 | RELM0000005604 |

4

| | | | |
|---|---|---|---|
| RELM0000000495 | RELM0000001996 | RELM0000003896.0003 | RELM0000005636 |
| RELM0000000562 | RELM0000002009 | RELM0000003896.0004 | RELM0000005680 |
| RELM0000000583 | RELM0000002077 | RELM0000004064 | RELM0000005703 |
| RELM0000000595 | RELM0000002101 | RELM0000004077 | RELM0000005713 |
| RELM0000000610 | RELM0000002193 | RELM0000004140 | |
| RELM0000000634 | RELM0000002193.0001 | RELM0000004142 | |
| RELM0000000722 | RELM0000002193.0002 | RELM0000004167 | |

**ATTACHMENT B:**

**RESONSIVE RECORDS THAT MAY BE DISCLOSED TO
THE GOVERNMENT AS REDACTED BELOW**

| Bates Number |
| --- |
| RELM0000001915 |
| RELM0000003823 |
| RELM0000003896 |

6

**Short Message Report**

Conversations: 1                                   Participants: 2
Total Messages: 7                                  Date Range: 12/3/2020

**Outline of Conversations**

 ███████████████████  7 messages on 12/3/2020   Patrick Schilling   Scott Perry

RELM0000001915



SP

RELM0000001915_000001

**Short Message Report**

Conversations: 1
Total Messages: 11

Participants: 2
Date Range: 12/16/2020 - 12/17/2020

**Outline of Conversations**

   11 messages between 12/16/2020 - 12/17/2020   Patrick Schilling

Scott Perry

JA152

RELM0000003823

**Messages in chronological order** (times are shown in GMT -05:00)



RELM0000003823_000001

## Short Message Report

Conversations: 1
Total Messages: 6

Participants: 2
Date Range: 1/6/2021 - 1/7/2021

### Outline of Conversations

 ███████████████████ 6 messages between 1/6/2021 - 1/7/2021   Patrick Schilling
Scott Perry

RELM0000003896

**Messages in chronological order** (times are shown in GMT -05:00)



RELM0000003896_000001

RELM000003896.0001



UP TO THE MINUTE NEWS UPDATES AT WWW.BLAZINGPRESS.COM



JA157

RELM0000003896.0002

# Thread reader

 

THREAD BY KANEKOA (@KANEKOATHEGREAT)

NEW: US election data was forwarded from Frankfurt, Germany to Rome, Italy where the man pictured below partnered with members of MI6, the CIA, & the Italian defense-contractor, Leonardo, led the operation & built the algorithms that were used …



Read all 8 tweets on threadreaderapp.com 

JA158

RELM0000003896.0003



JA159

RELM0000003896.0004



JA160

RELM0000003896.0004_000001

**ATTACHMENT C:**

**RESPONSIVE RECORDS THAT MAY BE DISCLOSED IN THEIR ENTIRETY
TO THE GOVERNMENT**

| Bates Number | | | | |
|---|---|---|---|---|
| RELM0000000443 | RELM0000000309.0002 | RELM0000002354.0067 | RELM0000003018.0001 | RELM0000003473.0022 |
| RELM0000001079 | RELM0000000310 | RELM0000002354.0068 | RELM0000003018.0002 | RELM0000003473.0023 |
| RELM0000001089 | RELM0000000310.0001 | RELM0000002354.0069 | RELM0000003027 | RELM0000003473.0024 |
| REL0000000023 | RELM0000000310.0002 | RELM0000002354.0070 | RELM0000003027.0001 | RELM0000003473.0025 |
| REL0000000024 | RELM0000000310.0003 | RELM0000002354.0071 | RELM0000003027.0002 | RELM0000003473.0026 |
| REL0000000024.0001 | RELM0000000310.0004 | RELM0000002354.0072 | RELM0000003027.0003 | RELM0000003473.0027 |
| REL0000000032 | RELM0000000310.0005 | RELM0000002354.0073 | RELM0000003027.0004 | RELM0000003473.0028 |
| REL0000000051 | RELM0000000312 | RELM0000002354.0074 | RELM0000003027.0005 | RELM0000003473.0029 |
| REL0000000058 | RELM0000000327 | RELM0000002354.0075 | RELM0000003027.0006 | RELM0000003473.0030 |
| REL0000000059 | RELM0000000333 | RELM0000002354.0076 | RELM0000003027.0007 | RELM0000003473.0031 |
| REL0000000064 | RELM0000000335 | RELM0000002354.0077 | RELM0000003027.0008 | RELM0000003473.0032 |
| REL0000000077 | RELM0000000335.0001 | RELM0000002354.0078 | RELM0000003027.0009 | RELM0000003473.0033 |

7

JA161

| REL0000000102 | RELM0000000335.0002 | RELM0000002354.0079 | RELM0000003027.0010 | RELM0000003473.0034 |
| REL0000000115 | RELM0000000353 | RELM0000002354.0080 | RELM0000003027.0011 | RELM0000003473.0035 |
| REL0000000115.0001 | RELM0000000353.0001 | RELM0000002354.0081 | RELM0000003027.0012 | RELM0000003473.0036 |
| REL0000000123 | RELM0000000373 | RELM0000002354.0082 | RELM0000003027.0013 | RELM0000003473.0037 |
| REL0000000181 | RELM0000000373.0001 | RELM0000002354.0083 | RELM0000003027.0014 | RELM0000003473.0038 |
| REL0000000207 | RELM0000000376 | RELM0000002354.0084 | RELM0000003027.0015 | RELM0000003473.0039 |
| REL0000000209 | RELM0000000388 | RELM0000002354.0085 | RELM0000003027.0016 | RELM0000003473.0040 |
| REL0000000231 | RELM0000000391 | RELM0000002354.0086 | RELM0000003027.0017 | RELM0000003473.0041 |
| REL0000000245 | RELM0000000414 | RELM0000002354.0087 | RELM0000003027.0018 | RELM0000003473.0042 |
| REL0000000277 | RELM0000000423 | RELM0000002354.0088 | RELM0000003027.0019 | RELM0000003478 |
| REL0000000284 | RELM0000000431 | RELM0000002354.0089 | RELM0000003027.0020 | RELM0000003481 |
| REL0000000343 | RELM0000000439 | RELM0000002354.0090 | RELM0000003027.0021 | RELM0000003481.0001 |
| REL0000000379 | RELM0000000458 | RELM0000002354.0091 | RELM0000003027.0022 | RELM0000003481.0002 |
| REL0000000383 | RELM0000000458.0001 | RELM0000002354.0092 | RELM0000003027.0023 | RELM0000003481.0003 |
| REL0000000385 | RELM0000000458.0002 | RELM0000002354.0093 | RELM0000003027.0024 | RELM0000003481.0004 |

8

| | | | | |
|---|---|---|---|---|
| REL0000000389 | RELM0000000458.0003 | RELM0000002354.0094 | RELM0000003027.0025 | RELM0000003481.0005 |
| REL0000000425 | RELM0000000461 | RELM0000002354.0095 | RELM0000003027.0026 | RELM0000003498 |
| REL0000000436 | RELM0000000470 | RELM0000002354.0096 | RELM0000003027.0027 | RELM0000003500 |
| REL0000000436.0001 | RELM0000000470.0001 | RELM0000002354.0097 | RELM0000003027.0028 | RELM0000003500.0001 |
| REL0000000440 | RELM0000000470.0002 | RELM0000002354.0098 | RELM0000003027.0029 | RELM0000003504 |
| REL0000000451 | RELM0000000492 | RELM0000002354.0099 | RELM0000003027.0030 | RELM0000003509 |
| REL0000000460 | RELM0000000508 | RELM0000002354.0100 | RELM0000003027.0031 | RELM0000003509.0001 |
| REL0000000474 | RELM0000000508.0001 | RELM0000002354.0101 | RELM0000003027.0032 | RELM0000003510 |
| REL0000000476 | RELM0000000508.0002 | RELM0000002354.0102 | RELM0000003027.0033 | RELM0000003538 |
| REL0000000479 | RELM0000000511 | RELM0000002354.0103 | RELM0000003027.0034 | RELM0000003567 |
| REL0000000485 | RELM0000000511.0001 | RELM0000002354.0104 | RELM0000003027.0035 | RELM0000003567.0001 |
| REL0000000510 | RELM0000000518 | RELM0000002354.0105 | RELM0000003027.0036 | RELM0000003567.0002 |
| REL0000000518 | RELM0000000523 | RELM0000002354.0106 | RELM0000003027.0037 | RELM0000003567.0003 |
| REL0000000522 | RELM0000000523.0001 | RELM0000002354.0107 | RELM0000003027.0038 | RELM0000003567.0004 |
| REL0000000533 | RELM0000000527 | RELM0000002354.0108 | RELM0000003027.0039 | RELM0000003567.0005 |

9

| | | | | |
|---|---|---|---|---|
| REL0000000547 | RELM0000000535 | RELM0000002354.0109 | RELM0000003027.0040 | RELM0000003567.0006 |
| REL0000000553 | RELM0000000537 | RELM0000002354.0110 | RELM0000003027.0041 | RELM0000003567.0007 |
| REL0000000554 | RELM0000000550 | RELM0000002354.0111 | RELM0000003027.0042 | RELM0000003567.0008 |
| REL0000000564 | RELM0000000550.0001 | RELM0000002354.0112 | RELM0000003027.0043 | RELM0000003567.0009 |
| REL0000000640 | RELM0000000556 | RELM0000002354.0113 | RELM0000003027.0044 | RELM0000003567.0010 |
| REL0000000671 | RELM0000000560 | RELM0000002354.0114 | RELM0000003027.0045 | RELM0000003567.0011 |
| REL0000000675 | RELM0000000593 | RELM0000002354.0115 | RELM0000003027.0046 | RELM0000003567.0012 |
| REL0000000676 | RELM0000000600 | RELM0000002354.0116 | RELM0000003027.0047 | RELM0000003567.0013 |
| REL0000000690 | RELM0000000608 | RELM0000002354.0117 | RELM0000003027.0048 | RELM0000003567.0014 |
| REL0000000692 | RELM0000000608.0001 | RELM0000002354.0118 | RELM0000003027.0049 | RELM0000003567.0015 |
| REL0000000745 | RELM0000000614 | RELM0000002354.0119 | RELM0000003027.0050 | RELM0000003567.0016 |
| REL0000000768 | RELM0000000635 | RELM0000002354.0120 | RELM0000003027.0051 | RELM0000003567.0017 |
| REL0000000768.0001 | RELM0000000641 | RELM0000002354.0121 | RELM0000003027.0052 | RELM0000003567.0018 |
| REL0000000805 | RELM0000000646 | RELM0000002354.0122 | RELM0000003027.0053 | RELM0000003567.0019 |
| REL0000000830 | RELM0000000646.0001 | RELM0000002354.0123 | RELM0000003027.0054 | RELM0000003567.0020 |

10

| | | | | |
|---|---|---|---|---|
| REL0000000838 | RELM00000006 46.0002 | RELM00000023 54.0124 | RELM00000030 27.0055 | RELM0000003567.0 021 |
| REL0000000851 | RELM00000006 46.0003 | RELM00000023 54.0125 | RELM00000030 27.0056 | RELM0000003567.0 022 |
| REL0000000852 | RELM00000006 46.0004 | RELM00000023 58 | RELM00000030 27.0057 | RELM0000003567.0 023 |
| REL0000000869 | RELM00000006 46.0005 | RELM00000023 58.0001 | RELM00000030 27.0058 | RELM0000003567.0 024 |
| REL0000000870 | RELM00000006 46.0006 | RELM00000023 65 | RELM00000030 27.0059 | RELM0000003567.0 025 |
| REL0000000891 | RELM00000006 48 | RELM00000023 73 | RELM00000030 27.0060 | RELM0000003567.0 026 |
| REL0000000932 | RELM00000006 63 | RELM00000023 73.0001 | RELM00000030 27.0061 | RELM0000003567.0 027 |
| REL0000000937 | RELM00000006 65 | RELM00000023 73.0002 | RELM00000030 27.0062 | RELM0000003567.0 028 |
| REL0000000994 | RELM00000006 68 | RELM00000023 73.0003 | RELM00000030 27.0063 | RELM0000003567.0 029 |
| REL0000001001 | RELM00000006 72 | RELM00000023 73.0004 | RELM00000030 27.0064 | RELM0000003567.0 030 |
| REL0000001009 | RELM00000006 76 | RELM00000023 73.0005 | RELM00000030 27.0065 | RELM0000003567.0 031 |
| REL0000001023 | RELM00000006 76.0001 | RELM00000023 73.0006 | RELM00000030 27.0066 | RELM0000003567.0 032 |
| REL0000001034 | RELM00000006 76.0002 | RELM00000023 73.0007 | RELM00000030 27.0067 | RELM0000003567.0 033 |
| REL0000001042 | RELM00000006 76.0003 | RELM00000023 73.0008 | RELM00000030 27.0068 | RELM0000003567.0 034 |
| REL0000001056 | RELM00000006 76.0004 | RELM00000023 73.0009 | RELM00000030 27.0069 | RELM0000003567.0 035 |

11

| REL0000001058 | RELM00000006 76.0005 | RELM00000023 73.0010 | RELM00000030 27.0070 | RELM0000003567.0 036 |
|---|---|---|---|---|
| REL0000001062 | RELM00000006 76.0006 | RELM00000023 73.0011 | RELM00000030 27.0071 | RELM0000003567.0 037 |
| REL0000001078 | RELM00000006 90 | RELM00000023 73.0012 | RELM00000030 27.0072 | RELM0000003567.0 038 |
| REL0000001079 | RELM00000006 90.0001 | RELM00000023 73.0013 | RELM00000030 27.0073 | RELM0000003567.0 039 |
| REL0000001110 | RELM00000007 07 | RELM00000023 73.0014 | RELM00000030 27.0074 | RELM0000003567.0 040 |
| REL0000001154 | RELM00000007 19 | RELM00000023 73.0015 | RELM00000030 27.0075 | RELM0000003567.0 041 |
| REL0000001179 | RELM00000007 21 | RELM00000023 73.0016 | RELM00000030 27.0076 | RELM0000003567.0 042 |
| REL0000001190 | RELM00000007 21.0001 | RELM00000023 73.0017 | RELM00000030 27.0077 | RELM0000003567.0 043 |
| REL0000001214 | RELM00000007 21.0002 | RELM00000023 73.0018 | RELM00000030 27.0078 | RELM0000003567.0 044 |
| REL0000001243 | RELM00000007 21.0003 | RELM00000023 73.0019 | RELM00000030 27.0079 | RELM0000003567.0 045 |
| REL0000001259 | RELM00000007 28 | RELM00000023 73.0020 | RELM00000030 27.0080 | RELM0000003567.0 046 |
| REL0000001301 | RELM00000007 32 | RELM00000023 73.0021 | RELM00000030 27.0081 | RELM0000003567.0 047 |
| REL0000001307 | RELM00000007 32.0001 | RELM00000023 73.0022 | RELM00000030 27.0082 | RELM0000003567.0 048 |
| REL0000001312 | RELM00000007 59 | RELM00000023 73.0023 | RELM00000030 27.0083 | RELM0000003567.0 049 |
| REL0000001324 | RELM00000007 82 | RELM00000023 73.0024 | RELM00000030 27.0084 | RELM0000003567.0 050 |

12

| REL0000001327 | RELM0000000787 | RELM0000002373.0025 | RELM0000003027.0085 | RELM0000003567.0051 |
|---|---|---|---|---|
| REL0000001356 | RELM0000000790 | RELM0000002373.0026 | RELM0000003027.0086 | RELM0000003567.0052 |
| REL0000001365 | RELM0000000800 | RELM0000002373.0027 | RELM0000003027.0087 | RELM0000003567.0053 |
| REL0000001374 | RELM0000000800.0001 | RELM0000002373.0028 | RELM0000003027.0088 | RELM0000003567.0054 |
| REL0000001376 | RELM0000000805 | RELM0000002373.0029 | RELM0000003027.0089 | RELM0000003567.0055 |
| REL0000001395 | RELM0000000805.0001 | RELM0000002373.0030 | RELM0000003027.0090 | RELM0000003567.0056 |
| REL0000001397 | RELM0000000805.0002 | RELM0000002373.0031 | RELM0000003027.0091 | RELM0000003567.0057 |
| REL0000001401 | RELM0000000817 | RELM0000002373.0032 | RELM0000003027.0092 | RELM0000003567.0058 |
| REL0000001429 | RELM0000000817.0001 | RELM0000002373.0033 | RELM0000003027.0093 | RELM0000003567.0059 |
| REL0000001444 | RELM0000000839 | RELM0000002373.0034 | RELM0000003027.0094 | RELM0000003567.0060 |
| REL0000001453 | RELM0000000839.0001 | RELM0000002373.0035 | RELM0000003027.0095 | RELM0000003567.0061 |
| REL0000001483 | RELM0000000857 | RELM0000002373.0036 | RELM0000003027.0096 | RELM0000003567.0062 |
| REL0000001493 | RELM0000000867 | RELM0000002373.0037 | RELM0000003044 | RELM0000003567.0063 |
| REL0000001511 | RELM0000000893 | RELM0000002373.0038 | RELM0000003065 | RELM0000003567.0064 |
| REL0000001531 | RELM0000000902 | RELM0000002373.0039 | RELM0000003065.0001 | RELM0000003567.0065 |

13

| | | | | |
|---|---|---|---|---|
| REL0000001555 | RELM0000000902.0001 | RELM0000002373.0040 | RELM0000003065.0002 | RELM0000003567.0066 |
| REL0000001558 | RELM0000000913 | RELM0000002373.0041 | RELM0000003065.0003 | RELM0000003569 |
| REL0000001575 | RELM0000000913.0001 | RELM0000002373.0042 | RELM0000003065.0004 | RELM0000003583 |
| REL0000001594 | RELM0000000924 | RELM0000002373.0043 | RELM0000003072 | RELM0000003601 |
| REL0000001599 | RELM0000000929 | RELM0000002394 | RELM0000003074 | RELM0000003602 |
| REL0000001604 | RELM0000000937 | RELM0000002396 | RELM0000003074.0001 | RELM0000003602.0001 |
| REL0000001613 | RELM0000000944 | RELM0000002397 | RELM0000003074.0002 | RELM0000003614 |
| REL0000001618 | RELM0000000944.0001 | RELM0000002399 | RELM0000003080 | RELM0000003649 |
| REL0000001632 | RELM0000000948 | RELM0000002402 | RELM0000003087 | RELM0000003649.0001 |
| REL0000001636 | RELM0000000956 | RELM0000002411 | RELM0000003087.0001 | RELM0000003663 |
| REL0000001682 | RELM0000000972 | RELM0000002411.0001 | RELM0000003087.0002 | RELM0000003679 |
| REL0000001694 | RELM0000000978 | RELM0000002411.0002 | RELM0000003102 | RELM0000003679.0001 |
| REL0000001728 | RELM0000000978.0001 | RELM0000002411.0003 | RELM0000003131 | RELM0000003694 |
| REL0000001742 | RELM0000000978.0002 | RELM0000002416 | RELM0000003155 | RELM0000003701 |
| REL0000001750 | RELM0000000989 | RELM0000002420 | RELM0000003158 | RELM0000003703 |
| REL0000001774 | RELM0000000989.0001 | RELM0000002429 | RELM0000003165 | RELM0000003715 |

14

| | | | | |
|---|---|---|---|---|
| REL0000001779 | RELM0000000989.0002 | RELM0000002443 | RELM0000003173 | RELM0000003727 |
| REL0000001787 | RELM0000000989.0003 | RELM0000002453 | RELM0000003180 | RELM0000003742 |
| REL0000001800 | RELM0000000989.0004 | RELM0000002458 | RELM0000003184 | RELM0000003756 |
| REL0000001812 | RELM0000000989.0005 | RELM0000002463 | RELM0000003186 | RELM0000003760 |
| REL0000001862 | RELM0000000991 | RELM0000002464 | RELM0000003188 | RELM0000003760.0001 |
| REL0000001894 | RELM0000001000 | RELM0000002464.0001 | RELM0000003188.0001 | RELM0000003768 |
| REL0000001896 | RELM0000001000.0001 | RELM0000002471 | RELM0000003203 | RELM0000003770 |
| REL0000001902 | RELM0000001027 | RELM0000002474 | RELM0000003203.0001 | RELM0000003776 |
| REL0000001930 | RELM0000001029 | RELM0000002474.0001 | RELM0000003203.0002 | RELM0000003776.0001 |
| REL0000001931 | RELM0000001034 | RELM0000002474.0002 | RELM0000003214 | RELM0000003776.0002 |
| REL0000001934 | RELM0000001043 | RELM0000002483 | RELM0000003219 | RELM0000003790 |
| REL0000001965 | RELM0000001043.0001 | RELM0000002485 | RELM0000003238 | RELM0000003804 |
| REL0000001968 | RELM0000001043.0002 | RELM0000002490 | RELM0000003261 | RELM0000003804.0001 |
| REL0000001971 | RELM0000001043.0003 | RELM0000002493 | RELM0000003267 | RELM0000003804.0001.0001 |
| REL0000001973 | RELM0000001051 | RELM0000002505 | RELM0000003267.0001 | RELM0000003818 |

15

| | | | |
|---|---|---|---|
| REL0000001985 | RELM00000010 56 | RELM00000025 05.0001 | RELM00000032 67.0002 | RELM0000003818.0 001 |
| REL0000001989 | RELM00000010 73 | RELM00000025 14 | RELM00000032 71 | RELM0000003822 |
| REL0000002015 | RELM00000010 89.0001 | RELM00000025 14.0001 | RELM00000032 74 | RELM0000003827 |
| REL0000002031 | RELM00000010 99 | RELM00000025 14.0002 | RELM00000033 02 | RELM0000003841 |
| REL0000002054 | RELM00000011 05 | RELM00000025 14.0003 | RELM00000033 02.0001 | RELM0000003841.0 001 |
| REL0000002071 | RELM00000011 06 | RELM00000025 14.0004 | RELM00000033 02.0002 | RELM0000003841.0 002 |
| REL0000002087 | RELM00000011 13 | RELM00000025 14.0005 | RELM00000033 07 | RELM0000003841.0 003 |
| REL0000002109 | RELM00000011 15 | RELM00000025 14.0006 | RELM00000033 12 | RELM0000003841.0 004 |
| REL0000002123 | RELM00000011 29 | RELM00000025 14.0007 | RELM00000033 12.0001 | RELM0000003841.0 005 |
| REL0000002134 | RELM00000011 46 | RELM00000025 14.0008 | RELM00000033 12.0002 | RELM0000003841.0 006 |
| REL0000002146 | RELM00000011 53 | RELM00000025 14.0009 | RELM00000033 12.0003 | RELM0000003841.0 007 |
| REL0000002166 | RELM00000011 57 | RELM00000025 14.0010 | RELM00000033 12.0004 | RELM0000003841.0 008 |
| REL0000002187 | RELM00000011 74 | RELM00000025 14.0011 | RELM00000033 12.0005 | RELM0000003841.0 009 |
| REL0000002193 | RELM00000011 85 | RELM00000025 14.0012 | RELM00000033 12.0006 | RELM0000003841.0 010 |
| REL0000002199 | RELM00000011 85.0001 | RELM00000025 14.0013 | RELM00000033 12.0007 | RELM0000003841.0 011 |

16

| | | | | |
|---|---|---|---|---|
| REL0000002201 | RELM0000001191 | RELM0000002514.0014 | RELM0000003312.0008 | RELM0000003841.0012 |
| REL0000002256 | RELM0000001191.0001 | RELM0000002514.0015 | RELM0000003312.0009 | RELM0000003841.0013 |
| REL0000002264 | RELM0000001191.0002 | RELM0000002514.0016 | RELM0000003312.0010 | RELM0000003841.0014 |
| REL0000002273 | RELM0000001191.0003 | RELM0000002514.0017 | RELM0000003312.0011 | RELM0000003841.0015 |
| REL0000002349 | RELM0000001195 | RELM0000002514.0018 | RELM0000003312.0012 | RELM0000003843 |
| REL0000002367 | RELM0000001202 | RELM0000002514.0019 | RELM0000003312.0013 | RELM0000003843.0001 |
| REL0000002378 | RELM0000001203 | RELM0000002514.0020 | RELM0000003314 | RELM0000003843.0002 |
| REL0000002402 | RELM0000001203.0001 | RELM0000002514.0021 | RELM0000003314.0001 | RELM0000003843.0003 |
| REL0000002440 | RELM0000001204 | RELM0000002514.0022 | RELM0000003314.0002 | RELM0000003843.0004 |
| REL0000002447 | RELM0000001212 | RELM0000002514.0023 | RELM0000003314.0003 | RELM0000003843.0005 |
| REL0000002491 | RELM0000001212.0001 | RELM0000002514.0024 | RELM0000003314.0004 | RELM0000003847 |
| REL0000002498 | RELM0000001212.0002 | RELM0000002514.0025 | RELM0000003314.0005 | RELM0000003847.0001 |
| REL0000002508 | RELM0000001212.0003 | RELM0000002514.0026 | RELM0000003314.0006 | RELM0000003847.0002 |
| REL0000002515 | RELM0000001222 | RELM0000002514.0027 | RELM0000003314.0007 | RELM0000003847.0003 |
| REL0000002516 | RELM0000001223 | RELM0000002514.0028 | RELM0000003314.0008 | RELM0000003847.0004 |

17

| | | | | |
|---|---|---|---|---|
| REL0000002522 | RELM0000001223.0001 | RELM0000002514.0029 | RELM0000003314.0009 | RELM0000003847.0005 |
| REL0000002558 | RELM0000001242 | RELM0000002514.0030 | RELM0000003314.0010 | RELM0000003848 |
| REL0000002576 | RELM0000001243 | RELM0000002514.0031 | RELM0000003314.0011 | RELM0000003848.0001 |
| REL0000002581 | RELM0000001253 | RELM0000002514.0032 | RELM0000003314.0012 | RELM0000003848.0002 |
| REL0000002589 | RELM0000001257 | RELM0000002514.0033 | RELM0000003314.0013 | RELM0000003848.0003 |
| REL0000002594 | RELM0000001258 | RELM0000002514.0034 | RELM0000003314.0014 | RELM0000003848.0004 |
| REL0000002607 | RELM0000001264 | RELM0000002514.0035 | RELM0000003314.0015 | RELM0000003848.0005 |
| REL0000002609 | RELM0000001270 | RELM0000002514.0036 | RELM0000003314.0016 | RELM0000003848.0006 |
| REL0000002614 | RELM0000001285 | RELM0000002514.0037 | RELM0000003314.0017 | RELM0000003848.0007 |
| REL0000002641 | RELM0000001285.0001 | RELM0000002514.0038 | RELM0000003314.0018 | RELM0000003848.0008 |
| REL0000002648 | RELM0000001285.0002 | RELM0000002514.0039 | RELM0000003314.0019 | RELM0000003848.0009 |
| REL0000002672 | RELM0000001285.0003 | RELM0000002514.0040 | RELM0000003314.0020 | RELM0000003848.0010 |
| REL0000002673 | RELM0000001285.0004 | RELM0000002514.0041 | RELM0000003314.0021 | RELM0000003848.0011 |
| REL0000002689 | RELM0000001289 | RELM0000002514.0042 | RELM0000003314.0022 | RELM0000003848.0012 |
| REL0000002692 | RELM0000001310 | RELM0000002514.0043 | RELM0000003314.0023 | RELM0000003848.0013 |

18

| | | | | |
|---|---|---|---|---|
| REL0000002693 | RELM0000001322 | RELM0000002514.0044 | RELM0000003314.0024 | RELM0000003848.0014 |
| REL0000002721 | RELM0000001329 | RELM0000002514.0045 | RELM0000003314.0025 | RELM0000003848.0015 |
| REL0000002730 | RELM0000001330 | RELM0000002514.0046 | RELM0000003314.0026 | RELM0000003848.0016 |
| REL0000002740 | RELM0000001345 | RELM0000002514.0047 | RELM0000003314.0027 | RELM0000003848.0017 |
| REL0000002748 | RELM0000001355 | RELM0000002514.0048 | RELM0000003314.0028 | RELM0000003848.0018 |
| REL0000002779 | RELM0000001358 | RELM0000002514.0049 | RELM0000003314.0029 | RELM0000003848.0019 |
| REL0000002796 | RELM0000001374 | RELM0000002514.0050 | RELM0000003314.0030 | RELM0000003848.0020 |
| REL0000002798 | RELM0000001376 | RELM0000002514.0051 | RELM0000003314.0031 | RELM0000003848.0021 |
| REL0000002808 | RELM0000001376.0001 | RELM0000002514.0052 | RELM0000003314.0032 | RELM0000003848.0022 |
| REL0000002819 | RELM0000001377 | RELM0000002514.0053 | RELM0000003314.0033 | RELM0000003848.0023 |
| REL0000002856 | RELM0000001377.0001 | RELM0000002514.0054 | RELM0000003314.0034 | RELM0000003848.0024 |
| REL0000002910 | RELM0000001378 | RELM0000002514.0055 | RELM0000003314.0035 | RELM0000003848.0025 |
| REL0000002937 | RELM0000001384 | RELM0000002514.0056 | RELM0000003314.0036 | RELM0000003848.0026 |
| REL0000002981 | RELM0000001392 | RELM0000002514.0057 | RELM0000003314.0037 | RELM0000003848.0027 |
| REL0000003078 | RELM0000001395 | RELM0000002514.0058 | RELM0000003314.0038 | RELM0000003848.0028 |

19

| | | | | |
|---|---|---|---|---|
| REL0000003663 | RELM0000001403 | RELM0000002514.0059 | RELM0000003314.0039 | RELM0000003848.0029 |
| REL0000003664 | RELM0000001403.0001 | RELM0000002514.0060 | RELM0000003314.0040 | RELM0000003848.030 |
| REL0000003665 | RELM0000001403.0002 | RELM0000002514.0061 | RELM0000003314.0041 | RELM0000003848.031 |
| REL0000003668 | RELM0000001403.0003 | RELM0000002514.0062 | RELM0000003314.0042 | RELM0000003851 |
| REL0000003671 | RELM0000001440 | RELM0000002514.0063 | RELM0000003314.0043 | RELM0000003851.001 |
| REL0000003673 | RELM0000001448.0001 | RELM0000002514.0064 | RELM0000003314.0044 | RELM0000003851.002 |
| REL0000003674 | RELM0000001448.0002 | RELM0000002514.0065 | RELM0000003314.0045 | RELM0000003851.003 |
| REL0000003675 | RELM0000001450 | RELM0000002514.0066 | RELM0000003314.0046 | RELM0000003851.004 |
| REL0000003678 | RELM0000001458 | RELM0000002514.0067 | RELM0000003314.0047 | RELM0000003851.005 |
| REL0000003699 | RELM0000001459 | RELM0000002514.0068 | RELM0000003314.0048 | RELM0000003851.006 |
| REL0000003704 | RELM0000001459.0001 | RELM0000002514.0069 | RELM0000003314.0049 | RELM0000003851.007 |
| REL0000003707 | RELM0000001459.0002 | RELM0000002514.0070 | RELM0000003314.0050 | RELM0000003851.008 |
| REL0000003710 | RELM0000001464 | RELM0000002514.0071 | RELM0000003314.0051 | RELM0000003851.009 |
| REL0000003716 | RELM0000001465 | RELM0000002514.0072 | RELM0000003314.0052 | RELM0000003851.010 |
| REL0000003717 | RELM0000001470 | RELM0000002514.0073 | RELM0000003314.0053 | RELM0000003851.011 |

20

| | | | | |
|---|---|---|---|---|
| REL0000003718 | RELM0000001480 | RELM0000002514.0074 | RELM0000003314.0054 | RELM0000003851.0012 |
| REL0000003721 | RELM0000001490 | RELM0000002514.0075 | RELM0000003314.0055 | RELM0000003851.0013 |
| REL0000003723 | RELM0000001493 | RELM0000002514.0076 | RELM0000003314.0056 | RELM0000003851.0014 |
| REL0000003727 | RELM0000001494 | RELM0000002514.0077 | RELM0000003314.0057 | RELM0000003851.0015 |
| REL0000003758 | RELM0000001504 | RELM0000002514.0078 | RELM0000003314.0058 | RELM0000003851.0016 |
| REL0000003762 | RELM0000001508 | RELM0000002514.0079 | RELM0000003314.0059 | RELM0000003851.0017 |
| REL0000003765 | RELM0000001515 | RELM0000002514.0080 | RELM0000003314.0060 | RELM0000003851.0018 |
| REL0000003771 | RELM0000001515.0001 | RELM0000002514.0081 | RELM0000003314.0061 | RELM0000003851.0019 |
| REL0000003781 | RELM0000001515.0002 | RELM0000002514.0082 | RELM0000003314.0062 | RELM0000003851.0020 |
| REL0000003786 | RELM0000001515.0003 | RELM0000002514.0083 | RELM0000003314.0063 | RELM0000003851.0021 |
| REL0000003787 | RELM0000001515.0004 | RELM0000002514.0084 | RELM0000003314.0064 | RELM0000003851.0022 |
| REL0000003791 | RELM0000001515.0005 | RELM0000002514.0085 | RELM0000003314.0065 | RELM0000003851.0023 |
| REL0000003801 | RELM0000001540 | RELM0000002514.0086 | RELM0000003314.0066 | RELM0000003851.0024 |
| REL0000003807 | RELM0000001559 | RELM0000002514.0087 | RELM0000003314.0067 | RELM0000003851.0025 |
| REL0000003811 | RELM0000001563 | RELM0000002514.0088 | RELM0000003314.0068 | RELM0000003851.0026 |

21

| | | | | |
|---|---|---|---|---|
| REL0000003814 | RELM0000001581 | RELM0000002514.0089 | RELM0000003314.0069 | RELM0000003851.0027 |
| REL0000003823 | RELM0000001581.0001 | RELM0000002514.0090 | RELM0000003314.0070 | RELM0000003872 |
| REL0000003826 | RELM0000001602 | RELM0000002514.0091 | RELM0000003314.0071 | RELM0000003874 |
| REL0000003827 | RELM0000001610 | RELM0000002514.0092 | RELM0000003314.0072 | RELM0000003875 |
| REL0000003883 | RELM0000001618 | RELM0000002514.0093 | RELM0000003314.0073 | RELM0000003878 |
| REL0000003960 | RELM0000001636 | RELM0000002514.0094 | RELM0000003314.0074 | RELM0000003878.0001 |
| REL0000003975 | RELM0000001636.0001 | RELM0000002529 | RELM0000003314.0075 | RELM0000003878.0002 |
| REL0000003983 | RELM0000001637 | RELM0000002529.0001 | RELM0000003314.0076 | RELM0000003878.0003 |
| REL0000003996 | RELM0000001659 | RELM0000002529.0002 | RELM0000003314.0077 | RELM0000003878.0004 |
| REL0000004004 | RELM0000001675 | RELM0000002546 | RELM0000003314.0078 | RELM0000003929 |
| REL0000004016 | RELM0000001705 | RELM0000002551 | RELM0000003314.0079 | RELM0000003936 |
| REL0000004048 | RELM0000001725 | RELM0000002562 | RELM0000003314.0080 | RELM0000003946 |
| REL0000004059 | RELM0000001725.0001 | RELM0000002562.0001 | RELM0000003314.0081 | RELM0000003949 |
| REL0000004063 | RELM0000001729 | RELM0000002580 | RELM0000003314.0082 | RELM0000003961 |
| REL0000004066 | RELM0000001750 | RELM0000002590 | RELM0000003314.0083 | RELM0000003963 |

22

| REL0000004079 | RELM0000001755 | RELM0000002590.0001 | RELM0000003314.0084 | RELM0000003963.0001 |
| REL0000004092 | RELM0000001755.0001 | RELM0000002617 | RELM0000003314.0085 | RELM0000003964 |
| REL0000004098 | RELM0000001755.0002 | RELM0000002625 | RELM0000003314.0086 | RELM0000003965 |
| REL0000004099 | RELM0000001755.0003 | RELM0000002625.0001 | RELM0000003314.0087 | RELM0000003993 |
| REL0000004108 | RELM0000001762 | RELM0000002625.0002 | RELM0000003314.0088 | RELM0000003996 |
| REL0000004110 | RELM0000001777 | RELM0000002628 | RELM0000003314.0089 | RELM0000004007 |
| REL0000004123 | RELM0000001791 | RELM0000002628.0001 | RELM0000003314.0090 | RELM0000004007.0001 |
| REL0000004141 | RELM0000001800 | RELM0000002628.0002 | RELM0000003314.0091 | RELM0000004007.0002 |
| REL0000004150 | RELM0000001809 | RELM0000002634 | RELM0000003314.0092 | RELM0000004007.0003 |
| REL0000004178 | RELM0000001812 | RELM0000002662 | RELM0000003314.0093 | RELM0000004007.0004 |
| REL0000004186 | RELM0000001843 | RELM0000002664 | RELM0000003314.0094 | RELM0000004007.0005 |
| REL0000004191 | RELM0000001843.0001 | RELM0000002686 | RELM0000003314.0095 | RELM0000004007.0006 |
| REL0000004193 | RELM0000001843.0002 | RELM0000002692 | RELM0000003314.0096 | RELM0000004007.0007 |
| REL0000004195 | RELM0000001843.0003 | RELM0000002695 | RELM0000003314.0097 | RELM0000004033 |
| REL0000004261 | RELM0000001843.0004 | RELM0000002708 | RELM0000003314.0098 | RELM0000004037 |

23

| REL0000004269 | RELM0000001844 | RELM0000002721 | RELM0000003314.0099 | RELM0000004052 |
|---|---|---|---|---|
| REL0000004273 | RELM0000001844.0001 | RELM0000002721.0001 | RELM0000003314.0100 | RELM0000004052.0001 |
| REL0000004308 | RELM0000001847.0001 | RELM0000002721.0002 | RELM0000003314.0101 | RELM0000004052.0002 |
| REL0000004365 | RELM0000001851 | RELM0000002725 | RELM0000003314.0102 | RELM0000004053 |
| REL0000004390 | RELM0000001851.0001 | RELM0000002729 | RELM0000003314.0103 | RELM0000004053.0001 |
| REL0000004393 | RELM0000001851.0002 | RELM0000002729.0001 | RELM0000003314.0104 | RELM0000004071 |
| REL0000004432 | RELM0000001851.0003 | RELM0000002755 | RELM0000003314.0105 | RELM0000004072 |
| REL0000004451 | RELM0000001851.0004 | RELM0000002759 | RELM0000003314.0106 | RELM0000004077.0001 |
| REL0000004473 | RELM0000001851.0005 | RELM0000002762 | RELM0000003314.0107 | RELM0000004077.0002 |
| REL0000004481 | RELM0000001851.0006 | RELM0000002771 | RELM0000003314.0108 | RELM0000004084 |
| REL0000004508 | RELM0000001851.0007 | RELM0000002775 | RELM0000003314.0109 | RELM0000004101 |
| REL0000004534 | RELM0000001851.0008 | RELM0000002775.0001 | RELM0000003314.0110 | RELM0000004103 |
| REL0000004558 | RELM0000001851.0009 | RELM0000002779 | RELM0000003314.0111 | RELM0000004122 |
| REL0000004566 | RELM0000001851.0010 | RELM0000002780 | RELM0000003314.0112 | RELM0000004124 |
| REL0000004580 | RELM0000001851.0011 | RELM0000002784 | RELM0000003314.0113 | RELM0000004125 |

24

| REL0000004600 | RELM0000001851.0012 | RELM0000002784.0001 | RELM0000003314.0114 | RELM0000004125.0001 |
|---|---|---|---|---|
| REL0000004676 | RELM0000001851.0013 | RELM0000002784.0002 | RELM0000003314.0115 | RELM0000004141 |
| REL0000004682 | RELM0000001866 | RELM0000002784.0003 | RELM0000003314.0116 | RELM0000004154 |
| REL0000004692 | RELM0000001882 | RELM0000002784.0004 | RELM0000003314.0117 | RELM0000004154.0001 |
| REL0000004702 | RELM0000001908 | RELM0000002784.0005 | RELM0000003314.0118 | RELM0000004154.0001.0001 |
| REL0000004729 | RELM0000001912 | RELM0000002784.0006 | RELM0000003314.0119 | RELM0000004159 |
| REL0000004764 | RELM0000001927 | RELM0000002784.0007 | RELM0000003314.0120 | RELM0000004159.0001 |
| REL0000004770 | RELM0000001927.0001 | RELM0000002784.0008 | RELM0000003314.0121 | RELM0000004164 |
| REL0000004779 | RELM0000001937 | RELM0000002784.0009 | RELM0000003314.0122 | RELM0000004232 |
| REL0000004796 | RELM0000001946 | RELM0000002784.0010 | RELM0000003314.0123 | RELM0000004236 |
| REL0000004854 | RELM0000001951 | RELM0000002784.0011 | RELM0000003314.0124 | RELM0000004236.0001 |
| REL0000004856 | RELM0000001951.0001 | RELM0000002784.0012 | RELM0000003314.0125 | RELM0000004236.0002 |
| REL0000004857 | RELM0000001952 | RELM0000002784.0013 | RELM0000003314.0126 | RELM0000004236.0003 |
| REL0000004884 | RELM0000001952.0001 | RELM0000002784.0014 | RELM0000003314.0127 | RELM0000004236.0004 |
| REL0000004906 | RELM0000001952.0002 | RELM0000002784.0015 | RELM0000003314.0128 | RELM0000004236.0005 |

25

| | | | | |
|---|---|---|---|---|
| REL0000004909 | RELM0000001979 | RELM00000027 84.0016 | RELM00000033 14.0129 | RELM0000004236.0 006 |
| REL0000004910 | RELM0000001979.0001 | RELM00000027 84.0017 | RELM00000033 14.0130 | RELM0000004236.0 007 |
| REL0000004932 | RELM0000001979.0002 | RELM00000027 84.0018 | RELM00000033 14.0131 | RELM0000004236.0 008 |
| REL0000004970 | RELM0000001982 | RELM00000027 84.0019 | RELM00000033 14.0132 | RELM0000004236.0 009 |
| REL0000004976 | RELM0000001999 | RELM00000027 84.0020 | RELM00000033 14.0133 | RELM0000004236.0 010 |
| REL0000005019 | RELM0000002006 | RELM00000027 84.0021 | RELM00000033 14.0134 | RELM0000004236.0 011 |
| RELD000000005 0 | RELM0000002011 | RELM00000027 84.0022 | RELM00000033 14.0135 | RELM0000004236.0 012 |
| RELD000000005 2 | RELM0000002015 | RELM00000027 84.0023 | RELM00000033 14.0136 | RELM0000004236.0 013 |
| RELD000000005 4 | RELM0000002016 | RELM00000027 84.0024 | RELM00000033 14.0137 | RELM0000004236.0 014 |
| RELD000000005 5 | RELM0000002022 | RELM00000027 84.0025 | RELM00000033 14.0138 | RELM0000004236.0 015 |
| RELD000000005 6 | RELM0000002025 | RELM00000027 84.0026 | RELM00000033 14.0139 | RELM0000004236.0 016 |
| RELD000000005 9 | RELM0000002032 | RELM00000027 84.0027 | RELM00000033 14.0140 | RELM0000004236.0 017 |
| RELD000000006 4 | RELM0000002032.0001 | RELM00000027 84.0028 | RELM00000033 14.0141 | RELM0000004236.0 018 |
| RELD000000006 6 | RELM0000002032.0002 | RELM00000027 84.0029 | RELM00000033 14.0142 | RELM0000004236.0 019 |
| RELD000000006 7 | RELM0000002045 | RELM00000027 84.0030 | RELM00000033 14.0143 | RELM0000004236.0 020 |

26

| | | | | |
|---|---|---|---|---|
| RELD0000000068 | RELM0000002056 | RELM0000002784.0031 | RELM0000003314.0144 | RELM0000004236.0021 |
| RELD0000000069 | RELM0000002056.0001 | RELM0000002784.0032 | RELM0000003314.0145 | RELM0000004236.0022 |
| RELD0000000071 | RELM0000002059 | RELM0000002784.0033 | RELM0000003314.0146 | RELM0000004236.0023 |
| RELD0000000075 | RELM0000002076 | RELM0000002784.0034 | RELM0000003314.0147 | RELM0000004236.0024 |
| RELM0000000004 | RELM0000002076.0001 | RELM0000002784.0035 | RELM0000003314.0148 | RELM0000004236.0025 |
| RELM0000000004.0001 | RELM0000002076.0002 | RELM0000002784.0036 | RELM0000003314.0149 | RELM0000004236.0026 |
| RELM0000000020 | RELM0000002078 | RELM0000002784.0037 | RELM0000003314.0150 | RELM0000004236.0027 |
| RELM0000000021 | RELM0000002091 | RELM0000002784.0038 | RELM0000003314.0151 | RELM0000004236.0028 |
| RELM0000000030 | RELM0000002107 | RELM0000002784.0039 | RELM0000003314.0152 | RELM0000004236.0029 |
| RELM0000000030.0001 | RELM0000002107.0001 | RELM0000002784.0040 | RELM0000003314.0153 | RELM0000004236.0030 |
| RELM0000000030.0002 | RELM0000002107.0002 | RELM0000002784.0041 | RELM0000003314.0154 | RELM0000004236.0031 |
| RELM0000000036 | RELM0000002107.0003 | RELM0000002784.0042 | RELM0000003314.0155 | RELM0000004236.0032 |
| RELM0000000037 | RELM0000002110 | RELM0000002784.0043 | RELM0000003314.0156 | RELM0000004236.0033 |
| RELM0000000059 | RELM0000002111 | RELM0000002784.0044 | RELM0000003314.0157 | RELM0000004236.0034 |
| RELM0000000072 | RELM0000002111.0001 | RELM0000002784.0045 | RELM0000003314.0158 | RELM0000004236.0035 |

27

| | | | | |
|---|---|---|---|---|
| RELM0000000082 | RELM0000002122 | RELM0000002784.0046 | RELM0000003314.0159 | RELM0000004236.0036 |
| RELM0000000101 | RELM0000002130 | RELM0000002784.0047 | RELM0000003314.0160 | RELM0000004236.0037 |
| RELM0000000103 | RELM0000002130.0001 | RELM0000002784.0048 | RELM0000003314.0161 | RELM0000004236.0038 |
| RELM0000000129 | RELM0000002130.0002 | RELM0000002784.0049 | RELM0000003314.0162 | RELM0000004236.0039 |
| RELM0000000129.0001 | RELM0000002130.0003 | RELM0000002784.0050 | RELM0000003314.0163 | RELM0000004240 |
| RELM0000000131 | RELM0000002130.0004 | RELM0000002784.0051 | RELM0000003314.0164 | RELM0000004243 |
| RELM0000000132 | RELM0000002130.0005 | RELM0000002784.0052 | RELM0000003314.0165 | RELM0000004245 |
| RELM0000000136 | RELM0000002130.0006 | RELM0000002784.0053 | RELM0000003314.0166 | RELM0000004283 |
| RELM0000000140 | RELM0000002143 | RELM0000002784.0054 | RELM0000003314.0167 | RELM0000004283.0001 |
| RELM0000000140.0001 | RELM0000002147 | RELM0000002784.0055 | RELM0000003314.0168 | RELM0000004311 |
| RELM0000000146 | RELM0000002168 | RELM0000002784.0056 | RELM0000003314.0169 | RELM0000004317 |
| RELM0000000161 | RELM0000002174 | RELM0000002784.0057 | RELM0000003314.0170 | RELM0000004327 |
| RELM0000000161.0001 | RELM0000002174.0001 | RELM0000002784.0058 | RELM0000003314.0171 | RELM0000004327.0001 |
| RELM0000000161.0002 | RELM0000002183 | RELM0000002784.0059 | RELM0000003314.0172 | RELM0000004338 |
| RELM0000000161.0003 | RELM0000002199 | RELM0000002784.0060 | RELM0000003314.0173 | RELM0000004351 |

28

| | | | | |
|---|---|---|---|---|
| RELM00000001 61.0004 | RELM00000022 05 | RELM00000027 84.0061 | RELM00000033 14.0174 | RELM0000004433 |
| RELM00000001 61.0005 | RELM00000022 45 | RELM00000027 84.0062 | RELM00000033 14.0175 | RELM0000004548 |
| RELM00000001 61.0006 | RELM00000022 60 | RELM00000027 84.0063 | RELM00000033 14.0176 | RELM0000004548.0 001 |
| RELM00000001 62 | RELM00000022 68 | RELM00000027 84.0064 | RELM00000033 14.0177 | RELM0000004548.0 002 |
| RELM00000001 62.0001 | RELM00000022 74 | RELM00000027 84.0065 | RELM00000033 14.0178 | RELM0000004623 |
| RELM00000001 64 | RELM00000022 77 | RELM00000027 84.0066 | RELM00000033 14.0179 | RELM0000004623.0 001 |
| RELM00000001 64.0001 | RELM00000022 78 | RELM00000027 84.0067 | RELM00000033 14.0180 | RELM0000004623.0 002 |
| RELM00000001 64.0002 | RELM00000022 79 | RELM00000027 84.0068 | RELM00000033 14.0181 | RELM0000004642 |
| RELM00000001 68 | RELM00000022 88 | RELM00000027 84.0069 | RELM00000033 14.0182 | RELM0000004642.0 001 |
| RELM00000001 69 | RELM00000022 88.0001 | RELM00000027 84.0070 | RELM00000033 14.0183 | RELM0000004682 |
| RELM00000001 72 | RELM00000023 00 | RELM00000027 84.0071 | RELM00000033 14.0184 | RELM0000004784 |
| RELM00000001 72.0001 | RELM00000023 15 | RELM00000027 84.0072 | RELM00000033 14.0185 | RELM0000004791 |
| RELM00000001 72.0002 | RELM00000023 18 | RELM00000027 84.0073 | RELM00000033 14.0186 | RELM0000004791.0 001 |
| RELM00000001 79 | RELM00000023 23 | RELM00000027 84.0074 | RELM00000033 14.0187 | RELM0000004791.0 002 |
| RELM00000001 87 | RELM00000023 25 | RELM00000027 84.0075 | RELM00000033 14.0188 | RELM0000004804 |

29

| | | | | |
|---|---|---|---|---|
| RELM00000001 87.0001 | RELM00000023 33 | RELM00000027 84.0076 | RELM00000033 14.0189 | RELM0000004835 |
| RELM00000001 87.0002 | RELM00000023 54 | RELM00000027 84.0077 | RELM00000033 14.0190 | RELM0000004858 |
| RELM00000001 92 | RELM00000023 54.0001 | RELM00000027 84.0078 | RELM00000033 14.0191 | RELM0000004858.0 001 |
| RELM00000001 92.0001 | RELM00000023 54.0002 | RELM00000027 84.0079 | RELM00000033 14.0192 | RELM0000004858.0 002 |
| RELM00000001 92.0002 | RELM00000023 54.0003 | RELM00000027 85 | RELM00000033 15 | RELM0000004872 |
| RELM00000001 95 | RELM00000023 54.0004 | RELM00000027 90 | RELM00000033 17 | RELM0000004878 |
| RELM00000001 95.0001 | RELM00000023 54.0005 | RELM00000027 90.0001 | RELM00000033 24 | RELM0000004886 |
| RELM00000001 96 | RELM00000023 54.0006 | RELM00000027 90.0002 | RELM00000033 38 | RELM0000004886.0 001 |
| RELM00000002 08 | RELM00000023 54.0007 | RELM00000027 90.0003 | RELM00000033 38.0001 | RELM0000004886.0 002 |
| RELM00000002 09 | RELM00000023 54.0008 | RELM00000027 90.0004 | RELM00000033 63 | RELM0000004895 |
| RELM00000002 14 | RELM00000023 54.0009 | RELM00000027 90.0005 | RELM00000033 66 | RELM0000004895.0 001 |
| RELM00000002 14.0001 | RELM00000023 54.0010 | RELM00000027 90.0006 | RELM00000033 66.0001 | RELM0000004932 |
| RELM00000002 14.0002 | RELM00000023 54.0011 | RELM00000027 90.0007 | RELM00000033 66.0002 | RELM0000005047 |
| RELM00000002 14.0003 | RELM00000023 54.0012 | RELM00000027 90.0008 | RELM00000033 73 | RELM0000005076 |
| RELM00000002 14.0004 | RELM00000023 54.0013 | RELM00000027 90.0009 | RELM00000033 73.0001 | RELM0000005085 |

30

| | | | | |
|---|---|---|---|---|
| RELM00000002 14.0005 | RELM00000023 54.0014 | RELM00000027 90.0010 | RELM00000033 73.0002 | RELM0000005085.0 001 |
| RELM00000002 14.0006 | RELM00000023 54.0015 | RELM00000027 90.0011 | RELM00000033 73.0003 | RELM0000005085.0 002 |
| RELM00000002 14.0007 | RELM00000023 54.0016 | RELM00000027 90.0012 | RELM00000033 73.0004 | RELM0000005085.0 003 |
| RELM00000002 14.0008 | RELM00000023 54.0017 | RELM00000027 93 | RELM00000033 73.0005 | RELM0000005129 |
| RELM00000002 14.0009 | RELM00000023 54.0018 | RELM00000028 03 | RELM00000033 73.0006 | RELM0000005132 |
| RELM00000002 14.0010 | RELM00000023 54.0019 | RELM00000028 03.0001 | RELM00000033 73.0007 | RELM0000005132.0 001 |
| RELM00000002 14.0011 | RELM00000023 54.0020 | RELM00000028 03.0002 | RELM00000033 73.0008 | RELM0000005194 |
| RELM00000002 14.0012 | RELM00000023 54.0021 | RELM00000028 04 | RELM00000033 73.0009 | RELM0000005196 |
| RELM00000002 14.0013 | RELM00000023 54.0022 | RELM00000028 04.0001 | RELM00000033 73.0010 | RELM0000005196.0 001 |
| RELM00000002 14.0014 | RELM00000023 54.0023 | RELM00000028 04.0002 | RELM00000033 74 | RELM0000005212 |
| RELM00000002 14.0015 | RELM00000023 54.0024 | RELM00000028 10 | RELM00000033 78 | RELM0000005213 |
| RELM00000002 14.0016 | RELM00000023 54.0025 | RELM00000028 10.0001 | RELM00000033 79 | RELM0000005220 |
| RELM00000002 14.0017 | RELM00000023 54.0026 | RELM00000028 10.0002 | RELM00000033 84 | RELM0000005229 |
| RELM00000002 14.0018 | RELM00000023 54.0027 | RELM00000028 10.0003 | RELM00000033 96 | RELM0000005247 |
| RELM00000002 14.0019 | RELM00000023 54.0028 | RELM00000028 38 | RELM00000033 96.0001 | RELM0000005257 |

| RELM00000002 14.0020 | RELM00000023 54.0029 | RELM00000028 42 | RELM00000033 96.0002 | RELM0000005319 |
|---|---|---|---|---|
| RELM00000002 14.0021 | RELM00000023 54.0030 | RELM00000028 42.0001 | RELM00000033 96.0003 | RELM0000005319.0 001 |
| RELM00000002 14.0022 | RELM00000023 54.0031 | RELM00000028 62 | RELM00000033 96.0004 | RELM0000005349 |
| RELM00000002 14.0023 | RELM00000023 54.0032 | RELM00000028 63 | RELM00000034 01 | RELM0000005380 |
| RELM00000002 14.0024 | RELM00000023 54.0033 | RELM00000028 63.0001 | RELM00000034 13 | RELM0000005395 |
| RELM00000002 14.0025 | RELM00000023 54.0034 | RELM00000028 63.0002 | RELM00000034 39 | RELM0000005440 |
| RELM00000002 14.0026 | RELM00000023 54.0035 | RELM00000028 75 | RELM00000034 40 | RELM0000005484 |
| RELM00000002 14.0027 | RELM00000023 54.0036 | RELM00000028 75.0001 | RELM00000034 40.0001 | RELM0000005574 |
| RELM00000002 14.0028 | RELM00000023 54.0037 | RELM00000028 75.0002 | RELM00000034 40.0002 | RELM0000005574.0 001 |
| RELM00000002 14.0029 | RELM00000023 54.0038 | RELM00000028 75.0003 | RELM00000034 40.0003 | RELM0000005574.0 002 |
| RELM00000002 14.0030 | RELM00000023 54.0039 | RELM00000028 75.0004 | RELM00000034 40.0004 | RELM0000005574.0 003 |
| RELM00000002 14.0031 | RELM00000023 54.0040 | RELM00000028 80 | RELM00000034 40.0005 | RELM0000005574.0 004 |
| RELM00000002 14.0032 | RELM00000023 54.0041 | RELM00000028 80.0001 | RELM00000034 40.0006 | RELM0000005574.0 005 |
| RELM00000002 14.0033 | RELM00000023 54.0042 | RELM00000028 80.0002 | RELM00000034 46 | RELM0000005574.0 006 |
| RELM00000002 14.0034 | RELM00000023 54.0043 | RELM00000028 81 | RELM00000034 60 | RELM0000005574.0 007 |

32

| | | | | |
|---|---|---|---|---|
| RELM00000002 14.0035 | RELM00000023 54.0044 | RELM00000028 91 | RELM00000034 63 | RELM0000005574.0 008 |
| RELM00000002 14.0036 | RELM00000023 54.0045 | RELM00000028 91.0001 | RELM00000034 73 | RELM0000005574.0 009 |
| RELM00000002 14.0037 | RELM00000023 54.0046 | RELM00000028 91.0002 | RELM00000034 73.0001 | RELM0000005574.0 010 |
| RELM00000002 14.0038 | RELM00000023 54.0047 | RELM00000028 92 | RELM00000034 73.0002 | RELM0000005574.0 011 |
| RELM00000002 14.0039 | RELM00000023 54.0048 | RELM00000028 99 | RELM00000034 73.0003 | RELM0000005574.0 012 |
| RELM00000002 14.0040 | RELM00000023 54.0049 | RELM00000029 36 | RELM00000034 73.0004 | RELM0000005574.0 013 |
| RELM00000002 14.0041 | RELM00000023 54.0050 | RELM00000029 43 | RELM00000034 73.0005 | RELM0000005635 |
| RELM00000002 14.0042 | RELM00000023 54.0051 | RELM00000029 43.0001 | RELM00000034 73.0006 | RELM0000005635.0 001 |
| RELM00000002 14.0043 | RELM00000023 54.0052 | RELM00000029 56 | RELM00000034 73.0007 | RELM0000005639 |
| RELM00000002 14.0044 | RELM00000023 54.0053 | RELM00000029 56.0001 | RELM00000034 73.0008 | RELM0000005668 |
| RELM00000002 14.0045 | RELM00000023 54.0054 | RELM00000029 65 | RELM00000034 73.0009 | RELM0000005671 |
| RELM00000002 14.0046 | RELM00000023 54.0055 | RELM00000029 89 | RELM00000034 73.0010 | RELM0000005671.0 001 |
| RELM00000002 14.0047 | RELM00000023 54.0056 | RELM00000029 93 | RELM00000034 73.0011 | RELM0000005671.0 002 |
| RELM00000002 14.0048 | RELM00000023 54.0057 | RELM00000029 96 | RELM00000034 73.0012 | RELM0000005672 |
| RELM00000002 14.0049 | RELM00000023 54.0058 | RELM00000029 96.0001 | RELM00000034 73.0013 | RELM0000005702 |

33

| RELM0000000214.0050 | RELM0000002354.0059 | RELM00000002997 | RELM0000003473.0014 | RELM0000005776 |
| RELM0000000214.0051 | RELM0000002354.0060 | RELM00000003006 | RELM0000003473.0015 | RELM0000005793 |
| RELM0000000217 | RELM0000002354.0061 | RELM00000003011 | RELM0000003473.0016 | RELR0000000001 |
| RELM0000000217.0001 | RELM0000002354.0062 | RELM00000003011.0001 | RELM0000003473.0017 | RELV000000281 |
| RELM0000000241 | RELM0000002354.0063 | RELM00000003016 | RELM0000003473.0018 | RELVM0000000057 |
| RELM0000000284 | RELM0000002354.0064 | RELM00000003016.0001 | RELM0000003473.0019 | RELVM0000000065 |
| RELM0000000309 | RELM0000002354.0065 | RELM00000003016.0002 | RELM0000003473.0020 | RELVM0000000080 |
| RELM0000000309.0001 | RELM0000002354.0066 | RELM00000003018 | RELM0000003473.0021 | RELVM0000000102 |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY

Case No. 22-sc-2144

Chief Judge Beryl A. Howell

**UNDER SEAL**

**MEMORANDUM OPINION**

Harkening back to its sister clause in the English Bill of Rights of 1689, the Speech or Debate Clause of the U.S. Constitution ("the Clause"), *see* U.S. CONST. art. I, § 6, cl. 1., was designed to ensure the independence of the legislature and enforce the separation of powers. *United States v. Johnson*, 383 U.S. 169, 178 (1966).[1] Members of Congress making impassioned speeches on the floor of the House or Senate chambers or having frank deliberations among themselves or legislative staff about legislative matters, with such activities potentially accompanied by the expression of harsh, offensive and even slanderous critiques or potentially illegal proposals, were among the Framers' concerns in drafting the Clause to protect those legislators "against possible prosecution by an unfriendly executive and conviction by a hostile judiciary." *Id.* at 179.  Those foundational concerns for our tripartite federal government must be applied today in considering the extent to which the Speech or Debate Clause shields disclosure of records on a Member's personal cell phone when those records are responsive to a probable cause search warrant issued in connection with an ongoing grand jury investigation.

---

[1]      *See Kilbourn v. Thompson*, 103 U.S. 168, 202 (1880) (summarizing British historical precedent as follows: "When, however, the revolution of 1688 expelled the last of the Stuarts and introduced a new dynasty, … a bill of rights [was] formally declared by the Parliament and assented to by the crown. One of these declarations is 'that the freedom of speech, and debates, and proceedings in Parliament, ought not to be impeached or questioned in any court or place out of Parliament.'" (internal citations omitted)).

The Member in question is Congressman Scott Perry ("Rep. Perry"), who has represented the Commonwealth of Pennsylvania's Tenth Congressional District since January 2013. *See* Rep. Perry's Resp. to the Gov't's Brief Regarding the Applicability of the Speech or Debate Clause ("Perry Resp.") at 4, ECF No. 15. Rep. Perry is also a member of, and the recently elected Chairman for, the House Freedom Caucus ("HFC"), whose mission, in part, is "to give a voice to countless Americans who feel that Washington does not represent them." Rep. Perry's Mot. for Non-Disclosure to the Gov't ("Perry Mot.") at 2, ECF No. 21

As part of a grand jury investigating potential federal criminal law violations stemming from efforts to overturn the 2020 presidential election, the government uncovered evidence of Rep. Perry using his personal cell phone to communicate with individuals allegedly engaged in those efforts over critical time periods at issue in the investigation. In pursuing the criminal investigation, the government obtained and executed a probable cause warrant issued by a magistrate judge in the Middle District of Pennsylvania to seize Rep. Perry's personal cell phone and forensically extract an image of its contents in August 2022, after which extraction the cell phone was promptly returned to Rep. Perry. *See* Aff. of Federal Bureau of Investigation ("FBI") Special Agent in Support of Appl. for Search Warrant (dated Aug. 18, 2022) ("D.D.C. Warrant Aff."), ¶ 7, ECF No. 1; *see also* M.D. PA Warrant (authorized August 2, 2022), ECF No. 23. The government then sought a separate search warrant to review the contents of the forensic extraction, in accordance with a proposed search protocol designed to protect Rep. Perry's privilege under the Clause, which warrant, along with the search protocol, as Attachment C, were ultimately approved by this Court. *See* D.D.C. Appl. for Search Warrant (dated Aug. 18, 2022), ECF No. 1; D.D.C. Warrant (authorized Aug. 18, 2022) ("D.D.C. Warrant"), Att. C, ECF No. 4.[2] In accordance with

---

2 ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

this search protocol, Rep. Perry was provided the opportunity, before any government access to the contents of his cell phone, to assert his privilege under the Speech or Debate Clause. *See id.* at § 2.b–d. He has now done so and seeks to block the government's review of 2,219 responsive records, claiming privilege under the Clause. *See* Perry Mot. at 4; *see also* Rep. Perry's *Ex parte* Suppl. to His Mot. for Nondisclosure ("Perry Suppl. (*ex parte*)"), ECF No. 22.

The government, without having seen the withheld records but mindful of the critical context that the task of executing the D.D.C. Warrant focuses solely on records responsive to the warrant and that, while broad, the Clause's coverage is not unfettered, contests the withholding of these records and requests *in camera* review to assess the appropriateness of Rep. Perry's withholding. *See* Gov't's Objs. to Rep. Perry's Priv. Assertions ("Gov't Mem"), ECF No. 19.

Following *in camera* review of 2,219 documents over which Rep. Perry claims privilege, along with his accompanying motion and *ex parte* supplement explaining the bases for his claims of privilege, the Court concludes that few of these withheld records are protected by the Clause. Specifically, 2,055 of the 2,219 responsive records are not privileged under the Clause and thus

3

must be disclosed to the government, with the remaining 161 records properly withheld in full and three records in part.

Accordingly, as further explained below, Rep. Perry's motion to withhold from the government access to certain responsive records on his cell phone is **GRANTED IN PART AND DENIED IN PART**.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Resolution of Rep. Perry's claims of privilege under the Clause has, thus far, proceeded in three phases: (1) issuance and execution of the M.D. PA and D.D.C. Warrants for the contents of Rep. Perry's personal cell phone; (2) Rep. Perry's invocation of the Clause to withhold information on his cell phone from law enforcement scrutiny and subsequent initiation of judicial involvement in execution of the D.D.C. Warrant; and (3) Rep. Perry's submission of over two thousand responsive records for *in camera* review of applicability of the Clause.  Each phase is discussed *seriatim*.

### A.  Issuance and Execution of Search Warrants

As already noted, a warrant to seize Rep. Perry's personal cell phone was issued by a magistrate judge in the Middle District of Pennsylvania and executed on August 9, 2022, when the Federal Bureau of Investigation ("FBI") forensically extracted an image of the phone's contents. *See* D.D.C. Warrant Aff., ¶ 7; *see also* M.D. PA Warrant.  This seizure warrant did not permit a search of the phone's contents, but rather only a forensic copying or extraction of information on the phone.  *See* Aff. of FBI Special Agent in Support of Appl. for M.D. PA Search Warrant ¶ 141, ECF No. 1-1.  After promptly returning the cell phone to Rep. Perry, the government sought a separate search warrant in this Court to review the contents of the forensic extraction, in accordance with a search protocol appended as Attachment C to the warrant.  *See* D.D.C. Warrant,

Att. C at § 1; D.D.C. Warrant Aff. at 9 ¶ 1 ("I have been informed by the Prosecutors overseeing the investigation in this matter that they have decided to adopt special procedures in light of the possibility the forensic extraction of the Device . . . contains materials created that are protected by the Speech or Debate Privilege[.]").[3]  After a determination that there was probable cause to believe that evidence of criminal activity would be found on the targeted cell phone, the government's search warrant was approved on August 18, 2022.  D.D.C. Warrant at 1.

The government provided Rep. Perry, through his counsel, with a copy of the Attachment C protocol, on August 18, 2022, followed shortly thereafter, on August 23, 2022, with a forensic extraction of the contents of the phone.  Gov't Opp'n to Rep. Perry's Mot. for Ext. of Time at 2–3, ECF No. 8.  As provided in the Attachment C protocol, Rep. Perry was given thirty days to first assert his privilege—or not—under the Clause with respect to any information on his cell phone.  *See* D.D.C. Warrant, Att. C at § 2.b–d.  Attachment C provided that the government could then ask for judicial review of "the records over which Congressman Perry has asserted privilege for the Court to make a final determination whether they contain privileged information."  *Id.* at § 2.d.

### B.  Rep. Perry's Initiation of Judicial Involvement in Execution of D.D.C. Warrant

As the end of the review period approached—after the government had extended the initial thirty-day period by an additional fourteen days at Rep. Perry's request, Gov't Opp'n at 1—Rep. Perry petitioned this Court, on October 6, 2022, for additional time to review the phone's contents and assert privilege under the Clause.  *See* Rep. Perry's Mot. for Ext. of Time, ECF No. 7.  Rep.

---

[3]   The government has employed the same protocol reflected in Attachment C in other criminal cases involving congressional Members, including, for example, in seeking a search warrant, issued in 2020, for the cell phone of Senator Richard Burr.  *See* Appl. for Search Warrant (dated May 13, 2020), Att. C, *In re Application Of L.A. Times Commc'ns LLC to Unseal Court Recs.*, Case No. 21-mc-00016-BAH, ECF No. 36-1 (D.D.C Sept. 5, 2022) (requiring the same procedures outlined in Attachment C to D.D.C. Warrant for Rep. Perry's personal cell phone).

Perry explained that responsive records on his phone implicate the Clause's protections because they involve communications with his staff, members of Congress, and others, and he required additional time to review those records and create the requisite privilege log. *Id.* at 5, 9–10.

Following the completion of briefing on Rep. Perry's motion for an extension and a sealed hearing, held on October 18, 2022, a scheduling order was issued that required Rep. Perry to provide a privilege log of the records already reviewed by 6:00 PM the same day, "identifying each record by date, recipients, sender, and subject matter, as required under Attachment C to the [D.D.C. Search Warrant], for the 1,041 records he has reviewed and the 33 records in the 'Notes' category of extracted information from his personal cell phone . . . that he believes are subject to the Speech or Debate Clause privilege." Minute Order (October 18, 2022) ("Perry Privilege Log Order"). He was further instructed to provide to the government any records over which he did not claim privilege, and to "conduct review, at a rate of 800 records per business day, of the remaining 9,660 records to determine whether he asserts the Speech or Debate Clause privilege as to any record" and provide regular privilege logs to the government on every Friday beginning on October 28, 2022. *Id.* The Perry Privilege Log Order also directed the parties to address several legal issues concerning their respective views on the scope of the Speech or Debate Clause privilege.[4]

The parties' briefing, while Rep. Perry's privilege review was underway, highlighted two threshold disputes. First, the parties disputed whether, under *Rayburn House Office Building,*

---

[4]    These issues included: "whether (a) the Speech or Debate Clause privilege applies to communications found on the personal cell phone of a Member of Congress; (b) the presence of non-legislative third parties to communications otherwise subject to the Speech or Debate Clause privilege vitiates that privilege; (c) the crime-fraud exception is invoked here and, if so, applies to the Speech or Debate Clause privilege." Perry Privilege Log Order. Both parties agreed that the Clause could apply to communications found on a Member's personal cell phone, the presence of third parties does not vitiate the privilege, and that no crime-fraud exception to the Clause exists. Gov't's Br. Re. Inappl. of Speech or Debate Cl. Priv. at 11–13, ECF No. 13; Perry Resp. at 8–10.

6

*Room 2113, Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007) ("*Rayburn*"), the procedures outlined in Attachment C could be jettisoned, particularly considering the already three-month delay in executing the warrant to provide the government access to responsive records on Rep. Perry's cell phone compounded by the further delay *in camera* review of contested documents would pose.  *Compare* Gov't's Br. Re. Inappl. of Speech or Debate Cl. Priv. ("Gov't's Resp.") at 3 ("The procedures in Attachment C are not constitutionally required, nor are they compelled by the D.C. Circuit's decision in *Rayburn*. The Court should so rule and hold that the Government is entitled to access the records on Rep. Perry's phone without regard to those procedures."), ECF No. 13, *with* Perry Resp. at 1 ("Rep. Perry respectfully seeks the Court's review pursuant to the process specified in Attachment C of the warrant."). Second, the parties disputed whether Rep. Perry, as the privilege holder, or the government bears the burden of establishing whether the Clause's privilege applies.  *Compare* Gov't's Resp. at 10 ("Rep. Perry bears the burden of proving that the Speech or Debate privilege applies to the documents for which he seeks protection."), *with* Perry Resp. at 8 ("[I]t is the Government's burden to demonstrate that its protections do not apply.").

As to the first issue, the procedures outlined in Attachment C were deemed prudent to follow "to prevent the release of privileged communications to the government" because "*Rayburn* is written sufficiently broadly to contemplate that" information on a Member's personal cell phone could touch on protected materials, and "the Clause's non-disclosure privilege applies under *Rayburn* and Attachment C must be followed to prevent the release of privileged communications to the government."  Mem. Op. & Ord. (Nov. 4, 2022) ("Nov. 2022 Order") at 7–8, ECF No. 18 (citing *Rayburn*, 497 F.3d at 663 ("[W]e hold that a search that allows agents of the Executive to review privileged materials without the Member's consent violates the Clause.  The Executive's

7

JA195

search of the Congressman's paper files therefore violated the Clause, but its copying of computer hard drives and other electronic media is constitutionally permissible because the Remand Order affords the Congressman an opportunity to assert the privilege prior to disclosure of privileged materials to the Executive[.]")).[5]  As to the second issue, the Nov. 2022 Order made clear that Rep. Perry bears the burden of establishing that specific records or communications should be withheld from the government under the Clause.  Nov. 2022 Order.

Finally, the order outlined the process for resolving any disputed privilege claims made by Rep. Perry.  In this regard, Rep. Perry was directed to furnish any disputed records over which he claimed privilege for *in camera* review, with those withheld records sorted into the following categories he had initially proposed: "(1) communications with cybersecurity individuals, (2) communications with other Members of Congress and staff, (3) communications with Executive Branch officials, (4) communications with Trump Campaign officials, and (5) communications with Pennsylvania State legislators[.]"  *Id.* at 12 (citing Perry Resp. at 2).  The government's objections were due by November 14, 2022, while the documents for *in camera* review were to be provided to the Court (in both electronic and paper copy formats) with his accompanying motion, by November 16, 2022.  *Id.* at 11–12.

---

[5]       The "Remand Order" referenced in the D.C. Circuit's quoted language had been issued by that Court in response to an emergency motion for a stay pending appeal filed by the congressman whose House office had been searched, *Rayburn*, 497 F.3d at 658, and required that the congressman be provided with "copies of computer files made by [the Executive]," and "an opportunity to review the records" tagged as responsive through a keyword search "for the terms listed in the warrant," *id*. Any such responsive records that the congressman "identified as legislative" had to be reviewed *in camera* by the district court to "make findings regarding whether the specific documents or records are legislative in nature," *id*. (quoting Remand Order), while the Executive was enjoined "from reviewing any of the seized documents pending further order" of the court or unless the congressman conceded the records were not privileged under the Speech or Debate Clause, *id*. The D.C. Circuit's Remand Order rejected the original "special procedures" approved by the district court as part of the warrant to use a government "filter team" to identify and remove privileged and nonresponsive records from materials turned over to the investigative team, *id*. at 656-57, because "[t]he special procedures outlined in the warrant affidavit would not have avoided the violation of the Speech or Debate Clause because they denied the Congressman any opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents," *id*. at 662.

The government timely filed its objections to Rep. Perry's claimed privilege over 2,627 records, contending that none of these responsive records were likely integral to a legislative act or performed in a sufficiently procedurally regular fashion to constitute legitimate legislative activity. Gov't Mem. at 1–2. Rep. Perry confirmed that, upon completion of his privilege review, out of a total of 9,462 responsive documents on his cell phone, he identified 2,627 responsive documents as privileged under the Clause. Rep. Perry's Resp. to the Gov't's Objs. and Req. for Mod. of the Court's Nov. 2022 Order at 1, ECF No. 20. He requested an unopposed extension to ensure all privileged documents were accurately tagged as privileged and in accordance with the five categories outlined in the Nov. 2022 Order, and requested certain modifications to the manner of furnishing the records for *in camera* review. *Id.* at 6–7. The extension and modifications requested by Rep. Perry were largely granted. *See* Minute Order (Nov. 16, 2022).

### C. Rep. Perry's Submission of Responsive Records for *In Camera* Review

On November 28, 2022, Rep. Perry submitted for *in camera* review 2,219 responsive records, Perry Mot. at 4, which was slightly fewer than originally estimated, with an accompanying motion and *ex parte* submission, *see* Perry Suppl. (*ex parte*).

To categorize communications accurately while keeping strings of communications together, Rep. Perry provided responsive records organized into fifteen sub-categories, Perry Mot. at 5, which include combinations of the five broader categories initially outlined by Rep. Perry, *see* Perry Resp. at 2, and a so-called "other" category of responsive records, *see* Perry Mot. at 5. This sub-categorization has also been helpful to facilitate *in camera* review. The fifteen sub-categories, and the number of unique responsive records in each, are listed below, in A through O:

███████████████████████████████████████

██████████████████████████████



Perry Mot. at 5.

With *in camera* review of the 2,219 contested responsive records completed, Rep. Perry's

motion to withhold responsive records is now ripe for resolution.

## II. DISCUSSION

Rep. Perry contends that he is entitled to withhold as privileged under the Clause 2,219

responsive records spanning his communications not only with fellow congressional Members and

staff, but also with private individuals and officials with no formal role or function in the United

States Congress, including officials with the Trump campaign, the White House, Office of the

President, and the Pennsylvania State Legislature. Perry Mot. at 4. He articulates a broad reach

of the non-disclosure aspect of the Speech or Debate Clause privilege to block access in a criminal

investigation to any communications he had with any person in any capacity when "he was

engaged in information gathering that is 'part of, in connection with, or in aide of a legitimate

legislative act' . . . even where it is an informal effort undertaken by an individual Member of

Congress or their staff." *Id.* at 6 (quoting *McSurely v. McClellan*, 553 F. 2d 1277, 1286 (D.C. Cir.

1976)).

This astonishing view of the scope of the legislative privilege would truly cloak Members of Congress with a powerful dual non-disclosure and immunity shield for virtually any of their activities that could be deemed information gathering about any matter which might engage legislative attention.  At the same time, a Member could delay, if not effectively bar, investigative scrutiny and avoid not only criminal or civil liability but also the public reputational harm that such scrutiny could engender, particularly in the view of voters.  To be sure, communications that a congressional Member has "attending to human needs or interests not peculiar to a Congress member's work *qua* legislator may advance a member's general welfare"—and even his professional and public profile—but to characterize such communications as "'legislative' in character[ ] is to stretch the meaning of that word beyond sensible proportion."  *United States v. Rostenkowski*, 59 F.3d 1291, 1302–03 (D.C. Cir. 1995).

The Clause does not protect extra-legislative communications that are only tangential to matters coming before the Congress, and most of the responsive records withheld by Rep. Perry are merely that.  Only 164 responsive records containing communications exclusively with Members of Congress and legislative staff reflect an "integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House," *Gravel v. United States*, 408 U.S. 606, 625 (1972), and thereby qualify for the Clause's protection, in whole or in part.  As such, those records are properly withheld.  The remaining records reflecting his communications with private individuals either with purported cybersecurity expertise or the Trump Campaign, and officials from other branches of the Federal government and State government, do not qualify as privileged and must be disclosed to the government.

Following discussion of the general legal principles governing the scope of the Speech or Debate Clause privilege, the different categories of withheld records are described and then analyzed for application of the Clause's protections.

### A. Overview of the Speech or Debate Clause

The Speech or Debate Clause provides that, "for any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place." U.S. CONST. art. I, § 6, Cl. 1. James Wilson, who participated in the drafting of the U.S. Constitution before serving as one of the first Associate Supreme Court Justices, explained that the privilege is rooted in the "'indispensabl[e] necess[ity]'" for Members of Congress to "'enjoy the fullest liberty of speech'" and "'protect[ion] from the resentment of everyone, however powerful, to whom the exercise of that liberty may occasion offence[,]'" so the members can faithfully "discharge [his or her] public trust with firmness and success." *Tenney v. Brandhove*, 341 U.S. 367, 373 (1951) (quoting Works of James Wilson (Andrews ed. 1896) 38)). Inclusion of the Clause in the U.S. Constitution was considered not only indispensable but was also uncontroversial since the Constitutional convention approved the Clause and ratification proceeded without any apparent disagreement about this provision. *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1204 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (citing Josh Chafetz, *Democracy's Privileged Few* 74, 87–88 (2007); Joseph Story, 1 *Commentaries on the Constitution of the United States* § 863 (1833)) (discussing origin of the Clause).

Ensuring "the independence and integrity of the legislature" by "protecting against possible prosecution by an unfriendly executive and conviction by a hostile judiciary" also "serves the additional function of reinforcing the separation of powers so deliberately established by the Founders." *Johnson*, 383 U.S. at 178–79; *see also United States v. Helstoski*, 442 U.S. 477, 491–

92 (1979) (citation and quotation marks omitted) ("There is little doubt that the instigation of criminal charges against critical or disfavored legislators by the executive in a judicial forum was the chief fear prompting the long struggle for parliamentary privilege in England and, in the context of the American system of separation of powers, is the predominate thrust of the Speech or Debate Clause[,]" whose "purpose was to preserve the constitutional structure of separate, coequal, and independent branches of government."); *Lake Country Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 404–05 (1979) (quotation marks omitted) (explaining that the Clause makes legislators "immune from deterrents to the uninhibited discharge of their legislative dut[ies], not for their private indulgence but for the public good"); *McCarthy v. Pelosi*, 5 F.4th 34, 38 (D.C. Cir. 2021) (quotation marks and citation omitted) (explaining that the Clause's "central object . . . is to protect the 'independence and integrity of the legislature. . . by preventing intimidation of legislators by the Executive and accountability before a possibly hostile judiciary"). As then-Judge Kavanaugh succinctly stated, "the Clause helps maintain the separation of powers among the three Branches." *In re Grand Jury Subpoenas*, 571 F.3d at 1204 (Kavanaugh, J., concurring).

The Supreme Court first opined on the scope of the Clause in *Kilbourn v. Thompson*. The crux of the issue in *Kilbourn* was whether the Clause could shield members of the House of Representatives from liability on a civil claim of false imprisonment asserted by a witness who refused to answer questions and produce documents about his business interests. The Court answered in the affirmative, declining "a narrow view of the constitutional provision to limit it to words spoken in debate[,]" and reading the Clause more broadly "as forcible in its application to written reports presented in that body by its committees, to resolutions offered, which, though in writing, must be reproduced in speech, and to the act of voting, whether it is done vocally or by passing between the tellers[,]" or "[i]n short, to things generally done in a session of the House by

one of its members in relation to the business before it." *Kilbourn*, 103 U.S. at 204; *see also id*. (citing as the "most authoritative case in this country on the construction of the provision in regard to freedom of debate in legislative bodies, and being so early after the formation of the Constitution of the United States, is of much weight[,]" a 1808 Massachusetts Supreme Court decision, describing scope of State Constitution's version of Clause as not "confine[d] [ ] to delivering an opinion, uttering a speech, or haranguing in debate, but" also extending "to the giving of a vote, to the making of a written report, and to every other act resulting from the nature and in the execution of the office").

Consistent with its first take in *Kilbourn*, the Supreme Court has since read the Clause "broadly to effectuate its purposes[.]" *Johnson*, 383 U.S. at 180; *see also Hutchinson v. Proxmire*, 443 U.S. 111, 124 (1979) ("[T]he Court has given the Clause a practical rather than a strictly literal reading[.]"). To this end, the Supreme Court has further held that when the Clause's protections attach, its privileges are absolute. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) ("[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute bar to interference."); *Rayburn*, 497 F.3d at 661.

Supreme Court jurisprudence makes clear that the Clause provides Members of Congress two substantive protections for their legislative acts. First, "Congressmen and their aides are immune from liability for their actions within the 'legislative sphere,' even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Doe v. McMillan*, 412 U.S. 306, 312–13 (1973) (quoting *Gravel*, 408 U.S. at 624–25); *see also In re Grand Jury Proc.*, 563 F.2d 577, 584 (3d Cir. 1977) (characterizing the Clause as providing a "nonevidentiary use privilege" that "permits legislative action, as well as free and unfettered legislative debate, without exposing the legislator to criminal

liability").[6]  Second, the Clause ensures that Members "may not be made to answer" questions about their legislative acts, including in person before a grand or petit jury, *Gravel*, 408 U.S. at 616, though a Member may be called to "testify[] at trials or grand jury proceedings involving *third-party* crimes where the questions do not require testimony about or impugn a legislative act," *id.* at 622 (emphasis added); *id.* at 626 (holding that a Member was required to testify about his role in private republication of the Pentagon Papers, because his acts involving that publication "were not part and parcel of the legislative process").

In combination, these two substantive Clause protections preclude questioning of congressional Members (and staff) about legislative acts or using such acts against them in either civil or criminal matters, no matter how corrupt the motivation may be for the legislative activity at issue.  *See, e.g.*, *Johnson*, 383 U.S. at 180 (explaining that where "[t]he essence of such a charge . . . is that the Congressman's conduct was improperly motivated, . . . that is precisely what the Speech or Debate Clause generally forecloses from executive and judicial inquiry"); *Tenney*, 341 U.S. at 377 (explaining that "[t]he claim of an unworthy purpose does not destroy the privilege" and "that it was not consonant with our scheme of government for a court to inquire into the motives of legislators"); *Eastland*, 421 U.S. at 508 ("Our cases make clear that in determining the legitimacy of a congressional act we do not look to the motives alleged to have prompted it.").  In

---

[6]    Notably, in *Kilbourn*, Supreme Court reserved decision over whether "there may not be things done, in the one House or the other, of an extraordinary character, for which the members who take part in the act may be held legally responsible" should "the members of these bodies so far to forget their high functions and the noble instrument under which they act," explaining, "we are not prepared to say that such an utter perversion of their powers to a criminal purpose would be screened from punishment by the constitutional provision for freedom of debate."  103 U.S. at 204–05.  *See also Cushing v. Packard*, 30 F.4th 27, 50 (1st Cir. 2022) (quotation marks omitted) (noting that "[i]n line with *Kilbourn*, we have recognized that that there may be some conduct, even within the legislative sphere, that is so flagrantly violative of fundamental constitutional protections that traditional notions of legislative immunity would not deter judicial intervention").  The government has not sought here to exploit this reservation to the Clause's protection for egregious legislative conduct, and thus, the pending motion presents no occasion to consider whether any such exception applies.

sum, "[i]t is beyond doubt that the Speech or Debate Clause protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972); *Helstoski*, 442 U.S. at 487 (explaining that its precedents "leave no doubt that evidence of a legislative act of a Member may not be introduced by the Government").

Despite the significant protections provided under the Clause to congressional Members (and staff), the Supreme Court has made clear that the Clause is no "get out of jail free" card. Indeed, "a Member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts," *Brewster*, 408 U.S. at 512, since this privilege was "not written into the Constitution simply for the personal or private benefit of Members of Congress," *id.* at 507. "The privilege is not designed to protect the reputations of congressmen but rather the functioning of Congress." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 419 (D.C. Cir. 1995); *see also id.* at 418–19 (quotation marks omitted) (explaining the term "integrity" in the phrase "integrity of the legislative process" is used "not in the sense of reputation for rectitude but rather in the sense of a state of being unimpaired"). As then-Judge Ruth Bader Ginsberg summed up, "[t]he key consideration, Supreme Court decisions teach, is the act presented for examination, not the actor." *Walker v. Jones*, 733 F.2d 923, 929 (D.C. Cir. 1984).

This crucial focus on the "legislative act" significantly restricts the scope and applicability of the Clause. The Supreme Court "has repeatedly insisted that the Speech or Debate Clause is subject to 'finite limits,' refusing to stretch its protective umbrella 'beyond the legislative sphere' to conduct not 'essential to legislating.'" *McSurely*, 553 F.2d at 1284–85 (footnotes omitted) (quoting *Doe*, 412 U.S. at 317, and *Gravel*, 408 U.S. at 621, 624–25). To qualify for Clause

protection, the act must be "directly related to the due functioning of the legislative process." *Rostenkowski*, 59 F.3d at 1302 (quotation marks omitted).  This means that the Clause's protections apply only to a Members' legislative acts or activities that are "integral" to a Member's participation in "the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House."  *Gravel*, 408 U.S. at 625.  As *Gravel* makes clear, if an action taken or communication made by a Member or their aide is "essential to the deliberations" of the House or Senate, and questioning the congressional actor would "threaten the integrity or independence" of Congress "by impermissibly exposing its deliberations to executive influence," then the action is a legislative act to which the privilege applies.  *Id.* at 625–26.  Conversely, the Clause's privilege does not apply where interference by the executive or judicial branches "does not draw in question the legislative acts of the defendant member of Congress or his motives for performing them."  *Brewster*, 408 U.S. at 510 (quotation marks omitted); *Barker v. Conroy*, 921 F.3d 1118, 1127 (D.C. Cir. 2019) (quoting *Eastland*, 421 U.S. at 501, and *Brewster*, 408 U.S. at 517) ("Although the Supreme Court has instructed us to 'read the Speech or Debate Clause broadly to effectuate its purposes,' the Clause's 'shield does not extend beyond what is necessary to preserve the integrity of the legislative process[.]'").

Examples of "legislative activit[ies]" to which the privilege applies include "[c]ommittee reports, resolutions, and the act of voting[,]" *Gravel*, 408 U.S. at 617; introducing, voting for, and signing a budget ordinance, *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998); subpoenaing records for a committee hearing, *Eastland*, 421 U.S. at 507; interrogating witnesses during committee hearings, *Tenney*, 341 U.S. at 377–78; "exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters[,]" *Rayburn*, 497 F.3d at

661; creating, administering and enforcing House (or Senate) rules concerning how Members can cast their votes for legislation, *McCarthy*, 5. F.4th at 39; "enforcing [or executing] internal rules of Congress[,]" *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1350 (D.C. Cir. 1975); and other acts "generally done in a session of the House [or Senate] by one of its members in relation to the business before it, or things said or done by [a Member], as a representative, in the exercise of the functions of that office." *Brewster*, 408 U.S. at 512–13 (quotation marks and citation omitted).

"That [Members] generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature." *Gravel*, 408 U.S. at 625. Congressional Members' (and staff's) activity that falls outside the core legislative activity shielded by the Clause takes various forms and may be merely political or personal, insufficiently official or too loosely tied to pending business before the Congress, or, more egregiously, illegal. In short, the Clause does not shield legislators from "inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Brewster*, 408 U.S. at 528. Distillation of relevant caselaw reveals at least three general categories of congressional Members' activities not protected by the Clause.

First, the Clause does not protect conduct only tangentially related, but not necessary or integral, to official legislative action. This limit on the Clause is the hook on which the Supreme Court has relied to clarify that the Clause does not immunize a sitting Member of Congress from being prosecuted for "accepting a bribe in exchange for a promise relat[ed] to an official act," in violation of 18 U.S.C. §§ 201(c)(1) & (g), *Brewster*, 408 U.S. at 502, because "[t]aking a bribe is . . . no part of the legislative process or function" and is in no way "a legislative act," *id.* at 526. Proof of such a criminal violation does not make it "necessary to inquire into how [the Member]

spoke, how he debated, how he voted, or anything he did in the chamber or in committee," but only that he had "tak[en] or agree[d] to take money for a promise to act in a certain way." *Id.* Consequently, the Speech or Debate Clause privilege does not apply. *See also Gravel*, 408 U.S. at 622 (noting that Clause does not protect "criminal conduct threatening the security of the person or property of others, whether performed [by a Member or] at the direction of [a] [Member] in preparation for or in execution of a legislative act"); *United States v. Renzi*, 651 F.3d 1012, 1020 (9th Cir. 2011) (explaining that if Member's "'negotiations' are not 'legislative acts,' then the Clause's protections would not shield them[,]" and the "Government could prosecute [him] for his allegedly corrupt conduct, and neither the testimonial nor evidentiary privileges would apply").

Second, though each legislative act inherently carries potential political consequences, general political activities are unprotected by the Clause. The Supreme Court has expressly put outside the Clause's shield "many activities" in which Members' engage, including "a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *Brewster,* 408 U.S. at 512. Acknowledging that "[t]he range of these related activities has grown over the years," and that "[t]hey are performed in part because they have come to be expected by constituents, and because they are a means of developing continuing support for future elections[,]" the Supreme Court nonetheless deemed "these [] entirely legitimate activities" to be "political in nature rather than legislative," and therefore not within the scope of the Clause's protections. *Id.* Otherwise, any extension of the Clause to such political matters would "make Members of Congress super-citizens, immune from criminal responsibility." *Id.* at 516. The Clause was neither intended nor designed for such a broad scope.

The Supreme Court's distinction in *United States v. Brewster* between generally political and legislative acts provides an important check on the scope of the Clause's privilege.  For example, in *Hutchinson v. Proxmire*, a Senator was sued for allegedly defamatory statements about the plaintiff contained in a newsletter sent to constituents and others.  443 U.S. at 114.  The Court rejected the Senator's argument that newsletters and press releases were privileged in service of the "informing function" of Congress, *see id.* at 132, explaining that disseminating newsletters and press releases is not protected legislative activity since such dissemination is neither "'essential to the deliberations of the Senate' [or House] . . . [nor] part of the deliberative process," *id*. at 130.  Other examples of unprotected non-legislative activities regularly engaged in by Members but not protected by the Clause include: "[p]romises by a Member to perform an act in the future[,]" *Helstoski*, 442 U.S. at 489; legislative prayer, *Barker*, 921 F.3d at 1127; communicating with Executive Branch officials, *Doe*, 412 U.S. at 313 (quoting *Gravel,* 408 U.S. at 625) ("Members of Congress may frequently be in touch with and seek to influence the Executive Branch of Government, but this conduct 'though generally done, is not protected legislative activity.'"); disseminating private documents to individuals or agencies outside of Congress, *see McSurely*, 553 F.2d at 1287 (footnotes and quotation marks omitted) ("Even though Members of Congress or their aides frequently intercede on behalf of constituents with agencies of the Executive Branch or disseminate to the public beyond the legitimate legislative needs of Congress documents introduced at committee hearings, such conduct falls outside of legislative immunity."); and a Member's testimony before a committee that is not inquiring into the exercise of the Member's official powers, *United States v. Rose*, 28 F.3d 181, 189 (1994) ("The testimony was not addressed to a pending bill or to any other legislative matter; it was, instead, the Congressman's defense of his handling of various personal financial transactions[,]" such that the Congressman "was acting

as a witness to facts relevant to a congressional investigation of his private conduct; he was not acting in a legislative capacity.").

Third, and of particular relevance here, a Member's informal investigative efforts or fact-finding inquiries untethered to a formally sanctioned congressional inquiry remain unprotected. To be sure, "[t]he power to investigate and to do so through compulsory process plainly falls within that definition" of the "legitimate legislative sphere" subject to the Clause. *Eastland*, 421 U.S. at 503–04; *see also id.* at 505 (alteration in original) (quoting *Doe*, 412 U.S. at 313) ("the act 'of authorizing an investigation pursuant to which . . . materials were gathered' is an integral part of the legislative process"). As the Supreme Court explained, "the power to investigate is inherent in the power to make laws because '[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change.'" *Id.* (alteration in original) (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)). Yet, the Clause is not a blanket shield for individual congressional Members (or staff) to undertake an investigation, even in their official capacity, of any matter that strikes their interest. *See Bastien v. Off. of Senator Ben Nighthorse Campbell*, 390 F.3d 1301, 1316 (10th Cir. 2004) ("No Supreme Court opinion indicates that Speech or Debate Clause immunity extends to informal information gathering by individual members of Congress. . . . To extend protection to informal information gathering—either personally by a member of Congress or by congressional aides—would be the equivalent of extending Speech or Debate Clause immunity to debates before local radio stations or Rotary Clubs.").

Assurance that the investigative step is fully and unambiguously authorized for a legislative purpose is critical. In *Eastland*, for example, the Supreme Court declined to bar enforcement of a congressional subpoena issued by a Senate Subcommittee that "was acting under an unambiguous

resolution from the Senate authorizing it to make a complete study of . . . a subject on which legislation could be had." 421 U.S. at 506 (quotation marks and citation omitted). Consistent with the Supreme Court's emphasis on the official congressional authorization of an investigative inquiry, the D.C. Circuit has likewise stressed that investigative efforts by congressional Members or staff to "obtain information" are protected by the Clause when those efforts are "performed in a procedurally regular manner." *Brown & Williamson*, 62 F.3d at 416.

Mindful of the Supreme Court's caution about "'finite limits' to the shield erected by the" Clause, *McSurely*, 553 F.2d at 1287 (quoting *Doe*, 412 U.S. at 317), the D.C. Circuit has bluntly stated that "a Member of Congress or congressional employee is not free to use every conceivable means to obtain investigatory materials, without fear of criminal prosecution or civil suit[,]" *id.* For the privilege to apply to "field investigations by a Senator or his staff[,]" two conditions must be met: (1) the inquiry must have been congressionally authorized; and (2) no "unlawful means" were used to achieve a proper legislative objective because such means "is simply not essential to legislating." *Id.* at 1286–88. In *McSurely v. McClellan*, an investigator for a congressional subcommittee unlawfully seized and made photocopies of 234 of plaintiffs' documents, including certain documents with no legislative purpose or relevancy. Even though the Subcommittee was authorized to investigate the types of criminal activities in which the plaintiffs were allegedly involved, the Clause did not protect the investigator's—and by extension, the Subcommittee's—unconstitutional seizure of the documents at issue. *Id.* at 1296 ("[T]he immunity shield . . . is not a license to invade privacy where no legislative purpose can be plausibly interposed."). Thus, the D.C. Circuit concluded that the Subcommittee's seizure, through an investigator, of the 234 documents at issue was not protected by the Speech or Debate Clause. *Id.*[7]

---

[7] At the same time, in careful parsing of the facts, the D.C. Circuit found that official actions taken collectively by Subcommittee Members subsequent to the illegal retrieval of the letters were protected by the Clause, including

The D.C. Circuit has expanded the scope of the Speech or Debate Clause beyond the Supreme Court's articulated limits by creating a broad non-disclosure privilege for congressional Members' legislative records, even when only non-legislative records are sought through a search warrant or a subpoena in a criminal investigation. *Rayburn*, 497 F.3d at 656 ("[T]he compelled disclosure of privileged material to the Executive during execution of the search warrant . . . violated the Speech or Debate Clause[.]"); *see also Brown & Williamson*, 62 F.3d at 420 (holding that the Clause prevents the disclosure of legislative documents to third-parties).[8] In *Rayburn,* the Court held that the Executive could not review paper or electronic records seized in the Congressman's office, pursuant to a search warrant for non-legislative materials, because the search of such files in the legislator's office "must have resulted in the disclosure of legislative

---

the Subcommittee's use the 234 photocopies "as the basis for issuance of subpoenas for some of the documents, and the procurement of contempt of Congress citations against plaintiffs" for failing to respond to the subpoenas, and thus the Clause barred the plaintiffs from questioning Subcommittee Members on the issue of damages for the issuance of subpoenas to obtain the records. *McSurely*, 553 F.2d at 1296–97. The Court reasoned that, under binding precedent, when "material comes to a legislative committee by means that are unlawful or otherwise subject to judicial inquiry[,] the subsequent use of the documents by the committee staff in the course of official business is privileged legislative activity." *Id.* Similarly, the plaintiffs' claim against the Members for "invasion of privacy based on retention and display of their private papers within the Subcommittee for non-legislative purposes" was barred by the Clause because, "[a]lthough the federal defendants [were] not immune from inquiry as to dissemination of the 234 photocopies to individuals or agencies outside of Congress, dissemination within the Subcommittee is privileged activity." *Id.* at 1297. In short, because the Subcommittee "employed proper process for information 'on which legislation could be had,'" *id.* at 1298 (quoting *Eastland*, 421 U.S. at 504–07 & n. 15), and the officially issued "subpoenas called for materials that were at least arguably relevant to its investigation," the Clause protected against claims involving, or questioning regarding, that legislative conduct, *id.*

[8]     *Brown & Williamson Tobacco Corp.* marked the first time the D.C. Circuit held that the Clause equips Members (and staff) with a non-disclosure privilege for legislative documents.    62 F.3d at 420 ("We do not accept the proposition that the testimonial immunity of the Speech or Debate Clause only applies when Members or their aides are personally questioned. Documentary evidence can certainly be as revealing as oral communications . . . and this is true whether or not the documents are sought for the purpose of inquiring into (or frustrating) legislative conduct or to advance some other goals[.]"). Prior to *Brown & Williamson* (and *Rayburn*), the D.C. Circuit had stated that "the Speech or Debate Clause acts as an exclusionary rule and testimonial privilege, as well as substantive defense," requiring that "plaintiffs must prove their case through evidence which 'does not draw in question the legislative acts of the defendant member of Congress [and his aides] or [their] motives for performing them,'" *McSurely*, 553 F.2d at 1299 (quoting *Brewster*, 408 U.S. at 526, and *Johnson*, 383 U.S. at 185). Such an exclusionary and testimonial privilege is more limited than the current binding precedent, in this Circuit only, that the Clause operates as a non-disclosure privilege, thereby triggering the time-consuming and resource-intensive task of *in camera* review to resolve disputes about the applicability of the Clause.

materials to agents of the Executive[,]" and it thereby violated the legislator's rights under the Clause. 497 F.3d at 661.[9]  In the Court's view, "[t]he special procedures outlined in the warrant affidavit would not have avoided the violation of the Speech or Debate Clause because they denied the Congressman any opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." *Id.* at 662; *see also id.* at 661 (quotation marks omitted) (explaining that "incidental review . . . does not deny that compelled review by the Executive occurred, nor that it occurred in a location where legislative materials were inevitably to be found, nor that some impairment of legislative deliberations occurred").

*Rayburn* stands alone in its conclusion that the Clause affords congressional Members a non-disclosure privilege. [10]  The Third and Ninth Circuits are the only other circuits to consider

---

[9]     *Rayburn* concluded that the investigative agents' imaging and keyword search for responsive non-legislative records on the congressman's hard drives and electronic media was constitutionally permissible only "given the Department of Justice's voluntary freeze of its review of the seized materials and the procedures mandated on remand by this court[,]" 497 F.3d at 655, referring to the Remand Order, *see supra* n.5, since those circumstances meant that "the imaging and keyword search of the Congressman's computer hard drives and electronic media exposed no legislative material to the Executive, and therefore did not violate the Speech or Debate Clause," 497 F.3d at 655.  In other words, for both paper and electronic records seized from his House office, the congressman was entitled to review the records for potential Clause privilege prior to disclosure to law enforcement agents from the Executive branch. Notably, the congressman involved in *Rayburn* claimed legislative privilege only over paper and electronic records seized in his congressional office and did not object on Clause privilege grounds to the search of documents seized elsewhere during the course of the subsequent criminal investigation into his activities. *See generally*, *United States v. Jefferson*, Case No. 1:07-cr-00209 (E.D. Va.).

[10]     In a concurring opinion in *Rayburn*, Judge Henderson leveled two criticisms at the majority's analysis: First, *Brown & Williamson* "relied heavily on the Clause's purpose—shielding the legislative process from disruption—in reading the Clause's prohibition of 'question[ing]' broadly to protect the 'confidentiality' of records from the reach of a civil subpoena," and, in comparison, enforcement of the criminal search warrant would be much less distracting because the warrant would be executed to reduce disruption "by, *inter alia*, executing the warrant when the Congress was not meeting, imaging computer hard drives rather than searching the computers, using specific search terms for both paper and electronic records and, most importantly, creating Filter Teams . . . and ensuring subsequent in camera judicial review to minimize exposure to privileged records," *Rayburn*, 497 F.3d at 669–70 (Henderson, J., concurring) (citation omitted); and, second, apart from deviating from the Clause's principal purposes, *Rayburn* could "jeopardize law enforcement tools that have never been considered problematic[,]" leading to a parade of horribles, with Members and their staff being able to delay or circumvent effective criminal prosecution, *id.* at 671–72 (quotation marks omitted) (observing that, if mere "Executive Branch exposure to records of legislative acts" is prohibited by the Clause, a Member would always have to be given advanced notice of any search of her house or property, FBI agents would not be able to voluntarily interview Members and staff, and the ability for the government to effectively prosecute Members for criminal activity would be severely hampered).

24

the issue and both concluded that the Clause does not create a non-disclosure privilege when applied to records or third-party testimony, but rather operates as a "nonevidentiary use" privilege. *See In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978) ("But to the extent that the Speech or Debate Clause creates a Testimonial privilege as well as a Use immunity, it does so only for the purpose of protecting the legislator and those intimately associated with him in the legislative process from the harassment of hostile questioning. It is not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has only a limited toleration for secrecy."); *Renzi*, 651 F.3d at 1032 (rejecting the contention "that there exists some grandiose, yet apparently shy, privilege of non-disclosure that the Supreme Court has not thought fit to recognize"); *see also id.* at 1034 ("Simply stated, we cannot agree with our esteemed colleagues on the D.C. Circuit. We disagree with both *Rayburn*'s premise and its effect and thus decline to adopt its rationale.").[11] No matter the critiques, however, *Rayburn* is binding on this Court.

    Set against these legal principles, the disputed records are next considered.

## B. Review of Disputed Responsive Records on Rep. Perry's Personal Cell Phone

    In accordance with the protocol outlined in the warrant's Attachment C, Rep. Perry has withheld from production to the government 2,219 responsive records from his cell phone that he

---

[11]     *Rayburn* (and the D.C. Circuit's decision in *Brown & Williamson* twelve years earlier) have also been criticized for overextending the Clause's protections beyond its founding purposes. *See, e.g.*, Michael L. Shenkman, *Talking About Speech or Debate: Revisiting Legislative Immunity*, 32 YALE L. & POL. REV. 351, 417 (2014) (explaining that the D.C. Circuit took the Clause's "protection too far by transforming 'written legislative materials' into an impermeable physical bunker of non-disclosure" and creating "an area unmoored from history or Supreme Court precedent"); Jay Rothrock, *Striking A Balance: The Speech or Debate Clause's Testimonial Privilege and Policing Government Corruption*, 24 TOURO L. REV. 739, 756–57 (2008) (footnotes omitted) ("While the Supreme Court has traditionally narrowed the scope of Speech or Debate Clause privileges by refining the definition of 'legislative acts,' the *Brown & Williamson* Court implicitly expanded the scope of the clause by broadening 'questioning' to include responding to a civil subpoena[,] . . . plac[ing] too great a control over the privilege in legislators' own hands without providing for an explicit, effective procedure for judicial review. Over a decade later, . . . [in *Rayburn*], the [C]ourt would repeat this same mistake, expanding the scope of the clause through the definition of 'questioning,' and thus giving investigated legislators an unjustified increase in control over information in a criminal case.")

believes are privileged under the Clause, and—over three months after issuance of the D.D.C Warrant—has submitted those records to the Court for *in camera* review to complete execution of that warrant by disclosure to the government of any non-privileged, responsive records. These records are in the form of email and text communications, with some attachments. Broadly speaking, Perry asserts privilege as to these withheld records on the basis that they were part of his "information gathering" efforts in preparation for his legislative role and vote on the certification of the 2020 presidential election on January 6, 2021, pursuant to the Electoral Count Act of 1887 ("ECA"), 24 Stat. 373, 3 U.S.C. §§ 5, 6, and 15, or otherwise "to ensure the integrity of our elections going forward." Perry Mot. at 6, 10.

The government rightly raises no dispute that activities integral to Rep. Perry's ECA vote are protected under the Clause. *See generally* Gov't Mem. Certainly, the law is well-settled that "legislative acts for purposes of Speech-or-Debate-Clause immunity include both (i) matters pertaining 'to the consideration and passage or rejection of proposed legislation,' and (ii) 'other matters which the Constitution places within the jurisdiction of either House.'" *McCarthy*, 5 F.4th at 40 (quoting *Gravel*, 408 U.S. at 625). Congress's role in certifying the results of the Electoral College vote is constitutionally and statutorily mandated. *See* U.S. CONST. amend. XII ("The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;—the person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed[.]"); 3 U.S.C. § 15 (describing the process by which Members of Congress shall count and certify the electoral votes from each state). Given that certification of the Electoral College vote is a matter which the Constitution places within the jurisdiction of both Houses of Congress, activities necessary and integral to fulfilling that task are entitled to Clause protection.

Rep. Perry's communications with fellow congressional Members and staff directly relating to internal House of Representatives committee assignments or membership, pending legislation or floor votes on such legislative matters, as well as voting and/or speaking order and strategy for the ECA vote on January 6, 2021, are protected under the Clause. Such communications are integral to Rep. Perry's consideration and carrying out of his official role in the legislative and presidential certification processes.

Yet, just as "everything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause" and "legislative acts are not all-encompassing," *Doe*, 412 U.S. at 313 (quotation marks and alteration omitted), not all activity undertaken, even in an official capacity, is shielded by the Clause—a principle that extends to conversations related to the general topic of election integrity or the ECA process. In other words, Rep. Perry's communications with private individuals or officials from government entities other than the Congress do not qualify for protection under the Clause merely because those communications reference the ECA process or election integrity. None of these communications arise in connection with any sanctioned, formal congressional investigation conducted by any committee or other House arm, but instead, as Rep. Perry indicates, reflect his efforts as an individual Member either to obtain or relay information from or to others to be used to defeat or delay certification of the ECA vote and President-elect Joseph R. Biden's victory in the 2020 election. Thus, at best, these communications appear to be only incidental to Rep. Perry's own ECA vote.

As explained below, examination of the withheld responsive records demonstrates that only 164 of the 2,219 responsive records at issue fall, in whole or part, under the Clause's protection.

1. **Communications With Private "Cybersecurity" Individuals, Trump Campaign Workers, Pennsylvania State Legislators, and "Others"**

Rep. Perry asserts Speech or Debate Clause protection for 678 of his responsive records containing communications with "cybersecurity individuals," "Trump Campaign officials," "Pennsylvania State Legislators," and "Other" individuals, based only on the argument that he was engaging in "fact-finding" efforts "to gather information about the security of the 2020 election and the validity of the electors required to certify the election." Perry Mot. at 7–8. He offers no other substantive argument for his privilege assertion as to these responsive records and thus these records are discussed together.[12]

As a threshold matter, general descriptions of each of these four categories demonstrates how far afield these communications are from formal legislative activities. First, Rep. Perry communicated with so-called private "cybersecurity individuals"—who may have been former government officials but apparently had no official government cybersecurity (or other) role at the time of the communications—because "he believed [they] have expertise in cybersecurity and intelligence about the security of voting machines and election integrity with respect to the 2020 election, both nationally and in Pennsylvania." Perry Suppl. (*ex parte*) at 5.[13]   Second, his

---

[12]   These responsive records were designated by Rep. Perry as falling into subcategories A (201 records), D (86 records), E (128 records), F (68 records), G (1 record), J (101 records), K (11 records), L (32 records), and O (50 records). *See, supra,* in Part I.C.

[13]


28

communications with "Trump Campaign officials," like his communications with cybersecurity individuals, show that Rep. Perry received from and relayed to these officials information about instances of purported election fraud and misconduct, while also discussing ways in which the Trump Campaign could challenge the results of the 2020 election.[14]   Third, Rep. Perry's communications with various Pennsylvania State legislators refer to purported electoral fraud in the 2020 election in Pennsylvania and efforts in that State to challenge and undo the results of that election.[15]   Fourth, the category of "Other" responsive records span an array of private individuals



and cover a grab-bag of topics, from COVID-19 to voter fraud in the 2020 election and strategy advice relayed to or solicited by Rep. Perry in connection with coordinating with Executive Branch officials about the ECA process.[16]

In the broadest possible terms, Rep. Perry believes the Clause shields all these responsive records from investigative review because they are part of his informal fact-finding efforts to understand election security issues in the 2020 election since the ECA process "obligated Rep. Perry to vote on whether to confirm the electors and certify the 2020 election" and to determine "whether there were enough unlawful votes to question the outcome of the election." Perry Mot. at 9–10. The Court is no position to assess the sources of information Rep. Perry chose to use, the significance of that information to him in how he chose to act, or whether the information he obtained or relayed amounted to verifiable facts. Such an assessment is both unnecessary and irrelevant to the pending legal issue. What is plain is that the Clause does not shield Rep. Perry's random musings with private individuals touting an expertise in cybersecurity or political discussions with attorneys from a presidential campaign, or with state legislators concerning hearings before *them* about possible local election fraud or actions *they* could take to challenge



election results in Pennsylvania, because those communications are just "casually or incidentally related to legislative affairs but not a part of the legislative process itself," *Brewster*, 408 U.S. at 528, including the ECA process.

As the following examples reveal, the scattershot nature of Rep. Perry's communications with these private individuals—regarding cybersecurity, *see supra* n.13, Trump Campaign staff, *see supra* n.14, or GOP strategists, *see supra* n.16—and Pennsylvania State legislators, *see supra* n.15, demonstrates that their overarching catch-as-catch-can purpose was to override the results of the 2020 election and only tangentially related to the ECA process. To begin with the purported cybersecurity experts, Rep. Perry claims that these communications were to investigate fraud in the 2020 election, in Pennsylvania and elsewhere, to inform his ECA vote. Perry Mot. at 10. This stated purpose is belied by the fact that a number of these communications relate to coordinating strategy and public relations efforts with Executive Branch officials or Trump Campaign officials,

██████████████████████████████████████████████

████████████████████████████████████ Likewise, examples of communications Rep.

Perry had with others, including on the Trump Campaign staff and Pennsylvania State legislators,

show his efforts to encourage action by others to address what he perceived to be election fraud,

without being directly related to what he would do as a Member as part of a legislative process.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

Absent firm ties to a regular and formal legislative process before the Congress, the content

of these communications makes apparent that this conduct was merely "casually or incidentally

related to legislative affairs," *Brewster*, 408 U.S. at 528, such that the Clause does not apply.  As

the D.C. Circuit has explained, just because conduct is engaged in to "perform or aid in the

performance of legislative acts," does not cloak that conduct with privilege; instead, the Clause

"encompasses the execution of legislation when the executing actions themselves constitute

legislative acts."   *McCarthy v. Pelosi*, 5 F.4th at 41 (quotation marks omitted).   These communications with private individuals and with State legislators do not themselves qualify as legislative acts.

Rep. Perry's communications relaying or seeking information were not congressionally authorized "by [a] particular subcommittee[,]" *McSurely*, 553 F.2d at 1287, let alone initiated or received  "in a procedurally regular fashion[,]" *see Brown & Williamson*, 62 F.3d at 416, so his fact-finding efforts are untethered from any formal legislative activity.   Disclosing these responsive records to the government thus would not "threaten the integrity or independence" of Congress because their disclosure would not risk "impermissibly exposing its deliberations to executive influence." *Gravel*, 408 U.S. at 625.   Nor were these communications part of, let alone integral to, any legislative process or the ECA process within the House of Representatives or Joint Session of Congress mandated by the U.S. Constitution and the ECA.   No matter the vigor with which Rep. Perry pursued his wide-ranging interest in bolstering his belief that the results of the 2020 election were somehow incorrect—even in the face of his own reelection—his informal inquiries into the legitimacy of those election results are closer to the activities described as purely personal or political in *Brewster* since this "fact-finding" was conducted entirely outside the auspices of a formal congressional inquiry or authorization. *See* 408 U.S. at 512–13.

Indeed, the lack of formality surrounding these communications evinces that he initiated them for furthering the Trump Campaign's efforts to sow doubt about the legitimacy of the 2020 election.   Revelation of these communications to the investigative authorities would thus merely disclose communications that were, at most, just incidentally related to his ECA vote, so the Clause does not apply to them. *See Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 10 (D.C. Cir. 2006) (cleaned up) (emphasis in original) ("The Speech or Debate Clause does not prohibit inquiry

into illegal conduct simply because it has some *nexus* to legislative functions, or because it is merely related to, as opposed to part of, the due functioning of the legislative process."). Accordingly, these responsive records are not entitled to Clause protection.

Rep. Perry makes two other arguments about why his fact-finding efforts are protected under the Clause, neither of which withstand scrutiny. First, Rep. Perry urges that his motives for initiating these fact-finding inquiries cannot be questioned because "there is an objectively legislative purpose for his actions." Perry Suppl. (*ex parte*) at 23. For this argument, Rep. Perry relies on *Bogan v. Scott-Harris*, where the Supreme Court concluded that legislative immunity barred a First Amendment retaliation claim against local officials for eliminating the plaintiff's position, allegedly as a result of her filing a complaint against an employee working under her supervision. 523 U.S. at 46–47, 55. His reliance on *Bogan* is misplaced since that case only highlights the fundamental flaw in Rep. Perry's assertion of legislative privilege for his "fact-finding" activities: the utter lack of procedural regularity in his sprawling efforts. To be sure, in *Bogan*, the Supreme Court confirmed well-settled law that the standard for determining whether an act is legislative "turns on the nature of the act itself, rather than on the" legislators' "motive or intent." 523 U.S. at 54; *see also Rangel*, 785 F.3d at 24 ("[A] charge . . . that the Congressman's conduct was improperly motivated . . . is precisely what the Speech or Debate Clause generally forecloses from . . . judicial inquiry.") (quotation marks omitted and alterations in original). At the same time, even after "stripp[ing] [] all considerations of intent and motive," the *Bogan* Court had "little trouble concluding that" the challenged local city council vice president and city mayor's actions were "quintessentially legislative" because they involved "voting for an ordinance," "introduction of a budget[,] and signing into law an ordinance," all of which activities "were formally legislative . . . because they were integral steps in the legislative process[.]" 523

34

U.S. at 55.  Thus, the local legislators' were entitled to absolute legislative immunity from civil liability.  *Id.*  In stark contrast, Rep. Perry's communications with private, non-federal government individuals across these 678 responsive records possess none of the "hallmarks of traditional" legislative activity—they were simply informal communications he engaged in for his own informational and political purposes.  In short, no matter his motives for initiating or engaging in those communications, under *Bogan*, they were neither necessary nor integral any formal legislative or ECA procedure.

Relatedly, Rep. Perry defends his "fact-finding" efforts, saying that he "acted on information provided by sources that he considered to be credible" when soliciting and relaying information from individuals in these 678 responsive records and that "his actions must be considered in the context of the moment, rather than in perfect hindsight."  Perry Suppl. (*ex parte*) at 4.  Just as Rep. Perry's own motives and intent are irrelevant to the determination of whether the Clause applies, however, so too is the "credibility" of the individuals with whom he spoke, since the "[t]he key consideration . . . is the act presented for examination, not the actor."  *Walker*, 733 F.2d at 929.  Here, Rep. Perry's assertion that the purpose for his communications with private individuals, including Trump Campaign staff, and Pennsylvania State legislators, was to help him prepare for his ECA vote shows only a tangential nexus between those communications and any official action he took as a legislator in challenging elector certifications or casting a vote.  Certainly, his actual use of the information he may have gained from these communications during any formal debate in either the Joint Session of Congress or separate House debate during the ECA process on the House floor is entitled to Clause protection.  His individual and informal pursuit, gathering, and culling of information reflected in the 678 responsive records to inform his actions

on the House floor—without formal sanction by any regular procedure in the House—is, however, not privileged. *See McSurely*, 553 F.2d at 1287.

Second, Rep. Perry urges that his "actions here are not unlike those taken by Senator Lindsey Graham" in the wake of the 2020 election and are similarly protected by the Clause for the same reasons that Sen. Graham's fact-finding efforts are protected. Perry Mot. at 7. Sen. Graham was indeed partially successful in quashing a subpoena issued by a special grand jury in the State of Georgia for testimony about conversations he had with the Georgia Secretary of State about instances of voter fraud in the 2020 election in that state. *See In re Graham*, No. 1:22-CV-03027-LMM, 2022 WL 13692834, at *8 (N.D. Ga. Sept. 1, 2022). In that case, the district court concluded that "Senator Graham may not be questioned about investigatory fact-finding that allegedly took place on the phone calls with Georgia election officials because such fact-finding constitutes protected legislative activity[,] . . . mean[ing] that Senator Graham [could not] be questioned as to any information-gathering questions he posed (or why he posed them) about Georgia's then-existing election procedures or allegations of voter fraud." *Id.* at *8.[17] In reaching this conclusion, the court surveyed binding caselaw from the Supreme Court, most particularly in *Bogan* and *Eastland,* on the scope of the Clause's protections, and it observed that the test for

---

[17]     On appeal, neither the Eleventh Circuit nor the Supreme Court opined on the merits of this conclusion and certainly did not adopt it; instead, both Courts merely pointed to the breadth of protection afforded to Senator Graham's communications under the district court's reading of the Clause and denied his requests for a stay of his required grand jury testimony since he could not establish that he was likely to succeed on his remaining claims of privilege. *See Fulton Cnty. Special Purpose Grand Jury v. Graham*, No. 22-12696-DD, 2022 WL 13682659, at *2 (11th Cir. Oct. 20, 2022) ("Senator Graham has failed to demonstrate that this approach will violate his rights under the Speech and Debate Clause. . . . [He] can [be] ask[ed] about non-investigatory conduct that falls within the subpoena's scope, but . . . [s]hould there be a dispute over whether a given question about Senator Graham's phone calls asks about investigatory conduct, the Senator may raise those issues at that time [with the district court]. . . . We thus find it unlikely that questions about them would violate the Speech and Debate Clause."); *Graham v. Fulton Cnty. Special Purpose Grand Jury*, 143 S. Ct. 397, 398 (2022) (denying Sen. Graham's stay and injunction pending appeal because "a stay or injunction is not necessary to safeguard the Senator's Speech or Debate Clause immunity" since the "[t]he lower courts assumed that the informal investigative fact-finding that Senator Graham assertedly engaged in constitutes legislative activity protected by the Speech or Debate Clause").

determining whether an activity is legislative "does not necessarily include a formality requirement and, as presently fashioned, it allows for flexibility of analysis depending on the circumstances of a given case." *Id.* at *3. This conclusion relies on a troublesome reading of Supreme Court precedent and, in any event, runs contrary to binding caselaw in the D.C. Circuit, so it is unpersuasive.

Unlike the Eleventh Circuit, the D.C. Circuit has expressly found that a Member's informal fact-finding efforts must be formally authorized by a Congressional body to constitute protected legislative activity. *McSurely*, 553 F.2d at 1287. In establishing this requirement, the *McSurely* Court relied heavily on the Supreme Court's "recent decision in *Eastland v. United States Servicemen's Fund*," decided just one year before. *Id*. at 1286. In *Eastland*, the Supreme Court reasoned that a Subcommittee's enforcement of a subpoena was protected legislative activity because the Subcommittee "was acting under an unambiguous resolution from the Senate[,]" so its inquiry could "fairly be deemed within [the Subcommittee's] province." 421 U.S. at 505–06 (quotation marks omitted) (alteration in original). Likewise, over twenty years later in *Bogan*, the Supreme Court found the Clause privilege applied to actions that were "quintessentially legislative[,]" involving "voting for an ordinance[,]" "introduction of a budget[,] and signing into law an ordinance." *Bogan*, 523 U.S. at 55. The *McSurely* Court accordingly reasoned that, though the Clause privilege "extend[s] to field investigations by a Senator or his staff" to ensure "enough threshold information to know where" to target subpoenas and to acquire "knowledge through informal sources" necessary "to discharge their constitutional duties properly," *id*. at 1286–87, an investigative endeavor qualifies for Clause protection only when the "requirement of congressional authorization of the inquiry by the particular subcommittee involved" is met, *id*. at 1287. None of Rep. Perry informal "fact-finding" efforts were sanctioned in any way by formal House or

committee authorization or otherwise part of the regular procedural process integral to the Electoral College vote certification process, under the Constitution or ECA. Rather, Rep. Perry's informal "fact-finding" activities involving private individuals, including Trump Campaign staff, and State legislators was pursued by him as an individual Member. *McSurely* forecloses his claims of privilege.

Even were Rep. Perry's argument not foreclosed by binding precedent in this Circuit, his theory of privilege—giving Clause protection to a Member's informal fact-finding efforts untethered from a formal legislative inquiry—would be "both unwise in principle and unworkable in practice." *See In re Grand Jury Subpoenas*, 571 F.3d at 1207 (Kavanaugh, J., concurring). This caution is amply demonstrated by the painstaking parsing the district court directed *In re Graham* as to the types of questions that Sen. Graham could or could not be asked to testify about concerning his communications with the Georgia Secretary of State, when "the very nature and substance of these calls has been a source of public debate and dispute among the calls' participants." 2022 WL 13692834, at *4; *id.* (noting that "there is a fundamental factual dispute as to the very nature and substance of the phone calls and what Senator Graham *actually stated and suggested* on the calls") (emphasis in original); *id.* at *4, *8 (instructing that "asking broad questions of intent that could implicate some legitimate legislative activity (such as asking Senator Graham why he made the calls to Georgia election officials)" were barred under the Clause, as were "question[s] about investigatory fact-finding that allegedly took place on the phone calls with Georgia election officials," but "to the extent [Sen. Graham] asked questions or made statements that went beyond mere inquiries into Georgia's then-existing procedures (that is, to the extent Senator Graham suggested that Georgia election officials take certain actions or alter their procedures), those statements and questions may be the subject of inquiry before the grand jury

because they are not protected legislative activity"); *id.* at *4 ("Again, it is possible that the phone calls contained both legislative and non-legislative activity, and the Speech or Debate Clause protects only that which is legislative."). The nuanced line-drawing articulated by the district court in the case of Senator Graham to distinguish appropriate from privileged inquiry of a Member of Congress called to testify before the grand jury about his informal fact-finding efforts is even more challenging when conducting an *in camera* document review because the full context of any given communication may not be discernible. This approach of affording Clause protection to such informal fact-finding efforts would assuredly "create considerable confusion" as to whether the Clause applies and invite inconsistent applications of the legislative privilege. *Cf. In re Grand Jury Subpoenas*, 571 F.3d at 1207 (Kavanaugh, J., concurring). *McSurely* intentionally avoided this parsing quagmire because the requirement of formal legislative authorization connects a Member's informal investigative activities to a sanctioned legislative purpose, making clear whether the Clause applies or not.

For these reasons, all 678 responsive records in the four categories of "cybersecurity individuals," "Trump Campaign officials," "Pennsylvania State Legislators," and "Other" individuals are not protected under the Clause and must be disclosed to the government.

### 2. Communications With Congressional Members and Staff

Rep. Perry's 611 responsive records in Subcategory B—which contains communications exclusively with congressional Members and staff, *see, supra*, Part I.C.—run the gamut of topics, from matters related to the internal HFC elections to the ECA vote.[18]  While these communications

---

18



are lumped by Rep. Perry into a single category, *see* Perry Mot. at 4–5, *in camera* review reveals that these responsive records may be grouped as follows: (a) communications with Members and staff about legislation and votes; (b) communications with Members and staff concerning committee assignments and HFC Board elections; (c) electronic newsletters from House Republican Conference leadership; (d) communications with staff concerning Rep. Perry's own press coverage or media strategy; and (e) communications with Members concerning suspected election fraud in, and legal challenges to, the results of the 2020 presidential election.

The Clause protects Rep. Perry's communications with legislative staff and other Members, so long as those records are "an integral part of the deliberative and communicative processes" of lawmaking. *Gravel*, 408 U.S. at 625; *see also Rayburn*, 497 F.3d at 661 (explaining that "exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters" are protected by the Clause). Put another way, just because Rep. Perry is communicating with other Members and/or staff does not automatically trigger the Clause's protections. Consequently, the Clause protects only the first two groups of responsive records and one type of electronic newsletter in the third group in this category.

### (a) Communications With Members And Staff About Legislation And Votes

The responsive records containing communications Rep. Perry had with the following individuals on the topics described are protected by the Clause: (1) his legislative directors about his vote on the House floor or in a committee, ████████████████ ████████████████

████████████████████████████████████████

████████████████ (2) other Members about pending legislatio █████████████████ █

████████████████████████████████████████

████████████████ and (3) other Members about strategy and assignments during the ECA vote, *see,*

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████. Given that the Clause unequivocally

protects "against inquiry into acts that occur in the regular course of the legislative process and

into the motivation for those acts[,]"*Helstoski*, 442 U.S. at 489 (quotation marks omitted), and the

"act of voting" itself, *Gravel*, 408 U.S. at 617, these communications with Members and staff that

are integral to or part of a Member's decision to cast a vote in favor or against and procedures on

the House floor, including communications about how and when a Member should speak, are

privileged.

### (b) Communications With Members And Staff Concerning Committee Assignments And HFC Board Elections

Although not directly touching on pending legislation or related votes or procedural

matters, the second group of responsive records involving communications between or among

Members or staff about preferred committee assignments and votes for board membership in the

HFC, are also protected by the Clause. These responsive records include Rep. Perry's

communications with the following : (1) House staff about the committees on which he would

prefer to serve in the upcoming term, *see* ███████████████████████████████████████

███████████████████████████████████████████████████████(2) Members about

the committees on which they wished to serv ████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████); and (3) Members and staff about board

elections for the HFC████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████).

Considering that the Clause protects a whole host of acts integral to congressional committee

operations, *see, e.g., Gravel*, 408 U.S. at 617 (reports and resolutions); *Eastland*, 421 U.S. at 507 (subpoenas); *Tenney*, 341 U.S. at 377–78 (witness testimony at hearings); *Consumers Union*, 515 F.2d at 1350–51 (executing or enforcing internal rules), communications related to the composition of the committees, including preferences for committee assignments and internal Member and staff deliberations about the same, are also protected. The same principles apply to Members' internal deliberations about the board election for the HFC, even though this entity is not a formal House standing committee or subcommittee, since the HFC is a recognized caucus organized by House Members to promote and effect the legislative agenda. Accordingly, internal deliberations about HFC board elections fall within "the regular course of the legislative process[.]" *Helstoski*, 442 U.S. at 489 (quotation marks omitted).

### (c) Electronic Newsletters From House Republican Conference Leadership

Rep. Perry received from the House Republican Conference a significant volume of electronic newsletters delivered via email. For the most part, these newsletters address the following topics: (1) the timing and location of conference meetings, ███████████████

████████████████████████████████████████████████

█████████████); and (2) upcoming events, political talking points, news articles of interest, and events occurring in and around Congress, ███████████████████████████

████████████████████████████████████████████████

███████████' ████████████████████████

███████████████). 

These responsive records are not privileged for at least two reasons. First, the scheduled date and time for meetings or other events reveals only that meetings occurred or were anticipated to occur, without disclosing much, if anything, about the subject matter of what actually occurred

at the meetings, so they reveal nothing about internal deliberations related to legislative matters. *Cf. Brewster*, 408 U.S. at 502 (holding that if it is not "necessary to inquire into how [the Member] spoke, how he debated, how he voted, or anything he did in the chamber or in committee," the act or activity is not privileged).

Second, internal newsletters discussing upcoming events, political talking points, news articles of interest, and events occurring in and around Congress are not protected because they are purely political and not integral to any formal legislative activity. In *Hutchinson*, the Supreme Court made clear that just because written materials are issued by congressional Members or staff does not qualify those materials automatically as privileged. 443 U.S. at 130. By contrast to a speech delivered by a Member on the Senate or House floor that would be protected under the Clause, newsletters and press releases are neither "essential to the deliberations of the Senate" nor "part of the deliberative process." *Id.* (explaining that just as a Member "may not with impunity publish a libel from the speaker's stand in his home district," republishing a libelous statement outside of a formal committee report or floor statement "is not an essential part of the legislative process and is not part of that deliberative process 'by which Members participate in committee and House proceedings'" (quoting *Gravel*, 408 U.S. at 625)). Although the electronic newsletters at issue here appear to be internal to House Republican Members—unlike the written materials at issue in *Hutchinson* that were intended for dissemination outside the Congress—the non-legislative matters covered in the contents of the instant electronic newsletters defeat any privilege claim. ▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

███████████████████████████████████████████████████████

████████████████████████████████████████████. These

communications come nowhere close to discussing a Member's participation in "the consideration

and passage or rejection of proposed legislation or with respect to other matters which the

Constitution places within the jurisdiction of either House[,]" *Gravel*, 408 U.S. at 625, so they are

not privileged under the Clause.

One internal electronic newsletter, called █████████" sent frequently via email to Rep.

Perry by the House Republican Leadership Conference, provided substantive summaries and

discussion of pending legislation and other legislative business before the House and individual

committees. ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████. While for the reasons already

stated above, general political newsletters issued by Members and staff are normally not

privileged, internal newsletters like ████████" are different by providing substantive

analysis, even if superficial and abbreviated, to inform Members about a critical legislative activity

in which Members engage: voting. *See Walker*, 733 F.2d at 929 (explaining that "voting" is

"integral to lawmaking"). In effect, this substantive internal newsletter amounts to a modern

mechanism to share significant information among Members about pending legislative matters

requiring a Member's attention and vote, meaning they contribute directly to, and are "part and

parcel of[,] the legislative process." *See Gravel*, 408 U.S. at 626. Thus, the responsive records

consisting o ████████" electronic newsletter are protected by the Clause.

### *(d) Communications With Staff Concerning Rep. Perry's Own Press Coverage Or Media Strategy*

Responsive records consisting of communications regarding Rep. Perry's own press coverage or media strategy are not protected by the Clause because these activities are plainly political under *Brewster* and *Hutchinso* ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ ).

████████████████████████████████████████████████████

██████████████████████████████████████████████ ).  If disseminating newsletters and press releases, as in *Hutchinson*, is not "essential to the deliberations" of Congress nor "part of the deliberative process," 443 U.S. at 130 (quotation marks omitted), Rep. Perry's communications about such public-facing activities as securing endorsements or political messaging to the public are not part of the legislative process either.  Nor does the fact that these communications are with his staff save Rep. Perry's claim of privilege here because "[t]he key consideration . . . is the act presented for examination, *not the actor*." *Walker*, 733 F.2d at 929 (emphasis added).  Here, the acts in question are political communications, not legislative.

### *(e) Communications With Members Concerning Election Fraud In The 2020 Election And Legal Challenges To Results Of That Election*

Rep. Perry's communications with Members and staff about alleged election fraud and security concerns in the 2020 election as well as legal efforts to challenge the results of that election are not privileged because they are purely political rather than legislative in character.  Examples of these conversations include Rep. Perry and other Members (1) discussing alleged evidence of voting fraud in the 2020 electio ██████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ ”); and (2) communicating about planned actions to challenge

the election result ██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████ to

██████████████████████████████████████████████████

████████████████████████████████

These responsive records are textbook political conversations not protected by the Clause. As already noted, merely because these responsive records reflect communications with other Members does not automatically qualify them for protection under the Clause. Most significantly, these communications are not integral to activities "generally done in a session of the House [or Senate] by one of its members in relation to the business before it." *Brewster*, 408 U.S. at 510 (quotation marks omitted). Instead, these communications reflect Rep. Perry's (and other Members') dismay about former President Trump's electoral defeat in 2020, and actions that he and other Members could take as individuals—outside of the formal operations of Congress—to

46

challenge that result. At best, these communications were merely incidental to Rep. Perry's ECA vote, and as such are "beyond the legitimate legislative needs of Congress" and "fall[] outside of legislative immunity." *McSurely*, 553 F.2d at 1285–86 (quotation marks omitted).[19]

In sum, 164 of Rep. Perry's 611 communications with other Members and staff contain privileged information.[20] Specifically, only Rep. Perry's responsive records with Members and staff that directly concern legislative activities— *i.e.*, his conversations with Members and/or staff about votes, strategy in preparation for votes, committee assignments, and HFC Board elections, and internal, electronic newsletters he received discussing votes or legislation—are privileged under the Clause because they involve communications integral to the legislative process. The remainder of his communications with Members and/or staff—*i.e.*, his conversations about press coverage and political messaging, his communications about fraud and security concerns in the 2020 election, and general newsletters he received from House GOP leadership—are political in

---

[19] For the same reason, responsive records consisting of purely political communications amongst Rep. Perry and his staff must be fully disclosed to the governmen ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Such communications generally reflecting Rep. Perry and/or his staff member's personal views of House leadership do not relate directly to legislative matters, but are, at best, only tangential to core legislative activity, so they are not protected.

[20] Three responsive records are communications between Rep. Perry and his legislative directo ▮▮▮
▮▮▮▮▮hat contain both privileged and non-privileged information, and therefore privileged portions regarding legislative activity may be withheld, with redactions, and the remaining non-privileged responsive portions of these three records may be disclosed to the governmen ▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

nature rather an integral part of the legislative process, so they must be disclosed to the government.

### 3. Communications With Executive Branch Officials

Rep. Perry's final category of responsive records consists of 930 responsive records containing communications with Executive Branch officials that focus principally on claims of election fraud in the 2020 presidential election and strategies to keep former President Trump in office.[21] Conceding "the fact that Rep. Perry was communicating with executive branch officials . . . is not determinative of the applicability of the Speech or Debate Clause," Perry Mot. at 10–11, Rep. Perry nonetheless asserts these communications are protected because, like his communications with private individuals, including Trump Campaign staff, and State legislative officials, he engaged in these communications "for the purpose of obtaining information that might further Rep. Perry's legislative responsibilities and purpose[,]" *id.* at 11.[22]

---

[21] ████████████████████████████████████████████████████
████████████████████████████████████████████████████

[22] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Rep. Perry is wrong. None of these communications are protected by the Clause. First and foremost, the entire premise of Rep. Perry's claim for privilege over these communications would turn the Clause's foundational purpose on its head. That purpose is straight-forward and simple: to "preserve the constitutional structure of separate, coequal, and independent branches of government . . . [by preventing] intrusion by the Executive and the Judiciary into the sphere of protected legislative activities." *Helstoski*, 442 U.S. at 491; *see also id.* (quotation marks omitted) ("[T]he privilege was [] born primarily of a desire . . . to prevent intimidation by the executive and accountability before a possibly hostile judiciary."). Rep. Perry's communications with Executive Branch officials, as reflected in the responsive records, demonstrate that he welcomed, rather than resisted, and indeed often initiated these communications to relay information or urge consideration of a strategy by the White House or specific action to be taken by the White House, the Trump Campaign, or DOJ. His efforts to engage with Executive Branch officials about election fraud and procedural mechanisms, including during the ECA process, to overturn the election result were proactive, persistent, and protracted. Given the Clause's purpose to protect congressional Members from untoward interference from the Executive Branch with legislative matters, Rep. Perry's reliance on the Clause to shield his multi-pronged push for Executive Branch officials to take more aggressive action is not only ironic but also must fail as beyond the scope of the Clause.

The Supreme Court recognized this significant limit on the Clause's scope in *Gravel*, observing that "Members of Congress are constantly in touch with the Executive Branch of the

---

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████.

Government and with administrative agencies—they may cajole, and exhort with respect to the administration of a federal statute—but such conduct, though generally done, is not protected legislative activity." 408 U.S. at 625. Indeed, Rep. Perry's communications with ▓▓▓▓▓▓ bout coordinating efforts to gather information about the 2020 election in Pennsylvania cannot fairly be characterized as pure "fact-gathering activities" to determine the validity of the 2020 election in Pennsylvania and other states, as he suggests in his motion. *See* Perry Mot. at 9–10. Instead, these communications show that Rep. Perry was furnishin ▓▓▓▓▓▓ ith purported evidence of voting fraud—as opposed to seeking that information for his own fact-finding efforts—so th ▓▓▓▓▓▓, and presumably others in the Executive Branch, could take action to challenge the 2020 election results. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓. If Rep. Perry was purely gathering information, he would not have been "attempt[ing] to influence the conduct of executive" branch officials and encouraging them to engage in efforts to challenge the legitimacy of the 2020 election. *See Hutchinson*, 443 U.S. at 122 n.10. Set against the backdrop of the Supreme Court's firm statement in *Gravel* that a

Member's communications with the Executive Branch are political and not legislative, Rep. Perry's communications with these officials are plainly not protected by the Clause.

For the above reasons, Rep. Perry's assertion of privilege over his 930 communications with Executive Branch officials cannot be sustained and these responsive records must be disclosed to the government.

## III.    CONCLUSION

For the reasons stated above, Rep. Perry's Motion, ECF No. 21, is **GRANTED IN PART AND DENIED IN PART**.  Accordingly, Rep. Perry must disclose to the government the vast majority of the 2,219 responsive records, with attachments, from Rep. Perry's cell phone submitted for review to the Court, with only 164 records requiring redaction or withholding on the basis of privilege under the Speech or Debate Clause.

Date: December 28, 2022

BERYL A. HOWELL
Chief Judge

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF : | Case No. 22-sc-2144 |
| THE FORENSIC COPY OF THE CELL : | |
| PHONE OF REPRESENTATIVE : | Chief Judge Beryl A. Howell |
| SCOTT PERRY : | |
| : | **UNDER SEAL** |

## NOTICE OF APPEAL

Notice is hereby given that Representative Scott G. Perry, by and through counsel and pursuant to 28 U.S.C. § 1291, hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the Order of this Court entered on December 28, 2022, granting in part and denying in part his motion to withhold from the Government, on the basis of Speech or Debate privilege, access to certain records it seized from his cell phone.

December 30, 2022                    Respectfully submitted,

**JPROWLEY LAW PLLC**

    /s/ John P. Rowley III
By: John P. Rowley III (D.C. Bar No. 392629)
    1701 Pennsylvania Avenue, N.W., Suite 200
    Washington DC 20006
    Telephone: (202) 525-6674
    Email: jrowley@secillaw.com


**E & W LAW, LLC**

    /s/ John S. Irving
By: John S. Irving(D.C. Bar No. 460068)
    1455 Pennsylvania Ave., N.W., Suite 400
    Washington, D.C. 20004
    john.irving@earthandwatergroup.com
    (301) 807-5670

    Counsel for Representative Scott G. Perry

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of December 2022, a copy of the foregoing

Notice of Appeal was served on the Government via electronic mail.

       /s/ John P. Rowley III_____
       John P. Rowley III (D.C. Bar No. 392629)

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ : |  |
| IN THE MATTER OF THE SEARCH OF : | **Case No. 22-sc-2144** |
| THE FORENSIC COPY OF THE CELL : |  |
| PHONE OF REPRESENTATIVE : | **Chief Judge Beryl A. Howell** |
| SCOTT PERRY : |  |
| : | **UNDER SEAL** |
| _____ : |  |

## EMERGENCY MOTION TO STAY
## <u>THIS COURT'S DECEMBER 28, 2022 ORDER PENDING APPEAL</u>

Representative Scott G. Perry, by and through counsel and pursuant to Federal Rule of Appellate Procedure 8(a)(1), respectfully moves for a stay of this Court's December 28, 2022, Order granting in part and denying in part his motion to withhold from the Government access to certain records it seized from his cell phone and directing Rep. Perry to provide over 2,000 of those records to the Government by January 5, 2023. As set forth in the accompanying Memorandum of Law in Support of this motion, Rep. Perry asserts that the Speech or Debate Clause, U.S. CONST. art. 1 § 6, cl.1, and controlling precedent by the Supreme Court and this Circuit, prohibit the disclosure ordered by this Court. Accordingly, he respectfully requests that the Court stay implementation of its Order pending review by the United States Court of Appeals for the District of Columbia Circuit.

December 30, 2022                    Respectfully submitted,


**JPROWLEY LAW PLLC**

___/s/ John P. Rowley III_____
By: John P. Rowley III (D.C. Bar No. 392629)
1701 Pennsylvania Avenue, N.W., Suite 200
Washington D.C. 20006
Telephone: (202) 525-6674
Email: jrowley@secillaw.com

1

**E & W LAW, LLC**

   __/s/ John S. Irving_____
By: John S. Irving(D.C. Bar No. 460068)
    1455 Pennsylvania Ave., N.W., Suite 400
    Washington, D.C. 20004
    (301) 807-5670
    john.irving@earthandwatergroup.com

    Counsel for Representative Scott G. Perry

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 30th day of December 2022, a copy of the foregoing

pleading was served on the Government via electronic mail.

    /s/ John P. Rowley III_____
    John P. Rowley III (D.C. Bar No. 392629)

2

**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF : | Case No. 22-sc-2144 |
| THE FORENSIC COPY OF THE CELL : | |
| PHONE OF REPRESENTATIVE : | Chief Judge Beryl A. Howell |
| SCOTT PERRY : | |
| : | **UNDER SEAL** |

**MEMORANDUM OF LAW IN SUPPORT
OF REPRESENTATIVE SCOTT G. PERRY'S EMERGENCY MOTION
TO STAY THIS COURT'S DECEMBER 28, 2022, ORDER PENDING APPEAL**

Representative Scott G. Perry, by and through counsel and pursuant to Federal Rule of Appellate Procedure 8(a)(1), respectively moves for a stay pending appeal of the Court's December 28, 2022, Order granting in part and denying in part his motion to withhold from the Government, on the basis of Speech or Debate privilege, access to certain records it seized from his cell phone. In support thereof Representative Perry states as follows:

### INTRODUCTION

On December 28, 2022, the Court issued an Order (Dkt. 24) and Memorandum Opinion (Dkt. 25) granting in part and denying in part Rep. Scott Perry's motion for non-disclosure to the Government of information contained on his mobile phone pursuant to the Speech or Debate Clause of the United States Constitution. U.S. CONST. art. 1 § 6, cl.1. The Court's Order follows its *in camera* review of 2,219 documents over which Rep. Perry asserts Speech or Debate privilege. The Court agreed with Rep. Perry's assertion of privilege as to 161 of those records and directed him to provide the Government with the following documents by January 5, 2023: (a) three redacted documents, and (b) 2,055 documents that the Court determined were not protected by the Speech or Debate Clause.

1

Concurrently with this Motion, Rep. Perry is filing a Notice of Appeal of the Court's Order to the United States Court of Appeals for the District of Columbia Circuit, and he respectfully requests that this Court stay its Order pending that appeal.[1]

## PROCEDURAL BACKGROUND

On August 2, 2022, United States Magistrate Judge Susan E. Schwab of the United States District Court for the Middle District of Pennsylvania issued a warrant authorizing the seizure of Rep. Perry's cellular telephone. On August 9, 2022, Special Agents from the Federal Bureau of Investigation executed the warrant by seizing the phone and creating a forensic image of it. They then returned the physical phone to Rep. Perry.

On August 18, 2022, Rep. Perry filed an emergency motion for the return of seized property and for injunctive relief in U.S. District Court for the District of Columbia Case Number 1:22-MC-00079, requesting an opportunity to review the information obtained from his mobile phone prior to disclosure to the Government pursuant to *United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515*, 497 F.3d 654 (D.C. Cir. 2007). On the same date, the Government obtained a second search warrant under seal (D.D.C. Case No. 22-SC-2144) authorizing the review of information on the seized phone subject to a process similar to that proposed by Rep. Perry in his motion. Under the warrant, Rep. Perry had 30 days to review the information on the phone and provide the Government with a log of all records he asserted were subject to Speech or Debate privilege. The Government would then, as needed, request that the

---

[1] The Court's December 28, 2022, Order is a final decision of the Court pursuant to 28 U.S. Code § 1291, and Rep. Perry is entitled to an appeal to the D.C. Circuit. *See Helstoski v. Meanor*, 422 U.S. 500, 506 (1979) ("We agree that the guarantees of the Clause are vitally important to our system of government and are therefore entities to be treated by the courts with the sensitivity that such important values require . . . There can be no doubt that such orders [denying speech or debate protection] constitute a complete, formal . . . final rejection of a" member's speech or debate rights just as a claim of double jeopardy does).

Court review those records and make a final determination as to whether the records contained privileged information.[2]

On October 5, 2022, counsel for Rep. Perry moved for additional time to review the extensive information contained in the forensic image from his phone (ECF 7). The Government filed an opposition to that motion, and Rep. Perry replied on October 13, 2022.[3] On October 14, 2022, the Court issued a Minute Order directing counsel for Rep. Perry to provide additional specifics about the volume or records from the phone and the progress of the review, which counsel did on October 17, 2022.

The parties appeared before the Court on October 18, 2022, and the Court issued a Minute Order on that date setting forth a schedule for counsel for Rep. Perry to complete his review and for the Government to advise the Court as to which of the records identified by counsel as privileged the Government wished the Court to review. Pursuant to that Order, on October 18, October 25, October 28, November 4, and November 11, 2022, counsel for Rep. Perry provided the Government with (a) privilege logs for the documents that they assert are privileged under the Speech or Debate Clause and (b) document productions for those records they do not believe are privileged. Also pursuant to the Court's Order, the Government filed on October 27, 2022, a Brief Regarding the Inapplicability of the Speech or Debate Clause to Materials Seized from Rep. Perry.

The Government requested that the Court review all the documents over which Rep. Perry asserted privilege arguing, essentially, that it was unable to narrow its request because it was

---

[2] After the Government advised counsel for Rep. Perry of the second search warrant, the undersigned counsel moved on August 24, 2022, to have his emergency motion in Case No. 22-MC-00079 held in abeyance. The Court granted that motion and later, on October 27, 2022, granted Rep. Perry's motion to dismiss his motion without prejudice on October 26, 2022.

[3] Counsel for Rep. Perry does not have access to the docket in this sealed matter on the Court's Pacer system and so does not have dates for some events in this case.

3

unable to review the information to make that determination. Rep. Perry responded in a filing on October 31, 2022, and provided the Court with an *ex parte* explanation of the communications over which he asserted privilege, as well as the facts surrounding those communications, to provide the Court with context necessary to make its privilege determinations.

On November 4, 2022, the Court issued a Memorandum Opinion and Order (ECF 18) that, *inter alia*, set forth the logistics for counsel for Rep. Perry to provide the documents to the Court for review and directed counsel to submit a motion for withholding as subject to the Speech or Debate Clause privilege.[4] On November 15, 2022, Rep. Perry submitted an unopposed request to modify the Court's Order (ECF 20), which the Court granted in part on November 16, 2022, directing counsel for Rep. Perry to provide an Excel spreadsheet listing the documents they assert are privileged, pdf copies of those documents, and a motion for nondisclosure to the Government, explaining the key topics that the communications and records relate to and providing the basis for Rep. Perry's assertion for privilege under the Clause with respect to each topic.

Pursuant to the Court's modified Order, Rep. Perry filed a Motion for Nondisclosure to the Executive Branch of Information Protected by the Speech or Debate Clause of the United States Constitution on November 28, 2022 and provided the Court with 2,219 documents for *in camera* review. On December 28, 2022, the Court granted that motion, in part, agreeing that 161 of the

---

[4] The Court's November 4, 2022, Order also directed counsel for Rep. Perry to assign each communication to five categories that he had identified in a pleading filed on October 31, 2022. The Court's modification of that Order on November 16, 2022, directed counsel for Rep. Perry to provide the Government with that information, as well. While counsel for Rep. Perry had identified those five categories, they had not assigned all of the documents reviewed into those categories. Counsel for Rep. Perry re-reviewed the documents that it had already included in privilege logs to the Government in its ongoing productions and ensured that each was assigned to a category and that each had notes explaining the context of the communications. Through that process and retroactively applying the Court's discussion of the Speech or Debate Clause in its November 4, 2022, Order, counsel for Rep. Perry was able to reconsider its position on approximately 407 documents. On November 18, 2022, counsel for Rep. Perry provided the Government with a revised privilege log and the documents as to which they no longer asserted privilege.

2,219 documents were protected from disclosure by the Speech or Debate Clause and controlling precedent in this Circuit. The Court ordered that Rep. Perry provide three of the 2,219 documents to the Government in redacted form, and denied Rep. Perry's motion as to 2,055 of the documents. It ordered Rep. Perry to disclose those documents to the Government by January 5, 2023.

## ARGUMENT

This Court should temporarily prevent any disclosure to the Government of information that Rep. Perry has asserted is protected by the Speech or Debate Clause until Rep. Perry's appeal to the D.C. Circuit is resolved. A district court has "broad discretion" to stay proceedings as an incident to its power to control its own docket. *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "In determining whether to stay an order pending appeal, the Court considers the same four factors as it would in resolving a motion for a preliminary injunction: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *In re Special Proc.*, 840 F. Supp. 2d 370, 372 (D.D.C. 2012) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The stay applicant has the obligation to justify the court's exercise of the remedy. *See id.* Where, as is the case here, the Government is the opposing party, the third and fourth factors merge. *Nken*, 556 U.S. at 435.

Historically, courts in the District of Columbia Circuit have analyzed the four factors on a "sliding scale," "allow[ing] that a strong showing on one factor could make up for a weaker showing on another." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). The "'sliding scale' framework allows a movant to remedy a lesser showing of likelihood of success on the merits with a strong showing as to the other three factors, provided that the issue on appeal presents a 'serious

legal question' on the merits." *Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 317 F. Supp. 3d 555, 560 (D.D.C. 2018) (citation omitted).

While the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), "arguably casts some doubt" on the sliding scale approach, "it has not been overruled by either the Supreme Court or the D.C. Circuit." *Hailu v. Morris-Hughes*, No. 1:22-CV-00020-APM, 2022 WL 1124796, at *1 (D.D.C. Apr. 14, 2022). *See also, e.g.*, *Cigar Ass'n of Am.*, 317 F. Supp. 3d at 560; *D.C. Int'l Pub. Charter Sch. V. Lemus*, No. 1:21-CV-0223-RCL, 2022 WL 873549, at *2 (D.D.C. Mar. 24, 2022); *Mallinckrodt Ard LLC v. Verma*, No. 1:19-CV-1471-TFH, 2020 WL 7265325, at *5 (D.D.C. May 29, 2020). Instead, the D.C. Circuit has "read *Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction." *Sherley*, 644 F.3d at 393 (citation and internal quotation marks omitted).

Consideration of the balance of factors supports granting a stay of the Court's December 28, 2022, Order.

### A. It is Likely that Rep. Perry will Succeed on the Merits of his Appeal

The Court is mistaken in its conclusion that the Speech or Debate Clause does not protect Rep. Perry's efforts to investigate information that would inform his duties as a Member of Congress. The linchpin for the Court's rationale, as expressed throughout its opinion, is that 2058[5] of the records over which Rep. Perry asserted Speech or Debate privilege are subject to disclosure to the Government because "informal investigative efforts or fact-finding inquiries untethered to a formally sanctioned congressional inquiry [are] unprotected." Memorandum at 21. This is

---

[5] This number includes the three documents where the Court required Rep. Perry to provide in redacted form, although the Court essentially did so by attaching those redacted documents to its Order.

6

contrary to the holdings of the Supreme Court and the D.C. Circuit and likely will be the basis of a reversal on appeal.

Relying on the D.C. Circuit's decision in *McSurely v. McClellan*, 553 F.2d 1277 (1976), the Court held that for the privilege to apply to "field investigations" by a Member of Congress the inquiry must have been *congressionally authorized*. Memorandum at 22 (citing *McSurely* at 1286-88) (emphasis added). This misstates the D.C. Circuit's rationale in *McSurely* which is based on the Supreme Court's requirement that such activities only be "an integral part of the deliberative (or) communicative processes by which Members participate in committee and House proceedings." *Gravel v. United States*, 408 U.S. 606, 625 (1972). A Member of Congress' "participation in House proceedings" is not restricted to "congressionally authorized" activities. Moreover, the privilege arises from a representative's status as a Member of Congress. The privilege is not tethered to formally sanctioned congressional inquiry. *In re Grand Jury Investigation Into Possible Violations of Title...,* 587 F.2d 589 (3rd 1978) ("[The Speech or Debate] privilege, although of great institutional interest to the House as a whole, is also personal to each member.")

The primary inquiry when determining the applicability of the Speech or Debate Clause to Rep. Perry's communications is whether he, as a Member of Congress, was engaged in information gathering as "part of, in connection with, or in aide of a legitimate legislative act" that is protected by the Clause, even where it is an informal effort undertaken by an individual Member of Congress or their staff.[6] There is no judicially established requirement that a Member's activities

---

[6] The Court inaccurately – and we submit, unfairly – repeatedly characterizes Rep. Perry's activities as "political" rather than having a legislative purpose. (*e.g.,* "No matter the Perry pursued his wide-ranging interest in bolstering his belief that the results of the 2020 election were somehow incorrect - even in the face of his own reelection - his informal inquiries into the legitimacy of those election results are closer to the activities described as purely personal or political in *Brewster* …" Memorandum at 33). All elected

be "congressionally authorized" by formal resolution of as part of an investigation conducted by a committee.[7] *See McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976); *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007); *Pentagen Tech. Int'l, Ltd v. Comm. On Appropriations*, 20 F. Supp. 2d 41, 44 (D.D.C. 1998). *See also United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988).

Legislative information gathering is distinct from investigative acts that a Member pursues on behalf of an investigative committee, where the committee's investigative authority is exercised by the Member. Here, the communications over which Rep. Perry has asserted privilege involve efforts to gather information about the security of the 2020 election and the validity of the electors required to certify the election, a vote that he was called upon to cast under the United States Constitution, and the Electoral Count Act. Rep. Perry's communications also were conducted in furtherance of his efforts to ensure the security of our elections in the future and to help determine the most appropriate vehicles to do so.[8] Activities of this type inherently have a legislative purpose and are fundamental to the obligations a Member has to his constituents and the Nation. There is no requirement that this legislative information gathering be formally authorized by a congressional committee or the House of Representatives.

---

officeholders, including Members of Congress, engage in *political* activities. That does not exclude their legitimate legislative activities from the protections of the Speech or Debate Clause.

[7] If this were not the case, only Members in the majority would be eligible for Speech or Debate protections over communication conducted during formal majority-authorized fact finding and investigations.

[8] Rep. Perry's fact-finding regarding election integrity occurred at the same time as the Democrats in Congress had proposed to enact H.R. 1, the "For the People Act", which addressed voter access, election integrity and security, campaign finance, and ethics for the three branches of government. H.R. 1 passed the House of Representatives on March 3, 2021 (https://www.congress.gov/bill/117th-congress/house-bill/1) and was subsequently blocked from passage in the Senate.

Rep. Perry has been a Member of Congress since 2013, initially representing Pennsylvania's Fourth District, and then its newly redistricted Tenth District. He serves on the House Committee on Transportation & Infrastructure and on the House Committee on Foreign Affairs. He previously served for three terms on the House Committee on Homeland Security, which has jurisdiction over election issues, and he sought the position of Ranking Member of that Committee at the beginning of the current legislative term in January 2021. Rep. Perry is also a member of, and the recently elected Chairman for, the House Freedom Caucus, whose mission is "to give a voice to countless Americans who feel that Washington does not represent them. We support open, accountable, and limited government, the Constitution and the Rule of Law, and policies that promote the liberty, safety, and prosperity of all Americans."[9] In those roles, Rep. Perry has an even greater involvement than other representatives in activities that can accurately be described as "legislative."

Acting in real time, Rep. Perry endeavored to conduct fact-finding into national security concerns about whether the 2020 Presidential election had been corrupted. Regardless of whether those concerns endure today, they certainly appeared credible to many people at the time. Rep. Perry believed he had an obligation as a Member of Congress to determine what had happened to the extent he could and then propose legislative solutions. This included information gathering that is "part of, in connection with, or in aide of a legitimate legislative act," even where that is an informal effort undertaken by an individual Member of Congress or their staff. Accordingly, the

---

[9] Prior to his election to Congress, Rep. Perry served in the United States military for nearly forty years, rising from the enlisted ranks to the rank of Brigadier General and the Assistant Division Commander of the 28th Infantry Division. His duties during those nearly four decades of military service included briefings and communications with members of the intelligence community about threats to the United States at home and abroad.

communications over which he asserted privilege cannot be disclosed to the Government without violating the separation of powers between the Legislative and Executive branches of government.

**B. Rep. Perry Will Be Irreparably Harmed Absent a Stay**

Infringement of constitutional rights or immunities "unquestionably constitutes irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This Court has agreed that the loss of a "constitutional privilege of critical importance," such as the protections under the Speech or Debate Clause, "would constitute the type of harm that is sufficient to satisfy the irreparable harm prong of the stay analysis." (internal quotations omitted). *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 81 (D.D.C. 2007). *See also United States v. Rayburn House Off. Bldg., Room 2113*, Washington, D.C. 20515, 497 F.3d 654, 658 (D.C. Cir. 2007) (stay granted pending appeal on Speech or Debate Clause grounds); *In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 522 (3d Cir. 2015)(same).

Rep. Perry will unquestionably suffer irreparable harm absent a stay. Once his communications are disclosed to the Government, there is no possibility of remedy in the event of a remand or reversal by the Court of Appeals. The disclosure would not be remediable once the private communications were shared with the Government and, quite possibly, other third parties. In short, it will be impossible to "put the toothpaste back in its tube," and the damage to the protections Rep. Perry has under the Speech or Debate Clause will have been done.

**C. Issuance of the Stay Will Not Substantially Injure Other Parties**

Issuing a temporary stay in this matter will not substantially injure the Government, which is the only other party interested in this sealed proceeding. While the Court has expressed its understandable concern that the Government's investigation into the events surrounding January

10

6th not be impeded, many investigative avenues remain available to the Government in the temporary absence of the communications from Rep. Perry's phone. It has been widely reported, for example, that the Government has also seized mobile phones from former Assistant Attorney General Jeffrey Clark[10] and Trump Campaign attorney John Eastman,[11] and it has served grand jury subpoenas on members of the Pennsylvania State Legislature.[12] It is inconceivable that the Government has not taken similar measures with respect to Trump Campaign officials and attorneys, Trump Administration officials, and the cybersecurity-related individuals that are intertwined in the relevant communications. It is also unlikely that the Government has not already obtained most, if not all, of the communications at issue here by other means. Indeed, the Government's insistence on obtaining the same information from a sitting Member of Congress is puzzling. In addition, Rep. Perry has already provided the Government with 12,944 records from his phone that he does not believe are protected by the Speech or Debate Clause. Any marginal negative effect on the Government's investigation that a temporary stay would have in this matter would be substantially outweighed by the irreparable harm suffered by Rep. Perry.

### D. Granting a Stay is in the Public Interest

The public interest will be served by granting a stay of the Court's Order. The "central role" of the Speech or Debate Clause is "to prevent intimidation of legislators by the Executive

---

[10] *See* Ryan J. Reilly, "Jeffrey Clark, whom Trump considered for AG, had phone seized in obstruction probe," *NBC News*, September 15, 2022 (available at https://www.nbcnews.com/politics/justice-department/jeffrey-clark-trump-considered-ag-phone-seized-obstruction-probe-rcna47923).

[11] *See* Devlin Barrett, "Agents seize phone of lawyer who pushed Trump false elector claims," The Washington Post, June 27, 2022 (available at https://www.washingtonpost.com/national-security/2022/06/27/eastman-phone-seized-fbi-jan6/).

[12] *See* Mark Moore, "FBI subpoenas Pennsylvania GOP lawmakers in 2020 'fake electors' plot: report," New York Post, August 11, 2022 (available at https://nypost.com/2022/08/11/fbi-subpoenas-penna-gop-lawmakers-in-fake-electors-plot/).

and accountability before a potentially hostile judiciary." *Gravel v. United States*, 408 U.S. 606, 617 (1972). See also *United States v. Myers*, 635 F.2d 932, 935–36 (2d Cir. 1980) ("[T]he Speech or Debate Clause . . . serves as a vital check upon the Executive and Judicial Branches to respect the independence of the Legislative Branch, not merely for the benefit of the Members of Congress, but, more importantly, for the right of the people to be fully and fearlessly represented by their elected Senators and Congressmen."); *Jewish War Veterans of U.S.*, 522 F. Supp. 2d at 83 (finding the public interest was best served by granting a stay with respect to production of documents allegedly protected from disclosure by the Speech or Debate Clause).

Rep. Perry is not the sole stakeholder in this case. His constituents also have an interest in ensuring that he is able on their behalf to investigate facts that are central to his legislative activity without fear of reprisal. Moreover, the House of Representatives has important institutional interests in the Speech or Debate issues presented by this case. It is not uncommon for the House of Representatives, through its General Counsel's Office, to file as *amicus curiae* brief in cases that raise significant Speech or Debate Clause issues.[13] The 118th Congress will meet for the first time next week, on January 3, 2023. After the new Speaker is elected, counsel for Rep. Perry will

---

[13] *See, e.g.,* Br. of *Amicus Curiae* the [House] in Supp. of Pet'r, *Renzi v. United States,* No. 11-557, 2011 WL 6019914 (Sup. Ct, Dec. 2, 2011); Br. of the [House] *as Amicus Curiae, United States v. Renzi,* No. 13-10588 (9th Cir., Apr. 18, 2014) (ECF No. 40); Br.of the [House] as Amicus Curiae Supporting Affirmance . . ., *United States v. Verrusio,*No. 11-3080 (D.C. Cir. Feb. 5, 2013) (ECF No. 1418891); Br. of the [House] *as Amicus Curiae* in Supp. of Pet. for Reh'g *En Banc, United States v. Renzi,* Nos. 10-10088, 10122 (9th Cir., July 18, 2011) (ECF No. 46-1); *United States v. Renzi,* 651 F.3d 1012, 1015 (9th Cir. 2011); *In re Grand Jury Subpoenas,* 571 F.3d 1200 (D.C. Cir. 2009); *Fields v. Office of Eddie Bernice Johnson,* 459 F.3d 1, 3 (D.C. Cir. 2006) (en banc); *Beverly Enters., Inc. v. Trump,* 182 F.3d 183, 186 (3d Cir. 1999); *United States v.McDade,* 28 F.3d 283, 286 (3d Cir. 1994); *United States v. Swindall,* 971 F.2d 1531, 1534 (11th Cir. 1992); *United States v. Biaggi,* 853 F.2d 89, 90 (2d Cir. 1988); Mem. Of the [House] as *Amicus Curiae* Regarding Gov't's Contingent Mot. to Admit Evidence, *United States v. Renzi,* No. 4:08-cr-00212 (D. Ariz., May 6, 2013) (ECF No. 1168); Mem. of P. & A. as *Amicus Curiae* of the [House], *United States v. Renzi,* No. 4:08-cr-00212 (D. Ariz., Nov. 24, 2008) (ECF No. 198); *In re Search of Rayburn House Bldg,* 432 F. Supp. 2d 100, 105 (D.D.C. 2006), *rev'dsub nom., United States v. Rayburn House Office Bldg.,* 497 F.3d 654 (D.C. Cir. 2007).

request that the Court grant access to the sealed proceedings in this case so that the General Counsel of the House of Representatives may directly represent Congress' institutional prerogatives. Maintaining the status quo would provide the House of Representatives with an opportunity to weigh in on this important matter that will help to define the protections under the Speech or Debate Clause, and it is in the public's interest that this Court extend that opportunity to its co-equal branch by staying its Order pending appeal.

December 30, 2022                    Respectfully submitted,

**JPROWLEY LAW PLLC**

   /s/  John P. Rowley III
By: John P. Rowley III (D.C. Bar No. 392629)
   1701 Pennsylvania Avenue, N.W., Suite 200
   Washington DC 20006
   Telephone: (202) 525-6674
   Email: jrowley@secillaw.com

**E & W LAW, LLC**

   /s/ John S. Irving
By: John S. Irving(D.C. Bar No. 460068)
   1455 Pennsylvania Ave., N.W., Suite 400
   Washington, D.C. 20004
   john.irving@earthandwatergroup.com
   (301) 807-5670

Counsel for Representative Scott G. Perry

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of December 2022, a copy of the foregoing pleading was served on the Government via electronic mail.

   /s/ John P. Rowley III
John P. Rowley III (D.C. Bar No. 392629)

13

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY** | **Case No. 22-SC-2144**<br><br>**<u>Filed Under Seal</u>** |

**<u>UNITED STATES' OPPOSITION TO MOTION FOR STAY PENDING APPEAL</u>**

On December 28, 2022, this Court entered an order permitting Representative Scott Perry to withhold from the Government all or part of 164 records from his personal cell phone that he claimed were privileged under the Speech or Debate Clause, but the Court rejected Rep. Perry's claims of privilege with respect to 2,055 additional records and directed Rep. Perry to disclose those records to the Government. ECF No. 24. The Court reviewed the 2,219 records pursuant to the protocol set forth in an attachment to the warrant that authorized a search of a forensic copy of Rep. Perry's cell phone. Rep. Perry has now filed a notice of appeal (ECF No. 26) and seeks a stay of the Court's order pending the appeal (ECF No. 27).

Rep. Perry does not make the showing required to obtain the extraordinary relief of a stay pending appeal. The stay motion should accordingly be denied.

**BACKGROUND**

A federal grand jury is "investigating potential federal criminal law violations stemming from efforts to overturn the 2020 presidential election." ECF No. 25 at 2. In August 2022, a federal magistrate judge in the Middle District of Pennsylvania found probable cause to believe that Representative Scott Perry's personal cell phone would contain evidence of a crime and approved a warrant to seize the phone and obtain a forensic extraction of its contents. *Id.* at 2, 4. Pursuant to the warrant, the Government seized the cell phone, made a forensic copy, and promptly returned

the phone to Rep. Perry. *Id.* at 4. This Court subsequently also found probable cause to believe that Rep. Perry's cell phone would contain evidence of a crime and approved a warrant to search the forensic extraction of the phone. *Id.* at 2, 4-5.

Recognizing that Rep. Perry's cell phone might contain records "that are protected by the Speech or Debate Privilege," Attachment C to the warrant set forth a protocol to "ensure that an appropriate opportunity is afforded to Congressman Perry to either waive or assert the Privilege, prior to any review of the content of the Extraction by employees of the Executive Branch." Attachment C, ¶ 1. The protocol stated that the Government would provide Rep. Perry with a copy of the extraction, Rep. Perry would have an opportunity to assert the Speech or Debate privilege over records in the extraction, and the Government could then "request that the District Court review the records over which Congressman Perry has asserted privilege in order for the Court to make a final determination whether they contain privileged information." *Id.* ¶ 2. The Government argued (ECF No. 13 at 1-2) that governing authority did not require the Court to apply these procedures and that the Court should so rule but should nonetheless implement the protocol to avoid investigation-delaying litigation over the scope and applicability of the D.C. Circuit's decision in *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654 (D.C. Cir. 2007) (*Rayburn*).

This Court concluded that there were "valid distinctions from the circumstances in *Rayburn*, but prudence dictates compliance with Attachment C" because "*Rayburn* is written sufficiently broadly to contemplate" it would cover the search of Rep. Perry's phone. ECF No. 18 at 7; *see* ECF No. 25 at 7-8. The Court also determined that Rep. Perry bore the "burden of establishing that specific records or communications should be withheld from the government under the Clause." ECF No. 25, at 8; *see* ECF No. 18, at 8-9.

Rep. Perry received a copy of the forensic extraction from his phone and claimed that 2,219 records on the phone were privileged under the Speech or Debate Clause and should not be disclosed to the Government. ECF No. 25 at 2-3, 5, 9-10. Rep. Perry provided a motion and an *ex parte* submission to the Court in support of his privilege claims. *Id.* at 9. He categorized the records—which took the form of emails and text communications, some with attachments—based on the participants in the communications, with categories for one or more of the following types of participants: "Cybersecurity Individuals," "Members & Staff," "Executive Branch Officials," "Trump Campaign Officials," "Pennsylvania State Legislators," and "Others" (a catchall category). *Id.* at 9-10, 25-26. Rep. Perry broadly argued that the communications were privileged because they reflected his "information gathering" in preparation for his participation in the counting of electoral votes at the joint session of Congress on January 6, 2020. *Id.* at 26.

The Court conducted an *in camera* review of the 2,219 records upon the Government's request and determined that 164 records were privileged (in whole or in part) but that the remaining 2,055 records were not privileged and should be made accessible to the Government. The Court explained that the "Clause's protections apply only to a Member's legislative acts or activities that are 'integral' to a Member's participation in 'the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.'" ECF No. 25 at 17 (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)). The Court identified three general principles that guided its privilege review: (1) "the Clause does not protect conduct only tangentially related, but not necessary or integral, to official legislative action," ECF No. 25 at 18; (2) "though each legislative act inherently carries potential political consequences, general political activities are unprotected by the Clause," *id.* at 19; and (3) a "Member's informal investigative efforts or fact-finding inquiries untethered to a formally

sanctioned congressional inquiry remain unprotected," *id.* at 21. The Court conducted a thorough, detailed review of the 2,219 records and concluded that 161 records were privileged, 3 records were partially privileged and should be provided to the Government in redacted form, and the remaining 2,055 records were not privileged. *Id.* at 2-4, 25-51.

## APPLICABLE LEGAL STANDARD

A stay pending appeal is "an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation and internal quotation marks omitted). A stay pending appeal is "extraordinary relief." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) ("CREW"). A movant seeking a stay pending appeal bears the burden of demonstrating that a stay would be appropriate. *Nken*, 556 U.S. at 433-34. A court considering whether to grant a stay pending appeal considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. The last two factors "merge when the Government is the opposing party." *Id.* at 435.

The first two factors—likelihood of success on the merits and irreparable injury—"are the most critical," *id.*, and the likelihood of success is the "most important," *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). With respect to that paramount factor, "[i]t is not enough that the chance of success on the merits [is] better than negligible." *Nken*, 556 U.S. at 434 (citation and quotation marks omitted). Rather, the likelihood of success on appeal must be "substantial." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). The failure to make this requisite showing is "arguably [a] fatal flaw for a stay application."

*CREW*, 904 F.3d at 1019. As for the second factor, it is not enough to show the mere "possibility of irreparable injury." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). "Irreparable harm must be 'both certain and great[,]' and 'actual and not theoretical.'" *CREW*, 904 F.3d at 1019 (quoting *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985)).

## ARGUMENT

Rep. Perry fails to establish that the extraordinary relief of a stay pending appeal is warranted. To the contrary, the relevant factors all weigh against a stay here. To start, Rep. Perry cannot demonstrate a substantial likelihood that he will prevail on appeal. *Rayburn* holds that the non-disclosure privilege of the Speech or Debate Clause requires that searches that will inevitably turn up privileged records be conducted according to procedures that afford the affected member of Congress an opportunity to assert privilege prior to disclosure of privileged materials to the Government. The protocol in Attachment C that was followed in this case adhered to the search procedures that the court of appeals specifically approved in *Rayburn*. The search in this case therefore fully complied with *Rayburn*, and Rep. Perry would not be entitled to any further relief on appeal. *Rayburn* does not contemplate appellate review of district court privilege determinations over voluminous documents, and indeed the court of appeals would lack appellate jurisdiction over the Court's privilege determinations. Rep. Perry also cannot show that he would suffer irreparable injury absent a stay. Although *Rayburn* determined that the Speech or Debate Clause's non-disclosure privilege helps avoid chilling the free exchange of views amongst members and their staffs, many if not most of the legislative acts of members of Congress are publicly known, and the members suffer no irreparable harm from that public disclosure. Moreover, Rep. Perry retains other protections—such as immunity for his legislative acts, the ability to preclude use of evidence of his legislative acts to obtain an indictment or conviction, and

the right to refuse to testify about his legislative acts—that vindicate his Speech or Debate rights. The public interest in expeditiously obtaining every man's evidence and avoiding disruptive delay also weighs against a stay. The motion should be denied.

I.     **Rep. Perry Fails to Demonstrate a Strong Likelihood of Prevailing on Appeal**

A.     **Rep. Perry Received the Protections Afforded by *Rayburn* and is Not Entitled to Interlocutory Appellate Review of the Court's Privilege Determinations**

This Court's implementation of the procedures in Attachment C protected any non-disclosure rights under the Speech or Debate Clause that Rep. Perry may possess under *Rayburn*. Rep. Perry is not entitled to additional procedural rights and therefore would not be able to obtain additional relief on appeal. Rep. Perry therefore cannot demonstrate a substantial likelihood of success on appeal.

In *Rayburn*, the government obtained a warrant that authorized the search of a member's congressional office and the seizure of non-privileged materials. *Id.* at 656. The warrant established "special procedures" that contemplated the use of a "filter team" within the Department of Justice to determine whether any seized materials were privileged under the Speech or Debate Clause, and return of any privileged materials to the member within ten days of the search. *Id.* at 656-57. When it executed the warrant, the government reviewed "every paper record" in the member's office—at least some of which "surely related to legislative acts" and therefore were privileged—and seized two boxes of documents. *Id.* at 657, 661. The government also "copied the hard drives on all of the computers and electronic data stored on other media." *Id.* at 657. While the appeal was pending, at a time when the government had not yet searched the electronic media, the court of appeals issued a "remand order" directing the district court to provide the member with copies of the electronic media so that he could claim privilege for any records contained

therein and the district court could conduct an *in camera* review to determine whether the records were privileged. *Id.* at 658.

The court of appeals determined that the search procedures in the warrant that permitted the government to review privileged materials without affording the member an opportunity to assert privilege before compelled disclosure to the Executive Branch violated the Speech or Debate Clause. *Id.* at 661-63. The court found that the "search of the Congressman's paper files therefore violated the Clause." *Id.* at 663. But the court found that the "copying of computer hard drives and other electronic media [was] constitutionally permissible because the Remand Order afford[ed] the Congressman an opportunity to assert the privilege prior to disclosure of privileged materials to the Executive." *Id.*

Thus "[t]he question on appeal" in *Rayburn* was "whether the *procedures* under which the search was conducted were sufficiently protective of the legislative privilege created by the Speech or Debate Clause." 654 F.3d at 655 (emphasis added). The court of appeals drew a distinction "between the lawfulness of searching a congressional office pursuant to a search warrant and the lawfulness of *the manner in which the search is executed* in view of the protections afforded against compelled disclosure of legislative materials by the Speech or Debate Clause." *Id.* at 661 (emphasis added). The court emphasized that the member had argued "only that the warrant *procedures* in this case were flawed because they afforded him no opportunity to assert the privilege before the Executive scoured his records." *Id.* at 662 (emphasis added).

The procedures in Attachment C adhered to the procedures determined to be adequate in *Rayburn* and therefore the search procedures here comported fully with the requirements of *Rayburn*. Because Rep. Perry would not be entitled to any further relief on appeal, he cannot demonstrate a substantial likelihood of success on appeal.

Nothing in *Rayburn* indicates that a member is entitled to appellate review of a district court's determination—pursuant to *Rayburn*-approved procedures such as those in Attachment C—that materials seized pursuant to a warrant are not privileged. Indeed, such review would be inconsistent with established principles of appellate jurisdiction, which limit appellate review to review of "final decisions," 28 U.S.C. § 1291, typically orders that "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment," *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 497 (1989) (quotation marks omitted). This finality requirement is particularly important in criminal cases, where interlocutory appeals can impede the speedy and effective administration of the criminal-justice system. *United States v. Ryan*, 402 U.S. 530, 532-33 (1971); *see In re Sealed Case*, 716 F.3d 603, 609 (D.C. Cir. 2013).

There are "exceptions," *In re Sealed Case*, 716 F.3d at 609, but none apply here. An order directing a party to testify or produce documents is generally not appealable. *In re Sealed Case*, 146 F.3d 881, 883 (D.C. Cir. 1998); *see In re Grand Jury Subpoenas*, 974 F.3d 842, 843-44 (8th Cir. 2020); *In re Grand Jury*, 705 F.3d 133, 142-43 (3d Cir. 2012). The exception for orders directed at disinterested third parties recognized in *Perlman v. United States*, 247 U.S. 7 (1918), is inapplicable because this Court's order is directed at the privilege holder, Rep. Perry. *See United States v. Williams Companies, Inc.*, 562 F.3d 387, 392 (D.C. Cir. 2009). Although the collateral-order doctrine permits interlocutory review of "decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (citation and quotation marks omitted), the Supreme Court has held that "the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege" because "[e]ffective appellate review can be had by other means," *id.* at 114. That conclusion applies with

equal force to disclosure orders adverse to the Speech or Debate Privilege, particularly in a criminal case, where the collateral-order doctrine is applied "with the utmost strictness," *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (citation and quotation marks omitted). Moreover, to the extent that the Court's order could be compared to an order denying a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g), appeal is not available where, as here, the party seeking relief does not solely seek the return of property and instead seeks "strategic gain at a future hearing or trial." *In re Sealed Case*, 716 F.3d at 607-08 Rep. Perry's retention of his cell phone and its contents (as well as a copy of the extraction) demonstrates that he does not seek the return of his property, let alone solely seek return. *Id.*

Rep. Perry contends (ECF No. 27 at 2 n.1) that the Court's order is appealable under *Helstoski v. Meanor*, 442 U.S. 500 (1979), but his reliance on *Helstoski* is misplaced. *Helstoski* held that an order rejecting immunity for criminal liability under the Speech or Debate Clause and denying dismissal of an indictment is appealable. *Id.* at 506-08. But the Speech or Debate Clause affords members of Congress "three distinct protections": (1) it grants members civil and criminal immunity for legislative conduct, (2) it creates an evidentiary privilege that bars the use of legislative-act evidence against a member, and (3) it creates "a testimonial and non-disclosure privilege that prevents a protected party from being compelled to answer questions about legislative activity or produce legislative materials." *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013); *see Rayburn*, 497 F.3d at 655. Although orders denying immunity are appealable, not all orders addressing Speech or Debate claims are similarly appealable. In *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995), for example, the Court determined that although the denial of a motion to dismiss an indictment was appealable, *id.* at 309, the denial of a pretrial hearing to determine whether the government

would introduce privileged material at trial was not, *id.* at 312-13; *see also United States v. Renzi*, 651 F.3d 1012, 1019 (9th Cir. 2011) (exercising jurisdiction over the district court's denial of a motion to dismiss an indictment based on Speech or Debate immunity but dismissing for lack of jurisdiction an appeal of the district court's order denying suppression of evidence). This Court's disclosure order is comparable to the non-appealable pretrial evidentiary rulings in *Rostenkowski* and *Renzi*. *See also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) ("[W]e have generally denied review of pretrial discovery orders[.]"). And Rep. Perry of course cannot demonstrate a substantial likelihood of success on appeal if the court of appeals lacks appellate jurisdiction.

It is also possible that the D.C. Circuit would not extend *Rayburn* to the search of Rep. Perry's personal cell phone. This Court understandably concluded that it was "prudent" to follow the search protocols approved in *Rayburn*, ECF No. 25 at 7-8, but a panel of the court of appeals would have more latitude to construe the court's own opinion in *Rayburn* and determine its scope and reach. As the Government has previously argued, *Rayburn*'s holding and reasoning do not compel the conclusion that the decision applies to the search of Rep. Perry's phone. *See* ECF No. 13 at 8-9. *Rayburn* applies to the search of any "location where legislative materials were inevitably to be found." 497 F.3d at 661; *see id.* (emphasizing that the search "must have resulted in the disclosure of legislative materials"); *see Renzi*, 651 F.3d at 1033 (explaining that *Rayburn* "concerned a novel problem: the first execution of a search warrant on the congressional office of a sitting Member of Congress"). Here, in contrast, the government did not enter any congressional space or review any congressional records and instead seized Rep. Perry's personal cell phone (which was not connected to Rep. Perry's congressional email accounts) for a few hours while he was on vacation and far from his office. Although legislative materials will inevitably be found in

a member's congressional office, the same cannot necessarily be said of the member's personal cell phone. *Rayburn* is therefore distinguishable, further foreclosing Rep. Perry from establishing a substantial likelihood of success on appeal.

> **B.** **Even if Rep. Perry is Entitled to Appellate Review of the Court's Privilege Determinations, He Will Not Succeed on Appeal**

Even assuming this Court's order is appealable and *Rayburn* requires review of the Court's privilege determinations, Rep. Perry cannot demonstrate a substantial likelihood that he would succeed on the merits. Although the Government does not yet have access to the records and therefore does not know the contents of the records that the Court found not to be privileged, the Court's discussion of governing law was correct, and its analysis was thorough and detailed. Rep. Perry cannot demonstrate a substantial likelihood of success.

Insofar as Rep. Perry broadly claimed that his communications with so-called cybersecurity individuals, Executive Branch officials, Trump Campaign officials, and Pennsylvania State legislators, among others, were privileged because they were aimed at gathering information in preparation for the electoral-vote certification at the joint session of Congress on January 6, 2020, the Court correctly rejected Rep. Perry's privilege claims. The D.C. Circuit has determined that investigations by members of Congress to obtain information may be protected under the Speech or Debate Clause if "performed in a procedurally regular fashion." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995). Thus, informal fact-gathering may be protected legislative activity under the Speech or Debate Clause if, for example, it is conducted in connection with an "inquiry by [a] particular subcommittee." *McSurely v. McClellan*, 553 F. 2d 1277, 1287 (D.C. Cir. 1976) (en banc) (per curiam). Other circuits have taken a broader view of the types of informal information-gathering that are protected by the Speech or Debate Clause, *see, e.g.*, *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 521 (3d

Cir.1985), but the communications at issue here would be unprotected even under those broader standards.

Rep. Perry's communications were not protected legislative acts merely because they can be characterized as somehow relating to the joint session on January 6. The Court correctly determined that "the Clause does not shield Rep. Perry's random musings with private individuals touting an expertise in cybersecurity, political discussions with attorneys from a presidential campaign, or conversations with state legislators concerning hearings before *them* about possible local election fraud or actions *they* could take to challenge election results in Pennsylvania, because those communications are just 'casually or incidentally related to legislative affairs but not a part of the legislative process itself.'" ECF No. 25 at 30-31 (quoting *United States v. Brewster*, 408 U.S. 501, 528 (1972)). Furthermore, Rep. Perry's strategizing about efforts to delay or subvert the electoral-vote count to keep his preferred presidential candidate in office amounted to conduct that was "political in nature rather than legislative" and therefore without "the protection afforded by the Speech or Debate Clause." *Brewster*, 408 U.S. at 512. As this Court found, for example, "a number of these communications relate to coordinating strategy and public relations efforts with Executive Branch officials or Trump Campaign officials." ECF No. 25 at 31. The Court correctly determined that "[n]o matter the vigor with which Rep. Perry pursued his wide-ranging interest in bolstering his belief that the results of the 2020 election were somehow incorrect—even in the face of his own reelection—his informal inquiries into the legitimacy of those election results are closer to the activities described as purely personal or political in *Brewster*." ECF No. 25 at 33.

The Court was also correct in rejecting any Speech or Debate privilege for Rep. Perry's communications coordinating with and prodding Executive Branch officials. ECF No. 25, at 48-41. The Supreme Court has repeatedly admonished that the Speech or Debate Clause "does not

protect attempts to influence the conduct of executive agencies." *Hutchinson v. Proxmire*, 443 U.S. 111, 122 n.10 (1979); *see, e.g.*, *Doe v. McMillan*, 412 U.S. 306, 313 (1973); *Gravel*, 408 U.S. at 625. Although "Members of Congress are constantly in touch with the Executive Branch of the Government" to "cajole" or "exhort" them on policy matters, "such conduct . . . is not protected legislative activity." *Id.*

## II.   Rep. Perry Fails to Demonstrate Irreparable Injury.

Rep. Perry will not suffer irreparable injury if the documents are disclosed pursuant to the Court's order. Even after the documents are disclosed, Rep. Perry will retain the additional protections of the Speech or Debate Clause. He retains criminal immunity for his legislative acts; he can object to the use of evidence of his legislative acts; and he cannot be compelled to testify about his legislative acts. *See Howard*, 720 F.3d at 946. Moreover, the legislative acts of members of Congress are regularly disclosed to the public. The Clause, unlike traditional confidentiality privileges such as the attorney-client privilege, protects public, non-confidential activities, like floor debates, committee hearings, votes, and the drafting of bills and committee reports. *See Gravel*, 408 U.S. at 624; *see also Doe*, 412 U.S. at 311-313. Congressional proceedings containing the speech or debate of members of Congress are broadcast on C-SPAN every day. The members of Congress do not suffer irreparable injury by the regular public disclosure of their legislative acts.

In fact, the D.C. Circuit is the only court that has recognized a non-disclosure privilege under the Speech or Debate Clause. Two circuits have (correctly) held that the Speech or Debate "privilege when applied to records or third-party testimony is one of nonevidentiary use, not of non-disclosure." *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978); *accord United States v. Renzi*, 651 F.3d 1012, 1032 (9th Cir. 2011). Those courts recognize that the Government

may obtain records—pursuant to a warrant or otherwise—and review those records regardless of whether the records contain material protected by the Speech or Debate Clause, although the Government cannot use protected material to obtain an indictment or conviction. The Speech or Debate Clause "does not prohibit disclosure of . . . privileged documents to the Government" but instead "merely prohibits the evidentiary submission and use of those documents." *In re Search of Elec. Commc'ns in the Acct. of chakafattah gmail.com at Internet Serv. Provider Google, Inc.*, 802 F.3d 516, 529 (3d Cir. 2015) (warrant to search member's Gmail account). In those jurisdictions, the Executive Branch is free to review records reflecting a member's legislative acts without violating the Clause; the Clause only prohibits the use of such materials against a member in a criminal or civil case. Yet members claiming the protections of the Speech or Debate Clause in those jurisdictions are not irreparably harmed on a regular basis merely because they cannot assert a non-disclosure privilege. To the contrary, they can seek immunity for their legislative acts, they can seek to prevent the use of evidence of their legislative acts to obtain a conviction, and they can refuse to testify about their legislative acts.

Rep. Perry is also wrong that "there is no possibility of remedy in the event of a remand or reversal by the Court of Appeals." ECF No. 27 at 10. The Court may not be able to restore Rep. Perry "to the *status quo ante*," but it "does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession." *Church of Scientology of California v. United States*, 506 U.S. 9, 12-13 (1992). Rep. Perry thus fails to demonstrate harm that is "both certain and great" to justify a stay. *Wis. Gas Co.*, 758 F.2d at 674.

## III. The Public Interest Weighs Against a Stay.

The public interest strongly weighs against a stay. The public interest supports moving this criminal investigation forward expeditiously and without delay. Just as the grand jury has a

responsibility to "inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred," *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991), and it has a substantial interest in avoiding procedures that delay and disrupt this work, *see id.* at 298-99, the Government has a substantial interest in obtaining evidence through a valid warrant supported by probable case. There are "strong governmental interests" in "preserving investigatory flexibility" and "avoiding procedural delays." *Id.* at 302. Just as interlocutory appeals are disfavored "in criminal cases where encouragement of delay is fatal to the vindication of the criminal law," *Khadr v. United States*, 529 F.3d 1112, 1117 (D.C. Cir. 2008) (citations and quotation marks omitted), a stay pending appeal that delays and impedes the Government's investigation is similarly contrary to the public interest.[1]

Rep. Perry's cell phone was first seized in August 2022. Because of the need to adhere to the protocol outlined in Attachment C, the Government has been unable to review the records over which Rep. Perry claimed Speech or Debate privilege, even though nearly five months have passed since the date of seizure. A stay would further delay the Government's investigatory progress in a case of significant national importance. This should not be countenanced. The public has a weighty interest in expeditious investigation and prompt resolution of criminal matters, and this interest would be disserved by the issuance of a stay.

Rep. Perry's argument (ECF No. 27 at 11) that the Government has "already obtained most, if not all, of the communications at issue here by other means" from other participants is not only highly speculative but also in serious tension with his claim that he would be irreparably harmed

---

[1] Rep. Perry cites (ECF No. 27 at 12) *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73, 83 (D.D.C. 2007), but the court in that case balanced the interests of the parties in a civil lawsuit and did not consider the important public interests implicated by a stay that impedes a significant criminal investigation.

if the communications from his phone were made accessible to the Government. Also unavailing

is Rep. Perry's contention that the public interest supports a stay because it will permit him time

to solicit amicus participation by the House of Representatives after Congress meets on January 3,

2023, and "the new Speaker is elected." ECF No. 27 at 12-13. Rep. Perry has had months to

"request that the Court grant access to the sealed proceedings in this case so that the General

Counsel of the House of Representatives may directly represent Congress' institutional

prerogatives." ECF No. 27 at 12-13. The public interest does not support a stay that is necessitated

by Rep. Perry's undue delay. To the contrary, any delay weighs against a stay. *Cf. Gomez v. United

States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam) (noting that

the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the

judicial process may be grounds for denial of a stay).

## CONCLUSION

The Court should deny the motion for a stay.

Respectfully submitted,

JACK SMITH
Special Counsel
N.Y. Bar No. 2678084

By:    /s/ *John M. Pellettieri*
John M. Pellettieri (N.Y. Bar No. 4145371)
███████████
Timothy A. Duree (Tex. Bar No. 24065179)
███████████

Assistant Special Counsels

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

---

IN THE MATTER OF THE SEARCH OF
THE FORENSIC COPY OF THE CELL
PHONE OF REPRESENTATIVE
SCOTT PERRY

:
:
:
:
:
:
:

---

Case No. 22-sc-2144

**Chief Judge Beryl A. Howell**

**UNDER SEAL**

**REPRESENTATIVE SCOTT PERRY'S REPLY TO THE GOVERNMENT'S
OPPOSITION TO HIS EMERGENCY MOTION TO STAY
THIS COURT'S DECEMBER 28, 2022, ORDER PENDING APPEAL**

Pursuant to the Court's Scheduling Order issued on December 31, 2022, Representative Scott G. Perry, by and through counsel, respectfully submits the following Reply to the Government's Opposition to his Emergency Motion to Stay the Court's December 28, 2022, Order Pending Appeal. For the reasons stated, the interests at issue here weigh strongly in favor of a stay.

**I.    Rep. Perry Has Demonstrated a Likelihood of Prevailing on Appeal**

**A.    The Court's Ruling is an Appealable Final Order.**

Despite the Government's contention that "[n]othing in *Rayburn*" indicates that Rep. Perry is entitled to appellate review of the district court's ruling, the D.C. Circuit expressly acknowledged in that case that appellate jurisdiction may rest on the collateral order doctrine. [1] *United States v. Rayburn House Office Building,* 497 F.3d 654, 658 (2007). A stay of the Court's ruling, to allow time for review by the D.C. Circuit before the Government accesses communications that Rep. Perry claims are privileged, is required to protect the institutional interests of the United States House of Representatives, and the rights afforded to Rep. Perry as a

---

[1] *Rayburn* involved an appeal from the denial of a motion, filed pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure, that sought the return of materials seized by the Government while executing a search warrant in the congressional office of a sitting Member of Congress. Although the context was somewhat different, the D.C. Circuit recognized that the collateral order doctrine could be applied to allow appellate review of Speech or Debate privileges asserted by a Member of Congress.

1

Member of Congress. Once the Government is given access to those communications, any subsequent review of the Court's decision will come too late to protect those constitutional interests conferred by the Speech or Debate Clause.

The Supreme Court has interpreted 28 U.S.C. § 1291[2] to permit departures from the rule of finality in cases falling within the "collateral order" exception delineated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–547 (1949). Such orders "must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

In the present case, the Court's Order, unless stayed, will provide the Government with access tomorrow, January 5, 2023, to communications that Rep. Perry asserts are protected from disclosure by Speech or Debate privilege. Doing so would extinguish the privilege as to the 2,055 records[3] this Court has determined are not protected by the Clause and render the issue "effectively unreviewable" in any subsequent appeal. Once the Government has the records, it will be privy to the confidential communications Rep. Perry had while gathering information concerning possible election fraud, an effort that was in aide of the legislative responsibilities he had as an elected representative. *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976)(activity outside legislative channels is protected by the Clause if related to a legislative purpose).

---

[2] "The courts of appeal … shall have jurisdiction of appeals from all final decisions of the district courts of the United States …"

[3] The Clause protects legislators "not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85(1967). When it is determined that "Members are acting within the legitimate legislative sphere[,] the Speech or Debate Clause is an absolute bar to interference" and is applied "broadly to effectuate its purposes." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975).

2

JA274

The Supreme Court has long recognized both the constitutional significance of the privilege and the importance of protecting it by means of appellate review. For example, in *Helstoski v. Meanor*, 442 U.S. 500 (1979), the Court held that a Member of Congress could take an interlocutory appeal in a criminal case to assert the immunity conferred upon him by the Speech or Debate Clause of the Constitution. In so doing, the Court stated that "[c]rucial to the holding was our view that the Speech or Debate Clause protected Congressmen 'not only from the consequences of litigation's results but also from the burden of defending themselves.'" *Id.*, at 508, quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967).

The Government's argument that an appeal is precluded simply by following the procedures of *Rayburn* is likewise without merit. While it is true that the appeal to the D.C. Circuit in *Rayburn* set forth a process that a district court must follow in determining whether to disclose materials to the Government, it did not preclude an appeal of the lower court's interpretation of that process. [4] Indeed, it would make little sense that the Court of Appeals would require the Government to comply with a process that protected Speech or Debate materials from disclosure, but then decline to assert jurisdiction over an appeal of a district court's order resulting from that process.

The Government's analogy that a specified constitutional protection ensuring the Separation of Powers to non-appealable pretrial rulings where a Member of Congress has been indicted and is preparing to stand trial similarly fails. Here, there is no pending criminal case, and there would otherwise be no recourse for Rep. Perry to seek appellate review of a District Court ruling that violates his Speech or Debate protections. In the absence of an appeal, the Rep. Perry's

---

[4] Among other issues Rep. Perry intends to present to the D.C. Circuit for review is this Court's ruling that "a Member's informal investigative efforts or fact-finding inquiries untethered to a formally sanctioned congressional inquiry remain unprotected." Memorandum at 21.

3

protections under the Clause would be lost. The issues in this case fall within the collateral order doctrine and the Court's order should be stayed pending Rep. Perry's appeal to the D.C. Circuit Court.

> **B.      The Court of Appeals is Likely to Agree that *Rayburn* Extends to Member's Mobile Phone.**

In support of its argument that Rep. Perry is unlikely to succeed on appeal, the Government also contends that "[i]t is also possible that the D.C. Circuit would not extend Rayburn to the search of Rep. Perry's personal cell phone," and questions whether legislative materials would "inevitably be found" on such a device, as opposed to a member's congressional office, as was the case in *Rayburn*. Opp. at 10-11. However, the Government itself has acknowledged that "[t]here is no legal principle that would categorically foreclose Speech or Debate protections for materials that reside on a member's personal cell phone." Gov't Br. Regarding the Inapplicability of the Speech or Debate Cl. To Materials Seized from Rep. Perry at 11, ECF No. 13. This Court ultimately rejected the Government's inevitability argument "given the fact that modern-day cell phones are ubiquitous and particularly necessary for congresspeople required to travel to and from the U.S. Capitol and their home districts – the presence of such materials in such a mobile "location" is a concrete reality here …." Nov. 4, 2022, Order at n. 3, ECF No. 18.[5]

Of course, at this juncture, the question of whether legislative materials would "inevitably be found" in Rep. Perry's mobile phone data has already been established. This Court agreed with Rep. Perry's characterization of some or all of 167 of the documents on the phone and ordered that they are protected from disclosure to the Government. Order, ECF No. 24, and Mem. Op. at 47, ECF No. 25. It is highly unlikely that the D.C. Circuit will decline to extend *Rayburn's* protections

---

[5] Rep. Perry incorporates his arguments on this issue in his Response to the Government's Brief at 5-7, ECF No. 15.

to a member's mobile phone, which is used for both personal and official business, on the basis that it is less likely to contain legislative materials than a member's congressional office. That is particularly true with respect to Rep. Perry's phone, which clearly contains legislative materials. The only disagreement is the extent to which the Clause protects those records.

## II.     The Government's Argument that Disclosure Would Not Cause Irreparable Harm to Rep. Perry is Without Merit.

The Government argues that disclosure of the documents at issue to the Government will not result in irreparable harm to Rep. Perry because "[h]e retains criminal immunity for his legislative acts; he can object to the use of evidence of his legislative acts; and he cannot be compelled to testify about his legislative acts." Gov't Opp. at 13. This fails to consider that the Court's ruling is not limited to the disclosure of materials to the Government. Rather, the Court made rulings on the extent to which the protections of the Speech or Debate Clause extend to particular categories and sub-categories of communications between Rep. Perry and other individuals, and it did not limit that decision simply to disclosure of the information. The ruling therefore imperils Rep. Perry's ability to object to the use of the material by the Government and his privilege against compelled testimony.

Rep. Perry would suffer irreparable harm even if the Court's ruling applied merely to the disclosure of information to the Government. The disclosure would provide the Government with the substance of his communications with various individuals, even beyond those already detailed by the Court in its Order. It would provide the Government with information that it could use and make derivative use of in its consideration of filing criminal charges in a highly charged political environment. At a minimum, the disclosure of the information in the prosecutions of other individuals and in public filings and statements would likely cause reputational  harm to Rep. Perry. A temporary stay is necessary to prevent such harm.

The Government argues that Rep. Perry would be unlikely to prevail on appeal because "the Court's discussion of governing law was correct, and its analysis was thorough and detailed." Gov't Op. at 11. Rep. Perry agrees that the Court's analysis was thorough and detailed, but he respectfully disagrees with the Court's legal conclusions, in particular the extent to which the Speech or Debate Clause protects fact-gathering activities by an individual Member that are not directly authorized by congressional committee conducting an official investigation. Rep. Perry agrees that the D.C. Circuit held in *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) protected investigative activity that is "performed in a procedurally regular fashion," but the issue of a Member's informal fact-gathering was not before the Court. Rep. Perry is not alone in taking this position. *See*, *United States v. Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988) (legislative fact-finding during Congressional trip protected by Clause); *McSurely v. McClellan*, 553 F.2d at 1286 (D.C. Cir. 1976); *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007) (Clause protects individual legislators' contacts with "interested organizations or members of the public," including lobbyists, "[t]o the extent that [legislators'] communications, discussions, or other contacts ... constitute information gathering in connection with or in aid of [ ] legislative acts'"); *Pentagen Tech. Int'l, Ltd. v. Comm. on Appropriations*, 20 F. Supp. 2d 41, 44 (D.D.C. 1998) ("The protections of the Speech or Debate Clause extend to congressional use of records and documents."); *Gov't of Virgin Islands v. Lee*, 775 F.2d 514, 521 (3d. Cir.1985).

Further, while the Court analyzed Rep. Perry's actions in connection with his official duty to cast a vote under the Constitution and the Electoral Count Act, it did not address the broader legislative purpose of Rep. Perry's actions "in furtherance of his efforts to ensure the security of our elections in the future and to help determine the most appropriate vehicles to do so.[6] Motion

---

[6] Rep. Perry's fact-finding regarding election integrity occurred at the same time as the Democrats in Congress had proposed to enact H.R. 1, the "For the People Act", which addressed voter access, election

at 8. The Court of Appeals should be given the opportunity to determine whether Rep. Perry's actions and communications are constitutionally protected.

The Government also makes the meritless argument that a violation of the protections, recognized by *Rayburn*, against disclosure of Speech or Debate materials to the Government, could not cause irreparable harm because other Circuits have failed to recognize that protection. This amounts to nothing more than a preference for the law in other circuits. The D.C. Circuit clearly disagrees with the Third and Ninth Circuits as to the extent of Speech or Debate Protection. It does not follow that those circuits' decisions in *In re Grand Jury Investigation*, 587 F.2d 589 (3d Cir. 1978) and *United States v. Renzi*, 651 F.3d 1012 (9th Cir. 2011) affect this Court's consideration of the irreparable harm Rep. Perry would suffer from a violation of rights protected by the D.C. Circuit. Indeed, neither of those cases stand for that proposition.

The Government also suggests that Rep. Perry will not suffer irreparable harm because "legislative acts of members of Congress are regularly disclosed to the public" and are "broadcast on C-SPAN every day." Not all legislative acts are public acts, and comparing a member's public floor speech to an individual member's efforts to gather factual information about a subject as sensitive as the security of the 2020 election, is wildly off point. There would be little doubt, for example, that a congressional committee's confidential correspondence with a protected whistleblower from a federal department or agency would be protected from disclosure under the Speech or Debate Clause, and that irreparable harm would result from its premature publication.

---

integrity and security, campaign finance, and ethics for the three branches of government. H.R. 1 passed the House of Representatives on March 3, 2021 (https://www.congress.gov/bill/117th-congress/house-bill/1) and was subsequently blocked from passage in the Senate.

### III. Granting a Stay is in the Public Interest

Contrary to the Government's arguments, granting a stay of the Court's Order would promote important public interests by providing an opportunity for the D.C. Circuit to consider the important constitutional privilege asserted by Rep. Perry - before his private communications are accessed by the Government. A stay also would allow time for Congress, an important stakeholder, to assist appellate review by means of an amicus brief filed to by the new House Counsel for the purpose of protecting Congress' institutional prerogatives.

The Government has not shared with counsel for Rep. Perry anything more than its generalized description of his status as a "subject" of its investigation or any of the reasons it claims it needs his communications to move its investigation forward "expeditiously and without delay." It also has implied that it is dissatisfied with the "delay" attributed to the review procedures required by *Rayburn*. Be that as it may, the Speech or Debate Clause provides absolute immunity for Congress and its Members for any claims predicated on legislative activities. *See Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975).

The Clause furthers reflects the Founders' belief in legislative independence, *United States v. Brewster*, 408 U.S. 501, 524 (1972), and "protects the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process." *Id.*; *see also Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015). Moreover, as it "safeguards legislative independence, the Clause also "'serves the additional function of reinforcing the separation of powers so deliberately established by the Founders.'" *Eastland*, 421 U.S. at 502, (quoting *United States v. Johnson*, 383 U.S. 169, 178 (1966)).

Although the public has an interest in the expeditious investigation of criminal matters, that interest does not override the Constitutional privileges protected by the Speech or Debate Clause.

8

The issues presented in this case are of critical importance to Congress, as well as to Rep. Perry. Decisions in this case about the applicability and scope of Speech or Debate privilege have the potential to affect the way the Clause is interpreted for future generations. It therefore is likely that the House of Representatives will request an opportunity to address these issues now that the 118th Congress has been seated. A stay of the Court's order would promote that important public interest.

## IV.     Conclusion

For the foregoing reasons, Rep. Perry requests that this Court issue a temporary stay of its Order to allow the D.C. Circuit an opportunity to consider his appeal and the fundamental constitutional protection at issue in this matter. In the event that the Court denies Rep. Perry's Motion, he respectfully requests that it extend the date by he is directed to provide documents to the Government by an additional day, from tomorrow, Thursday, January 5, 2023, to Friday, January 6, 2023. That additional day would allow the D.C. Circuit time to consider the Motion for Emergency Stay that Rep. Perry intends to file in the event that this Court denies this Motion.


January 4, 2023                             Respectfully submitted,


                            **JPROWLEY LAW PLLC**

                             __/s/ John P. Rowley III_____
                            By: John P. Rowley III (D.C. Bar No. 392629)
                             1701 Pennsylvania Avenue, N.W., Suite 200
                             Washington D.C. 20006
                             Telephone: (202) 525-6674
                             Email: jrowley@secillaw.com


                            **E & W LAW, LLC**

                             __/s/ John S. Irving_____
                            By: John S. Irving(D.C. Bar No. 460068)
                             1455 Pennsylvania Ave., N.W., Suite 400

9

Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com

Counsel for Representative Scott G. Perry

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of January 2023, a copy of the foregoing pleading

was served on the Government via electronic mail.

 /s/ John P. Rowley III
John P. Rowley III (D.C. Bar No. 392629)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FORENSIC COPY OF THE CELL PHONE OF REPRESENTATIVE SCOTT PERRY | Case No. 22-sc-2144 (BAH)<br><br>Chief Judge Beryl A. Howell<br><br>**UNDER SEAL** |

**MEMORANDUM OPINION AND ORDER**

Representative Scott Perry ("Rep. Perry") seeks to stay the disclosure of 2,055 records on his personal cell phone to the government, pending his appeal of this Court's Order and Memorandum Opinion, both issued on December 28, 2022 ("Dec. 2022 Order" and "Dec. 2022 Decision," respectively), ECF Nos. 24 and 25. *See* Rep. Perry's Emergency Mot. to Stay ("Perry Mot."), ECF No. 27; *see also* Rep. Perry's Mem. re Emergency Mot. to Stay ("Perry Mem."), ECF No. 27-1. The December 2022 Order permitted Rep. Perry to withhold from the government 161 records in whole and three records in part that he claimed were privileged under the Speech or Debate Clause ("Clause"), while rejecting Rep. Perry's claims of privilege with respect to 2,055 additional records that he does not dispute are responsive to a search warrant issued by this Court ("D.D.C. Warrant"). *See generally* Dec. 2022 Order. Upon review, Rep. Perry does not meet the high bar for the extraordinary relief that a stay confers. His motion is thus denied.[1]

---

[1]    In the alternative, Rep. Perry requests the issuance of "a temporary stay" of the December 2022 Order "to allow the D.C. Circuit an opportunity to consider his appeal . . . by extend[ing] the date [ ] he is directed to provide documents to the Government . . . to Friday, January 6, 2023." Perry Reply at 9. His alternative request for a temporary stay of the December 2022 Order by an additional day is granted solely to allow Rep. Perry to file his emergency motion with the D.C. Circuit.

1

## I.     BACKGROUND

A detailed description of the factual and procedural history preceding this motion is set out in the December 2022 Decision, at 4–10, and is thus incorporated by reference here.

Specific to this motion, on December 28, 2022, the Court granted in part and denied in part Rep. Perry's motion for non-disclosure, holding that 2,055 of the 2,219 responsive records withheld by Rep. Perry are not privileged under the Clause, while 161 records were properly withheld in full and three records in part.  *See* Dec. 2022 Order; Dec. 2022 Decision.  The December 2022 Order disclosed redacted versions of the three partially privileged records and required Rep. Perry to disclose the remaining 2,055 responsive records not covered by the Clause to the government by January 5, 2023.  Dec. 2022 Order at 1.

Rep. Perry then filed the instant motion for stay pending appeal on December 30, 2022, *see* Perry Mot, and an accompanying notice of appeal, *see* Rep. Perry's Notice of Appeal, ECF No. 26.  Notably, though this matter relates to an ongoing grand jury investigation, Rep. Perry's notice of appeal does not ask for expedited consideration by the D.C. Circuit, under D.C. Cir. R. 2 and 27(f).  Pursuant to an expedited briefing schedule entered by this Court, the government responded to Rep. Perry's motion on January 3, 2022, *see* Gov't's Opp'n to Mot. for Stay Pending Appeal ("Gov't's Opp'n"), ECF No. 29, and Rep. Perry filed a reply by January 4, 2022, *see* Rep. Perry's Reply re Emergency Mot. to Stay ("Perry Reply"), ECF No. 30.  *See also* Scheduling Order (Dec. 31, 2022).  Briefing on this pending motion is complete and thus the motion is now ripe for resolution.

## II.    LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "'A stay is not a matter of

right, even if irreparable injury might otherwise result,'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)), and "[a] stay pending appeal is always an extraordinary remedy," *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966); *see also Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam) ("CREW") (describing a stay pending appeal as "extraordinary relief").

Courts considering a stay request pending an appeal must "'weigh competing interests,'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55), by balancing the following factors as applied to the specific facts of the case: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies," *Nken*, 556 U.S. at 434 (quotation marks omitted).  The first and second factors are the "most critical" to determining whether a stay is warranted, *CREW*, 904 F.3d at 1017 (quoting *Nken*, 556 U.S. at 434), while the third and fourth factors "merge" when the stay applicant so moves against the government.  *Nken*, 556 U.S. at 435.  The party seeking the stay bears the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

## III.  DISCUSSION

Rep. Perry's motion is denied because all four of the stringent *Nken* factors weigh against granting a stay.  First and foremost, Rep. Perry is unlikely to succeed on the merits for the reasons

fully explicated in the December 2022 Decision. [2]   The vast majority of the records at issue—
which records were recovered, pursuant to a search warrant issued by the U.S. District Court for
the Middle District of Pennsylvania, from Rep. Perry's personal cell phone and are indisputably
responsive to the D.D.C. Warrant—are not entitled to Clause protection because they do not
contain communications "that are 'integral' to [his] participation in 'the consideration and passage
or rejection of proposed legislation or with respect to other matters which the Constitution places
within the jurisdiction of either House.'"  Dec. 2022 Decision at 17 (quoting *Gravel v. United
States*, 408 U.S. 606, 625 (1972)).  Rep. Perry counters that these responsive records are protected
"[l]egislative information gathering" efforts under the Clause because they contain his
communications seeking "information about the security of the 2020 election and the validity of
the electors required to certify the election, a vote that he was called upon to cast under the United
States Constitution, and the Electoral Count Act."  Perry Mem. at 8.

To be sure, the December 2022 Decision recognized that Rep. Perry's legislative activities
integral to his consideration and vote under the Electoral Count Act of 1887 ("ECA"), 24 Stat.
373, 3 U.S.C. §§ 5, 6, and 15, as well as his communications relating directly to legislative
activities, such as casting votes or speaking on the House floor, organizing and participating in
legislative committees or in caucus, are protected under the Clause.  Dec. 2022 Decision at 26–27
(communications integral to the ECA process are privileged under the Clause); *id.* at 40–41
(communications with Members and staff about legislation and votes are privileged under the
Clause); *id.* at 41–42 (communications with Members and staff concerning committee assignments

---

[2]      The government argues that the first *Nken* factor of likelihood of success on the merits cannot be met because
the December 2022 Order was not a final decision on the merits, and, therefore, Rep. Perry is not entitled to bring an
appeal challenging the denial of his assertion of the Clause since no exception under the collateral order doctrine
permitting interlocutory review applies.  Gov't's Opp'n at 6–11.  Rep. Perry disagrees.  Rep. Perry Reply at 1–4
(arguing that the Dec. 2022 Order is appealable under the collateral order doctrine).  Regardless of whether the
December 2022 Order is appealable, none of the *Nken* factors militate in favor of a stay and, consequently, the merits
of the dispute over the appealability of the December 2022 Order need not be reached.

and House Freedom Caucus Board Elections are privileged under the Clause); *id.* at 44 (internal electronic newsletters sent by the House Republican Leadership Conference calle ████ ████' that provided substantive summaries and discussion of pending legislation and other legislative business are privileged under the Clause). The December 2022 Decision, however, explained at length why Rep. Perry's "efforts as an individual Member either to obtain or relay information from or to others to be used to defeat or delay certification of the ECA vote and President-elect Joseph R. Biden's victory in the 2020 election," Dec. 2022 Decision at 27, were not protected under the Clause, and why his characterization of these efforts as "informal fact-finding" activities fell short of pulling the Clause's cloak of protection over those communications, under a straight-forward reading of binding Supreme Court and D.C. Circuit precedent, which require for proper invocation of the Clause that an "investigative step is fully and unambiguously authorized for a legislative purpose," *id.* at 21-22 (citing, *e.g., Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 506 (1975) and *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995)).

Consistent with this precedent, under *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976) (en banc), to qualify for protection under the Clause, a Member's fact-finding efforts must be performed in a sufficiently procedurally regular manner, with formal congressional sanction or authorization, to constitute legitimate legislative activity. *See* Dec. 2022 Decision at 32–38; *see also id.* at 22 (explaining *McSurely*'s requirement that an informal investigation be congressionally authorized). To the extent that Rep. Perry believes that *McSurely* created no requirement that a Member's informal field investigations must be congressionally authorized, *see* Perry Mem. at 7–8, he is wrong for the reasons outlined in the December 2022 Decision.

None of the 2,055 responsive records that Rep. Perry has withheld as privileged contain communications relating to legislative-fact-finding efforts sanctioned or otherwise authorized in a

procedurally regular manner by any congressional entity.   Rather, in large part, the communications illustrate efforts by Rep. Perry, members of former President Trump's White House, his campaign team, and other allies to undermine the results of the 2020 election.  In short, Rep. Perry provides no reason why these communications reflect anything more than activities that are "casually or incidentally related to legislative affairs but not a part of the legislative process itself."  *United States v. Brewster*, 408 U.S. 501, 528 (1972).

Rep. Perry also fails to grapple with the line-drawing problem of distinguishing between privileged and non-privileged communications that his theory of legislative privilege would create. In discussing the congressional authorization requirement, the December 2022 Decision explained how applying Rep. Perry's theory of Clause privilege to "informal fact-finding efforts untethered from a formal legislative inquiry" would be "'both unwise in principle and unworkable in practice[,]'" "assuredly 'create considerable confusion' as to whether the Clause applies[,] and invite inconsistent applications of the legislative privilege[,]" particularly considering, in the context of an *in camera* document review, "the full context of any given communication may not be discernible."  Dec. 2022 Decision at 38–39 (quoting *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1207 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).  Rep. Perry ignores this issue and the December 2022 Decision's analysis of this problem, which further undermines his contention that he will likely succeed on the merits on appeal.

Rep. Perry's focus on protection of his informal fact-finding efforts also elides the fact that a significant number of responsive records are communications that could not plausibly be related to fact-finding activities.   For example, as explained in the December 2022 Decision, his communications with purported cybersecurity experts involved "coordinating strategy and public relations efforts with Executive Branch officials or Trump Campaign officials ███████████ ████████████ regarding voting irregularities."   Dec. 2022 Decision at 31–32. These

communications largely reflect his efforts to relay information to other persons rather than trying to obtain, understand, or assess information. With respect to his communications with Members and staff, Rep. Perry received electronic newsletters from House Republican Conference Leadership discussing political talking points and events occurring in and around Congress, communications with staff concerning press coverage and media strategy, and communications with Members concerning possible actions to challenge the 2020 election results, *see id.* at 42–47. None of these communications appear to be remotely linked to fact-finding efforts, contrary to Rep. Perry's general description. Finally, the December 2022 Decision explained that the majority of communications that Rep. Perry received from Executive Branch officials "demonstrate that he welcomed, rather than resisted, and indeed often initiated these communications to relay information or urge consideration of a strategy by the White House or specific action to be taken by the White House, the Trump Campaign, or [the Department of Justice]." *Id.* at 49. "Given the Clause's purpose to protect congressional Members from untoward interference from the Executive Branch with legislative matters," the Court held that "Rep. Perry's reliance on the Clause to shield his multi-pronged push for Executive Branch officials to take more aggressive action is not only ironic but also must fail as beyond the scope of the Clause." *Id.* Rep. Perry does not even attempt to explain how the Clause likely applies to these records in his motion, so he cannot satisfy the first *Nken* factor.

Next up is irreparable injury, which militates strongly against granting a stay. Although Rep. Perry is technically right that once the 2,055 responsive records are disclosed to the government, they cannot be undisclosed to the government, *see* Perry Mem. at 10, his argument that his constitutional rights would be violated by disclosing the records misses the mark because he still maintains the core protections available under the Clause. Specifically, Rep. Perry would retain criminal immunity for his legislative acts, the right to object to the use as evidence of his

legislative acts, and the right to avoid being compelled to testify about his legislative acts. *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013); *see also* Dec. 2022 Decision at 14–16.  Nonetheless, Rep. Perry counters that the December 2022 Order and Decision "imperil[] [his] ability to object to the use of the material by the Government and his privilege against compelled testimony."  Perry Reply at 5.  This is inaccurate. The December 2022 Order was limited to the issue of non-disclosure, *see* Dec. 2022 Order at 1 (ordering Rep. Perry to disclose 2,055 responsive records in whole or in part to the government), leaving Rep. Perry free, at a minimum, to assert the Clause's privileges in the future if the government uses any of the 2,055 records against him in a criminal prosecution or tries to compel him to testify about his communications contained in these responsive records.

The potential injury that Rep. Perry may face by denial of a stay pending appeal, arising from disclosure to the government of the withheld responsive records, is accordingly far less damaging than the harm he would face if the protections outlined in the Supreme Court's Clause jurisprudence—protection from criminal and civil liability, testimonial privilege and nonevidentiary use privilege—were violated.  *See In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978) ("But to the extent that the Speech or Debate Clause creates a Testimonial privilege as well as a Use immunity, it does so only for the purpose of protecting the legislator and those intimately associated with him in the legislative process from the harassment of hostile questioning.  It is not designed to encourage confidences by maintaining secrecy, for the legislative process in a democracy has only a limited toleration for secrecy."); *United States v. Renzi*, 651 F.3d 1012, 1020 (9th Cir. 2011) (rejecting the contention "that there exists some grandiose, yet apparently shy, privilege of non-disclosure that the Supreme Court has not thought fit to recognize").  Given that Rep. Perry retains these critical protections under the Clause, his claim that he will be irreparably injured absent a stay is overblown.

Additionally, should the D.C. Circuit find, on appeal, that any or all of the 2,055 responsive records are in fact privileged under the Clause, the government points out that a partial remedy could be issued "by ordering the Government to destroy or return any and all copies [of the records] it may have in its possession."  Gov't's Opp'n at 14 (quoting *Church of Scientology of California v. United States*, 506 U.S. 9, 12–13 (1992)).  In any event, significantly undercutting Rep. Perry's claim of irreparable injury is his concession that the government has already obtained or certainly could access "most if not all, of the communications at issue here by other means."  Perry Mem. at 11.  Indeed, most of the 2,055 withheld responsive records that this Court has ordered disclosed are communications between Rep. Perry and other individuals, most of whom are not fellow congressional Members or staff.  Assuming Rep. Perry is correct about the government already obtaining these same communications as part of the ongoing investigation from the individuals with whom Rep. Perry was communicating, requiring disclosure here will cause no harm to Rep. Perry at all since they are already in the government's possession.  In short, Rep. Perry cannot demonstrate that an injury would be "certain and great," such that the second *Nken* factor weighs against granting a stay.  *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).[3]

Finally, the interests of the government and the public weigh against a stay.  Just as the grand jury is required to look "into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred[,]" *United States v.*

___

[3]      In reply, Rep. Perry says that he would face harm by disclosing the responsive records at issue because such disclosure "would provide the Government with information that it could use and make derivative use of in its consideration of filing criminal charges in a highly charged political environment."  Perry Reply at 5.  Rep. Perry's argument is flawed for two reasons.  First, Rep. Perry retains civil and criminal immunity, a testimonial privilege, and a nonevidentiary use privilege for his legislative acts, so the government's use of any privileged records against Rep. Perry in a criminal prosecution would be prohibited under the Clause.  Dec. 2022 Decision at 14–16.  Second, the D.C. Circuit, in *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654 (D.C. Cir. 2007) ("*Rayburn*"), never held that derivative use of a legislative record is privileged under the Clause but described the harm as limited to the "chill" that compelled disclosure of legislative records would cause.  *See id.* at 661 ("This compelled disclosure clearly tends to disrupt the legislative process: exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters may legitimately involve frank or embarrassing statements; the possibility of compelled disclosure may therefore chill the exchange of views with respect to legislative activity.").  Any derivative use of Rep. Perry's privileged records is, thus, not a harm that the Clause contemplates or recognizes.

*R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991), and has a substantial interest in avoiding "delays and detours" that "would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws," *id.* at 298–99 (quotation marks omitted), the government also has a significant interest in moving forward expeditiously with the criminal investigation into those potentially involved in alleged criminal efforts to overturn the 2020 election.  Rep. Perry has diligently pursued his claims of legislative privilege, with the concomitant result that over four months after issuance of the D.D.C. Warrant, the government has yet to review a significant number of responsive records.  A prolonged appeal would only further delay disclosure of those responsive records.  The government and the public have a strong interest in reviewing expeditiously the records responsive to the search warrant since "in criminal cases[,] encouragement of delay is fatal to the vindication of the criminal law." *Khadr v. United States*, 529 F.3d 1112, 1117 (D.C. Cir. 2008) (cleaned up).[4]

None of Rep. Perry's alternative considerations outweigh the government and the public's interest in an expedient investigation.  For starters, pointing to the fact that the government has obtained 12,944 records from his cell phone and communications from others, ███████████ ██████████████████████████████████████████████████████████, Perry Mem. at 11, is a misfire.  Even assuming he is correct about the government's access to others' records, this neither defeats nor deflects the government's interest in responsive records held on Rep. Perry's cell phone.  Instead, as already noted, to the extent that the 2,055 responsive records at issue overlap with communications already in the government's position, Rep. Perry only undermines his argument that he would be irreparably injured if a stay were not entered.  Next,

---

[4]       Rep. Perry's reliance on *Jewish War Veterans of U.S., Inc. v. Gates*, 522 F. Supp. 2d 73 (D.D.C. 2007), Perry Mem. at 12, is misplaced.  In that case, a partial stay in production of potentially privileged records under the Clause was granted because "the Court conclude[d] that the Members have raised a serious legal question on appeal," *id.* at 80, but no such persuasive argument is made here.  Moreover, since that case involved a civil dispute, the court had no necessity to consider the weighty public interest of impeding a significant criminal investigation. *Id.* at 82–83.

Rep. Perry contends that "[h]is constituents also have an interest in ensuring that he is able on their behalf to investigate facts that are central to his legislative activity without fear of reprisal." *Id.* at 12. Nothing about the December 2022 Order, however, prevents Rep. Perry from engaging in legislative fact-finding inquiries; it solely requires him to disclose records that are not privileged under the Clause. Also unavailing is his argument that he must be afforded time to solicit amicus participation, through the General Counsel of the House of Representatives, after Congress meets and "the new Speaker is elected." Perry Mem. at 12–13. During all the months this case has been pending, however, Rep. Perry has thus far failed to "request that the Court grant access to the sealed proceedings in this case so that the General Counsel of the House of Representatives may directly represent Congress' institutional prerogatives." *Id.*; *cf. Gomez v. United States Dist. Court for Northern Dist. of Cal.*, 503 U.S. 653, 654 (1992) (per curiam) (noting that the "last-minute nature of an application" or an applicant's "attempt at manipulation" of the judicial process may be grounds for denial of a stay). Any further delay in allowing the government's investigation to proceed only weighs against a stay.

Ultimately, Rep. Perry concedes that the December 2022 Decision was "thorough and detailed[,]" and he simply "disagrees with the Court's legal conclusions[.]" Perry Reply at 6. Having considered these disagreements again, this Court is not persuaded that his claims of legislative privilege were incorrectly evaluated in the December 2022 Decision, that he would be irreparably injured absent a stay pending appeal, and that the public interest favors granting the requested stay pending appeal.

Based on the foregoing analysis, Rep. Perry's motion to stay the December 2022 Order and Decision pending appeal is denied.

## IV. ORDER

For the foregoing reasons, it is hereby

**ORDERED** that Rep. Perry's Emergency Motion to Stay, ECF No. 27, is **DENIED**; it is further

**ORDERED** that the December 2022 Order be **TEMPORARILY STAYED** until January 6, 2023, at 5:00 PM, to allow Rep. Perry the opportunity to file an Emergency Motion to Stay with the United States Court of Appeals for the District of Columbia Circuit; it is further

**ORDERED** that Rep. Perry comply with the December 2022 Order by no later than January 6, 2023, at 5:00 PM.

**SO ORDERED**.

Date:  January 4, 2023

_____
BERYL A. HOWELL
Chief Judge