# Attachment 11

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

In Re: SEALED CASE

**FILED UNDER SEAL**

On Appeal from the United States District Court for the District of Columbia

**ADDITIONAL SEALED RESPONSE TO MOTION TO UNSEAL**

Movant, the Reporters Committee for Freedom of the Press, invokes a presumptive right of access to certain judicial proceedings based on both the First Amendment and the common law. As discussed in the government's principal response to the motion to unseal, the government's proposed approach would disclose on the public record the arguments of the parties while preserving sensitive investigative information and information that could injure individuals without a forum to defend themselves. No broader right of access to the briefs or transcript exists beyond what the government is proposing to release. The government files this additional supplement, which is being served on the appellant but not being served on the movant, so that the government can provide the Court with legal argument tied to the still-sealed context of this appeal—a sealed proceeding arising

from a search warrant and the procedures required by *United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C. Cir. 2007).

The Department of Justice is conducting a criminal investigation into attempts to obstruct the U.S. Congress's certification of the results of the 2020 presidential election. ███████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████ The government has not publicly confirmed any specifics about this investigation. Nor has it revealed the information sought or collected in the search warrant giving rise to these proceedings.

The record in this case, however, includes information about what the government is seeking to collect and, in fact, has collected in a forensic image of a cellular phone that is the subject of this appeal. This information includes Congressman Perry's description and categorization of various communications found on his phone. That description identifies the individuals with whom he was communicating, the volume of those communications, and the fact that those communications remain on his phone and are accessible to anyone able to access his phone despite the use of various encrypted communication methods.

Granting broad access to the requested materials would risk compromising this investigation into alleged efforts to obstruct the lawful and orderly certification

of the 2020 presidential election results. It could also risk unjustly suggesting responsibility for criminal acts by uncharged individuals without providing them any forum in which to defend against such allegations. These significant confidentiality interests would outweigh the interest in wide ranging public access to the materials sought here.

## ARGUMENT

The movant invokes the common law right of access and the First Amendment as two bases for unsealing the materials now at issue. The First Amendment protects a qualified "right of access to criminal proceedings," *Press-Enterprise Co. v. Superior Court* (*Press-Enterprise II*), 478 U.S. 1, 8 (1986), but that right does not apply to all phases of the criminal process and may be outweighed by compelling interests. A "broader, but weaker, common law right" of access applies to certain "judicial records." *United States v. El-Sayegh*, 131 F.3d 158, 160 (D.C. Cir. 1997). That right applies to a broader set of records, but it is subject to a multi-factor balancing that takes account of myriad interests and "may be outweighed in certain cases by competing interests." *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). Particularly in this context— proceedings arising from a sealed search warrant in an ongoing criminal investigation where the court is evaluating assertions under the Speech or Debate

Clause—neither right could be a basis for any broader unsealing than the government has proposed.

## I. Any Common Law Right Of Access To All Materials Is Outweighed By Potential Harms

In seeking access to the briefs and argument in this appeal, the movant primarily relies on the common law right of access to certain judicial records. *See* Mot. 8-15. "It is uncontested, however, that the right to inspect and copy judicial records is not absolute." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). A finding that records should be accessible pursuant to the common law right of access "involves a two-step inquiry." *Washington Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 902 (D.C. Cir. 1996). First, a record must qualify as a "public record" to which the right can attach. *Id.* Second, if the common law right applies, courts must then "balance" the "interest in keeping the document secret against the public's interest in disclosure." *Id.* (quotation marks omitted). Here, balancing the relevant factors, the common law does not provide a right of access any broader than what the government is proposing to release.

Assuming that a common law right attaches, the "presumption" of public access may be "outweigh[ed]" by "competing interests." *CNN, Inc. v. FBI*, 984 F.3d 114, 118 (D.C. Cir. 2021). The balancing of interests turns on "the relevant facts and circumstances of [the] particular case." *Id.* at 121. This Court has identified six

4

generalized "factors" to consider: (1) "[t]he need for public access"; (2) the "extent of previous public access"; (3) whether "someone has objected to disclosure, and the identity of that person"; (4) "the strength of any property and privacy interests asserted"; (5) "the possibility of prejudice"; and (6) "the purposes for which the documents were introduced during the judicial proceedings." *Id.* at 118; *see United States v. Hubbard*, 650 F.2d 293, 317-322 (D.C. Cir. 1980). Courts must also consider any other particularized interests that may be applicable. *Hubbard*, 650 F.3d at 322-324. A court's ultimate task is to "consider[] the relevant facts and circumstances" and determine what "justice . . . requires." *MetLife*, 865 F.3d at 665-666.

At this time, the relevant factors weigh heavily against public access beyond what the government has separately proposed. As to the first factor, the government does not dispute that the public is interested in this important investigation. But the public's interest in the investigation does not support the wholesale disclosure of all information likely to appear in the parties' briefs and oral argument. Redacted briefs should provide the public with sufficient information to understand the nature of the proceedings, the legal arguments being made, and the bases for this Court's resolution of those issues. And the generalized interest in the ongoing investigation does not establish a "need for public access," *CNN*, 984 F.3d at 118, to non-public investigative facts, let alone to the narrow and out-of-context picture that would be

presented by the factual information at issue here. *See id.* at 119 (courts should "consider the public's need to access the information that remains sealed, not the public's need for other information").

As to the second factor, the public has not previously had access to most of the factual material connected to this proceeding. Although there has been media reporting about this case, *see In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022), that reporting has suggested only that a warrant was executed for Congressman Perry's phone and that the Speech or Debate Clause may be at issue. The parties' briefs and the discussion at oral argument are likely to include significant factual material that is not in the public domain. *See CNN*, 984 F.3d at 119. Moreover, press reports, which may be inaccurate or incomplete, do not erase the risks from disclosing information. Media reports also may be based on unofficial sources, half-understood facts, or speculation. Information filed with a court carries with it not only a greater assurance of accuracy but also salience and verifiability that is most likely to alter the behavior of investigative subjects or harm uncharged individuals.

The remaining factors weigh decisively against any broad disclosure beyond what the government has suggested. As to the third factor, the government objects to public access at this stage. The government understands that Congressman Perry objects as well.

As to the fourth factor, reputational interests, such as shielding third parties from unjustified association with criminal conduct, weigh against disclosure. "Persons who prove to be innocent are frequently the subjects of government investigations," and information gleaned through out of context filings related to a search "may supply only the barest details of the government's reasons for believing that an individual may be engaging in criminal activity" and leave that person with "no forum in which to exonerate themselves." *Times Mirror, Co. v. United States*, 873 F.2d 1210, 1216 (9th Cir. 1989) (discussing the First Amendment right of access); *see United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017) (noting, in the context of the common law right of access, that "publication of a warrant could damage an unindicted target's reputation while leaving no judicial forum to rehabilitate that reputation"); *cf.* U.S. Dep't of Justice, *Justice Manual* § 1-7.400(B) (stating Department of Justice policy against commenting on an ongoing investigation "before charges are publicly filed"). The materials at issue include information about the government's investigative steps directed at Congressman Perry and other individuals. It would be unfair to release information, particularly without proper context, that would invade personal privacy interests or be taken to "accuse persons of crime while affording them no forum in which to vindicate themselves," *cf. United States v. Briggs*, 514 F.2d 794, 802 (5th Cir. 1975) (criticizing the practice of naming unindicted coconspirators). The government

leaves it to Congressman Perry to address how his own public disclosures may bear on his—as compared to others'—reputational interests. *See L.A. Times Commc'ns*, 28 F.4th at 298. But other persons are also at issue here.

Most importantly, on factor five, for the reasons referenced in the government's primary filing, the substantial risk of prejudice to ongoing criminal investigations militates against access. *See, e.g.*, *Sealed Search Warrants*, 868 F.3d at 395 ("If the unsealing of pre-indictment warrant materials would threaten an ongoing investigation, the district court has discretion . . . to leave the materials under seal."). Indeed, even against a stronger First Amendment right of access, a "compelling government interest"—namely, safeguarding "the on-going investigation"—would overcome any right of access to the materials being sought. *See In re Search Warrant for Secretarial Area Outside Office of Gunn* (*Gunn*), 855 F.2d 569, 574 (8th Cir. 1988) (*Gunn*); *see also Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (harm to ongoing investigation justifies sealing plea agreement). "[A] compelling governmental interest exists in protecting the integrity of an ongoing law enforcement investigation." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 579 (4th Cir. 2004). Where granting access will "disclose facts that are otherwise unknown to the public," the potential harm to the investigation is apparent. *Id.* Here, the materials sought by the movant would reveal the government's investigative steps with respect to Congressman Perry and

principally includes details about what the government sought and collected in the search at issue. That information, if made public, could reveal "the nature, scope and direction of the government's investigation." *See Gunn*, 855 F.2d at 574.

Finally, the purposes for which at least some of the information was introduced also weighs against disclosure. This case arises from an unusual judicial procedure that derives from this Court's decision in *United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C. Cir. 2007). In *Rayburn*, this Court determined that the Speech or Debate Clause, which provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place," U.S. Const. art. I, § 6, cl. 1, includes a "non-disclosure privilege" and that, as a result, the government may search a congressional office only if it provides the Member with an "opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." 497 F.3d at 662.

The district court implemented a *Rayburn*-compliant procedure in this case. Pursuant to that procedure, Congressman Perry has described, in broad terms, materials that he asserts the government cannot access without violating that Clause, and the parties are arguing about the legislative nature of the communications at issue. Investigation stage disputes about even ordinary privileges normally arise in the context of ancillary grand jury proceedings that are likely not subject to a

common law right of access at all and, in all events, are governed by Federal Rules of Criminal Procedure 6(e)(5) and 6(e)(6), which "supplanted" any common law right, *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998); *see In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) (per curiam).  Here, the unusual *Rayburn* procedure, which occurs in connection with a search warrant, is ostensibly designed to prevent the disclosure of privileged materials.  It would be anomalous if proceedings about whether to shield information or provide it to the government in an ongoing investigation risked making that information public or imperiling that investigation.  Moreover, if the *Rayburn* procedure required not only sharing certain information with the Member under seal but also sharing extensive information publicly, the procedure would hamstring investigations that require obtaining information from Members of Congress.  The government could obtain such information only at the cost of revealing various facts about its investigation to the public during the subsequent *Rayburn* proceeding.  That could deprive the government of necessary evidence.  It could also force the government to delay investigative steps in such a way that evidence related to Members of Congress would remain unseen—and in some instances unpreserved—until other avenues of investigation could be completed.

## II.   The First Amendment Does Not Entitle Movant To The Unsealing Of Information Relating To Ongoing Investigations

The First Amendment protects a qualified "right of access to criminal proceedings," *Press-Enterprise II,* 478 U.S. at 8, but that right does not apply to all phases of the criminal process.  The public possesses a qualified First Amendment right of access to judicial proceedings and records only if "(i) there is an 'unbroken, uncontradicted history' of openness, and (ii) public access plays a significant positive role in the functioning of the proceeding."  *United States v. Brice*, 649 F.3d 793, 795 (D.C. Cir. 2011) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion)).  Even assuming that appeals related to ancillary search warrant proceedings otherwise qualify, factual information related to the dispute does not satisfy either requirement.  Even assuming the existence of such a right, moreover, it would be overcome by compelling government interests in protecting the investigation's integrity against premature disclosure.

### A.   The Test For Identifying A First Amendment Right Of Access Turns On A History Of Openness And A Beneficial Effect On The Proceeding

The First Amendment guarantees "the freedom of speech, or of the press." U.S. Const. amend. I.  As a means of furthering First Amendment interests, the Supreme Court has recognized an "implicit," qualified First Amendment "right of access" for the public to attend criminal trials.  *Press-Enterprise II*, 478 U.S. at 7

(quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603-606 (1982) (recognizing that "the press and general public have a constitutional right of access to criminal trials," to ensure an "informed" "discussion of governmental affairs").

Two features of criminal trials led to recognition of that right. First, during an "unbroken, uncontradicted history" dating back centuries, criminal trials have "been open to all who care to observe" and public access "inhere[d] in the very nature of a criminal trial." *Richmond Newspapers*, 448 U.S. at 564, 573 (plurality opinion); *accord Globe Newspaper*, 457 U.S. at 605 (criminal trials have "long been presumptively open," and that "uniform rule" is virtually without exception); *see* U.S. Const. amend. VI ("the accused shall enjoy the right to a speedy and public trial"). Second, public access "to criminal trials plays a particularly significant role in the functioning of the judicial process" because scrutiny by the public "safeguards the integrity of the factfinding process," "fosters an appearance of fairness," and "permits the public to participate." *Globe Newspaper*, 457 U.S. at 606; *accord Press-Enterprise II*, 478 U.S. at 8-9.

Applying those two considerations, the Supreme Court has found a First Amendment right of access to the jury-selection stage of criminal proceedings, *Press-Enterprise Co. v. Superior Court* (*Press-Enterprise I*), 464 U.S. 501, 505-513 (1984) (*Press-Enterprise I*), and to the transcript of a "preliminary hearing" in a

12

criminal case that "function[ed] much like a full-scale trial," *Press-Enterprise II*, 478 U.S. at 7. This Court has also found a qualified First Amendment right of access to completed plea agreements. *Brice*, 649 F.3d at 796; *see Robinson*, 935 F.3d at 288. This Court has clarified that "[w]hen the 'experience and logic' test has been applied beyond the trial itself, as in *Press-Enterprise II*, it has been limited to judicial proceedings that are part of the criminal trial process." *Center for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 935 (D.C. Cir. 2003) (distinguishing between a "plea agreement on which judgment has been entered" and a "withdrawn plea agreement"). The Supreme Court has also recognized that "[a]lthough many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Press-Enterprise II*, 478 U.S. at 8-9. As a "classic example" of a proceeding that demands secrecy, the Court pointed to the grand jury system. *Id.* at 9 (citing *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979)); *see Douglas Oil*, 441 U.S. at 218-219 (describing investigatory threats posed by revelation of grand jury proceedings).

Accordingly, a claimed First Amendment right of access must meet a two-part "experience and logic" test. *Press-Enterprise II*, 478 U.S. at 8-9. To meet the test of experience, the "historical tradition" of public access must be of "some duration," *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1332

(D.C. Cir. 1985), reflecting an "unbroken, uncontradicted history of openness," *Brice*, 649 F.3d at 795 (quotation marks omitted). To meet the test of logic, public access must play "a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. Both tests must be satisfied "before a constitutional requirement of access can be imposed." *Reporters Comm.*, 773 F.2d at 1332.

B. **The First Amendment Does Not Guarantee A Qualified Right Of Public Access To Warrant Materials In An Ongoing, Open Investigation**

Applying the "experience and logic" test, movants have no First Amendment right of access to the materials at issue in this appeal that concern ancillary search warrant proceedings tied to an open criminal investigation and certainly no right to the factual information necessarily exchanged in litigation under this Court's decision in *Rayburn*.

1. No historical tradition supports a right implicit in the First Amendment to access filings related to an ancillary proceeding over search warrant materials under *United States v. Rayburn House Office Building*. No "historical tradition of accessibility" attaches "to documents filed in search warrant proceedings." *In re Search of Fair Finance*, 692 F.3d 424, 431 (6th Cir. 2012); *see, e.g.*, *United States v. Pirk*, 282 F. Supp. 3d 585, 598-600 (W.D.N.Y. 2017) (discussing cases). Proceedings for the issuance of search warrants "are not, and have not been, public,"

14

and "are 'necessarily *ex parte*, since the subject of the search cannot be tipped off to the application for a warrant lest he destroy or remove evidence.'" *Fair Finance*, 692 F.3d at 430 (quoting *Franks v. Delaware*, 438 U.S. 154, 169 (1978)). And "no evidence" supports the conclusion that search warrant materials have "historically be[en] made open to the press and public" after execution. *Id.*; *accord In re Baltimore Sun Co.*, 886 F.2d 60, 64 (4th Cir. 1989). Although warrant applications and returns are filed with district court clerks, "the government . . . routinely obtain[s] sealing orders," and given "the confidentialities involved in criminal investigations," courts have "generally afforded deference" to those requests. *Fair Finance*, 692 F.3d at 431. And "the fact that the government may in some instances allow documents filed after the execution of the search warrant to become public" does not "evidence . . . an *historical* tradition of accessibility." *Id.* (emphasis added).

That consensus is even stronger while investigations are ongoing. As a matter of practice, warrants typically are sealed while an investigation remains ongoing, so the public does not have access to them. *See Computer Prof'ls for Soc. Responsibility v. Secret Serv.*, No. 92-5140, 1993 WL 20050, at *1 (D.C. Cir. Jan. 5, 1993) (per curiam) ("[T]here is no clear tradition of public access to search warrant materials related to an ongoing investigation."); *see also United States v. Business of Custer Battlefield Museum*, 658 F.3d 1188, 1193 (9th Cir. 2011) (explaining, in analysis of common law right of access, that public access to warrant

15

materials has historically varied between "early stages of criminal proceedings" and "[p]ost-investigation" (emphasis omitted)).

More to the point, no conceivable tradition of access could attach to the unusual, ancillary proceedings at issue here. As discussed, in *Rayburn*, this Court interpreted the Speech or Debate Clause as establishing a "non-disclosure privilege" and, based on that privilege, established a new procedure where the government may search a Member of Congress's congressional office only if it provides the Member with an "opportunity to identify and assert the privilege with respect to legislative materials before their compelled disclosure to Executive agents." 497 F.3d at 662. This proceeding is ancillary to that privilege and was established only in 2007. Accordingly, no historic tradition could support any claimed First Amendment right of access.

**2.** Nor does logic support a right of access to the materials sought here. Even after warrants are executed, routine disclosure of the information sought or collected would be harmful. Such information could suggest or even "detail the government's evidence of criminal activity," "identify information sources," "reveal the government's preliminary theory of the crime being investigated," and "alert others" who may be suspects. *See Fair Finance*, 692 F.3d at 432. Disclosure of what information the government is seeking could also invade the privacy of "innocent people" and chill the government in what it seeks and can disclose. *See id.* And

while public oversight of search warrant proceedings may encourage compliance with the law, such "monitoring of search warrant proceedings" already effectively occurs though suppression proceedings—which occur only when and if the government has brought charges—and damages actions. *Id.* at 432-433; *see United States v. Grubbs*, 547 U.S. 90, 99 (2006) (protection of property owners' Fourth Amendment rights occurs through "a right to suppress evidence improperly obtained and a cause of action for damages").

Again, extending a public right of access while an investigation remains open would even more clearly thwart, rather than enhance, the warrant process. *See Press-Enterprise II*, 478 U.S. at 8. As in the grand jury context discussed by the Supreme Court, "it takes little imagination to recognize" that an ongoing criminal investigation is the "kind[] of government operation[] that would be totally frustrated if conducted openly." *Id.* at 8-9. Disclosure of what the government is seeking or has collected could compromise sources, jeopardize investigative avenues, and lead to the loss of evidence. *See Fair Finance*, 692 F.3d at 432; *Times Mirror*, 873 F.2d at 1215.[*]

---

[*] To the government's knowledge, only one court of appeals has recognized a qualified right of access in an open investigation, but it went on to deny access to the search warrant materials by the related route of finding that a compelling interest in the ongoing investigation justified non-disclosure. *See Gunn*, 855 F.2d at 573-574. As other courts have noted, *Gunn's* threshold access holding is "unpersuasive." *Fair Finance*, 692 F.3d at 433 n.3.

The unusual context of the procedures this Court approved in *Rayburn* underscores these concerns. Recognizing a public right to access factual information connected to *Rayburn* proceedings would be inconsistent with the non-disclosure privilege as recognized in *Rayburn*, which this Court stated is intended to avoid disrupting "exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters" and avoid "chill[ing] the exchange of views." 497 F.3d at 661. As discussed, public disclosure could also undermine investigations where such a procedure is followed.

## C.    Even A Qualified First Amendment Right Would Not Justify Disclosure Here

Where a First Amendment right of access exists, it is qualified and may be limited "for cause shown that outweighs the value of openness." *Press-Enterprise I*, 464 U.S. at 509. The government may overcome the presumptive public access if (1) "a compelling interest" exists; (2) disclosure would create "a substantial probability" of harm to that interest; and (3) alternatives would not "adequately protect the compelling interest." *Brice*, 649 F.3d at 796.

At least two compelling interests apply here. First, as discussed, a "compelling government interest"—namely, safeguarding "the on-going investigation"—would overcome any right of access to the warrant materials being sought. *E.g.*, *Gunn*, 855 F.2d at 574; *see Robinson*, 935 F.2d at 291 (harm to ongoing

18

investigation justifies sealing plea agreement); *see also Virginia Dep't of State Police*, 386 F.3d at 579. Second, a compelling interest in protecting uncharged individuals from unjustified reputational harm also weighs against any right of access to search warrant materials. *See Times Mirror*, 873 F.2d at 1216 (applying the logic prong of the experience and logic test); *In re: Application of WP Co.*, 201 F. Supp. 3d 109, 123-127 (D.D.C. 2016); *see also Sealed Search Warrants*, 868 F.3d at 395.

For these reasons, the very most that movant could access under any claimed First Amendment right would be certain carefully redacted materials that disclose legal arguments that are not intertwined with sensitive facts. That is precisely what the government has suggested in its principal response. No further relief could be warranted.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court direct the parties to propose redactions to the briefs filed in this Court and to an oral argument transcript and that the Court defer questions about redacting record materials to the district court.

Respectfully submitted,

BRIAN M. BOYNTON                    JACK SMITH
Principal Deputy Assistant          Special Counsel
  Attorney General
                                    By: */s/*_____
Gerard Sinzdak                      John M. Pellettieri
Civil Division, Appellate Staff     Timothy A. Duree
                                    Assistant Special Counsels


FEBRUARY 2023

**CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 27(d)**

I hereby certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(1) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.  I further certify that it complies with Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,333 words, according to the count of Microsoft Word.

*/s/*
———————————————
JOHN M. PELLETTIERI

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 10, 2023, before 4 p.m., I filed the foregoing document with the Clerk of the Court by causing it to be sent via email. I certify that service on appellant will be accomplished by email to:

John S. Irving
E&W LAW, LLC
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com

John P. Rowley III
JPRowley Law PLLC
1701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. 20006
(202) 525-6674
john.rowley@jprowleylaw.com

*/s/*
_____
JOHN M. PELLETTIERI