# Attachment 12

In the

# United States Court of Appeals
## for the District of Columbia Circuit

IN RE: SEALED CASE

(UNDER SEAL)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
District Court No. 22-sc-2144 (Howell, C.J.)

**ANSWERING BRIEF FOR THE UNITED STATES**

J.P. COONEY
Deputy Special Counsel

RAYMOND N. HULSER
Counselor to the Special Counsel

TIMOTHY A. DUREE
Assistant Special Counsel

JACK SMITH
Special Counsel

THOMAS P. WINDOM
Senior Assistant Special Counsel

JOHN M. PELLETTIERI
Assistant Special Counsel
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. B-206
Washington, D.C. 20530

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. R. 28(a)(1), the undersigned certifies as follows:

## A.    Parties and Amici

The parties that appeared in the district court and that are now before this Court are the United States (appellee) and appellant Representative Scott G. Perry. The United States House of Representatives has filed a brief as amicus curiae in support of neither party.

## B.    Rulings Under Review

Appellant seeks review of the order of the district court (Howell, C.J.) dated December 28, 2022, requiring Rep. Perry to disclose records to the government. J.A. 144-45 (Order); *see* J.A. 189-239 (Memorandum Opinion).

## C.    Related Cases

Counsel is not aware of any cases that would be deemed related under D.C. Cir. R. 28(a)(1)(C).

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Assistant Special Counsel
U.S. Department of Justice

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ....i

TABLE OF AUTHORITIES ........................................................ iv

GLOSSARY OF ABBREVIATIONS ............................................x

JURISDICTIONAL STATEMENT..............................................1

STATEMENT OF THE ISSUES ..................................................1

STATEMENT OF THE CASE .....................................................2

    I.    Legal Background......................................................2

        A.    The Speech or Debate Clause.............................2

        B.    This Court's Decision in *Rayburn* .....................4

    II.    Factual and Procedural Background ..........................6

        A.    The Government Obtains a Warrant to Search Rep. Perry's Personal Cell Phone ..............................6

        B.    Rep. Perry Receives the Opportunity to Claim Privilege Before the Disclosure of Any Records to the Government and Asserts Privilege Over 2,219 Records ......8

        C.    The District Court Concludes That 164 of the 2,219 Records are Privileged in Whole or in Part and Orders the Disclosure of the Remaining Records......................... 10

        D.    This Court Stays the District Court's Order and Directs the Parties to Address Four Issues........................ 11

SUMMARY OF ARGUMENT .................................................. 12

ARGUMENT .......................................................................... 15

    I.    This Court Lacks Jurisdiction................................... 15

II.    The Non-Disclosure Privilege Recognized in *Rayburn* Does Not Require This Court to Review the District Court's Privilege Determinations ............................................................ 22

        A.    *Rayburn* Should Not Apply to Rep. Perry's Personal Cell Phone in This Case ................................................... 23

        B.    *Rayburn* Does Not Require This Court to Serve as an Extra Layer of Privilege Review for the 2,055 Records ..... 28

        C.    The Non-Disclosure Privilege Recognized in *Rayburn* Only Requires Pre-Disclosure Review of Rep. Perry's Communications with Other Members or His Staff .......... 31

III.   Even if *Rayburn* Requires This Court to Review the District Court's Privilege Determinations Over the 2,055 Records, the Court Should Affirm Those Determinations ........................ 37

        A.    Rep. Perry Has Not Carried His Burden of Demonstrating that the 2,055 Documents are Privileged ....................................................................... 37

        B.    The Speech or Debate Clause Does Not Cover an Individual Member's Information-Gathering Efforts Outside the Confines of a Committee Investigatory Proceeding ...................................................................... 39

        C.    Even if the Speech or Debate Clause Covers Information-Gathering by Individual Members Unconnected to Committee Proceedings, the District Court's Privilege Determinations Were Correct ............... 50

CONCLUSION ........................................................................ 55

CERTIFICATE OF COMPLIANCE ........................................ 57

CERTIFICATE OF SERVICE ................................................. 58

# TABLE OF AUTHORITIES

## Cases

*Abbas v. Foreign Pol'y Grp., LLC,*
    783 F.3d 1328 (D.C. Cir. 2015) ............................................................ 23

*Abney v. United States,*
    431 U.S. 651 (1977) ............................................................................... 20

*Bastien v. Office of Senator Campbell,*
    390 F.3d 1301 (10th Cir. 2004) ........................................................ 48-49

*Bogan v. Scott-Harris,*
    523 U.S. 44 (1998) ................................................................................. 41

*Brinton v. Dep't of State,*
    636 F.2d 600 (D.C. Cir. 1980) .............................................................. 34

*Brown & Williamson Tobacco Corp. v. Williams,*
    62 F.3d 408 (D.C. Cir. 1995) ........................................................... 32, 45

*Cobbledick v. United States,*
    309 U.S. 323 (1940) ........................................................................ 15, 17

*Doe v. McMillan,*
    412 U.S. 306 (1973) ............................................... 3, 40-41, 54

*Eastland v. United States Servicemen's Fund,*
    421 U.S. 491 (1975) ........................................................................ 41-43

*Exxon Corp. v. FTC,*
    589 F.2d 582 (D.C. Cir. 1978) .............................................................. 46

*Firestone Tire & Rubber Co. v. Risjord,*
    449 U.S. 368 (1981) ............................................................................... 21

*Fulton Cnty. Special Purpose Grand Jury v. Graham,*
    No. 22-12696, 2022 WL 13682659 (11th Cir. Oct. 20, 2022) .................... 49

*Gojack v. United States*,
  384 U.S. 702 (1966) ............................................................... 46

*Government of Virgin Islands v. Lee*,
  775 F.2d 514 (3d Cir. 1985) ................................................. 49

*Gravel v. United States*,
  408 U.S. 606 (1972) ...................................2-4, 21, 40-41, 52, 55

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
  485 U.S. 271 (1988) ............................................................... 22

*Helstoski v. Meanor*,
  442 U.S. 500 (1979) ............................................................... 20

*Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*,
  720 F.3d 939 (D.C. Cir. 2013) ............................................... 3

*Hutchinson v. Proxmire*,
  443 U.S. 111 (1979) ......................................................... 2, 54

*In re Grand Jury Investigation*,
  587 F.2d 589 (3d Cir. 1978) ................................................. 38

*In re Grand Jury Subpoena, Judith Miller*,
  438 F.3d 1141 (D.C. Cir. 2006) ........................................... 17

*In re Grand Jury Subpoenas*,
  571 F.3d 1200 (D.C. Cir. 2009) ........................................... 21

*In re Grand Jury Subpoenas*,
  974 F.3d 842 (8th Cir. 2020) .............................................15-16

*In re Grand Jury*,
  705 F.3d 133 (3d Cir. 2012) ................................................. 15

*In re Kellogg Brown & Root, Inc.*,
  756 F.3d 754 (D.C. Cir. 2014) ............................................. 22

*In re Lindsey*,
  158 F.3d 1263 (D.C. Cir. 1998) ........................................... 38

*In re Sealed Case (Med. Recs.)*,
381 F.3d 1205 (D.C. Cir. 2004), *abrogated on other grounds by*
*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009) ............................... 37

*In re Sealed Case*,
141 F.3d 337 (D.C. Cir. 1998) ................................................................. 18

*In re Sealed Case*,
146 F.3d 881 (D.C. Cir. 1998) ................................................................. 18

*In re Sealed Case*,
716 F.3d 603 (D.C. Cir. 2013) ................................................................. 15

*In re Sealed Case*,
737 F.2d 94 (D.C. Cir. 1984) ................................................................... 15

*In re Sealed Case*,
754 F.2d 395 (D.C. Cir. 1985) ................................................................. 15

*In re Search of Elec. Commc'ns*,
802 F.3d 516 (3d Cir. 2015) ..................................................................... 5

*In re Search of The Rayburn House Off. Bldg. Room No. 2113*,
432 F. Supp. 2d 100 (D.D.C. 2006) ......................................................... 20

*In re Subpoenas Duces Tecum*,
738 F.2d 1367 (D.C. Cir. 1984) .............................................................. 34

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates*,
506 F. Supp. 2d 30 (D.D.C. 2007) ........................................................... 10

*Kilbourn v. Thompson*,
103 U.S. (13 Otto) 168 (1881) ................................................................ 41

*McGrain v. Daugherty*,
273 U.S. 135 (1927) .......................................................................... 42, 45

*McSurely v. McClellan*,
553 F.2d 1277 (D.C. Cir. 1976) (en banc) ....................... 40, 42-47, 48, 50

*Midland Asphalt Corp. v. United States*,
    489 U.S. 794 (1989) ............................................................19-20

*Miller v. Transamerican Press, Inc.*,
    709 F.2d 524 (9th Cir. 1983) ................................................ 48

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) .............................................19, 30, 34, 37

*Nat'l Right to Work Legal Def. v. Richey*,
    510 F.2d 1239 (D.C. Cir. 1975) ........................................16-17

*Perlman v. United States*,
    247 U.S. 7 (1918)........................................................ 18-19, 21

*Tenney v. Brandhove*,
    341 U.S. 367 (1951) ............................................................ 41

*Trump v. Mazars USA, LLP*,
    140 S. Ct. 2019 (2020)........................................................ 45

*United States v. Anderson*,
    464 F.2d 1390 (D.C. Cir. 1972) .......................................... 16

*United States v. Brewster*,
    408 U.S. 501 (1972).......................2, 3, 18, 39-40, 47, 50, 52, 53

*United States v. Helstoski*,
    442 U.S. 477 (1979) ............................................. 4, 41, 47, 53

*United States v. Johnson*,
    383 U.S. 169 (1966) .......................................................... 3, 41

*United States v. Menendez*,
    831 F.3d 155 (3d Cir. 2016)................................................ 52

*United States v. Nixon*,
    418 U.S. 683 (1974) ............................................................ 17

*United States v. Rayburn House Off. Bldg.*,
    497 F.3d 654 (D.C. Cir. 2007).....................4-5, 7-8, 12-13, 19-20, 22-37, 55

*United States v. Renzi*,
651 F.3d 1012 (9th Cir. 2011)......................................... 5, 21, 24, 47-49, 53

*United States v. Rostenkowski*,
59 F.3d 1291 (D.C. Cir. 1995)..................................................... 20-21, 38

*United States v. Ryan*,
402 U.S. 530 (1971) ................................................................. 15-16, 19

*United States v. Williams Companies, Inc.*,
562 F.3d 387 (D.C. Cir. 2009) ............................................................... 18

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) ........................................................................ 34

*Watkins v. United States*,
354 U.S. 178 (1957) ........................................................................ 46

## Statutes and Constitutional Provisions

U.S. Const. art. I, § 6, cl. 1 ................................................................. 2

U.S. Const. art. II, § 1, cl. 2 ................................................................ 51

U.S. Const. amend. XII.................................................................... 51

3 U.S.C. § 15 .............................................................................. 52

18 U.S.C. § 3231 ........................................................................... 1

28 U.S.C. § 1291 .......................................................................11, 15

## Rules

D.C. Cir. R. 28 ...............................................................................i

Fed. R. App. P. 4 ........................................................................... 1

**Other Authorities**

1 McCormick on Evidence § 91 (8th ed. 2022)............................................. 34

A Sitting President's Amenability to Indictment and Criminal
    Prosecution, 24 Op. O.L.C. 222 (2000).................................................... 18

Ben Wilhelm et al., Congressional Research Service, *Congressional
    Oversight Manual* (Dec. 22, 2022) ........................................................... 45

Morton Rosenberg, *When Congress Comes Calling: A Study on the
    Principles, Practices, and Pragmatics of Legislative Inquiry* (2017)................... 46

S. Res. 341, 91st Cong. (1970) .................................................................... 42

## GLOSSARY OF ABBREVIATIONS

Br.              Opening brief filed by appellant

J.A.            Joint Appendix

Amicus Br.     Amicus brief filed by U.S. House of Representatives

# JURISDICTIONAL STATEMENT

This is an appeal arising from the execution of a warrant to search a forensic copy of the personal cell phone of Representative Scott G. Perry. On December 28, 2022, the district court entered an order directing Rep. Perry to disclose to the government 2,055 records from the forensic copy. J.A. 144-45. Rep. Perry filed a timely notice of appeal on December 30, 2022. J.A. 240-41; *see* Fed. R. App. P. 4(b)(1)(A). The district court had jurisdiction under 18 U.S.C. § 3231 and Federal Rule of Criminal Procedure 41. For the reasons explained below, this Court lacks jurisdiction.

# STATEMENT OF THE ISSUES

1. Whether this Court possesses appellate jurisdiction to review the district court's disclosure order.

2. Whether *Rayburn* requires this Court to review the documents seized pursuant to the valid warrant in this case for Speech or Debate privilege before the documents are disclosed to the government.

3. Whether the district court's Speech or Debate privilege determinations were correct.

# STATEMENT OF THE CASE

## I. Legal Background

### A. The Speech or Debate Clause

The Speech or Debate Clause provides that "for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. Consistent with its text, "[t]he heart of the Clause is speech or debate in either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972). The Supreme Court has extended the Clause's protections beyond its literal terms, however, to include acts "generally done in a session of the House by one of its members in relation to the business before it," *id.* at 624 (internal quotation marks omitted), but "[t]he gloss going beyond a strictly literal reading of the Clause has not . . . departed from the objective of protecting only *legislative activities*." *Hutchinson v. Proxmire*, 443 U.S. 111, 125 (1979) (emphasis added).

The protections of the Speech or Debate Clause do not extend "beyond its intended scope, its literal language, and its history, to include all things in any way related to the legislative process." *United States v. Brewster*, 408 U.S. 501, 516 (1972). For "there are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process." *Id.* The Clause reaches only acts that are "an integral part of the deliberative and

communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. This includes, for example, voting, issuing committee reports, and participating in committee hearings. *Id.* at 624. But the Clause does not shield legislators from "inquiry into activities that are casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Brewster*, 408 U.S. at 528.

The Speech or Debate Clause thus strikes a careful balance. It is "broad enough to insure the historic independence of the Legislative Branch, essential to our separation of powers, but narrow enough to guard against the excesses of those who would corrupt the process by corrupting its Members." *Brewster*, 408 U.S. at 525. While the Clause safeguards the legitimate prerogatives of Congress, it does not "make Members of Congress super-citizens, immune from criminal responsibility." *Id.* at 516.

Where it applies, the Clause affords members of Congress "three distinct protections." *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013). First, it grants members civil and criminal immunity for their legislative acts. *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973); *United States v. Johnson*, 383 U.S. 169, 184-85 (1966). Second, it creates

an evidentiary privilege that bars the use of legislative-act evidence against a member. *United States v. Helstoski*, 442 U.S. 477, 487 (1979). Third, it creates a testimonial privilege guaranteeing that members "may not be made to answer" questions about their legislative acts. *Gravel*, 408 U.S. at 616.

**B.     This Court's Decision in *Rayburn***

In *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 660 (D.C. Cir. 2007), this Court concluded that the testimonial privilege created by the Speech or Debate Clause includes a non-disclosure component that restricts the government's ability to execute a warrant to search a member's congressional office. The warrant in *Rayburn* incorporated "special procedures" for use of a "filter team" within the Department of Justice that would determine whether any materials seized from the member's office were privileged under the Speech or Debate Clause, contemplating that any privileged materials would be returned to the member. *Id.* at 656-57. When it executed the warrant, the government reviewed "every paper record" in the member's office, privileged and non-privileged, and seized two boxes of documents. *Id.* at 657, 661. The government also "copied the hard drives on all of the computers and electronic data stored on other media." *Id.* at 657. While the member's appeal was pending, but before the government had searched the electronic media, this Court issued a "Remand Order" directing the district

court to provide the member with copies of the electronic media so that he could claim privilege for any records in them and the district court could conduct an *in camera* review to determine whether the records were privileged under the Speech or Debate Clause. *Id.* at 658.

This Court concluded that the search procedures in the warrant, which permitted the Executive Branch to review privileged materials without first affording the member an opportunity to assert privilege, violated the Speech or Debate Clause. 497 F.3d at 661-63. The Court found that the "search of the Congressman's paper files therefore violated the Clause." *Id.* at 663. But the Court found that the "copying of computer hard drives and other electronic media [was] constitutionally permissible because the Remand Order afford[ed] the Congressman an opportunity to assert the privilege prior to disclosure of privileged materials to the Executive." *Id.*[1]

---

[1] *Rayburn* is the only decision by any court of appeals that has concluded that the Speech or Debate Clause creates a non-disclosure privilege that affects the government's ability to obtain evidence in a federal criminal investigation. *See United States v. Renzi*, 651 F.3d 1012, 1033 (9th Cir. 2011) (describing *Rayburn* as "the only case that has ever held that the Clause goes so far as to preclude the Executive from obtaining and reviewing 'legislative act' evidence"). The Third and Ninth Circuits have rejected such a non-disclosure privilege. *See In re Search of Elec. Commc'ns*, 802 F.3d 516, 525 (3d Cir. 2015) (describing this issue as "decisively settled" in the Third Circuit); *Renzi*, 651 F.3d at 1034 ("We disagree with both *Rayburn*'s premise and its effect and thus decline to adopt its rationale.").

## II.  Factual and Procedural Background

### A.  The Government Obtains a Warrant to Search Rep. Perry's Personal Cell Phone

Rep. Perry has represented Pennsylvania's Tenth Congressional District or its predecessor in the House of Representatives since January 2013. J.A. 190. During the 116th Congress, which ran from January 3, 2019, to January 3, 2021, Rep. Perry was assigned to the House Foreign Affairs Committee and the House Committee on Transportation and Infrastructure. He was sworn into the 117th Congress on January 3, 2021, and he was subsequently assigned to the same two committees.[2]

In connection with an investigation into "potential federal criminal law violations stemming from efforts to overturn the 2020 presidential election, the government uncovered evidence of Rep. Perry using his personal cell phone to communicate with individuals allegedly engaged in those efforts over critical time periods at issue in the investigation." J.A. 190. In August 2022, a federal magistrate judge in the Middle District of Pennsylvania found probable cause to believe that Rep. Perry's personal cell phone would contain evidence of

---

[2] Rep. Perry identifies (Br. 3) his committee assignments from earlier Congresses and a committee assignment that he sought (apparently unsuccessfully) in the 117th Congress, but he does not explain why those facts are relevant. He also does not explain the relevance (Br. 3 n.1) of his prior military service or his membership in the House Freedom Caucus.

criminal conduct and approved a warrant to seize the phone and obtain a forensic extraction of its contents. J.A. 190, 192. Pursuant to the warrant, the government seized the phone, made a forensic copy, and promptly returned the phone to Rep. Perry. J.A. 192. Subsequently, the district court in this case also found probable cause to believe that Rep. Perry's personal cell phone would contain evidence of criminal conduct and approved a warrant to search the forensic extraction of the phone. J.A. 190, 192-93.

In light of questions about the scope and reach of *Rayburn*, and recognizing that Rep. Perry's personal cell phone might contain records "that are protected by the Speech or Debate Privilege," an attachment to the warrant (Attachment C) set forth a protocol to "ensure that an appropriate opportunity is afforded to Congressman Perry to either waive or assert the Privilege, prior to any review of the content of the Extraction by employees of the Executive Branch." J.A. 28 (Attachment C). Consistent with the search procedures this Court ordered and approved in *Rayburn*, the protocol stated that the government would provide Rep. Perry with a copy of the extraction, Rep. Perry would have an opportunity to assert the Speech or Debate privilege over records in the extraction, and the government could then "request that the District Court review the records over which Congressman Perry has asserted

privilege in order for the Court to make a final determination whether they contain privileged information." J.A. 28-29.

**B.  Rep. Perry Receives the Opportunity to Claim Privilege Before the Disclosure of Any Records to the Government and Asserts Privilege Over 2,219 Records**

The government argued to the district court that the non-disclosure privilege identified in *Rayburn* should not apply to a search of Rep. Perry's personal cell phone but requested that the court nonetheless implement the *Rayburn*-compliant protocol to avoid delay of the government's investigation due to litigation over the scope and applicability of *Rayburn*. *See* J.A. 65-66, 72-73. The district court found that there were "valid distinctions from the circumstances in *Rayburn*," but the court determined that "prudence dictates compliance with Attachment C" because "*Rayburn* is written sufficiently broadly to contemplate" that it would cover the search of Rep. Perry's personal cell phone. J.A. 112; *see* J.A. 213.

Rep. Perry accordingly received the opportunity to claim privilege for any record on his phone before disclosure to the government. Rep. Perry received a copy of the forensic extraction from his phone and obtained multiple extensions of time to review the contents of the phone, at one point providing the government with a preliminary 218-page privilege log. *See* J.A. 21, 40-50, 193. More than three months after the district court issued the

warrant to search the contents of Rep. Perry's cell phone, Rep. Perry claimed that 2,219 records on his phone—emails and texts, some with attachments— were privileged under the Speech or Debate Clause. *See* J.A. 132-42.

The government requested *in camera* review of the records to determine whether they were privileged, and Rep. Perry turned over the 2,219 records to the district court. *See* J.A. 135. In a motion and *ex parte* submission in support of his privilege claims, Rep. Perry placed the emails and texts into categories based on the participants, with categories for "Cybersecurity Individuals," "Members & Staff," "Executive Branch Officials," "Trump Campaign Officials," "Pennsylvania State Legislators," and "Other" (a catchall category). J.A. 136; *see* J.A. 197-98.

Presumably referring to all 2,219 records, Rep. Perry claimed that "[t]he communications to be reviewed in this matter pertain to Rep. Perry's efforts as a Member of Congress to gather information about the security of the 2020 election and the validity of the electors required to certify the election." J.A. 139. Rep. Perry asserted that "[t]he primary inquiry when attempting to determine the applicability of the Speech or Debate Clause to Rep. Perry's communications is whether he was engaged in information gathering that is 'part of, in connection with, or in aid[] of a legitimate legislative act' that is protected by the Clause, even where it is an informal effort undertaken by an

individual Member of Congress or their staff." J.A. 137 (quoting *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007)); *see also* J.A. 141 (arguing that the communications were protected because they "legitimately fell within Rep. Perry's fact-gathering efforts").

## C. The District Court Concludes That 164 of the 2,219 Records are Privileged in Whole or in Part and Orders the Disclosure of the Remaining Records

The district court conducted a "time-consuming and resource-intensive" review and concluded that 161 of the 2,219 records were privileged and that three other records were partially privileged and should be disclosed to the government in redacted form. J.A. 144-88, 211 n.8. The court ordered Perry to "promptly disclose" the remaining (2,055) unprivileged communications to the government. J.A. 144.

The court explained its privilege determinations in a detailed, 51-page memorandum opinion. J.A. 189-239. The Court identified three general principles that guided its privilege review: (1) "the [Speech or Debate] Clause does not protect conduct only tangentially related, but not necessary or integral, to official legislative action," J.A. 206; (2) "though each legislative act inherently carries potential political consequences, general political activities are unprotected by the Clause," J.A. 207; and (3) a "Member's informal investigative efforts or fact-finding inquiries untethered to a formally

10

sanctioned congressional inquiry remain unprotected," J.A. 209. The court then analyzed in granular detail the 2,219 communications and discussed them by way of the categories proposed by Rep. Perry. J.A. 213-39. The court found that none of Rep. Perry's communications with Trump campaign officials, Pennsylvania state legislators, so-called cybersecurity individuals, or Executive Branch officials were privileged. J.A. 216-27, 236-37. The court found that 164 of the 611 communications between Rep. Perry and his staff or other members of Congress were privileged in whole or in part. J.A. 227-36.

### D. This Court Stays the District Court's Order and Directs the Parties to Address Four Issues

This Court granted Rep. Perry's motion to stay the district court's disclosure order pending this appeal. The Court directed the parties to address four issues in their briefs:

1. Whether this court has jurisdiction under 28 U.S.C. § 1291, the collateral order doctrine, mandamus, or some other theory;

2. Whether the Speech or Debate Clause of the Constitution protects informal legislative fact-finding by individual members of Congress in the absence of official authorization;

3. Whether the Speech or Debate Clause's non-disclosure privilege extends to communications between members of Congress and either private parties or members of the Executive Branch; and

4. What specific documents or categories of documents are protected under the governing legal standards, including discussion of the categories of documents identified by the district court.

## SUMMARY OF ARGUMENT

The government obtained the contents of Rep. Perry's personal cell phone pursuant to a valid search warrant supported by probable cause that the phone contained evidence of criminal activity. Despite questions about whether the non-disclosure privilege recognized in *Rayburn* applied to the search of Rep. Perry's personal cell phone, the district court conducted a *Rayburn*-compliant protocol, permitting Rep. Perry to raise claims of privilege under the Speech or Debate Clause before any records on the phone were turned over to the government. After carefully reviewing the 2,219 records over which Rep. Perry raised a claim of privilege, the district court entered an order identifying 2,055 of those records as non-privileged and providing the government with access to review them in its continuing investigation. This Court should dismiss Rep. Perry's appeal or affirm the district court's order.

This Court lacks jurisdiction over Rep. Perry's appeal from the district court's order. That order is a non-appealable interlocutory order indistinguishable from pre-indictment disclosure orders that the Supreme Court and this Court have repeatedly held are not appealable.

If this Court nonetheless concludes that it possesses jurisdiction, it should affirm on the ground that *Rayburn* does not require either the district court or this Court to review the records on Rep. Perry's personal cell phone for privilege, or at most requires review of only 611 of the records. First, *Rayburn* should be limited to the unique, unprecedented circumstances in that case, the first-ever search of a member's congressional office. Second, even if *Rayburn* applies to the search of Rep. Perry's personal cell phone, the *Rayburn* non-disclosure privilege does not require this Court to review the 2,055 records on Rep. Perry's phone on top of the review by the district court. Review for privilege by the district court before disclosure to the government is sufficient to prevent any chill to the free exchange of views within Congress. Third, because the *Rayburn* non-disclosure privilege is aimed at avoiding such a chill, it should apply only to communications maintained in confidence between Rep. Perry and his staff or other members, which total 611 communications on Rep. Perry's personal cell phone, and should not apply to communications with individuals outside of Congress, such as emails and texts with political operatives or Executive Branch officials.

Assuming that this Court possesses jurisdiction, that *Rayburn* applies to Rep. Perry's personal cell phone, and that *Rayburn* requires this Court to review the 2,055 records before their disclosure to the government, the Court

should affirm the district court's privilege determinations on the merits. Rep. Perry has failed to meet his burden of establishing that the 2,055 records are privileged. Moreover, although the government does not yet have access to the 2,055 records and does not know their contents, the available information indicates that the district court's privilege determinations were correct and that the district court did not abuse its discretion. The 2,055 records cannot reflect information-gathering activity by Rep. Perry protected by the Speech or Debate privilege. This Court's precedents establish that the Speech or Debate Clause does not cover investigatory efforts by individual members of Congress or their staff unconnected to Congress's authorized exercise of its investigatory authority. That precedent creates a clear, administrable rule that covers only conduct essential and integral to the legislative process while avoiding a seemingly boundless standard that could cover any activity, however informal, that exposes members to information that might have a bearing on their legislative responsibilities. Finally, even if the Speech or Debate Clause broadly covers informal information-gathering by individual members, Rep. Perry's communications in this case are not protected. The district court did not abuse its discretion in concluding that Rep. Perry's communications reflect pre-legislative conduct, political activity, and communications with the Executive Branch that are unprotected under the Speech or Debate Clause.

## ARGUMENT

## I.   This Court Lacks Jurisdiction

This Court lacks jurisdiction over the district court's order directing Rep. Perry to disclose 2,055 documents to the government. The disclosure order the district court entered pursuant to the warrant's privilege-review protocol is not an appealable final order.[3]

This Court has appellate jurisdiction over "final decisions." 28 U.S.C. § 1291; *see In re Sealed Case*, 716 F.3d 603, 605 (D.C. Cir. 2013). A district court order to produce or disclose documents is not an appealable final decision under § 1291. *United States v. Ryan*, 402 U.S. 530, 532-33 (1971); *Cobbledick v. United States*, 309 U.S. 323, 327-29 (1940); *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985); *see, e.g.*, *In re Grand Jury Subpoenas*, 974 F.3d 842, 843-44 (8th Cir. 2020) (per curiam); *In re Grand Jury*, 705 F.3d 133, 142-43 (3d Cir. 2012). "[T]o obtain instant appellate review, the party to whom the command is addressed must refuse to respond and submit to a contempt citation." *In re Sealed Case*, 737 F.2d 94, 97 (D.C. Cir. 1984).

These established principles foreclose appellate jurisdiction here. The district court's order requires Rep. Perry to disclose 2,055 records to the government. Insofar as Rep. Perry contends that the district court's privilege

---

[3] This section addresses issue (1) in the Court's briefing order.

determinations were incorrect, he "may refuse to comply and litigate those questions in the event that contempt or similar proceedings are brought against him," and "[s]hould his contentions be rejected at that time by the trial court, they will then be ripe for appellate review." *Ryan*, 402 U.S. at 532; *see United States v. Anderson*, 464 F.2d 1390, 1391 (D.C. Cir. 1972).

This rule "puts the objecting person's sincerity to the test by attaching a price to the demand for immediate review" and "forces the objector to weigh carefully the likelihood of success of its challenge to the underlying disclosure order against the seriousness of the sanctions it would face," thereby "cut[ting] down dramatically on the number of appeals taken to obtain delay." *In re Grand Jury Subpoenas*, 974 F.3d at 844 (internal quotation marks omitted). The Supreme Court has "consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance" and "resistance," with the "possibility of an adjudication of contempt if his claims are rejected on appeal." *Ryan*, 402 U.S. at 533. These considerations apply equally to orders requiring discovery over a party's "assertion of constitutional privilege." *Nat'l Right to Work Legal Def. v. Richey*, 510 F.2d 1239, 1245 (D.C. Cir. 1975) (per curiam); *see Anderson*, 464 F.2d at 1391 (invocation of Fifth Amendment privilege against self-incrimination); *see also In re Grand Jury*

*Subpoena, Judith Miller*, 438 F.3d 1141, 1145 (D.C. Cir. 2006) (reviewing First Amendment claim by grand-jury witness held in contempt).

Rep. Perry nonetheless contends (Br. 12) that the district court's order is an appealable final decision because it "ended the litigation between Rep. Perry and the Government" and "compelled [him] to provide the Government with access to the communications." But although, "in a certain sense, finality can be asserted of any order of a court," *Cobbledick*, 309 U.S. at 327 (internal quotation marks omitted), an "order to disclose information is not a final order even though the resisting party must subject himself to contempt in order to obtain review under 28 U.S.C. 1291," *Richey*, 510 F.2d at 1245. Rep. Perry does not acknowledge, let alone distinguish, these longstanding principles.

The narrow exception that the Supreme Court recognized in *United States v. Nixon*, 418 U.S. 683, 708 (1974), is inapplicable here. *Nixon* held that a sitting President could immediately appeal an order for the disclosure of records over an assertion of executive privilege, concluding that "the traditional contempt avenue to immediate appeal is peculiarly inappropriate due to the unique setting in which the question arises." *Id.* at 691-92. Among other things, the Court noted that a contempt citation against a sitting President "could itself engender protracted litigation" and lead to delay. *Id.* at 692. Imposing contempt sanctions on a member of Congress for failing to

follow a court order would not implicate the difficult and unique issues that could arise from imposing sanctions on a sitting President. *Compare, e.g.*, A Sitting President's Amenability to Indictment and Criminal Prosecution, 24 Op. O.L.C. 222 (2000) (concluding that a sitting President is uniquely immune from criminal indictment and prosecution), *with United States v. Brewster*, 408 U.S. 501, 522 n.16 (1972) ("[T]his country has no tradition of absolute congressional immunity from criminal prosecution.").

Also inapplicable is the exception established by the Supreme Court in *Perlman v. United States*, 247 U.S. 7 (1918). That exception permits the holder of a privilege to obtain interlocutory review of a disclosure order directed at a disinterested third party who possesses the allegedly privileged documents because a third party generally cannot be expected to incur a contempt sanction in defense of another party's privilege. *See United States v. Williams Companies, Inc.*, 562 F.3d 387, 392 (D.C. Cir. 2009). A client therefore may appeal an order directing an attorney to disclose documents over the client's assertion of the attorney-client privilege. *See, e.g.*, *In re Sealed Case*, 146 F.3d 881, 883 (D.C. Cir. 1998). But *Perlman* does not apply where, as here, a disclosure order is directed at the individual who possesses the documents and holds the privilege. *See, e.g.*, *In re Sealed Case*, 141 F.3d 337, 340 (D.C. Cir.

1998); *see also Ryan*, 402 U.S. at 534 (concluding that *Perlman* "has no application in the situation before us").

The collateral-order doctrine also does not provide a basis to review the disclosure order here. In *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009), the Supreme Court confirmed that interlocutory disclosure orders are generally not appealable and refused to create a special rule for disclosure orders "implicating the attorney-client privilege." *Id.* at 108. The Court explained that a party aggrieved by a disclosure order can, among other things, challenge use of the material in the event of a trial and appeal, seek mandamus, or "defy a disclosure order and incur court-imposed sanctions." *Id.* at 111; *see id.* at 110-12. Although the Court acknowledged the "importance of the attorney-client privilege" and "'full and frank'" discussions between attorneys and clients, it explained that neither "the remote prospect of an erroneous disclosure order" nor the "timing of a possible appeal" will result in a "discernible chill." *Id.* at 108-10. The same considerations apply with equal force to an order to disclose documents responsive to a warrant over an assertion of the Speech or Debate non-disclosure privilege that this Court recognized in *Rayburn*, particularly because the collateral-order doctrine is applied "with the utmost strictness" in criminal proceedings. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (internal quotation marks omitted).

Rep. Perry misplaces his reliance (Br. 15-16) on *Abney v. United States*, 431 U.S. 651 (1977), *Helstoski v. Meanor*, 442 U.S. 500 (1979), and *United States v. Rostenkowski*, 59 F.3d 1291 (D.C. Cir. 1995). Those cases exemplify the rule that the collateral-order doctrine permits appeals of district court orders addressing a defendant's personal immunity from criminal liability, *i.e.*, "[a] right not to be tried" that "rests upon an explicit statutory or constitutional guarantee that trial will not occur." *Midland Asphalt Corp.*, 489 U.S. at 801 (citing *Abney* and *Helstoski*). The orders in *Helstoski* and *Rostenkowski* denied dismissals of indictments under the Speech or Debate Clause, and the order in *Abney* denied dismissal under the Double Jeopardy Clause. Rep. Perry's Speech or Debate claim, in contrast, does not assert immunity from criminal liability. Far from it: He merely asserts that the non-disclosure privilege recognized in *Rayburn* permits him to withhold documents from the government despite a valid search warrant—regardless of whether the documents are used to obtain an indictment against him or anyone else.[4]

---

[4] *Rayburn* itself also does not support appellate jurisdiction here. The district court in *Rayburn* did not order the disclosure of documents and instead denied a motion seeking the return of all documents (whether privileged or non-privileged) that were seized in a search of the member's congressional office. *See In re Search of The Rayburn House Off. Bldg. Room No. 2113*, 432 F. Supp. 2d 100, 106, 119 (D.D.C. 2006).

*Rostenkowski* further demonstrates that the collateral-order doctrine does not permit interlocutory appeal of Rep. Perry's Speech or Debate claims. In that case, this Court determined that although the denial of a motion to dismiss an indictment was appealable, 59 F.3d at 1297, the denial of a pretrial hearing to determine whether the government would use privileged material at trial was not, *id.* at 1300-01. Similarly, in *United States v. Renzi*, 651 F.3d 1012 (9th Cir. 2011), the court of appeals exercised jurisdiction over the district court's order denying immunity under the Speech or Debate Clause but not an order denying suppression of evidence. *Id.* at 1019. For purposes of the collateral-order doctrine, the district court's disclosure order here is comparable to the non-appealable pretrial evidentiary rulings in *Rostenkowski* and *Renzi*. *See also Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) (distinguishing denial of pre-trial dismissal on double-jeopardy grounds from "pretrial discovery orders," which are generally not appealable).[5]

Finally, Rep. Perry has waived this Court's exercise of mandamus jurisdiction and would not be entitled to mandamus in any event. "[T]he party

---

[5] The House's reliance (Amicus Br. 27-28) on *In re Grand Jury Subpoenas*, 571 F.3d 1200 (D.C. Cir. 2009), is inapt. Although that case mentioned the collateral-order doctrine and *Rostenkowski* in passing as a basis for exercising jurisdiction, the member in that case appealed the denial of a motion to quash subpoenas directed at his lawyers and thus the exercise of jurisdiction was proper under *Perlman*. *See supra* pp. 18-19; *see also Gravel*, 408 U.S. at 608 n.1.

seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289 (1988) (internal quotation marks omitted). Despite this Court's invitation to the parties to address mandamus in their briefs, Rep. Perry does not discuss mandamus at all, let alone attempt to meet his burden of showing a clear and indisputable right to relief. Nor could Rep. Perry satisfy that burden if he had tried. For the reasons discussed below, Perry cannot show he is entitled to relief, much less that "his right to the issuance of the writ is 'clear and indisputable.'" *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014).

## II.    The Non-Disclosure Privilege Recognized in *Rayburn* Does Not Require This Court to Review the District Court's Privilege Determinations

Should this Court find appellate jurisdiction, it can affirm the judgment below on the threshold ground that no *Rayburn* protocol was necessary in this case. As the government argued in the district court, *Rayburn* should instead be understood as requiring special review procedures in the unique circumstances of that case, which involved the first-ever search of a member's congressional office. The Court should not extend *Rayburn* beyond those core circumstances and therefore *Rayburn* should not apply to the search of Rep. Perry's personal cell phone in this case. Regardless, even when *Rayburn* applies, it does not

contemplate that this Court will independently review each of the privilege determinations by a district court pursuant to the protocol approved in *Rayburn*. A district court's implementation of that protocol is enough to protect the member's Speech or Debate non-disclosure rights in the context of a valid search warrant. Moreover, the non-disclosure privilege recognized in *Rayburn* should extend only to congressional materials maintained in confidence, which in this case would include only the communications between Rep. Perry and his staff or other members of Congress but not communications involving third parties unconnected to Congress.

In short, this Court should affirm the district court's disclosure order on the ground that the government was entitled to the documents without regard to the procedures in Attachment C. Although the district court did not order disclosure on that basis, this Court can affirm on any ground that the record supports and that the opposing party has had an opportunity to address. *See, e.g.*, *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015).

## A. *Rayburn* Should Not Apply to Rep. Perry's Personal Cell Phone in This Case

This Court should limit *Rayburn* to searches of congressional offices. Assuming *Rayburn* applies beyond a search of a congressional office, there must be some limit to its application—the *Rayburn* non-disclosure privilege cannot apply to any search that may, or even will likely, uncover legislative-act

evidence. But whatever *Rayburn*'s outer limits, the search of Rep. Perry's personal cell phone should fall outside.

*Rayburn* "concerned a novel problem: the first execution of a search warrant on the congressional office of a sitting Member of Congress." *Renzi*, 651 F.3d at 1033. This Court noted in *Rayburn* that "[t]he Supreme Court ha[d] not spoken to the precise issue at hand" because "May 20-21, 2006 was the first time a sitting Member's congressional office ha[d] been searched by the Executive." 497 F.3d at 659. The exceptional, unprecedented nature of the search conducted in *Rayburn* framed the Court's reasoning and holding. For instance, the Court determined that any "burden" associated with the privilege-review protocol it approved would likely arise "infrequent[ly]" because "[t]he historical record [was] utterly devoid of Executive searches of congressional offices." *Id.* at 663. Similarly, when discussing remedies that might deter "future actions by the Executive," the Court observed again that "this is the only time in the Nation's history that the Executive has searched the office of a sitting Member of Congress." *Id.* at 664.

The Court's decision in *Rayburn* therefore targets the unique, unprecedented circumstances in that case. A search conducted within the facilities controlled by Congress—where members of Congress maintain their official files and regularly conduct their legislative responsibilities—raises

separation-of-power concerns that do not arise in searches conducted elsewhere. The Court accordingly should confirm that *Rayburn* is limited to those unique circumstances and does not extend further.

Assuming *Rayburn* applies beyond the search of a congressional office, there must be a limit to its application. The decision, with the attendant search-warrant protocol it requires, cannot apply to every search pursuant to a warrant that might turn up legislative-act evidence protected by the Speech or Debate Clause. Even Rep. Perry acknowledges that *Rayburn* cannot apply that broadly, conceding that the government can obtain the emails from his phone that he claims are privileged—without providing him notice or the opportunity to claim privilege—by executing a warrant to search the third-party recipients of those emails. J.A. 253-54. Plainly *Rayburn* would not compel the *Rayburn*-compliant protocol the district court followed in this case—requiring the government to provide Rep. Perry with copies of the seized evidence and allowing him to claim privilege before the government can access that evidence—if the government were to obtain a warrant to search the "cybersecurity individuals" or Trump campaign officials with whom Rep. Perry communicated by text and email. Thus, if *Rayburn* extends beyond the search of a congressional office, there must be a dividing line that distinguishes those searches that are covered by *Rayburn* (congressional offices) and those

that plainly are not (*e.g.*, email accounts of an individual with no formal relationship with Congress but who communicates with a member).

Wherever that line falls, the search of Rep. Perry's personal cell phone in this case should fall outside of *Rayburn*'s coverage. *Rayburn* itself noted that the search in that case "occurred in a location where legislative materials were *inevitably to be found*." 497 F.3d at 661 (emphasis added). The Court emphasized that the search "*must have* resulted in the disclosure of legislative materials." *Id.* (emphasis added). The Court further noted that "[t]his particular search needlessly disrupted the functioning of the Congressman's office," *id.* at 665, explaining that "more than a dozen FBI agents spent about 18 hours in" the office, *id.* at 657, and "the Congressman, his attorney, and counsel for the House of Representatives were denied entry," *id.* at 662.

The search of Rep. Perry's personal cell phone was far different and should not be controlled by *Rayburn*. The search of the phone did not intrude on any property or privacy interest of Congress itself. The phone was not linked to Rep. Perry's congressional email accounts and instead was a personal phone linked to a political email account (███████████████████ and a personal account ███████████████). J.A. 73. The government did not enter any congressional space to seize the phone, or review any congressional records, and instead took possession of the phone for only a few

hours to make a forensic copy while Rep. Perry was on vacation, returning it to Rep. Perry with its contents unchanged and intact. As far as the government is aware, the limited seizure of Rep. Perry's phone caused no impairment to his legislative work. Indeed, compliance with the *Rayburn* warrant protocols—which caused Rep. Perry's lawyers to spend months reviewing the contents of his phone, producing at one point a 218-page privilege log—have presumably been far more disruptive to Rep. Perry's conduct as a member of Congress than the government's momentary seizure of his phone far away from his congressional office while he was on vacation. *See Rayburn*, 497 F.3d at 670 (Henderson, J., concurring) (explaining that alternative procedures to comply with the majority opinion "would no doubt take much more of [the member's] time"). The Court should hold that the *Rayburn*-compliant protocol in Attachment C was not required for the search of Rep. Perry's personal cell phone.

The House (Amicus Br. 11-14) argues that *Rayburn* should apply to a member's personal cell phone because House rules and related guidance permit members to use personal phones for House matters and to link those phones to the House's IT infrastructure. But nothing in this record supports the conclusion that Rep. Perry linked his personal cell phone to the House's IT infrastructure or that he used his personal cell phone exclusively in lieu of a

work phone, and Rep. Perry has never claimed as much. This Court need not determine that a member's personal cell phone can never be subject to *Rayburn* to conclude that Rep. Perry's personal cell phone in this case is not.

Moreover, to the extent the House suggests (Amicus Br. 14-15) that the *Rayburn* non-disclosure privilege applies to legislative-act evidence no matter where it is stored or found, that argument must be rejected. Even Rep. Perry does not go so far as to suggest that *Rayburn* applies that broadly. *See* J.A. 253-54. The government does not violate the *Rayburn* non-disclosure privilege, for example, if it obtains legislative-act evidence when executing a warrant on a third party unconnected to Congress or when issuing a subpoena to such a third party for records that might reflect a member's acts. The House's expansive understanding of the Speech or Debate Clause is unfounded and should be rejected.

**B.** *Rayburn* **Does Not Require This Court to Serve as an Extra Layer of Privilege Review for the 2,055 Records**

Even where it applies, *Rayburn* does not contemplate that this Court will review the privilege determinations reached by a district court implementing the pre-disclosure protocol that the Court approved in *Rayburn*. A district court's privilege review pursuant to those procedures is sufficient to protect the non-disclosure privilege recognized in *Rayburn*.

"The question on appeal" in *Rayburn* was "whether the *procedures* under which the search was conducted were sufficiently protective of the legislative privilege created by the Speech or Debate Clause." 497 F.3d at 655 (emphasis added). This Court drew a distinction "between the lawfulness of searching a congressional office pursuant to a search warrant and the lawfulness of *the manner in which the search is executed* in view of the protections afforded against compelled disclosure of legislative materials by the Speech or Debate Clause." *Id.* at 661 (emphasis added). The Court emphasized that the member had argued "only that the warrant *procedures* in this case were flawed because they afforded him no opportunity to assert the privilege before the Executive scoured his records." *Id.* at 662 (emphasis added).

Compliance with the procedures approved in *Rayburn* adequately protects a member's non-disclosure privilege. *Rayburn* determined that the Speech or Debate non-disclosure privilege "protect[s] against disruption of the legislative process" by preventing a "chill" to the "exchange of views" between members of Congress and between members and their staff. 497 F.3d at 661. These aims are amply served by a member's ability to claim privilege over documents and obtain privilege review by a district court before any disclosure to the Executive Branch. Another layer of judicial review by this Court would not further dissipate a potential chill to any appreciable degree.

The Supreme Court's decision in *Mohawk* confirms that this Court's review is not needed to effectuate the non-chilling function of the *Rayburn* non-disclosure privilege. In *Mohawk*, the Court "acknowledge[d] the importance of the attorney-client privilege," recognizing that "[b]y assuring confidentiality, the privilege encourages clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation." 558 U.S. at 108. The Court determined that deferring appellate review of a district court's privilege determination, even if it means that a client must comply with a court order and disclose communications before any appellate review, "does not meaningfully reduce the *ex ante* incentive for full and frank consultations between clients and counsel." *Id.* at 109. The Court explained: "One reason for the lack of a discernible chill is that, in deciding how freely to speak, clients and counsel are unlikely to focus on the remote prospect of an erroneous disclosure order, let alone on the timing of a possible appeal." *Id.* at 110.

An additional layer of review by this Court likewise would not meaningfully reduce the *ex ante* incentive for full and frank discussions between members and between members and their staffs. The district court's privilege determination pursuant to a *Rayburn*-compliant protocol provides sufficient privacy guarantees to promote candid internal deliberations among members

of Congress and their staffs on legislative matters. Moreover, in the event of an erroneous privilege determination by a district court, the member retains other protections: the ability to claim criminal or civil immunity, the right to prevent use of erroneously disclosed material in civil or criminal proceedings, and the right to avoid testifying about protected legislative acts. As the district court made clear, its order "was limited to the issue of non-disclosure" and leaves Rep. Perry "free, at a minimum, to assert the Clause's privileges in the future if the government uses any of the 2,055 records against him in a criminal prosecution or tries to compel him to testify about his communications contained in these responsive records." J.A. 290. With these protections, nothing in *Rayburn* indicates that the Speech or Debate non-disclosure privilege additionally requires this Court's further review of the 2,055 records on Rep. Perry's phone before their disclosure to the government.

### C. The Non-Disclosure Privilege Recognized in *Rayburn* Only Requires Pre-Disclosure Review of Rep. Perry's Communications with Other Members or His Staff

The Speech or Debate non-disclosure privilege as recognized in *Rayburn* is grounded in the need to provide members and their staffs with confidentiality and privacy to promote the full and frank exchange of views on legislative matters. Members and their staffs only maintain privacy interests, however, to the extent their communications are kept in confidence within

31

Congress. The non-disclosure privilege therefore should not apply to a member's communications that are not maintained in confidence, such as communications shared with third parties unconnected to Congress.[6]

This Court's precedents make clear that the Speech or Debate non-disclosure privilege recognized by this Court is rooted in congressional confidentiality and secrecy. The Court first recognized a non-disclosure privilege in *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995), a civil case involving a subpoena to Congress for documents. In affirming the district court order quashing the subpoena, the Court explained that it was "permit[ting] Congress to insist on the confidentiality of investigative files." *Id.* at 420. The Court emphasized that "Congress [was] asserting the privilege as to matters that it holds confidential—the content of its files," and the Court distinguished a Third Circuit case on the ground that "the subpoenas [in that case] sought the production of materials that were also possessed by third parties." *Id.* at 420 n.10. The Court explained that it did not share the Third Circuit's "disquiet over congressional claims to secrecy," at least in civil cases. *Id.* at 420 & n.10.

---

[6] This section addresses issue (3) in the Court's briefing order.

When subsequently extending the non-disclosure privilege to a criminal search warrant in *Rayburn*, the Court emphasized that "exchanges between a Member of Congress and the Member's staff or among Members of Congress on legislative matters may legitimately involve frank or embarrassing statements," and "the possibility of compelled disclosure may therefore chill the exchange of views with respect to legislative activity." 497 F.3d at 661. The Court determined that "[t]his chill runs counter to the Clause's purpose of protecting against disruption of the legislative process." *Id.*

Applying a non-disclosure privilege to materials that are not maintained in confidence and instead are shared with others outside of Congress is inconsistent with the concerns for congressional confidentiality and secrecy on which the non-disclosure privilege is based. Extending the non-disclosure privilege to such communications or materials does not protect the confidentiality of Congress's files or of internal deliberations among members or their staffs. It does not prevent a chill on the exchange of views with respect to legislative activity by ensuring that frank and embarrassing statements by members and their staff on legislative matters remain private. Congressional materials or communications that are not maintained in confidence should therefore not be subject to the Speech or Debate non-disclosure privilege.

Excluding materials circulated outside of Congress from the Speech or Debate Clause's non-disclosure privilege is consistent with established rules that apply to other confidentiality-based testimonial privileges. The attorney-client privilege, for example, "is intended to promote communication between attorney and client by protecting client confidences." *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1371 (D.C. Cir. 1984). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see Mohawk*, 558 U.S. at 108 (same). The privilege accordingly "applies only when information . . . is maintained as confidential between attorney and client." *Brinton v. Dep't of State*, 636 F.2d 600, 603 (D.C. Cir. 1980). "Wherever the matters communicated to the attorney are intended by the client to be made public or revealed to third persons, obviously the element of confidentiality is wanting." 1 McCormick on Evidence § 91 (8th ed. 2022). Because the non-disclosure privilege recognized in *Rayburn* is grounded in the same confidentiality concerns, it should be treated no differently.

In short, only 611 communications on Rep. Perry's phone—those that involved only members of Congress and their staffs and not any third parties unconnected to Congress, *see* J.A. 197, 227-28—are potentially subject to the

Speech or Debate non-disclosure privilege. Accordingly, only those communications should have to proceed through the *Rayburn*-compliant protocol in which the district court reviews communications for privilege before disclosure to the government. The government should be permitted access to the remaining communications on Rep. Perry's phone without any pre-disclosure privilege review. Rep. Perry cannot credibly claim that disclosure of his communications with others outside of Congress—such as members of the Trump campaign, members of the Executive Branch, state legislators, or so-called cybersecurity individuals—will chill his exchange of views with other members or his staff.

To be clear, Rep. Perry would retain the ability to assert additional protections under the Speech or Debate Clause after any communications are disclosed to the government. He can continue to claim immunity from criminal or civil liability for his legislative acts, and if it is later determined that any of the communications disclosed to the government reflect legislative-act evidence under the Speech or Debate Clause, the government would not be able to use those communications against Rep. Perry in criminal proceedings (although the government would be able to use the evidence against others). Rep. Perry also could not be compelled to testify about those legislative acts. These protections apply to any legislative-act evidence, even communications

not maintained in confidence. But the specific protection of the Speech or Debate non-disclosure privilege, which is aimed at preventing a chill on the exchange of views within Congress on legislative matters, should not apply to such communications.

Rep. Perry contends (Br. 22-25) that the protections of the Speech or Debate Clause apply equally to his communications with other members of Congress, private parties, and members of the Executive Branch. Rep. Perry fails to distinguish, however, between the non-disclosure privilege recognized in *Rayburn* and the other protections that the Speech or Debate Clause affords to members of Congress. Rep. Perry does not explain, for example, why the non-disclosure privilege should foreclose the Executive Branch from obtaining through a warrant his communications with members of the Executive Branch itself. There is no confidentiality interest served by preventing such disclosure. Thus, for the reasons explained above, the *Rayburn* non-disclosure privilege should apply at most to the 611 communications between Rep. Perry and other members of Congress or congressional staff. The rest of the documents should be disclosed to the government forthwith.

**III.  Even if *Rayburn* Requires This Court to Review the District Court's Privilege Determinations Over the 2,055 Records, the Court Should Affirm Those Determinations**

Rep. Perry's generalized contention that the 2,055 communications from his phone all reflect protected information-gathering is inadequate to meet his burden to establish that the communications are privileged. Rep. Perry's privilege claims also fail on the merits. This Court's precedents establish that information-gathering by an individual member or his staff is protected legislative conduct under the Speech or Debate Clause only if connected to investigative proceedings authorized by Congress. Moreover, although the government does not possess the 2,055 communications, available information indicates that the communications are not privileged even if the Speech or Debate Clause covers information-gathering by a member of Congress outside the confines of a congressionally-authorized investigation.[7]

**A.  Rep. Perry Has Not Carried His Burden of Demonstrating that the 2,055 Documents are Privileged**

A member of Congress seeking the protections of the Speech or Debate non-disclosure privilege bears the burden of demonstrating that the material he

---

[7] If the Court finds it possesses jurisdiction, it should review the district court's privilege determinations for abuse of discretion, which is the standard of review the Court has applied to privilege determinations in a district court's discovery order. *See In re Sealed Case (Med. Recs.)*, 381 F.3d 1205, 1211 (D.C. Cir. 2004), *abrogated on other grounds by Mohawk*, 558 U.S. at 105 n.1.

seeks to withhold from the government is privileged. *See Rostenkowski*, 59 F.3d at 1300 (concluding that a member seeking dismissal of an indictment on Speech or Debate grounds bears the "burden" of "show[ing] that the Government has relied upon privileged material"). This is consistent with the burden of proof that applies to other types of testimonial privileges—"[i]t is settled law that the party claiming the privilege bears the burden of proving that the communications are protected." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998). A member asserting Speech or Debate privilege is asserting a "privilege personal to him," and information indicating whether material is privileged is "in his possession alone," and thus "the burden of going forward and of persuasion by a preponderance of the evidence falls on him." *In re Grand Jury Investigation*, 587 F.2d 589, 597 (3d Cir. 1978).

In this Court, as in the district court, Rep. Perry relies (Br. 11, 20-21, 25-35) on a broad argument that the 2,055 communications are privileged as protected information-gathering. But as the district court explained, "a significant number of responsive records are communications that could not plausibly be related to fact-finding activities" and, "contrary to Rep. Perry's general description," do not "appear to be remotely linked to fact-finding efforts." J.A. 288-89. Although the government does not have access to the 2,055 records, based on district court's opinion, it appears that Rep. Perry's

blanket assertion that all 2,055 communications qualify as protected information-gathering is not sufficient to meet his burden of persuasion. For that reason alone, the Court should affirm the district court's order.

**B.** **The Speech or Debate Clause Does Not Cover an Individual Member's Information-Gathering Efforts Outside the Confines of a Committee Investigatory Proceeding**

In this circuit, an individual member's efforts to gather information may be protected by the Speech or Debate Clause if connected to a congressional information-gathering proceeding. That rule creates a sensible and administrable standard that demarcates protected conduct that is integral and essential to legislative activity, while avoiding an amorphous and seemingly boundless standard, such as the one endorsed by Rep. Perry, that could cover "virtually any of [a member's] activities that could be deemed information gathering about any matter which might engage legislative attention." J.A. 199. Rep. Perry's communications were not connected to a congressional information-gathering proceeding and therefore those communications cannot qualify as protected information-gathering activity.[8]

As discussed, the Speech or Debate Clause does not cover all acts by members of Congress "in any way related to the legislative process," *Brewster*,

---

[8] This section addresses issue (2) in the Court's briefing order.

408 U.S. at 516, even acts that members regularly perform "in their official capacity," *Gravel*, 408 U.S. 625; *see McMillan*, 412 U.S. at 313 ("Our cases make perfectly apparent . . . that everything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause."). There "are few activities in which a legislator engages that he would be unable somehow to 'relate' to the legislative process," and construing the Speech or Debate Clause in such a sweeping manner would risk making members "super-citizens, immune from criminal responsibility." *Brewster*, 408 U.S. at 516. The Supreme Court "has repeatedly insisted that the Speech or Debate Clause is subject to 'finite limits,' refusing to stretch its protective umbrella 'beyond the legislative sphere' to conduct not 'essential to legislating.'" *McSurely v. McClellan*, 553 F.2d 1277, 1285 (D.C. Cir. 1976) (en banc) (footnote omitted) (quoting *McMillan*, 412 U.S. at 317, and *Gravel*, 408 U.S. at 624-25). In short, "[l]egislative acts are not all-encompassing." *Gravel*, 408 U.S. at 625.

The Clause covers only those acts "essential to legislating," *Gravel*, 408 U.S. at 621, or "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places

within the jurisdiction of either House," *id.* at 625. The acts the Supreme Court has found to fall within this sphere include introducing proposed legislation, *see Helstoski*, 442 U.S. 477; introducing, voting for, and signing a budget ordinance, *see Bogan v. Scott-Harris*, 523 U.S. 44 (1998); inserting material in the Congressional Record, *see McMillan*, 412 U.S. 306; introducing evidence during committee hearings, *see Gravel*, 408 U.S. 606; delivering a speech on the floor of the House, *see Johnson*, 383 U.S. 169; questioning witnesses during committee hearings, *see Tenney v. Brandhove*, 341 U.S. 367 (1951); and voting on resolutions, *see Kilbourn v. Thompson*, 103 U.S. (13 Otto) 168 (1881).

The Supreme Court determined that the Speech or Debate Clause applies to congressional investigative activities in *Eastland v. United States Servicemen's Fund*, 421 U.S. 491 (1975). The Court held that the Clause protected the actions of members of a Senate subcommittee and the subcommittee's chief counsel in subpoenaing records in connection with a subcommittee investigation. The Court explained that "the power to investigate is inherent in the power to make laws," the "[i]ssuance of subpoenas such as the one in question here has long been held to be a legitimate use by Congress of its power to investigate," and "the subpoena power may be exercised by a committee acting, as here, on behalf of one of the Houses." *Id.* at 504-05. The Court accordingly found that "[t]he issuance of a

subpoena pursuant to an authorized investigation is . . . an indispensable ingredient of lawmaking." *Id.* at 505.

The Court emphasized that "[t]he particular investigation at issue" in that case was "related to and in furtherance of a legitimate task of Congress." 421 U.S. at 505. The Court specifically explained that the subcommittee "was acting under an unambiguous resolution from the Senate authorizing it to make a complete study of the 'administration, operation, and enforcement of the Internal Security Act of 1950.'" *Id.* at 506 (quoting S. Res. 341, 91st Cong. (1970)). And the Court determined that this "grant of authority [was] sufficient to show that the investigation upon which the Subcommittee had embarked concerned a subject on which 'legislation could be had.'" *Id.* (quoting *McGrain v. Daugherty*, 273 U.S. 135, 177 (1927)).

In *McSurely*, this Court concluded that *Eastland* "must also extend to field investigations by a Senator or his staff" in connection with a subpoena issued by a Senate subcommittee. 553 F.2d at 1286. In that case, a Senate subcommittee investigating a 1967 riot in Nashville, Tennessee, issued a subpoena for documents that Kentucky officials had seized from Alan and Margaret McSurely. *Id.* at 1281-83. A federal court had determined that the seizure of documents from the McSurelys had been unlawful, and the court had ordered Kentucky officials to hold the documents "in safekeeping"

pending an appeal. *Id.* at 1282. Kentucky officials permitted a Senate investigator working on behalf of the subcommittee to inspect and make copies of the documents, and the subcommittee subsequently issued a subpoena for the documents in connection with its investigation. *Id.*

As relevant here, this Court explained that "[a] congressman cannot subpoena material unless he has enough threshold information to know where, to whom, or for what documents he should direct a subpoena," and "[t]he acquisition of knowledge through informal sources is a necessary concomitant of legislative conduct and thus should be within the ambit of the privilege so that congressmen are able to discharge their constitutional duties properly." 553 F.2d at 1286-87 (internal quotation marks omitted). But the Court made clear that "there are 'finite limits' to the shield erected by the Speech or Debate Clause," and that the Supreme Court's decision in *Eastland* "require[d] the court to determine whether the inquiry may fairly be deemed within [the Subcommittee's] province." *Id.* at 1287 (internal quotation marks omitted). The Court found that "[t]his requirement of congressional authorization of the inquiry by the particular subcommittee involved was clearly met in this case," because the Senate had passed a resolution "authoriz[ing] an investigation into the causes of civil and criminal disorder that were racking the nation during

this period," and "there was reason for investigative focus on the McSurelys." *Id.*

*McSurely* therefore forecloses Rep. Perry's argument that the 2,055 communications in this case are privileged because they reflect protected information gathering. Rep. Perry does not—and cannot—contend that the 2,055 communications related to a congressionally-authorized investigative proceeding, let alone that his communications aided or facilitated a congressional investigation. *McSurely*'s "requirement of congressional authorization," 553 F.2d at 1287, is therefore missing here.

The House contends (Amicus Br. 22-26) that *McSurely* contains no requirement of congressional authorization, but its argument is contrary to *McSurely*'s express language and reasoning. *McSurely* explained that there are "finite limits" to the Speech or Debate Clause that foreclose its application beyond "conduct essential to legislating," 553 F.2d at 1285 (internal quotation marks omitted), and it determined that those finite limits "require[]" a court to determine whether investigative activity falls fairly within a committee's (or subcommittee's) province, *id.* at 1287. The Court found that informal "field investigation[]" by a member or his staff may qualify as protected legislative conduct under the Speech or Debate Clause, but only if the "inquiry" has received "congressional authorization" through the relevant committee (or

subcommittee). *Id.* at 1286-87. The Court expressly stated that this authorization is a "*requirement.*" *Id.* at 1287 (emphasis added); *see also id.* at 1303 n.3 (Wilkey, J., dissenting) (agreeing that "investigative activity" is protected "provided, of course, that the basic conditions of authorization and pertinency are established"). As this Court has subsequently explained, the Speech or Debate Clause "permits Congress to conduct investigations and obtain information without interference from the courts, at least when these activities are performed in a procedurally regular fashion." *Brown & Williamson*, 62 F.3d at 416.

The requirement of congressional authorization (or, stated differently, procedural regularity) is consistent with the nature of Congress's investigative authority and the manner in which Congress exercises that authority. The Supreme Court has held that the authority of each house of Congress to gather information in aid of its legislative function is implicit in Congress's legislative powers. *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2031 (2020); *McGrain*, 273 U.S. at 161. In practice, each house has delegated this authority to its committees. *See* Ben Wilhelm et al., Congressional Research Service, *Congressional Oversight Manual* 36 (Dec. 22, 2022) ("The implied constitutional authority to conduct investigations resides independently in both the House of Representatives and the Senate, but each chamber has delegated responsibility

for carrying out the investigative role to its standing and select committees."),
*available at* https://crsreports.congress.gov/product/pdf/RL/RL30240 (last
visited Feb. 15, 2023).

As the Supreme Court has explained, "[t]he theory of a committee
inquiry is that the committee members are serving as the representatives of the
parent assembly in collecting information for a legislative purpose," and
"[t]heir function is to act as the eyes and ears of the Congress in obtaining facts
upon which the full legislature can act." *Watkins v. United States*, 354 U.S. 178,
200-01 (1957). Members of Congress, however, are not free on their own to
exercise Congress's investigative powers absent congressional authorization.
*See Gojack v. United States*, 384 U.S. 702, 716 (1966); *Exxon Corp. v. FTC*, 589
F.2d 582, 592-93 (D.C. Cir. 1978); *see also* Morton Rosenberg, *When Congress
Comes Calling: A Study on the Principles, Practices, and Pragmatics of Legislative
Inquiry* 95 (2017) ("In general, congressional oversight powers only apply when
the House, the Senate, or an appropriate committee acts, and the powers
cannot be exercised by individual members of Congress. Each house defines
the scope of the role its members play in the investigatory process."), *available
at* https://docs.pogo.org/report/2017/POGO_TCP_When_Congress_Comes
_Calling.pdf (last visited Feb. 15, 2023). As a result, as *McSurely* correctly
concluded, information-gathering by a member entirely unconnected to the

exercise of Congress's investigative authority by a committee or subcommittee is not an integral part of the member's participation in the work of Congress and is not protected under the Speech or Debate Clause.

*McSurely* is also consistent with the Supreme Court's admonition that "[a] promise to deliver a speech, to vote, or to solicit other votes at some future date" is not a legislative act, nor is "a promise to introduce a bill." *Helstoski*, 442 U.S. at 490 (emphasis omitted). The Supreme Court has distinguished a member's earlier acts from what follows later, such as how the member "spoke, how he debated, how he voted, or anything he did in the chamber or in committee." *Brewster*, 408 U.S. at 526. The prior acts are separate from "the legislative performance itself." *Id.* at 527. For instance, pre-legislative "negotiations between Members and private parties are not protected 'legislative acts.'" *Renzi*, 651 F.3d at 1025. Thus, even if Rep. Perry's communications with private individuals here can be characterized as pertaining to information-gathering about some future proceeding in Congress, they are unprotected under the Speech or Debate Clause for the same reasons that other types of conversations about future legislative activity are unprotected. These prior communications are "casually or incidentally related to legislative affairs but not a part of the legislative process itself." *Brewster*, 408 U.S. at 528.

Rep. Perry and the House note (Br. 18-20; Amicus Br. 17-20) that other courts of appeals (and district courts) have reached different conclusions as to whether the Speech or Debate Clause covers investigatory conduct by an individual member outside the confines of a committee exercising the delegated investigative authority of its parent chamber. The Tenth Circuit has rejected the argument that "meetings with constituents or other members of the public—either by the [member] himself or by his aides—are legislative acts to the extent that information is gathered that could affect his votes or his efforts to craft proposed legislation," observing that "extend[ing] protection to informal information gathering . . . would be the equivalent of extending Speech or Debate Clause immunity to debates before local radio stations or Rotary Clubs." *Bastien v. Office of Senator Campbell*, 390 F.3d 1301, 1316 (10th Cir. 2004). The Ninth Circuit has concluded that "unofficial investigations by a single Member are protected from civil discovery to the same extent as official investigations by Congress as a body," but it "expressly limited its holding to circumstances in which no part of the investigation or fact-finding itself constituted a crime." *Renzi*, 651 F.3d at 1026 (discussing *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983)).[9] And the Third

---

[9] *McSurely* also determined that information-gathering is not protected if done through "unlawful means." 553 F.2d at 1288.

Circuit has determined that "fact-finding, information gathering, and investigative activities" of an individual member may be protected, *Government of Virgin Islands v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985), but it has instructed district courts to make factual findings to determine whether the information-gathering "component of [the member's conduct] was significant and bona fide," *id.* at 525.

For its part, the Supreme Court "has never recognized investigations by an individual Member to be protected" and "has held only that when Congress, acting as a body, employs its constitutional power to investigate, such official investigations are quintessential 'legislative acts.'" *Renzi*, 651 F.3d at 1026 n.10. Insofar as the Supreme Court has discussed information gathering, it has indicated that "such activity is a proper congressional function and, when conducted by a committee, should be treated just as voting and debating legislation," but it has not "indicate[d] that Speech or Debate Clause immunity extends to informal information gathering by individual members of Congress." *Bastien*, 390 F.3d at 1316; *see Fulton Cnty. Special Purpose Grand Jury v. Graham*, No. 22-12696, 2022 WL 13682659, at *1 (11th Cir. Oct. 20, 2022) (per curiam) ("[T]he [Supreme] Court has never considered whether an informal investigation by an individual legislator acting without committee

49

authorization is ever protected legislative activity under the Speech [or] Debate Clause[.]").

*McSurely* faithfully applies Supreme Court precedent and strikes a proper balance under the Speech or Debate Clause. Under *McSurely*, the Speech or Debate clause only covers investigative activity that may be deemed within the province of a particular committee inquiry. If that requirement of congressional authorization is satisfied, then *McSurely* does not distinguish between information gathering through formal methods such as a subpoena or through informal field investigation. The standard set forth in *McSurely* is thus broad enough to safeguard legitimate congressional fact-finding while narrow enough not to make members of Congress "super-citizens, immune from criminal responsibility." *Brewster*, 408 U.S. at 516. *McSurely* provides a clear, administrable rule that serves the purposes of the Speech or Debate Clause and should be followed here.

**C.    Even if the Speech or Debate Clause Covers Information-Gathering by Individual Members Unconnected to Committee Proceedings, the District Court's Privilege Determinations Were Correct**

The Government does not yet have access to the 2,055 records that the district found were not privileged, and therefore it does not know the contents

of those records. Based on the information available to the government, however, the district court's privilege determinations were correct.[10]

As the district court stated, the government does not dispute that Rep. Perry's activities integral to his participation in the joint session of Congress on January 6, 2021, are protected under the Speech or Debate Clause. *See* J.A. 214.[11] The Constitution requires electors in each state to meet and vote by ballot for President and then transmit certificates reflecting their votes to the President of the Senate, who "shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted." U.S. Const. art. II, § 1, cl. 2; U.S. Const. amend. XII. The Electoral Count Act of 1877 establishes additional procedures for counting the electoral votes, providing, for example, that "[t]he Senate and House of Representatives shall meet in the Hall of the House of Representatives" on January 6, and at that joint session, the electoral certificates "are opened by the President of the

---

[10] This section addresses, to the extent possible, issue (4) in the Court's briefing order.

[11] Rep. Perry also claims (Br. 13, 29) that his communications were integral to his consideration of a bill introduced in the House of Representatives, H.R. 1, the "For the People Act." But Rep. Perry merely adverts to supposed "concerns" about election "security" and does not describe the contents of the bill or even when it was up for consideration in the House, let alone show a credible link between H.R. 1 and any of his communications. Rep. Perry's vague and passing reference to H.R. 1 should thus be disregarded.

Senate," who "shall call for objections, if any." 3 U.S.C. § 15. Any speech on the floor of Congress or vote by Rep. Perry at that joint session would be protected activity under the Speech or Debate Clause, *see Brewster*, 408 U.S. at 516 & n.10, but any "activities that are casually or incidentally related to" that proceeding are not, *id.* at 528.

Even courts that take a more expansive view of protected information-gathering by individual members do not accept without inquiry a member's assertion that the actions in question qualify as protected legislative acts. *See, e.g.*, *United States v. Menendez*, 831 F.3d 155, 173 (3d Cir. 2016) (finding member's communications were not protected because purported information-gathering was not their predominant purpose). And by all indications, Rep. Perry's communications reflect (1) unprotected activities that preceded any protected speech or debate, (2) unprotected political activities, and (3) unprotected efforts to influence the Executive Branch.

1.      Acts by a member and his aides "in preparation for" a congressional proceeding (*e.g.*, a hearing) may be covered by the Speech or Debate Clause, *Gravel*, 408 U.S. at 629, but conversations with individuals outside of Congress about a member's conduct at an upcoming congressional proceeding (*e.g.*, a vote) are not protected, *see Brewster*, 408 U.S. at 526-27. For instance, "a promise to introduce a bill," "to deliver a speech, to vote, or to

solicit other votes at some future date" is not a legislative act. *Helstoski*, 442

U.S. at 490; *see Renzi*, 651 F.3d at 1025 (pre-legislative "negotiations between

Members and private parties" are not legislative acts).

Accordingly, insofar as Rep. Perry communicated with Trump campaign

staff, Pennsylvania state legislators, or so-called cybersecurity individuals

about his upcoming conduct at the January 6 joint session of Congress, those

communications are not protected under the Speech or Debate Clause. The

district court correctly concluded that whereas "Rep. Perry's communications

with fellow congressional Members and staff directly relating to . . . voting

and/or speaking order and strategy" for the joint session on January 6 "are

protected under the Clause," his "communications with private individuals or

officials from government entities other than the Congress do not qualify for

protection under the Clause merely because" they reference the January 6 joint

session or "election integrity." J.A. 215. The court identified specific examples

of communications with Trump campaign staff, Pennsylvania state legislators,

and cybersecurity individuals that were unprotected because they were "only

tangentially related to" any proceedings at the joint session on January 6. J.A.

219. The district court correctly applied governing law to the facts presented.

2.     The Speech or Debate Clause does not cover activities that are

"entirely legitimate" but "political in nature rather than legislative." *Brewster*,

408 U.S. at 512. This includes constituent services, newsletters, press releases, or "speeches delivered outside of the Congress," *id.*, even if they reiterate in substance a member's speech on the floor of Congress. *Hutchinson*, 443 U.S. at 130.

The district court correctly concluded that many of Rep. Perry's communications, including communications with his staff or other members of Congress, reflected unprotected political activity. *See* J.A. 230-36. The district court explained, for example, that Rep. Perry received electronic newsletters and communications about his own press coverage or media strategy that reflected unprotected political activity. J.A. 230-33. The court also concluded (correctly) that post-election communications with other members about former President Trump's defeat and potential efforts outside of Congress to challenge the result were "textbook political conversations." J.A. 234-35.

3.    The Supreme Court has repeatedly admonished that the Speech or Debate Clause "does not protect attempts to influence the conduct of executive agencies." *Hutchinson*, 443 U.S. at 121 n.10; *see McMillan*, 412 U.S. at 313. As the Court has explained, "Members of Congress are constantly in touch with the Executive Branch of the Government and with administrative agencies— they may cajole, and exhort with respect to the administration of a federal

statute—but such conduct, though generally done, is not protected legislative activity." *Gravel*, 408 U.S. at 625.

The district court correctly concluded that Rep. Perry's efforts to influence the conduct of Executive Branch officials were unprotected. J.A. 236-39. The court explained the Rep. Perry welcomed and often initiated these communications, which largely consisted of "proactive, persistent, and protracted" efforts by Rep. Perry to propose strategies and Executive Branch action aimed at overturning the results of the 2020 election. J.A. 237.

In sum, the district court's 51-page opinion demonstrates that the court meticulously and exhaustively reviewed the 2,219 communications over which Rep. Perry claimed privilege and applied established law to determine that 2,055 of those communications were not privileged. This Court need not conduct privilege determinations for the 2,055 communications anew—for the reasons explained above, *Rayburn* does not require that procedure. But if the Court determines that it must review the district court's privilege determinations, it should affirm those determinations on the merits.

## CONCLUSION

For the foregoing reasons, the Court should either dismiss this appeal for lack of jurisdiction or affirm the district court's order.

Respectfully submitted,

J.P. COONEY
Deputy Special Counsel

JACK SMITH
Special Counsel

RAYMOND N. HULSER
Counselor to the Special Counsel

THOMAS P. WINDOM
Senior Assistant Special Counsel

TIMOTHY A. DUREE
Assistant Special Counsel

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Assistant Special Counsel
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. B-206
Washington, D.C. 20530
██████████

February 16, 2023

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND LENGTH LIMITATIONS

1.    This brief contains 12,228 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced, 14-point serif typeface using Microsoft Word for Microsoft 365.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Assistant Special Counsel
U.S. Department of Justice

# CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing with the Clerk of the Court for

the United States Court of Appeals for the District of Columbia Circuit via

hand delivery to the Clerk's Office on February 16, 2023, before 4 p.m. I

certify that service will be accomplished by email to following counsel for

Representative Scott Perry:

John S. Irving
E&W LAW, LLC
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
(301) 807-5670
john.irving@earthandwatergroup.com

John P. Rowley III
JPRowley Law PLLC
1701 Pennsylvania Avenue, NW, Suite 200
Washington, D.C. 20006
(202) 525-6674
john.rowley@jprowleylaw.com

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Assistant Special Counsel
U.S. Department of Justice
█████████████
█████████████